IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BORIS GOLDENBERG, AS REPRESENTATIVE OF A CLASS OF SIMILARLY SITUATED PERSONS AND ON BEHALF OF THE INDUCTOTHERM COMPANIES MASTER PROFITS SHARING PLAN #001, | ) ) ) ) ) ) ) | |
| | ) | HONORABLE JEROME B. SIMANDLE |
| PLAINTIFFS, | ) ) | |
| vs. | ) ) | CASE NO. 1:09-cv-05202-JBS-AMD |
| INDEL, INC., INDIVIDUALLY AND A/K/A INDUCTOTHERM INDUSTRIES, INC. AND INDUCTOTHERM CORPORATION, ET AL., | ) ) ) ) ) | |
| DEFENDANTS. | ) | |

MEMORANDUM OF LAW IN SUPPORT OF
THE SUNAMERICA DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S COMPLAINT

CRAIG CARPENITO, ESQ.                    THEODORE J. SAWICKI, ESQ.
                                         H. DOUGLAS HINSON, ESQ.

ALSTON & BIRD LLP                        ALSTON & BIRD LLP
90 Park Avenue                           One Atlantic Center
New York 10016-1387                      1201 West Peachtree Street
(212) 210-9400                           Atlanta, Georgia  30309
(212) 210-9444 fax                       (404) 881-7000

Attorneys for Defendants American International Group, Inc. ("AIG"), SunAmerica Asset
Management Corp. ("SAAMCO"), SunAmerica Capital Services, Inc. ("SACS"), and
SunAmerica Fund Services, Inc. ("SAFS"), collectively referred to as the "SunAmerica
Defendants"

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

FACTUAL BACKGROUND ................................................................................. 2

STANDARD OF REVIEW ................................................................................... 5

ARGUMENT AND CITATION OF AUTHORITY ............................................. 5

I.    COUNT XI FAILS TO STATE A CLAIM FOR PARTICIPATION IN A BREACH OF FIDUCIARY DUTY OR PROHIBITED TRANSACTION AS A MATTER OF LAW ............................................... 5

    A.    Count XI Fails Because there was no Breach of Fiduciary Duty or Prohibited Transaction ............................................................ 6

    B.    AIG Has Done Nothing to Subject Itself to Equitable Relief ............. 6

II.    COUNT XVI IS NOT A SEPARATE CAUSE OF ACTION, BUT RATHER A SET OF REMEDY REQUESTS ................................................ 7

III.    PLAINTIFF'S STATE LAW FRAUDULENT CONCEALMENT CLAIMS IN COUNT XVII FAIL AS A MATTER OF LAW ..................... 9

    A.    The Fraud Claims Are Preempted by ERISA .................................... 9

    B.    The Fraud Claims Are Barred by SLUSA ....................................... 11

        1.    This Action is a 'Covered Class Action.' ............................. 12

        2.    Plaintiff Alleges State Statutory and Common Law Claims for Misrepresentations and Omissions in Connection with the Purchase or Sale of a 'Covered Security.' ............................. 12

    C.    Even if the Claims Were Not Preempted, They Fail as a Matter of Law ................................................................................................... 13

        1.    The information at issue was publicly available, not concealed ............................................................................... 13

        2.    Because the Plan's investments and the selection of service providers are controlled by the Plan's fiduciaries, not by its participants, the information at issue is immaterial to Plaintiff ..... 14

IV.    PLAINTIFF'S COMPLAINT FAILS TO STATE A SECURITIES FRAUD CLAIM (COUNT XIX) AGAINST SUNAMERICA CAPITAL SERVICES, INC. ...................................................................... 15

    A.    Plaintiff Lacks Standing to Assert a Securities Fraud Claim ........... 15

B.    The Complaint Fails to Allege That SunAmerica Capital Services Directly Sold Securities to Plaintiff or Actively Solicited Such a Sale to Plaintiff .................................................................................16

C.    There Was No Misrepresentation or Omission of a Material Fact ......................17

D.    The Complaint Fails To Allege Facts Sufficient to Establish Loss Causation ...........................................................................................................18

V.    THE RICO CLAIM (COUNT XXII) FAILS AS A MATTER OF LAW ...................19

VI.   THE COMPLAINT FAILS TO STATE ANY VIABLE CLAIMS AGAINST AIG .............................................................................................................19

CONCLUSION ........................................................................................................... 20

## **TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937 (2009) ....................................................5

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ...................................................................5

*Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682 (3d Cir. 1991) ..............................15, 16

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) .....................................2

*In re Calpine Corp. ERISA Litig.*, No. C-03-1685, 2005 WL 1431506 (N.D. Cal. Mar. 31, 2005) ......................................................................................................................6

*Carlson v. Principle Financial Group*, 320 F.3d 301 (2d Cir. 2003) ...........................................7

*Catogas v. Cyberonics*, 292 Fed. Appx. 311, 314 (5th Cir. 2008) ...............................................18

*In re Craftmatic Sec. Litigation*, 890 F.2d 628 (3d Cir. 1989) ....................................................16

*Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145 (3d Cir. 1988) .........................................20

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005) .....................................................................18

*Edgar v. Avaya, Inc.*, 503 F.3d 340 (3d Cir. 2007) ......................................................................10

*Egelhoff v. Egelhoff*, 532 U.S. 141 (2001) ....................................................................................9

*Gannon v. Continental Ins. Co.*, 920 F. Supp. 566 (D.N.J. 1996) ..............................................16

*Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561 (1995) ....................................................................16

*Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474 (4th Cir. 2006) .......................................................18

*Golub v. Hilb, Rogal & Hobbs Co.*, 379 F. Supp. 2d 639 (D. Del. 2005) ...................................13

*Gray v. Seaboard Securities, Inc.* 126 Fed. Appx. 14 (2d Cir. 2005)..........................................13

*Hailey v. AGL Resources*, No. 07-2352, 2008 WL. 482331 (D.N.J. Feb. 19, 2008)....................11

*Harris Trust & Savings Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238 (2000) .....................7

*Hecker v. Deere*, 556 F.3d 556 (7th Cir. 2009) .............................................................................7

*Horattas v. Citigroup Finance Markets, Inc*, 532 F. Supp. 2d 891 (W.D. Mich. 2007) ..............12

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993 (C.D. Cal. 2002)...................................................................................................................12

*Kollman v. Hewitt Associates, LLC*, 487 F.3d 139 (3d Cir. 2007) ..........................................9, 10

*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005)......................................................18

*In re Livent, Inc. Noteholders Sec. Litigation*, 151 F. Supp. 2d 371 (S.D.N.Y. 2001).................17

*Lum v. Bank of America*, 361 F.3d 217 (3d Cir. 2004)..................................................................3

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006) ....................11, 12, 18

*Mertens v. Hewitt Associates*, 508 U.S. 248 (1993) .......................................................................8

*In re Morgan Stanley Techn. Fund Sec. Litig.*, 643 F. Supp. 2d 366 (S.D.N.Y. 2009)...........12, 17

*Opdycke v. Stout*, 233 Fed. Appx. 125 (3d Cir. 2007).....................................................................9

*Our Lady of Lourdes Health System v. MHI Hotels, Inc.*, No. 09-1875, 2009 WL. 4510130 (D.N.J. Dec. 1, 2009) ........................................................................................3

*PBGC v. White*, 998 F.2d 1192 (3d Cir. 1993) .........................................................................2

*Peacock v. Thomas*, 516 U.S. 349 (1996) .................................................................................8

*Pietrangelo v. NUI Corp.*, No. 04-3223, 2005 WL. 1703200 (D.N.J. July 25, 2005)....................2

*Rieser v. Standard Life Ins. Co.*, 159 Fed. Appx. 374 (3d Cir. 2005) ..........................................11

*In re Sears Roebuck & Co. ERISA Litig.*, No. 02-C-834, 2004 WL. 407007 (N.D. Ill. Mar. 3, 2004)........................................................................................................................6

*Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293 (11th Cir. 2002) .......................................................................................................................9

*Sysco Food Services of Metropolitan New York v. Tramontana*, No. 06-2864, 2007 WL. 4165349 (D.N.J. Nov. 20, 2007)........................................................................................11

*U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383 (3d Cir. 2002)................................................5

*Ulferts v. Franklin Resources, Inc.*, 567 F. Supp. 2d 678 (D.N.J. 2008)......................................17

*In re Unisys Corp. Retiree Medical Benefits ERISA Litig.*, 579 F.3d 220 (3d Cir. 2009)..............8

*In re Unisys Sav. Plan Litig.*, 74 F.3d 420 (3d Cir. 1996) ............................................................10

*Vohs v. Miller*, 323 F. Supp. 2d 965 (D. Minn. 2004) .................................................................13

*In re Westinghouse Sec. Litig.*, 90 F.3d 696 (3d Cir. 1996).....................................................16, 17

*Winer Family Trust v. Queen*, 503 F.3d 319 (3d. Cir. 2007).......................................................16

## STATE CASES

*Estate of Maglione v. Gulf Oil Corp.*, 2007 N.J. Super. Unpub. LEXIS 1059 (App.Div. Feb. 22, 2007) .............................................................................................................14

*Maksin Mgmt. Corp. v. Roy A. Rapp, Inc.*, 2008 N.J. Super. Unpub. LEXIS 2378 (App.Div. Aug. 8, 2008) ..........................................................................................14

*New Jersey Econ. Dev. Authority v. Pavonia*, 319 N.J. Super. 435, 725 A.2d 1133 (1998)...13, 14

*Sanders v. Reid*, 131 N.J. Eq. 407 (Ch. Div. 1942) ....................................................................14

*Weiland v. Turkelson*, 38 N.J. Super. 239 (App.Div. 1955) .......................................................14

## FEDERAL STATUTES

15 U.S.C. § 77-1(b)...........................................................................................................15, 18

15 U.S.C. § 77l.....................................................................................................................15, 17

15 U.S.C. § 78bb(f) ......................................................................................11

15 U.S.C. § 78bb(f)(1) .................................................................................12

15 U.S.C. § 78bb(f)(1)(A) ............................................................................11

15 U.S.C. § 78bb(f)(5)(B) ............................................................................12

15 U.S.C. §78bb(f)(5)(E) .............................................................................12

29 U.S.C. §1132(a)(3) ...............................................................................7, 8

29 U.S.C. § 1144(a) ......................................................................................9

## FEDERAL REGULATIONS

29 C.F.R.  §§ 2520.103-1, 2520.104-46, & 2520.104b-10 ...........................10

Prop. DOL Reg. Sec. 2550.404a-5 ...............................................................10

Prop. DOL Reg. Sec. 2550.404c-1 ...............................................................10

Prop. DOL Reg. Sec. 2550-408b-2(c)(1) .......................................................10

## <u>INTRODUCTION</u>

Plaintiff's Complaint tosses only a few stones at the SunAmerica Defendants, all but one of which are entirely derivative of alleged the actions of others.  For example, Plaintiff sues AIG simply because it is the ultimate parent of the entities involved with the Plan at issue.  Plaintiff sues the other SunAmerica Defendants because of their alleged association with the SunAmerica Money Market Fund ("SAMMF"), into which a tiny portion of the Plan's assets were swept as the Plan's cash account.  And he lumps these Defendants into the three claims he asserts against all Defendants – his request for "Equitable Relief" in Count XVI, his claim for "Fraudulent Concealment" in Count XVII, and his "RICO" claim in Count XXII.

The only claim that is asserted against the SunAmerica Defendants that involves any action specific to them is Plaintiff's claim for violation of the Securities Act of 1933 against SACS, based on the prospectus for the SAMMF.  (Count XIX.)  That claim is patently frivolous, however, since Plaintiff never purchased or sold any investment in the SAMMF.  Moreover, this claim is based on Plaintiff's confusion and misinterpretation of the SAMMF's prospectus (which complied with SEC forms and regulations) – not any actual failure to disclose or misrepresentation.  Indeed, the information SACS is alleged to have withheld appears on the face of the prospectus.  For these and other reasons explained below, this claim should be dismissed.

The derivative and "group claims" against the SunAmerica Defendants are equally meritless.  The SunAmerica Defendants cannot have knowingly participated in fiduciary breaches and prohibited transactions because no actual breaches or prohibited transactions occurred, as more fully explained in the brief submitted by the FSC Defendants.  Moreover, Count XVI does not purport to state any claim – it simply demands equitable relief.  It is beyond cavil that a Plaintiff cannot demand equitable relief under ERISA § 502(a)(3) without asserting a

claim or violation first, which Plaintiff does not do in Count XVI.  Finally, Plaintiff's common law fraud claim (Count XVII) is preempted by both ERISA and the federal securities laws (and also lacks any substantive merit), and his RICO claim (Claim XXII) is subject to dismissal under well established, controlling authorities.

For all of these reasons, each of which is more fully explained below, all of Plaintiff's claims against the SunAmerica Defendants should be dismissed.

## FACTUAL BACKGROUND

Indel, Inc. is a privately-held management service company for engineering and technology-based companies that manufacture a diverse line of products, with a primary focus on the metals industry.  These companies are divided into two groups — the Inductotherm Group and the Diversified Technology Group.  Inductotherm Corp. is a privately-held corporation that specializes in induction technology, and is the leading manufacturer of induction systems for metal producers in the world. (Compl. ¶12.) Collectively these are referred to as the "Company."

The Company sponsors a profit-sharing plan entitled the Inductotherm Companies Master Profit Sharing Plan (the "Plan"), which is an employee pension plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA").  (*See* Compl. ¶ 2.)  The Plan is a defined-contribution pension plan to which the Company makes contributions on behalf of eligible employees which are allocated to the hypothetical accounts of participants.  (Exh. A, Plan § 5.1, pp. 13-14.[1])  Contributions to the Plan are deposited into an Investment Fund which is invested

---

[1] Referenced exhibits ("Exh.") are attached to the Carpenito Declaration filed herewith.  Matters outside the complaint may be considered on a motion to dismiss where those matters are central to the plaintiff's claims or relied on in the complaint. *E.g., In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (court permissibly considered document where data therein repeatedly was referenced in complaint but not cited);  *PBGC v. White*, 998 F.2d 1192, 1196 (3d Cir. 1993); *Pietrangelo v. NUI Corp*., No. 04-3223, 2005 WL 1703200, *3 (D.N.J. July 25, 2005) (court may consider ERISA plan documents in their entirety) (citations omitted).

under the supervision of the Plan's Trustees.  (*Id.* § 8.1, p.23.)  Unlike the more common 401k plan, the Plan here does not permit participants to choose investments – that responsibility rests with the Plan's Trustees.  (*Id.*)  Upon retirement or disability (or other qualifying event), participants receive a lump sum benefit equal to the amount allocated to their accounts within the Plan. (*Id.* §§ 6.1-6.3, p.18.)

Plaintiff Boris Goldenberg is a former employee of the Company and a participant in the Plan.  (Compl. ¶ 9.)  Plaintiff is bringing this putative class action on behalf of a class of participants and the Plan, alleging that the Plan suffered losses at the hands of the persons responsible for maintaining and investing Plan assets.  Plaintiff alleges that these purported Plan losses fall at the feet of numerous individuals and corporate entities allegedly responsible for the Plan.  These include the Company, its Board of Directors, the Plan's Trustees, the Plan's Committee (collectively "Company Defendants"), "Wharton Business Group" [2] or "Wharton," FSC Securities Corporation, and Financial Service Corporation[3] (collectively "FSC Defendants"), AIG, SAAMCO, SACS, and SAFS.

In broad terms, the Company Defendants are the individuals/entities at the Company whom, Plaintiff alleges, are most directly responsible for the Plan.  The FSC Defendants are,

---

[2]   As more fully explained in the separately-filed brief of the FSC Defendants, there is no such entity as "Wharton Business Group" involved with the Plan.  Rather, that is a name by which certain individual registered representatives of FSC Securities Corporation ("FSC Securities") do business.  These individuals and FSC Securities were investment advisers to the Plan's Trustees.

[3]   Financial Service Corporation ("FSC") is the parent company of FSC Securities.  FSC is an indirect subsidiary of AIG.  AIG is the parent company, four levels removed, of FSC.  FSC is *not* owned, directly or indirectly, by any SunAmerica Defendants other than AIG.  (*See* Exh. B, Exhibit 21 (List of Subsidiaries) from AIG's 2008 10-K.)  Such "matters of public record" can be considered on a motion to dismiss.  *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004); *Our Lady of Lourdes Health System v. MHI Hotels, Inc.*, No. 09-1875, 2009 WL 4510130, *2 (D.N.J. Dec. 1, 2009) (Simandle, J.).

Plaintiff alleges, the outside entities with which the Company Defendants have contracted to provide investment advisory services for the investment of Plan assets.  (Compl. ¶¶ 80, 87, 95.) The SunAmerica Defendants are, Plaintiff alleges, outside entities indirectly related to the FSC Defendants through a common corporate parent (AIG), that provide services through and to the SAMMF (FSC Securities' default sweep account money market fund used by the Plan) and other SunAmerica securities.  (Compl. ¶¶ 114-128.)

AIG is a publicly-owned company traded under ticker symbol AIG.  AIG's business consists of four core areas: General Insurance, Life Insurance & Retirement Services, Financial Services and Asset Management.  Other than its status as the ultimate parent of the SunAmerica and FSC Defendants, the Complaint fails to allege any act or omission by AIG relevant to the claims in the case. (Compl., *passim*.)

All of the SunAmerica Defendants (other than AIG) are indirect subsidiaries of AIG.[4] SAAMCO serves as the investment adviser to certain registered investment companies (the "SunAmerica Mutual Funds") such as the SAMMF.  (Exh. C, SAMMF Prospectus, p.22.)  SACS is the distributor of the SunAmerica Mutual Funds' shares.  (*Id.*)  SAFS is the servicing agent for the SunAmerica Mutual Funds, and assists the Funds' transfer agent in providing shareholder services.  (*Id.*)  None of these entities have any relationship or contact with the Plan or the Plan's fiduciaries, except insofar as their respective roles with the SAMMF.

The *gravamen* of the Complaint is Plaintiff's displeasure with the investment choices made by certain Defendants with responsibility over choosing the investment vehicles/options for the Plan's assets.  Plaintiff alleges various supposed infractions of federal and state law

---

[4]  AIG is the ultimate parent company, three levels removed, of SAAMCO, which is in turn the parent company of SACS and SAFS.  (*See* Exh. B.)

(primarily of ERISA and the Securities laws), none of which survive analysis under the governing authorities, as more fully explained below and in the separate briefs of the Company Defendants and the FSC Defendants.   Furthermore, even if such claims were cognizable generally (they are not), they are legally unavailable and/or meritless against *these Defendants*, for the reasons set forth below.

## STANDARD OF REVIEW

In order to survive analysis under Federal Rule of Civil Procedure 12(b)(6), a complaint must, at minimum, "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949-50 (2009). This requirement of "facial plausibility" is "not akin to a probability standard" in that it requires "more than a sheer possibility that defendant has acted unlawfully." *Id.* Indeed, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of enlistment to relief," and should be dismissed. *Id.* "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1949 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 563 (2007)); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (court may disregard legal conclusions or bald assertions improperly alleged in the complaint).

## ARGUMENT AND CITATION OF AUTHORITY

**I.      COUNT XI FAILS TO STATE A CLAIM FOR PARTICIPATION IN A BREACH OF FIDUCIARY DUTY OR PROHIBITED TRANSACTION AS A MATTER OF LAW.**

In Count XI, Plaintiff alleges that the SunAmerica Defendants violated ERISA by aiding and abetting certain alleged breaches of fiduciary duty and prohibited transactions. Specifically, Plaintiff avers that the SunAmerica Defendants "by their actions in participating in and abetting

fiduciary breaches and prohibited transactions, caused the Plan to invest in the SunAmerica Money Market Fund and pay fees/payments to such parties in connection therewith." (Compl. Count XI, ¶ 4.)   Plaintiff contends that such Defendants are therefore liable under ERISA § 502(a)(3) to disgorge all fees paid/received related to the Plan's investments in the SAMMF. This claim fails for all of the same reasons explained in the FSC Defendants' motion that Plaintiff's SAMMF-related fiduciary and prohibited transaction claims fail, which are expressly incorporated herein.  (*See* FSC Defs.' Brief, Parts II-VI.)

**A.     Count XI Fails Because there was no Breach of Fiduciary Duty or Prohibited Transaction.**

As demonstrated in the FSC Defendants' Brief, which is incorporated herein by reference, the Complaint fails to state viable claims for breach of fiduciary duty and prohibited transactions related to the Plan's investments in the SAMMF.  (*See* FSC Defs.' Brief, Parts II-VI). Because Plaintiff has not properly pled such claims against the FSC Defendants, none of the SunAmerica Defendants can be held liable for these investments under ERISA § 502(a)(3) either.  *In re Calpine Corp. ERISA Litig.*, No. C-03-1685, 2005 WL 1431506 (N.D. Cal. Mar. 31, 2005); *In re Sears Roebuck & Co. ERISA Litig.*, No. 02-C-834, 2004 WL 407007 (N.D. Ill. Mar. 3, 2004).

**B.     AIG Has Done Nothing to Subject Itself to Equitable Relief.**

In addition, even if there could be legitimate claims for equitable relief against the SunAmerica Defendants if they actually received fees as a result of the Plan's investments in the SAMMF (there cannot), there is certainly no legal authority or basis to include AIG in this claim. As noted herein, the sole basis for any claim against AIG is the conclusory allegation that, since it is the ultimate parent of the other SunAmerica Defendants, it "receives dividends, distributions

and other payments from its subsidiaries." (Compl. ¶ 128, Count XI, ¶ 3). Even if this far-fetched conclusion was true, it is patently insufficient as a matter of law.

As an initial matter, any participation in the underlying breach or transaction must be "knowing." *Harris Trust & Savings Bank v. Salomon Smith Barney Inc*., 530 U.S. 238, 250 (2000) (to state a claim for knowing participation in a breach of fiduciary duty the plaintiff must allege that the non-fiduciary "had actual or constructive knowledge of the circumstances that rendered the transaction unlawful."); *Carlson v. Principle Financial Group*, 320 F.3d 301, 308 (2d Cir. 2003). Plaintiff does not even attempt to allege, nonsensically, that a parent three levels removed from the transactions at issue has knowledge of same. Aside from its "status" as a parent, Plaintiff fails to allege a single fact that would support his conclusion that AIG benefited from the alleged transaction. Moreover, this type of claim has been soundly rejected on a motion to dismiss by the only Circuit Court that has addressed it. *See Hecker v. Deere,* 556 F.3d 556, 580-81 (7th Cir. 2009) (allegation that corporation "shared profits" with affiliates was insufficient to support claim against affiliates based on failure to disclose fee arrangements); *see also Harris Trust,* 530 U.S. at 250; *Carlson,* 320 F.3d at 308. Thus, this claim against AIG is frivolous and should be dismissed.

## II.   COUNT XVI IS NOT A SEPARATE CAUSE OF ACTION, BUT RATHER A SET OF REMEDY REQUESTS.

Count XVI states, in toto:

1.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

2.     Pursuant to ERISA §502(a)(3), 29 U.S.C. §1132(a)(3), Plaintiffs ask that this Court order the:

    a)     permanent removal of the Board of Director Defendants, the Committee Defendants and the Trustee Defendants from any positions of trust with respect to the Plan;

    b)     appointment of independent fiduciaries to administer the Plan;

c) rescission of any contracts that may have been entered into on behalf of the Plan with the Financial Service Corporation, FSC Securities Corporation, SunAmerica Asset Management Corp., SunAmerica Capital Services, Inc., SunAmerica Fund Services, Inc., The SunAmerica Money Market Fund, Inc., the Wharton Business Group and any other AIG subsidiary; and

d) an order enjoining Inductotherm, the Board of Director Defendants, the Committee Defendants and the Trustee Defendants from contracting or investing, on behalf of the Plan with AIG or any AIG wholly owned subsidiary, and enjoining all of the Defendants from any further violations of ERISA fiduciary responsibilities, obligations and duties.

(Doc. 1, Count XVI.)  This Count appears to be alleged against all Defendants.

ERISA § 502(a)(3) authorizes a civil action:

by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3).  First and foremost, it must be recognized that ERISA § 502(a)(3) does not exist in a vacuum; such a claim must be grounded in a primary ERISA violation.  The statute does not permit the Court to order "equitable relief" without a finding that a defendant has breached a recognized duty under ERISA, violated the terms of the ERISA plan, or otherwise violated ERISA.  *See Peacock v. Thomas*, 516 U.S. 349, 353 (1996) ( "Section 502(a)(3) 'does not, after all, authorize "appropriate equitable relief" at large, but only "appropriate equitable relief" for the purpose of "redress[ing any] violations or ... enforc[ing] any provisions" of ERISA.' ") (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 253 (1993)).  If the Complaint fails properly to allege an " 'underlying' violation of any provision of ERISA or an ERISA plan,"  ERISA § 502(a)(3) simply does not provide a remedy.  *Peacock*, 516 U.S. at 353; *see also In re Unisys Corp. Retiree Medical Benefits ERISA Litig.*, 579 F.3d 220, 234 (3d Cir. 2009) ("*Where a plaintiff establishes a breach of fiduciary duty*, the plaintiff is entitled to equitable relief pursuant to ERISA § 502(a)[(3)] … .") (emphasis added).

Here, Count XVI makes no attempt to allege any underlying violation of ERISA or the Plan.  Instead, it relies on the "shotgun" pleading[5] approach of incorporating all prior paragraphs in the Complaint and then demanding relief for unspecified violations and/or based on irrelevant allegations.  In point of fact, Count XVI itself alleges no violations at all, but merely constitutes a set of at least four remedy requests.  But seeking remedies for unspecified and/or non-existent breaches, at the very least puts the cart before the horse.  For the reasons set forth above/herein, because there is no claim cognizable here as to *any* Defendant for any violation of ERISA, Count XVI is not cognizable as to these Defendants.

## III.   PLAINTIFF'S STATE LAW FRAUDULENT CONCEALMENT CLAIMS IN COUNT XVII FAIL AS A MATTER OF LAW.

In Count XVII, Plaintiff alleges that all of the Defendants "fraudulently concealed or failed to disclose to Plaintiff and members of the Plan" information regarding expenses charged relative to the SAMMF, the risks of the investments in the Plan, appropriate benchmarks by which to monitor the Plan's performance, the true identity of persons responsible for managing the Plan, the relationship among the various AIG-related entities and the alleged violations of law committed by same. (Compl., Count XVII, ¶ 2. )  These claims are both preempted and without merit.

### A.    The Fraud Claims Are Preempted by ERISA.

ERISA preempts any state law that "relate[s] to" an employee benefit plan. 29 U.S.C. § 1144(a); *Egelhoff v. Egelhoff*, 532 U.S. 141, 147-48, (2001); *Kollman v. Hewitt Associates*,

---

[5] Roundly condemned by many federal courts, " 'shotgun complaint[s]' usually create[] 'a task that can be quite onerous' for courts."*Opdycke v. Stout*, 233 Fed. Appx. 125, 127 & n.1 (3d Cir. 2007) (citing *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002) ("The typical shotgun complaint contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (*i.e.*, all but the first) contain irrelevant factual allegations and legal conclusions.").

LLC, 487 F.3d 139 (3d Cir. 2007). ERISA's preemption provision was designed to "'eliminat[e] the threat of conflicting or inconsistent State and local regulation of employee benefit plans.'" *Kollman*, 487 F.3d at 149 (quoting, 120 Cong. Rec. 29928, 29933 (1974) (statement of Sen. Williams)). Thus, the Third Circuit has reasoned that where a state law claim "implicate[s] the essential functions of an employee benefit plan, such as funding, benefits, reporting, and administration" the claim "relates to" a plan and is therefore preempted. *Id.* at 149.

Plaintiff's fraud claims clearly "relate to" the Plan. At their heart, these claims seek to impose state law disclosure duties on the Plan's alleged fiduciaries/service providers regarding Plan investments, the Plan's fiduciary structure, and the alleged fiduciaries'/service providers' relationships with related entities. ERISA, however, already comprehensively regulates the information that is required to be disclosed to participants regarding a plan's investments, fiduciary governance and applicable fees. For example, this Circuit has observed that ERISA's fiduciary provisions impose upon plan fiduciaries a duty to inform participants and beneficiaries of material information regarding a plan's investments. *Edgar v. Avaya, Inc.*, 503 F.3d 340, 350 (3d Cir. 2007); *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 440 (3d Cir. 1996). Likewise, ERISA's regulations also comprehensively regulate the type of disclosures that must be made regarding a plan's fiduciaries, investments and the payment of plan expenses. *See* 29 C.F.R. §§ 2520.103-1, 2520.104-46, & 2520.104b-10; Prop. DOL Reg. Sec. 2550.404a-5; Prop. DOL Reg. Sec. 2550.404c-1; Prop. DOL Reg. Sec. 2550-408b-2(c)(1).

Because Plaintiff's fraudulent concealment claims seek to impose additional and inconsistent disclosure obligations based on Defendants' respective roles with regard to the Plan and its investments, they necessarily relate to the Plan and are therefore preempted. Indeed, this Court has already found that similar state law claims for fraud and fraudulent concealment are

preempted by ERISA.  *E.g.*, *Sysco Food Servs. of Metro New York v. Tramontana*, No. 06-2864, 2007 WL 4165349, *10-11 (D.N.J. Nov. 20, 2007) (fraud, constructive fraud and negligent misrepresentation claims preempted by ERISA); *Hailey v. AGL Resources*, No. 07-2352, 2008 WL 482331, *19-20 (D.N.J. Feb. 19, 2008) (fraud and fraudulent concealment claims preempted by ERISA). *Accord Rieser v. Standard Life Ins. Co.*, 159 Fed. Appx. 374, 377-78 (3d Cir. 2005) (common law fraud claim related to ERISA plan and was therefore preempted.) Accordingly, Count XVII should be dismissed.

### B.    The Fraud Claims Are Barred by SLUSA.

Plaintiff's fraudulent concealment claims also constitute an improper attempt to avoid the application of the federal securities laws.  Congress specifically prohibited such attempts when it enacted the Securities Litigation Uniform Standards Act ("SLUSA"), 15 U.S.C. § 78bb(f). SLUSA expressly provides that federal courts have exclusive jurisdiction over, and federal law is the sole basis for, claims asserting fraud and misrepresentation related to the purchase or sale of "covered" securities.  *Id.* § 78bb(f)(1)(A).  SLUSA provides for complete preemption of state statutory or common law claims where, as here, a plaintiff seeks to prosecute an action covered by the statute.  *See, e.g., Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 82-89 (2006) (hereinafter "*Dabit*").

In particular, SLUSA provides as follows:

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging –

(A)  a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or

(B)   that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1).

       **1.**      ***This Action is a "Covered Class Action."***

SLUSA defines "covered class actions" to include lawsuits, such as this one, where the plaintiff seeks to recover damages on a representative basis on behalf of himself and other unnamed parties similarly situated and where "questions of law or fact common to those persons or members of the prospective class predominate over any questions affecting only individual persons or members." 15 U.S.C. § 78bb(f)(5)(B). Plaintiff has purportedly brought his claims as a class action, on a representative basis, and alleges that common questions of law or fact predominate. (Compl. ¶¶ 1, 235-252.) Accordingly, Plaintiff's claims qualify as a "covered class action" under the statute.

       **2.**      ***Plaintiff Alleges State Statutory and Common Law Claims for Misrepresentations and Omissions in Connection with the Purchase or Sale of a "Covered Security."***

A "covered security" is defined under SLUSA to include securities listed or authorized for listing on a national stock exchange **or** that are issued by an investment company, such as the SAMMF, that is registered, or has filed a registration statement, under the Investment Company Act of 1940. *See* 15 U.S.C. §78bb(f)(5)(E). Money market funds have been held to constitute "covered securities" under SLUSA. *See, e.g., Horattas v. Citigroup Fin Mkts., Inc,* 532 F.Supp.2d 891, 899 (W.D. Mich. 2007); *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F.Supp.2d 993, 1000 (C.D. Cal. 2002). To fall within the ambit of SLUSA, "it is enough that the fraud alleged 'coincide' with a securities transaction – whether by plaintiff or by someone else" to be deemed "in connection with the purchase or sale of a security." *Dabit*, 547 U.S. at 85.

Plaintiff's fraudulent concealment claims against all of the FSC Defendants, including Wharton, allege misrepresentations and omissions in connection with the sale of assets in the Vanguard Fund and the purchase of assets in the SAMMF.  (Compl. Count XVII.)

Thus, because Plaintiff's state law claims in part specifically relate to "covered securities" and rest on the same theory and the same alleged misrepresentations and omissions as Plaintiff's purported 10b-5 claim, those state law claims are preempted by SLUSA and must be dismissed.  *Id.*; *see also Golub v. Hilb, Rogal & Hobbs Co.*, 379 F.Supp.2d 639, 644-45 (D. Del. 2005) (preempting common law fraud claims); *Vohs v. Miller*, 323 F.Supp.2d 965, 974 (D. Minn. 2004) (holding state law fraudulent misrepresentation and conspiracy claims were "swept aside in SLUSA's wide preemptive swath"); *Gray v. Seaboard Securities, Inc.* 126 Fed. Appx. 14, 15-16 (2d Cir. 2005) (SLUSA preempted state statutory and common law claims).

### C.    Even if the Claims Were Not Preempted, They Fail as a Matter of Law.

#### 1.    The information at issue was publicly available, not concealed.

Under New Jersey state law, there is no duty to disclose, and no fraudulent concealment, where the information at issue is available to the plaintiff.  *New Jersey Econ. Dev. Auth. v. Pavonia,* 319 N.J. Super. 435, 725 A.2d 1133 (1998). In the case *sub judice*, Plaintiff seeks the disclosure of information that was clearly available to him, and therefore his fraudulent concealment claims fail.

Indeed, Plaintiff's Complaint makes it abundantly clear that *all of the information* that he contends was not disclosed, was in fact found in some public forum. For example, Plaintiff complains about nondisclosure of information concerning the relationship between the AIG-related entities, which Plaintiff alleges he discovered on various websites and public filings. (Compl. at ¶¶ 84, 162, 163, 164-166.)  Plaintiff also contends that Defendants were required to

disclose the fees paid by the Plan relative to the SAMMF, while noting in his Complaint that he obtained this very information from the Fund's prospectus. (*Id.* ¶ 129.)

Because all of the information that Plaintiff contends was fraudulently concealed was in fact publicly available, Count XVII fails as a matter of law. *Pavonia,* 319 N.J. Super. at 446. *See also Maksin Mgmt. Corp. v. Roy A. Rapp, Inc*., 2008 N.J. Super. Unpub. LEXIS 2378, at *24 (App.Div. Aug. 8, 2008); *Estate of Maglione v. Gulf Oil Corp*., 2007 N.J. Super. Unpub. LEXIS 1059, at *14-15 (App.Div. Feb. 22, 2007); *Weiland v. Turkelson*, 38 N.J.Super. 239, 246 (App.Div. 1955); *Sanders v. Reid*, 131 N.J.Eq. 407, 411 (Ch. Div. 1942).

> ### 2. *Because the Plan's investments and the selection of service providers are controlled by the Plan's fiduciaries, not by its participants, the information at issue is immaterial to Plaintiff*.

This claim also fails because it is inconsistent with the nature of the ERISA plan at issue here.   Unlike 401k plans where participants select how to invest plan assets, the Plan's investments were selected by its fiduciaries.   Participants, such as Plaintiff, do not have any control over such investment decisions, and therefore, cannot have been harmed by the absence of same.

The same is true with regard to the information concerning the Plan's engagement of the individuals doing business as the Wharton Business Group and their broker dealer (FSC Securities) as the investment adviser to the Plan.  The Plan's fiduciaries, the Trustees, made this decision, and participants had no way to influence or control this selection and engagement.

In sum, none of the information Plaintiff claims should have been disclosed could possibly have had any impact on him.  He simply had no power or authority over the decisions at issue, and therefore his claims of fraudulent concealment in Count XVII fail as a matter of law.

## IV.  PLAINTIFF'S COMPLAINT FAILS TO STATE A SECURITIES FRAUD CLAIM (COUNT XIX) AGAINST SUNAMERICA CAPITAL SERVICES, INC.[6]

Plaintiff purports to bring a securities fraud claim under Section 12(a)(2) of the Securities Act of 1933 ("12(a)(2) claim") against Defendant SACS alleging misrepresentations and omissions in the SAMMF April 30, 2009 Prospectus.  (Compl. Count XIX, ¶ 3.)  To state a claim for securities fraud under Section 12(a)(2) of the Securities Act, a plaintiff (1) must be an actual purchaser of securities, (2) must allege that the defendant offered or sold securities through a prospectus that contained misrepresentations or omissions of material fact, and (3) must allege that such misrepresentations and omissions caused a loss.  15 U.S.C. § 77l; 15 U.S.C. § 77-1(b).

Plaintiff's Complaint fails to state a 12(a)(2) claim against SACS for four fundamental reasons.  First, Plaintiff fails to allege that he is a purchaser of securities in connection with the SAMMF Prospectus, and, thus, Plaintiff lacks standing to bring a claim.  Second, the Complaint fails to allege that SACS, or any other Defendant, directly sold or actively solicited the sale of securities to Plaintiff.  Third, the Complaint fails to allege a misrepresentation or omission of material fact.  Finally, the Complaint fails to allege that the misrepresentation or omission in the SAMMF Prospectus caused a loss.

### A.  Plaintiff Lacks Standing to Assert a Securities Fraud Claim.

To state a 12(a)(2) claim, a plaintiff must be an ***actual*** purchaser.  15 U.S.C. § 77l (limiting recover to "the person purchasing such security"); *see also Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682, 687 (3d Cir. 1991) ("***[S]ection 12(2) provides a remedy*** and rescissionary damages, ***only to a purchaser*** of securities. ...") (emphasis added).  Further,

---

[6]  To the extent Plaintiff intends to assert this claim against additional Defendants by alleging that "[SACS] and any other wholly owned AIG subsidiary that is herein a named defendant or John Doe Defendants that are found to have contributed to the drafting of the [SAMMF] April

Plaintiff, himself, must establish individual standing and cannot acquire standing merely bringing a class action. *Winer Family Trust v. Queen*, 503 F.3d 319, 325-26 (3d. Cir. 2007).

Nowhere in Plaintiff's Complaint, however, does Plaintiff allege that he actually purchased securities, much less that he did so in connection with the SAMMF Prospectus.  In fact, the very Count alleging the 12(a)(2) claim makes no mention of a purchase.  (*See* Compl. Count XIX.)  Having failed to plead that *he* purchased securities, Plaintiff thus lacks standing to assert a 12(a)(2) claim.[7]

> **B.    The Complaint Fails to Allege That SunAmerica Capital Services Directly Sold Securities to Plaintiff or Actively Solicited Such a Sale to Plaintiff.**

The Third Circuit has held that 12(a)(2) liability extends only to either (1) the direct seller of the security, or (2) one who actively solicits the purchase, motivated at least in part by a desire to service his own financial interests or those of the securities owner.  *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 716 (3d Cir. 1996); *see also In re Craftmatic Sec. Litig.*, 890 F.2d 628, 634-35 (3d Cir. 1989).  In *Craftmatic*, the Third Circuit stated, with regard to solicitation liability, that "although an issuer is no longer immunized from § 12 liability, neither is an issuer liable solely on the basis of its involvement in preparing the prospectus. The purchaser must demonstrate direct and active participation in the solicitation of the immediate sale to hold the issuer liable as a § 12(2) seller." *Id.*  Here, in addition to the fact that Plaintiff has failed to allege

---

30, 2009 Prospectus, violated the Securities Act," (Compl. Count XIX, ¶ 2; *see also* Count XIX, ¶¶ 3-5), those claims fail for the same reasons expressed herein.

[7]   Further, even if Plaintiff could allege that he purchased mutual fund shares through the Plan, [s]uch a purchase is by definition not pursuant to an initial public offering and as such [Plaintiff] has no cause of action under [Section 12(a)(2)]." *See Gannon v. Continental Ins. Co.*, 920 F. Supp. 566, 575 (D.N.J. 1996) (holding that Section 12(a)(2) applies onto to stocks bought in an initial public offering and not to stock purchased through secondary market transactions) (citing *Ballay v. Legg Mason Wood Walker, Inc.*, 925 F.2d 682 (3d Cir. 1991) and *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561 (1995)).

even that he purchased securities, Plaintiff also does not allege that SACS – or, for that matter, any Defendant – directly sold or actively solicited or sold any security to Plaintiff.  Accordingly, Plaintiff's 12(a)(2) claim is fatally deficient.  *See In re Westinghouse Sec. Litig.*, 90 F.3d at 716.

### C.    There Was No Misrepresentation or Omission of a Material Fact.

To state a 12(a)(2) claim, Plaintiff must allege that the SAMMF Prospectus contained a misrepresentation or omission of a material fact.  15 U.S.C. § 77l.  Plaintiff alleges that the SAMMF Prospectus failed to disclose a 0.22% servicing fee on page six,[8] but to bolster that allegation, shows that the same fee was disclosed on page twenty-three of the SAMMF Prospectus.  (Compl. Count XIX, ¶ 3.)  Even if the disclosure contained an omission or misstatement, Plaintiff may not recover under Section 12(a)(2), however, if he knew of the misstatement or omission at the time of the subject transaction.  *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F.Supp.2d 371, 409 (S.D.N.Y. 2001).  In other words, knowledge that a misstatement or omission exists is sufficient to defeat a Section 12(a)(2) claim.  *Id.* at 441.  Because the SAMMF Prospectus actually disclosed this servicing fee, Plaintiff had knowledge of the alleged misstatement or omission.  Accordingly, on the face of Plaintiff's Complaint, he

---

[8]   Further, to the extent Plaintiff is alleging that the SAMMF Prospectus omitted information, Plaintiff must first plead that there was a duty to disclose the omitted information.  *See, e.g.*, *Ulferts v. Franklin Resources, Inc.*, 567 F.Supp.2d 678, 680-81 (D.N.J. 2008); *see also In re Morgan Stanley Technology Fund Sec. Litig.*, 643 F.Supp.2d 366, 375 (S.D.N.Y. 2009).  Plaintiff has not alleged that Form N-1A or any other SEC regulations require the disclosure of the servicing fee as a separate line item in the fee table.  (*See* Form N-1A, at http://www.sec.gov/about/forms/formn-1a.pdf.)  Thus, absent a duty to disclose, there can be no liability.  *See Ulferts*, 567 F. Supp. 2d at 680-81.  Moreover, the allegedly omitted information was, in fact, disclosed and was not misleading.  The SAMMF Prospectus, in conformance with Form N-1A requirements, includes the category "Other Expenses" in the fee table.  (*See* Exh. C, p.6.)  The category "Other Expenses" includes "all expenses not otherwise disclosed in the table that are deducted from the Fund's assets or charged to all shareholder accounts," (*see* Form N-1A, Item 3, at http://www.sec.gov/about/forms/formn-1a.pdf), which necessarily includes the servicing fee.

cannot state a claim under Section 12(a)(2) of the Securities Act.

     **D.**    **The Complaint Fails To Allege Facts Sufficient to Establish Loss Causation.**

Plaintiff's 12(a)(2) claim fails for the additional reason that the Complaint does not, and cannot, allege specific facts to establish loss causation. *See* 15 U.S.C. § 77-1(b) (requiring loss causation to be established for Section 12 claims). Under *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005), to demonstrate loss causation a plaintiff must allege a causal connection between the alleged loss (*e.g.*, a stock price drop following a curative disclosure) and the alleged prior misrepresentations. *Dura*, 544 U.S. at 347. As many courts have held, loss causation is lacking if a curative disclosure does not "reveal the truth" about the specific misconduct alleged in the complaint. *See, e.g.*, *Catogas v. Cyberonics*, 292 Fed. Appx. 311, 314 (5th Cir. 2008); *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 477 (4th Cir. 2006); *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 (2d Cir. 2005).

Here, the Complaint fails to plead loss causation with respect to the alleged misstatements regarding the servicing fee because Plaintiff does not allege that this misrepresentation caused any loss to the Plan or to Plaintiff's retirement benefits under the Plan. Indeed, the Complaint alleges no nexus between the alleged misrepresentations and any loss suffered by Plaintiff other than a conclusory allegation that Defendants "caused the Plan and the participants to suffer substantial losses commencing sometime in 2005 and through the present date." (Compl. ¶ 234.) Further, Plaintiff fails to explain how an alleged misstatement in the SunAmerica Prospectus could have caused any losses allegedly suffered prior to 2009. Thus, Plaintiff's claim also should be dismissed for failure to plead loss causation.

Accordingly, Plaintiff's Section 12(a)(2) claim should be dismissed.

## V.   THE RICO CLAIM (COUNT XXII) FAILS AS A MATTER OF LAW.

The SunAmerica Defendants expressly adopt the RICO claim arguments in the Company Defendants' Brief as if fully set forth herein.  In particular, Plaintiff lacks standing even to assert a RICO claim because Plaintiff has failed to adequately allege that any of the actions taken by the Defendants proximately caused any injury to Plaintiff.  (*See* Company Defs.' Brief, Part I.1.; *see also supra* Part IV.D.)   Further, Plaintiff fails to plead any facts to support his RICO allegations, instead relying on conclusory allegations that may not be given any weight on a motion to dismiss.  (*See* Company Defs.' Brief, Part I.2.)  Moreover, Plaintiff fails to plead any legally viable predicate acts necessary to support a RICO claim.  (*See* Company Defs.' Brief, Part I.3.)  For all of these reasons and all of the reasons expressed in the Company Defendants' Brief, Plaintiff's RICO claim fails as to the SunAmerica Defendants.

## VI.   THE COMPLAINT FAILS TO STATE ANY VIABLE CLAIMS AGAINST AIG.

Plaintiff's Complaint, while long on conclusions regarding the alleged evils of the Plan having been invested in "AIG Securities," is remarkably devoid of any factual allegations concerning AIG, and completely devoid of any factual allegations (as opposed to legal conclusions) sufficient to put AIG on notice as to what actual behaviors or actions it is alleged to have taken relevant to the subject matter of the Complaint that triggers any liability on its part.

A careful review of the Complaint reveals that AIG is not alleged to have taken any action or participated in any challenged transaction.  To obfuscate the paucity of "facts" pled, Plaintiff repeats the mantra of AIG's alleged ownership of several other named Defendants, as if sheer repetition will make such alleged ownership suspect.  Other than allegations that AIG is the ultimate parent of numerous subsidiaries, the only allegation tangentially relevant to any alleged liability is the fatally vague and wholly conclusory allegation that "As AIG is a holding

- 19 -

company, it receives dividends, distributions and other payments from its subsidiaries" and was thereby "enriched" by such alleged payments.  (Compl. ¶¶ 128; Count III ¶ 10; Count XI ¶ 3; Count XXII ¶ 12.)  Notably, AIG is *not* alleged to be a fiduciary of the Plan, nor is it alleged to be a "party in interest" for purposes of any cause of action.  (Compl., *passim*.)  It is not alleged to have taken any action or participated in any transaction relevant to the Complaint; it is not alleged to have had actual or constructive knowledge of any such transaction.  (*Id.*)  Indeed, it is not even alleged to have orchestrated, masterminded, or otherwise implemented any transaction (*id.*; the absence of such allegations are not surprising; Rule 11 provides the outer bounds on factual pleadings).  Its appearance in this lawsuit is owed, per Plaintiff's Complaint, solely to its status as the ultimate parent corporation of the FSC/SunAmerica entities.  Such status, without more, is wholly insufficient to state a claim against AIG.[9]

## CONCLUSION

For the reasons set forth above, the Complaint fails to state any viable claim for relief against the SunAmerica Defendants.  The SunAmerica Defendants respectfully request an Order from the Court dismissing all claims alleged against them.

Dated:  December 21, 2009.

Respectfully submitted,

**ALSTON & BIRD LLP**

s/ Craig Carpenito
Craig Carpenito (CC-1686)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Phone: (212) 210-9400

---

[9]   *See, e.g., Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 149 (3d Cir. 1988) ("even the exercise of significant control by the parent over the subsidiary will not suffice to pierce the corporate veil").

LEGAL02/31668132v3

Fax: (212) 210-9444
Email: craig.carpenito@alston.com

Theodore J. Sawicki, Esq. (*pro hac vice*)
H. Douglas Hinson, Esq. (*pro hac vice*)
ALSTON & BIRD LLP
1201 West Peachtree St.
Atlanta, GA  30309
Phone: (404) 881-7000
Fax: (404) 881-7777
Email: tod.sawicki@alston.com
Email: doug.hinson@alston.com

**Counsel for SunAmerica Defendants:**  American
   International Group, Inc., SunAmerica Asset
   Management Corp., SunAmerica Capital Services,
   Inc., and SunAmerica Fund Services, Inc.

- 21 -

**CERTIFICATE OF SERVICE**

This is to certify that the within and foregoing was filed with the Clerk of the Court using

the CM/ECF system, which will automatically provide notice to the following attorneys of

record by electronic means:

> Arnold C. Lakind
> SZAFERMAN, LAKIND, BLUMSTEIN & BLADER, P.C.
> 101 Grovers Mill Road, Suite 200
> Lawrenceville, NJ  08648
> Email: alakind@szaferman.com
>
> Moshe Maimon
> LEVY, PHILLIPS & KONIGSBERG, LLP
> 800 Third Avenue, 13th Floor
> New York, NY  10022
> Email: mmaimon@lpklaw.com
>
> Matthew Steven Barndt
> Vincent E. Gentile
> DRINKER BIDDLE & REATH LLP
> 105 College Road East, Suite 300
> Princeton, NJ  08542
> Email:  matthew.barndt@dbr.com
> Email:  vincent.gentile@dbr.com

This 21st day of December, 2009.

> s/ Craig Carpenito
> Craig Carpenito, Esq.

LEGAL02/31668132v3