# IN THE UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| BORIS GOLDENBERG, AS REPRESENTATIVE OF A CLASS OF SIMILARLY SITUATED PERSONS AND ON BEHALF OF THE INDUCTOTHERM COMPANIES MASTER PROFITS SHARING PLAN #001, <br><br> PLAINTIFFS, <br><br> VS. <br><br> INDEL, INC., INDIVIDUALLY AND A/K/A INDUCTOTHERM INDUSTRIES, INC. AND INDUCTOTHERM CORPORATION, ET AL., <br><br> DEFENDANTS. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> HONORABLE JEROME B. SIMANDLE <br><br> CASE NO. 1:09-cv-05202-JBS-AMD |

## MEMORANDUM OF LAW IN SUPPORT OF
## FSC DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT

CRAIG CARPENITO, ESQ.

ALSTON & BIRD LLP
90 Park Avenue
New York 10016-1387
(212) 210-9400
(212) 210-9444 fax

THEODORE J. SAWICKI, ESQ.
H. DOUGLAS HINSON, ESQ.

ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309
(404) 881-7000

Attorneys for Defendants Financial Service Corporation, FSC Securities Corporation, and "Wharton Business Group" (collectively the "FSC Defendants")

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 2

STANDARD OF REVIEW ................................................................................. 4

ARGUMENT AND CITATION OF AUTHORITY ........................................... 5

I.   'WHARTON BUSINESS GROUP' IS NOT A LEGAL ENTITY
     SEPARATE AND APART FROM THE PERSONS WHO
     CONDUCT BUSINESS UNDER THAT NAME, AND, THUS, IT
     MAY NOT BE SUED ........................................................................... 5

II.  THE PROHIBITED TRANSACTION CLAIMS IN COUNTS III &
     IV FAIL AS A MATTER OF LAW ...................................................... 6

     A.   Because the FSC Defendants are not Fiduciaries, Counts III &
          IV Fail ........................................................................................... 6

     B.   The Alleged Prohibited Transactions Are, In Any Event, Exempt
          From § 406(a) & (b) Under Prohibited Transaction Class
          Exemption 77-4 ............................................................................. 9

     C.   Count IV Also Fails Because There Was No Party-in-Interest
          Involved In The Transaction At Issue ........................................... 11

III. COUNTS V & VI FAIL AS A MATTER OF LAW AGAINST THE
     FSC DEFENDANTS BECAUSE INVESTING PLAN ASSETS IN
     THE SUNAMERICA MONEY MARKET FUND WAS NEITHER
     IMPRUDENT NOR DISLOYAL ......................................................... 13

     A.   The Court Should Disregard Plaintiff's Factual Errors in Counts
          V & VI ........................................................................................... 15

          (1)  The Vanguard Fund and the SAMMF Do Not Perform the
               Same Function in the Plan's Investment Portfolio ............... 15
          (2)  Plan Assets Were Not Liquidated From the Vanguard Fund
               to be Invested in the SAMMF ............................................ 16

     B.   No Duty of Prudence Has Been Breached by Investing in
          SAMMF ......................................................................................... 18

          (1)  SAMMF Does Not Charge Excessive Fees .......................... 18
          (2)  SAMMF Did Not Have Inferior Returns ............................. 20

IV.    COUNTS VII & VIII FAIL AS A MATTER OF LAW BECAUSE
       INVESTING IN THE HUSSMAN STRATEGIC GROWTH FUND
       WAS NEITHER INCONSISTENT WITH THE PLAN
       DOCUMENTS NOR IMPRUDENT ........................................................................20

       A.    Investing in HSGF Is Consistent with the Plan Documents ..............................20

       B.    Investing in HSGF Is Not Imprudent ................................................................23

V.     COUNT IX FAILS AS A MATTER OF LAW AGAINST THE FSC
       DEFENDANTS BECAUSE DEFENDANTS WERE OBLIGATED
       TO FOLLOW THE INVESTMENT POLICY, WHICH DOES NOT
       VIOLATE ERISA IN ANY WAY .......................................................................24

VI.    COUNTS III-IX FAIL AS AGAINST FSC BECAUSE IT IS NOT,
       AND NEVER HAS BEEN, A FIDUCIARY OF THE PLAN ..................................26

       A.    Fiduciary Status Is a Necessary Element of a Fiduciary Breach
             Claim ...............................................................................................................26

       B.    FSC is Neither a Named Nor a Functional Fiduciary of the Plan ....................27

VII.   COUNT XVI IS NOT A SEPARATE CAUSE OF ACTION, BUT
       RATHER A SET OF REMEDY REQUESTS ..........................................................29

VIII.  PLAINTIFF'S STATE LAW CLAIMS IN COUNTS XVII, XVIII &
       XXI FAIL AS A MATTER OF LAW ...................................................................29

IX.    COUNT XX FAILS TO STATE A VALID 10b-5 SECURITIES
       FRAUD CLAIM ...............................................................................................30

       A.    Plaintiff Lacks Standing to Assert a 10b-5 Claim ...........................................31

       B.    Plaintiff Fails To Allege Facts Essential to Establish Loss
             Causation ..........................................................................................................32

       C.    Plaintiff Does Not Adequately Allege Scienter ...............................................33

X.     THE RICO CLAIM (COUNT XXII) FAILS AS A MATTER OF
       LAW ...............................................................................................................34

CONCLUSION ......................................................................................................... 34

## <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*Agway, Inc., Employees' 401(k) Thrift Investment Plan v. Magnuson*, No. 03-CV-1060, 2006 WL. 2934391 (N.D.N.Y. Oct. 12, 2006) ........................................................................27

*Akers v. Palmer*, 71 F.3d 226 (6th Cir. 1995)................................................................................26

*ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855 (3d Cir. 1994)....................................................................7

*Alco Industrial, Inc. v. Wachovia Corp.*, 527 F. Supp. 2d 399 (E.D. Pa. 2007)...........................21

*Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937 (2009)..................................4, 11, 25, 26, 31, 34

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) .........................................................................2, 26

*Bennett v. Conrail Matched Sav. Plan Admin. Committee*, 168 F.3d 671 (3d Cir. 1999).......21, 25

*Beye v Horizon BC/BS of New Jersey*, 568 F. Supp. 2d 556 (D.N.J. 2008) ....................................5

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975).....................................................32

*Board of Trs. of Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164 (3d Cir. 2002) ...27, 28

*Boeckman v. A.G. Edwards, Inc.*, No. 05-658-GPM, 2007 WL. 4225740 (S.D. Ill. Aug. 31, 2007) .......................................................................................................................12, 13

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997)......................................2

*Catogas v. Cyberonics*, 292 Fed. Appx. 311 (5th Cir. 2008) ........................................................33

*In re Cendant Corp. Sec. Litig.*, 81 F. Supp. 2d 550 (D.N.J. 2000)...............................................32

*Childers v. Northwest Airlines, Inc.*, 688 F. Supp. 1357 (D. Minn. 1988) ...................................32

*Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54 (4th Cir. 1992)..............................................29

*Crowley v. Corning*, 234 F. Supp. 2d 222 (W.D.N.Y. 2002) ........................................................29

*Donovan v. Cunningham*, 716 F.2d 1455 (5th Cir. 1983) ............................................................24

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005).......................................................31, 32, 33

*Fraser v. Fiduciary Trust Co. Int'l*, No. 04 CIV 6958, 2005 WL. 6328596 (S.D.N.Y. Jun. 23, 2005) ..............................................................................................................32, 33

*Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474 (4th Cir. 2006)..........................................32

*Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 500 U.S. 238 (2000)...........................6

*Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009)............................................8, 13, 18, 19-20

*Hlinka v. Bethlehem Steel Corp.*, 863 F.2d 279 (3d Cir. 1988)..........................................22

*IATSE Local 33 Section 401(K) Plan Board of Trs. v. Bullock*, No. 08-3949, 2008 WL. 4838490 (C.D. Cal. Nov. 5, 2008) ...................................................................12, 13

*Kennedy v. Plan Admin. for DuPont Sav. & Investment Plan*, 129 S. Ct. 865 (2009) ...........21, 25

*Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243 (5th Cir. 2008)..............................24

*Kline v. First Western Government Sec., Inc.*, 24 F.3d 480 (3d Cir. 1994)................................31

*Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005).........................................33

*Lockhead Corp. v. Spink*, 517 U.S. 882 (1996) ...........................................................6, 8

*Loomis v. Exelon Corp.*, No. 06-cv-4900, 2009 WL. 4667092 (N.D. Ill., Dec. 9, 2009)..18, 19, 20

*Lovelace v. Dekalb Central Probation*, 144 Fed. Appx. 793 (11th Cir. 2005)............................5

*Lum v. Bank of America*, 361 F.3d 217 (3d Cir. 2004)........................................2, 3, 17

*McRoy v. Cook County Department of Corrections*, 366 F. Supp. 2d 662 (N.D. Ill. 2005)............5

*Mehling v. New York Life Insurance Co.*, 163 F. Supp. 2d 502 (E.D. Pa. 2001) .....................9, 10

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006) ...................32

*Mertens v. Hewitt Associates*, 508 U.S. 248 (1993) .........................................................30

*Metz v. United Counties Bancorp*, 61 F. Supp. 2d 364 (D.N.J. 1999)...........................................31

*Moffitt v. Whittle Committees, L.P.*, 895 F. Supp. 961 (E.D. Tenn. 1995) ....................................27

*Our Lady of Lourdes Health System v. MHI Hotels, Inc.*, No. 09-1875, 2009 WL. 4510130 (D.N.J. Dec. 1, 2009) .........................................................................3

*Pegram v. Herdrich*, 530 U.S. 211 (2000) ..................................................................26

*Pietrangelo v. NUI Corp.*, No. 04-3223, 2005 WL. 1703200 (D.N.J. July 25, 2005)....................2

*Reich v. Compton*, 57 F.3d 270 (3d Cir. 1995) ........................................................................28, 29

*Srein v. Frankford Trust Co.*, 323 F.3d 214 (3d Cir. 2003) ........................................................27, 28

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 127 S.Ct. 2499 (2007) .........31, 33, 34

*Tibble v. Edison International*, 639 F. Supp. 2d 1074 (C.D. Cal. 2009) .....................................7, 8

*U.S.  Express Lines, Ltd. v. Higgins*, 281 F.3d 383 (3d Cir. 2002) .................................................5

*In re Unisys Corp. Retiree Medical Benefits ERISA Litig.*, 579 F.3d 220 (3d Cir. 2009) .23, 24, 26

*In re Unisys Savings Plan Litig.*, 74 F.3d 420 (3d Cir. 1996) ..................................................14, 15

*Unum v. Ward*, 526 U.S. 358 (1999) ...................................................................................13, 28, 29

*Vitale v. Latrobe Area Hospital*, 420 F.3d 278 (3d Cir. 2005) ................................................22, 26

*Voyk v. Brotherhood of Locomotive Eng'rs*, 198 F.3d 599 (6th Cir. 1999) ...................................27

*Weiss v. Prudential Ins. Co. of America*, 497 F. Supp. 2d 606 (D.N.J. 2007) ..............................22

*In re Williams Co. ERISA Litig.*, 271 F. Supp. 2d 1328 (N.D. Okla. 2003) .................................29

*The Winer Family Trust v. Queen*, 503 F.3d 319 (3d. Cir. 2007) ...........................................32, 33

*Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004) .......................................27


**STATE CASES**

*Arizona v. Ivanhoe*, 798 P.2d 410 (Ariz. 1990) .............................................................................5

*Pinkerton's, Inc. v. Superior Court*, 49 Cal. App. 4th  1342 (Cal. Ct. App. 1996) .........................5


**FEDERAL STATUTES**

15 U.S.C. § 78u-4(b)(3)(A) ............................................................................................................31

29 U.S.C. § 1002(14) ......................................................................................................................12

29 U.S.C. § 1002(21) ................................................................................................................12, 27

29 U.S.C. § 1102(a)(2) ....................................................................................................................27

29 U.S.C. § 1104(a)(1)(A) ...............................................................................14

29 U.S.C. § 1104(a)(1)(A)(ii) ..........................................................................18

29 U.S.C. § 1104(a)(1)(D) ...........................................................................21, 25

29 U.S.C. § 1108(a) ....................................................................................10, 11

## FEDERAL REGULATIONS

29 C.F.R. § 2550.404a-1(b)(1)(i) .....................................................................15

PTCE 77-3, 42 Fed. Reg. 18,734 (1977) ..........................................................11

PTCE 77-4, 47 Fed. Reg. 18732 (1977) .......................................................10,11

## INTRODUCTION

Plaintiff's Complaint is a mess.  It is replete with allegations that are demonstrably untrue and contradicted by the very documents upon which it relies.  It contains claims that are patently frivolous as a matter of law.  The "shotgun" style of the Complaint is confusing and alone should cause its dismissal.

The FSC Defendants strive herein to identify the inaccurate and conclusory allegations, explain the legal issues that undermine Plaintiff's claims, and sort through the confusion.  In so doing, the need for dismissal of the claims asserted becomes clear.  Despite the effort by Plaintiff to throw everything imaginable at the proverbial wall – none of it sticks.

As explained herein, Plaintiff plainly does not comprehend the nature of the Inductotherm Companies Master Profit Sharing Plan, how it is governed, who makes the investment decisions, the nature and performance of its investments, or the fee structure. Fortunately, he references and relies upon documents that the Court can and should consider in evaluating Plaintiff's claims and deciding the Defendants' motions to dismiss.  These documents consistently contradict the allegations in the Complaint, establishing the true nature of the Plan, its governance, and its investments and fees.

Once these fundamental errors are corrected, the relevant law disposes of Plaintiff's claims.  Parties who are not fiduciaries cannot breach fiduciary duties that do not apply. Prohibited transaction exemptions established by both Congress and the Department of Labor bless the investments and fees at issue.  Plan documents allow, and indeed compel, such investments.   And there is nothing imprudent about having a cash/sweep account and

investments that perform better than the investments advocated by Plaintiff.  Finally, of course, Plaintiff's state law, RICO and securities claims are preempted and frivolous, respectively.

For all its prolixity and confusion, Plaintiff's Complaint is due to be dismissed in its entirety, as more fully explained below.

## FACTUAL BACKGROUND

Indel, Inc. is a privately-held management service company for engineering and technology-based companies that manufacture a diverse line of products, with a primary focus on the metals industry.  These companies are divided into two groups — the Inductotherm Group and the Diversified Technology Group.  Inductotherm Corp. is a privately-held corporation that specializes in induction technology, and is the leading manufacturer of induction systems for metal producers in the world. (Compl. ¶12.) Collectively these are referred to as "the Company."

The Company sponsors a profit-sharing plan entitled the Inductotherm Companies Master Profit Sharing Plan (the "Plan"), which is an employee pension plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA").  (*See* Compl. ¶ 2.)  The Plan is a defined-contribution pension plan to which the Company makes contributions on behalf of eligible employees which are allocated to the hypothetical accounts of participants.  (Exh. A, Plan § 5.1, pp. 13-14.[1])  Contributions to the Plan are deposited into an Investment Fund which is invested under the supervision of the Plan's Trustees.  (*Id.* § 8.1, p.23.)  Unlike the more common 401k plan, the Plan here does not permit participants to choose investments – that responsibility rests

---

[1]     Referenced exhibits ("Exh.") are attached to the Carpenito Declaration filed herewith. Matters outside the complaint may be considered on a motion to dismiss where those matters are central to the plaintiff's claims or relied on in the complaint.  *E.g., Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (court permissibly considered document where data in document referenced in complaint but not cited); *Pietrangelo v. NUI Corp.*, No. 04-3223, 2005 WL 1703200, *3 (D.N.J. July 25, 2005) (court may consider ERISA plan documents in their entirety) (citations omitted).

with the Plan's Trustees.   (*Id.*)   Upon retirement or disability (or other qualifying event), participants receive a lump sum benefit equal to the amount allocated to their accounts within the Plan. (*Id.* §§ 6.1-6.3, p.18.)

Plaintiff Boris Goldenberg is a former employee of the Company and participant in the Plan.   (Compl. ¶ 9.)   Plaintiff is bringing this putative class action on behalf of a class of participants and the Plan, alleging that the Plan suffered losses at the hands of the persons responsible for maintaining and investing Plan assets.   Plaintiff alleges that these purported Plan losses fall at the feet of numerous individuals and corporate entities allegedly responsible for the Plan.   These include the Company, its Board of Directors, the Plan's Trustees, the Plan's Committee (collectively "Company Defendants"), "Wharton Business Group"[2] (or "Wharton"), FSC Securities Corporation ("FSC Securities"), and Financial Service Corporation ("FSC")[3] (collectively "FSC Defendants"), American International Group, Inc. ("AIG"),   SunAmerica Asset Management Corp., SunAmerica Capital Services, Inc., and SunAmerica Fund Services, Inc., (collectively "SunAmerica Defendants").

In broad terms, the Company Defendants are the individuals/entities at the Company whom, Plaintiff alleges, are most directly responsible for the Plan.   The FSC Defendants are, Plaintiff alleges, the outside entities with which the Company Defendants have contracted to

---

[2]   As more fully explained below there is no such entity as "Wharton Business Group" involved with the Plan.  Rather, this is a name by which certain individual registered representatives of FSC Securities do business.  These individuals and FSC Securities were investment advisers to the Plan's Trustees.

[3]   FSC is the parent company of FSC Securities.  FSC is an indirect subsidiary of AIG.  AIG is the parent company, four levels removed, of FSC.  FSC is *not* owned, directly or indirectly, by any SunAmerica Defendants other than AIG.  (*See* Exh. D, Exhibit 21 (List of Subsidiaries) from AIG's 2008 10-K.)  Such "matters of public record" can be considered on a motion to dismiss. *Lum*, 361 F.3d at 222 n.3; *Our Lady of Lourdes Health System v. MHI Hotels, Inc.*, No. 09-1875, 2009 WL 4510130, *2 (D.N.J. Dec. 1, 2009) (Simandle, J.)

provide investment advisory services for the investment of Plan assets.  (Compl. ¶¶ 80, 87, 95; Exh. B, Investment Policy Statement ("IPS"); Exh. C, FSC Securities Investment Advisory Agreement ("IAA").)    The SunAmerica Defendants are, Plaintiff alleges, outside entities indirectly related to the FSC Defendants through a common corporate parent (AIG), that provide services through and to the SunAmerica Money Market Fund ("SAMMF") (FSC Securities' default sweep account money market fund used by the Plan and other brokerage clients of FSC Securities) and other SunAmerica securities.  (Compl. ¶¶ 114-128.)

The *gravamen* of the Complaint is Plaintiff's displeasure with the investment choices made by certain Defendants with responsibility over choosing the investment vehicles/options for the Plan's assets.  Plaintiff alleges various supposed infractions of federal and state law (primarily of ERISA and the Securities laws), none of which survive analysis under the governing law, as more fully explained below.

## STANDARD OF REVIEW

In order to survive analysis under Federal Rule of Civil Procedure 12(b)(6), a complaint must, at minimum, "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. ___, 129 S.Ct. 1937, 1949-50 (2009). This requirement of "facial plausibility" is "not akin to a probability standard" in that it requires "more than a sheer possibility that defendant has acted unlawfully."  *Id*.   Indeed, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of enlistment to relief," and should be dismissed.  *Id*. "[L]abels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Id*. at 1949 (*quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 563 (2007)); *see also U.S.*

*Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (court may disregard legal conclusions or bald assertions improperly alleged in the complaint).

## ARGUMENT AND CITATION OF AUTHORITY

**I.    "WHARTON BUSINESS GROUP" IS NOT A LEGAL ENTITY SEPARATE AND APART FROM THE PERSONS WHO CONDUCT BUSINESS UNDER THAT NAME, AND, THUS, IT MAY NOT BE SUED.**

Only a natural person or a legal entity may be sued.  *See, e.g., Lovelace v. Dekalb Central Probation*, 144 Fed. Appx. 793, 793-94 (11th Cir. 2005); *McRoy v. Cook County Dept. of Corrections*, 366 F.Supp.2d 662 (N.D. Ill. 2005).  "Wharton Business Group," however is not a legal entity, and, thus, it may not be sued. [4]  Rather, "Wharton Business Group" is merely the name used by certain investment advisory representatives registered with FSC Securities Corporation to do business.  (*See* Compl. ¶¶ 147, 176, 180 (investment policy was signed by BJ Webster and Marc Hembrough, who hold their securities and investment advisory licenses and registration through FSC Securities, *cf.* Exh. B, IPS).)   In other words, "Wharton Business Group" is merely a "doing business as" or "d/b/a" name under which these investment advisory representatives conduct business.

A "d/b/a" name, however, does not create a legal entity separate and apart from the person(s) who do business under that name.  *See Beye v Horizon BC/BS of New Jersey*, 568 F.Supp.2d 556, 575 n.26 (D.N.J. 2008); *Pinkerton's, Inc. v. Superior Court*, 49 Cal. App. 4th 1342, 1348-49 (Cal. Ct. App. 1996); *Arizona v. Ivanhoe*, 798 P.2d 410, 412 (Ariz. 1990). Accordingly, "Wharton Business Group" is not a separate legal entity that can be sued, and all claims against Wharton should therefore be dismissed.  *Lovelace*, 144 Fed. Appx. at 793-94.

---

[4]  Plaintiff did not name as a party to this action Wharton Business Group, LLC or Wharton Business Group, Inc., nor does Plaintiff allege wrongful conduct on behalf of either of these entities. (*See* Exh. E, Doc. # 1-3; Compl., *passim*.)

## II.   THE PROHIBITED TRANSACTION CLAIMS IN COUNTS III & IV FAIL AS A MATTER OF LAW.

In Count III, Plaintiff alleges that FSC, FSC Securities and Wharton violated ERISA §§ 406(b)(1), (2) and (3) by causing the Plan to invest in the SAMMF. (Compl., Count III, ¶¶ 1-16.)  Plaintiff contends the investment in the SAMMF is prohibited because the SunAmerica Defendants share a common ultimate parent (AIG), received fees as a result of this investment, and allegedly shared such fees with AIG.  (*Id*. ¶¶ 9-10.)  In Count IV, Plaintiff alleges that this same conduct also violated ERISA §§ 406(a)(1)(A), (C) and (D).  (Compl., Count IV, ¶¶ 1-9.)  These allegations fail to state a viable prohibited transaction claim as a matter of law.

### A.   Because the FSC Defendants are not Fiduciaries, Counts III & IV Fail.

As a threshold matter, to state a claim under ERISA § 406, a plaintiff must first establish that the defendant is a fiduciary.  ERISA § 406(a) ("A fiduciary with respect to a plan shall not …"); ERISA § 406(b) ("A fiduciary with respect to the plan shall not  …").  *Accord Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 500 U.S. 238, 251 (2000); *Lockhead Corp. v. Spink*, 517 U.S. 882, 888-89 (1996) (in order to show a violation of ERISA §406 "a plaintiff must show that a fiduciary caused the plan to engage in the allegedly unlawful transaction.")

Here, the Complaint is devoid of any *factual allegations* establishing fiduciary status for any of the FSC Defendants.  Instead, Plaintiff simply asserts that the FSC Defendants are fiduciaries under ERISA §3(21) and ERISA §3(38).  (Compl. ¶ 82; Count III, ¶ 6; Count IV, ¶ 3.)  The only "facts" alleged in support of this conclusion is that the FSC Defendants invested the Plan's assets in the SAMMF. (Compl. ¶¶ 125-127.)  But these allegations are clearly belied by the very documents cited and relied upon by Plaintiff in the Complaint.

Under the terms of the Plan, the Plan's Trustees have the exclusive authority to manage the Plan's investments. (Exh. A, Plan § 8.1.)   Although FSC Securities and its individual

registered representatives who do business as Wharton serve as an investment adviser[5] to the Trustees, the agreement under which they perform this role confirms that they act as a *non-discretionary adviser,* meaning they have no discretionary authority or control over the Plan's assets or its investments. (*See* Exh. C, IAA, p.2, ¶ 3.)  Specifically, the agreement states that they are acting "on a non-discretionary basis," that the Plan will invest only as the Trustees direct, and that the Trustees are "under no obligation to accept any of [Wharton/FSC Securities]'s recommendations, and [the Trustees] retains sole discretion over the investments to be purchased and sold …"  (*Id.*)  There is not a single allegation of any fact that would contradict the Plan or the advisory agreement, and therefore Plaintiff's conclusory allegations that the FSC Defendants controlled the Plan's investments are patently insufficient as a matter of law. [6]

Thus, the actual decision to invest the Plan's assets in the SAMMF rested squarely with the Trustees – not the FSC Defendants.  Put simply, Counts III and IV fail because Plaintiff has not (and cannot) establish that the FSC Defendants caused the Plan to enter into the alleged prohibited transactions.

*Tibble v. Edison International*, 639 F.Supp.2d 1074, 1088-89 (C.D. Cal. 2009) is a recent case directly on point.   In *Tibble*, the plaintiff asserted a prohibited transaction claim under ERISA § 406 based on the Plan having invested in a mutual fund company.  *Id.* at 1086.  The

---

[5]   Plaintiff avers in a single paragraph that FSC is an "investment manager" and thus a fiduciary under ERISA § 3(38).  (Compl. ¶ 82.)  However, Plaintiff fails to allege a single fact that would support such a conclusion; nor can he since FSC is not a party to the Investment Advisory Agreement and since the agreement itself makes clear that the investment adviser serves in a non-discretionary capacity.  (*Cf.* Exh. C, IAA.)

[6]   *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994) ("Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control."); 5 Wright & Miller, FED. PRAC. & PRO. § 1327 & n.14 (2d ed. 1990) ("Mere legal conclusions and factual allegations that contradict such a properly considered document are not well-pleaded facts that the court must accept as true.").

plaintiff alleged the investment in the mutual fund company resulted in a benefit to the plan's sponsor because it resulted in the plan sponsor paying a smaller percentage of the plan's recordkeeping costs. *Id*. Even though the plan's administrative committee had selected the mutual fund company, the plaintiff alleged that the plan sponsor violated ERISA § 406(b) because it received consideration for its own account and acted in a transaction that was adverse to the plan. *Id.* at 1086.

The court rejected the plaintiff's claims out of hand. The court started its analysis by noting that "to be liable for a violation of § 1106(b)(3), the fiduciary receiving the 'consideration' must have had control over the 'transaction' in question." *Id.* at 1087 (*citing Lockheed Corp. v. Martin*, 517 U.S. 882, 888 (1996)). The court reasoned that while the plan sponsor received the benefit of the alleged prohibited transaction, it was not the party that caused the plan to invest in the mutual fund at issue. Rather, the court found that the plan's benefit committee, which was an independent entity from the sponsor, caused the investment in the mutual fund. Since the plaintiff failed to show that the sponsor controlled the committee's decision, it dismissed the claim. *Id.* at 1087-88. *Accord Hecker v. Deere & Co.*, 556 F.3d 575, 584 (7th Cir. 2009) ("the Trust Agreement gives Deere, not Fidelity Trust, the final say on which investment options will be included. The fact that Deere may have discussed this decision, or negotiated about it, with Fidelity Trust does not mean that Fidelity Trust had discretion to select the funds for the Plans.")

The Department of Labor ("DOL") reached a similar conclusion in Advisory Opinion 97-16A (May 22, 1997). In this Opinion Aetna, which provided record keeping services to pension plans, inquired as to whether its receipt of fees from a mutual fund company that it made available to its client plans violated ERISA § 406 (b). The DOL concluded that the threshold

question in such a situation was whether Aetna was acting as a plan fiduciary.  It went on to conclude that Aetna would not be a fiduciary with respect to the selection of mutual funds "provided that the appropriate plan fiduciary in fact makes the decision to accept or reject the [fund selection]." *Id*.

The allegations and undisputed documents in the case *sub judice* compel the same conclusion. As demonstrated above, the FSC Defendants did not make the decision to invest the Plan's assets in the SAMMF.  Rather, this decision was made by the Plan's Trustees, which are wholly independent from the FSC Defendants.  As such, these Defendants did not cause, and could not have caused, the Plan to enter into the alleged prohibited transactions, and Counts III and IV should therefore be dismissed.

**B.     The Alleged Prohibited Transactions Are, In Any Event, Exempt From § 406(a) & (b) Under Prohibited Transaction Class Exemption 77-4.**

At their core, both of Plaintiff's prohibited transaction claims rest on the assertion that because the Plan's investment advisers, Wharton/FSC Securities, are alleged to be affiliated with the SunAmerica Defendants, the Plan's investment in the SAMMF violated § 406 because Wharton/FSC Securities and the SunAmerica Defendants allegedly benefited from the fees paid to the SunAmerica Defendants by the SAMMF.  (Compl. ¶¶ 123, 125-127.)  Even if these allegations were true, they nonetheless fail to state a claim.

As noted above, ERISA § 406 prohibits fiduciaries from engaging in self dealing and from engaging in certain transactions with parties in interest.  *See, e.g., Mehling v. New York Life Ins. Co.*, 163 F.Supp.2d 502, 510 (E.D. Pa. 2001).  Recognizing that these prohibitions were overbroad because many of these transactions could, in fact, be beneficial to plans, Congress also enacted ERISA § 408(b), which contains statutory exemptions from these prohibitions, and ERISA § 408(a), which authorizes the Secretary of Labor (the "Secretary") to grant

administrative exemptions on an individual or class basis.  29 U.S.C. § 1108(a), 29 U.S.C. § 1108(b).

In 1977, the Secretary issued a "class exemption" from ERISA §406 to permit the exact conduct of which Plaintiff complains here.  Prohibited Transaction Class Exemption ("PTCE") 77-4, 47 Fed. Reg. 18732 (1977) specifically permits investment firms to invest assets from ERISA benefit plans they control in mutual funds with which they are affiliated.   Specifically, PTCE 77-4 provides that "the restrictions of section 406 of the Act … shall not apply to the purchase or sale by an employee benefit plan of shares of an open-end investment company . . ., the investment adviser for which is also a fiduciary with respect to the plan (or an affiliate of such fiduciary)" provided the following four conditions are met:

(a)  the plan does not pay a sales commission in connection with such purchase or sale;

(b)  the plan does not pay a redemption fee, unless it is disclosed and paid only to the investment company;

(c)  the plan does not pay investment advisory fees, except under the terms of its investment advisory agreement; and

(d)  an independent fiduciary approves the purchase after full disclosure regarding the fee structure.

Here, Plaintiff alleges that the Plan's investment advisers, Wharton/FSC Securities, are affiliated with the SunAmerica Defendants. (Compl. ¶¶ 19-22.)  There is also no dispute that the SAMMF is an open-end investment company (*i.e.*, mutual fund) registered under the Investment Company Act of 1940.  (Exh. F, SAMMF Prospectus.)  Likewise, there is no dispute that the investment adviser agreement and the fund's prospectus disclosed the applicable fees to an independent fiduciary (the Committee/Trustee), who approved the Plan's investment in the SAMMF. (*See* Exh. F, SAMMF Prospectus; Exh. C, IAA.)  These same documents also establish that there are no sales commissions, undisclosed redemption fees or advisory fees other than

those paid pursuant to the investment advisory agreement. (*Id.*) Thus, even if all of Plaintiff's factual allegations are true, PTCE 77-4 exempts the Plan's investments in the SAMMF from ERISA § 406.

The Complaint attempts to dodge PTCE 77-4 by alleging that the SAMMF transactions "are not protected by any of the regulatory exemptions" (*i.e.*, the prohibited transaction exemptions) issued by the DOL pursuant to ERISA § 408(a), 29 U.S.C. § 1108(a).  (Compl., Count III, ¶ 14; Count IV, ¶ 7.)  This bare allegation of an obviously legal conclusion fails utterly to satisfy *Iqbal.* 129 S.Ct. at 1950 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'- 'that the pleader is entitled to relief.' Fed. R. Civ. P. 8(a)(2).").  Indeed, the factual allegations in the Complaint, coupled with the documents referenced therein, confirm the opposite conclusion.

Because the Complaint fails to state facts that, if true, would make the offering of the SAMMF a violation of ERISA § 406, Counts III and IV must be dismissed. *See, e.g., Mehling*, 163 F.Supp.2d at 510 (dismissing complaint where plaintiff failed to allege facts showing that ERISA class exemption 77-3[7] did not apply to offering of mutual funds to in-house plan.)

### C.    Count IV Also Fails Because There Was No Party-in-Interest Involved In The Transaction At Issue.

In Count IV, Plaintiff contends that the Plan's investment in the SAMMF resulted in a prohibited "party in interest" transaction because the SunAmerica Defendants provided services to the SAMMF and received fees as a result of same.  (Compl. ¶¶ 116-117; Count IV, ¶ 5.)  The only supporting allegation for the conclusion that the SunAmerica Defendants are "parties in

---

[7]    PTCE 77-3, 42 Fed. Reg. 18,734 (1977) is the analogous class exemption that applies to the sale of mutual fund shares to plans covering the employees of the mutual fund company.

interest" as defined by ERISA is the allegation that such entities provided services *to the mutual fund.* (*Id.* ¶¶ 110–129; Count IV, ¶ 4-5.)  This claim is simply frivolous as a matter of law.

ERISA defines a "party in interest" to include a fiduciary, a person providing services to a *plan*, an employer whose employees are covered by the plan, an employee organization whose members are covered by the plan, and certain owners and their family members.  ERISA § 3(14), 29 U.S.C. § 1002(14).   ERISA § 3(21)(B), moreover, specifically provides that a plan's investment in a registered investment company "shall not by itself cause such investment company or such investment company's investment adviser or principle underwriter to be deemed a fiduciary or a party in interest."  29 U.S.C. § 1002(21)(B).

The mutual fund exemption to the definition of "parties in interest" provided by ERISA § 3(21)(B) also applies to the provision of ancillary services to a mutual fund company by affiliated service providers.  *IATSE Local 33 Section 401(K) Plan Bd. of Trs. v. Bullock*, No. 08-3949, 2008 WL 4838490 (C.D. Cal. Nov. 5, 2008); *Boeckman v. A.G. Edwards, Inc.*, No. 05-658-GPM, 2007 WL 4225740, *3 (S.D. Ill. Aug. 31, 2007). As the *Boeckman* court reasoned, "costs normally associated with mutual fund transactions, including shareholder service fees, transfer agent fees, Rule 12b-1 fees, administrative fees, registration and reporting fees, expenses for reports to shareholders, postage and stationery fees, audit and legal fees, custodian fees, and state and local taxes" are "normal incidents of investment in mutual fund shares."  To deem such services and the payment of fees/costs for same to violate ERISA § 406 (a) "would effectively eviscerate the statutory exemption of mutual funds from the prohibited transactions rules." *Id.* at *3. *Accord*, *IATSE Local 33*, 2008 WL 4838490, at *6 ("when such an adviser receives fees in return for providing 'the opportunity to invest' in mutual funds, the transaction is not sufficiently distinct from the investment itself to create an exception to this exemption").

Under ERISA § 3(21)(B), the SunAmerica Defendants cannot be deemed "parties in interest" merely by virtue of having provided ancillary services to the SAMMF or because they received fees in payment for such services from the SAMMF.   Because Plaintiff cannot demonstrate that the Plan entered into a transaction with a "party in interest," Count IV must fail. *Boeckman,* 2007 WL 4225740, at *3; *IATSE Local 33*, 2008 WL 4838490, at *6.

This claim also suffers from a second fatal flaw – namely that the SunAmerica Defendants received fees directly from *the SAMMF* (*i.e.*, the mutual fund).  (Compl. ¶¶ 116-117, 123, 125, 127.)  However, under ERISA § 401(b)(1), when a plan invests in a security issued by a registered investment company "the assets of such plan shall be deemed to include such security, but shall not, solely by reason of such investment, be deemed to include the assets of such investment company."  Thus, the payment of fees from the SAMMF (the mutual fund) to the SunAmerica Defendants (the fund's service providers) does not involve the use of "plan assets." Absent a payment from the Plan's assets, the prohibitions of ERISA § 406 (a) are not triggered. *Hecker*, 556 F.3d at 584 ("Once the fees are collected from the mutual fund's assets and transferred to one of the Fidelity entities, they become Fidelity's assets-again, not the assets of the Plans."); *Boeckman,* 2007 WL 4225740, at *3 (in paying fees, "the mutual funds were not trafficking in Plan assets, [therefore] the Court concludes that Boeckman's prohibited transactions claims fail as a matter of law").  Because payment of the fees at issue did not involve the use of the Plan's assets, Count IV fails for this additional reason.  *Hecker*, 556 F.3d at 584; *Boeckman,* 2007 WL 4225740, at *3.

**III.    COUNTS V & VI FAIL AS A MATTER OF LAW AGAINST THE FSC DEFENDANTS BECAUSE INVESTING PLAN ASSETS IN THE SUNAMERICA MONEY MARKET FUND WAS NEITHER IMPRUDENT NOR DISLOYAL.**

As set forth above, it was the Trustees – not the FSC Defendants – that made the decision to invest in the SAMMF.  As such, the FSC Defendants are not proper defendants to these fiduciary claims.  However, even if the FSC Defendants were proper defendants to these claims, they still fail to set forth factual allegations showing a breach of ERISA's fiduciary duties of prudence and loyalty.

The Third Circuit has set forth the analysis as to the prudence of particular investments in ERISA plans.  *See In re Unisys Savings Plan Litig.*, 74 F.3d 420, 433-35 (3d Cir. 1996).  ERISA § 404(a) provides the fiduciary responsibility provisions and imposes several duties upon fiduciaries to act prudently and loyally with respect to the Plan and its participants.  29 U.S.C. § 1104(a)(1)(A), (B).  Section 404 "in essence, codifies and makes applicable to ... fiduciaries certain principles developed in the evolution of the law of trusts." *Id.* (citing and quoting S.Rep. No. 127, 93 Cong., 2d Sess. (1974), reprinted in 1974 USCCAN 4838, 4865).  The Third Circuit explained how the trust law developed with regard to the prudence of investments:

> Under the common law of trusts, a trustee is duty-bound "to make such investments and only such investments as a prudent [person] would make of his own property having in view the preservation of the estate and the amount and regularity of the income to be derived...." Further, a trustee is required to use due care, which means he must investigate the safety of the investment and its potential for income by securing reliable information, and may take into consideration the advice of qualified others, as long as he exercises his own judgment; to use the skill of a person of at least ordinary intelligence; and to use caution, with a view to the safety of the principal and to the securing of a reasonable and regular income.  Whether a trustee has acted properly in selecting an investment depends upon the circumstances at the time when the investment is made and not upon subsequent events. Thus, if at the time an investment is made, it is an investment a prudent person would make, there is no liability if the investment later depreciates in value.
>
> Consistent with these common law principles, the courts measure section 1104(a)(1)(B)'s "prudence" requirement according to *an objective standard*, focusing on a fiduciary's conduct in arriving at an investment decision, not on its results, and asking whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment.  In addition, the

> prudence requirement is flexible, such that the adequacy of a fiduciary's independent investigation and ultimate investment selection is evaluated in light of the " 'character and aims' " of the particular type of plan he serves.

74 F.3d at 433-35 (emphasis added; internal citations omitted).  The Third Circuit also noted that the DOL regulation concerning the investment duties of ERISA fiduciaries provides that the requirements of ERISA § 404(a) (1)(B) "are satisfied if fiduciaries give 'appropriate consideration to those facts and circumstances that, given the scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to the particular investment or investment course of action involved, including the role the investment ... plays in that portion of the plan's investment portfolio.' " *Id.* (citing 29 C.F.R. § 2550.404a-1(b)(1)(i)).

The *gravamen* of Count V and VI is that the Plan's investment in the SAMMF was imprudent and disloyal due to (a) excessive fees and (b) inferior returns.  (Compl. Count V ¶ 13.)  In support of these conclusions, the Complaint offers comparisons between the Vanguard Prime Money Market Fund (the "Vanguard Fund") and the SAMMF.  As an initial matter, Plaintiff assumes these two funds perform the same function in the Plan's investment strategy, and that the choice of one was at the expense of the other.  (Compl. ¶¶ 78, 103, 110-113.)  Plaintiff also believes that the FSC Defendants caused the Plan to liquidate the investment in the Vanguard Fund and invest those assets in the SAMMF.  (*Id.*)  Because each of these fundamental allegations/assumptions is erroneous, the claim should be dismissed.

### A. The Court Should Disregard Plaintiff's Factual Errors in Counts V & VI.

#### (1) The Vanguard Fund and the SAMMF Do Not Perform the Same Function in the Plan's Investment Portfolio.

Plaintiff's assertion that the Vanguard Fund and the SAMMF are essentially interchangeable and perform the same role as money-market investment vehicles in the Plan's

portfolio is erroneous.  To the contrary, the Vanguard Fund is the fund used as the Plan's money market fund, whereas the SAMMF is the designated "cash" or "sweep account."

It is common knowledge and practice in the broker-dealer industry that each broker-dealer has a designated fund into which cash held for the short term is invested.  When transactions occur, often the proceeds need to be held for a short period before they can be re-invested elsewhere.  This "cash" is invested in the broker-dealer's "sweep account" – usually a safe investment such as a money market fund.  FSC Securities used and designated the SAMMF for this purpose in all of its brokerage accounts.  Thus, the Plan's investments in the SAMMF were the result of its need to invest cash in a short term, safe investment vehicle before such cash was reinvested elsewhere in the portfolio.  This type of sweep account investment vehicle is commonly used by broker-dealers in their brokerage accounts.  *See* Pension and Welfare Benefits Administration, Study of 401(k) Plan Fees and Expenses, April 13, 1998, § 2.4.4., p.18, available at: http://www.dol.gov/ebsa/pdf/401krept.pdf (hereinafter "PWBA Fees Study").

On the other hand, the Plan used the Vanguard Fund as its safe, money-market investment option.  The amounts designated for long term, ongoing investment in such an option/fund were invested in the Vanguard Fund.

Thus, Plaintiff's assumption that the FSC Defendants chose to invest assets in the SAMMF instead of the Vanguard Fund is patently erroneous.  The comparison is like apples to oranges.  The only assets invested in the SAMMF were those that needed to be held in a liquid investment for a short period of time.  The assets invested in the Vanguard Fund were the assets designated for long term, safe investment.  The two funds performed entirely different and unrelated functions in the investment portfolio.

> ### (2) *Plan Assets Were Not Liquidated From the Vanguard Fund to be Invested in the SAMMF.*

In support of both Counts V & VI, Plaintiff incorrectly alleges[8] that the Vanguard Fund was "liquidated" in 2007 (*id.* ¶ 110; Count V ¶ 3) in favor of the SAMMF, and that the SAMMF underperformed and/or cost more in fees than other alternatives.  The attached chart and account statements, however, show that – other than during the brief transition between investment advisers in the month of December, 2005 – the fiduciaries *never liquidated* the Vanguard Fund to move such assets into the SAMMF.  (*See* Exh. G, Chart re: Money Market balances (p.1) & supporting Plan Account statements showing continuous investment in Vanguard.)[9]  To the contrary, over the period at issue here, the Plan's assets were invested more heavily in the Vanguard Fund than the SAMMF – approximately 3 to 1.  (*See id.*, p.1.)[10]

As demonstrated by the attached statements of the Plan's holdings on a monthly basis throughout the period at issue, Plaintiff's assumption/allegation that Plan assets were moved between these two funds is erroneous.  (*See* Exh. G.)  Because they performed different functions in the portfolio, money did not move from one to the other.  (*Id.*)  The changes in the amounts invested in each of these funds month to month simply do not correlate to each other.  (*Id.*)

Moreover, Plaintiff's allegation that the Vanguard Fund was liquidated and its assets moved to the SAMMF is demonstrably false.  Vanguard was, and remains, the preferred,

---

[8]  The Court must credit properly-pled factual allegations, but it need not credit unwarranted conclusions nor allegations that contradict the incontrovertible plan documents.  *See supra* fn.6.

[9] Because Plaintiff's claim is based upon how the Plan's assets were invested, and specifically the Plan's investments in the SAMMF and the Vanguard Fund, the undisputed account statements demonstrating how these assets were invested are likewise central to those claims and can/should be considered by the Court on this motion to dismiss. *See Lum*, 361 F.3d at 222 n.3.

[10] This ratio, of course, *disproves* Plaintiff's allegation that the FSC Defendants invested Plan assets in the SAMMF in order to benefit themselves or their affiliates.  If that were true, they would not have invested any of the Plan's assets in the Vanguard Fund – all money market funds would have been invested in the SAMMF, as Plaintiff erroneously alleges.

selected money market investment for the Plan's assets.  Thus, the "decision" that Plaintiff builds Count V and VI upon – choosing to invest Plan assets in the SAMMF instead of the Vanguard Fund – never happened.  The claims in these Counts are based on a false, erroneous premise.

**B.    No Duty of Prudence Has Been Breached by Investing in SAMMF.**

*(1)    SAMMF Does Not Charge Excessive Fees.*

ERISA § 404(a) (1)(A)(ii) specifically requires that ERISA plan expenses (fees) should be "reasonable" and the plan should be administered in such a way as to defray such expenses. 29 U.S.C. § 1104(a)(1)(A) (ii).  Although the Third Circuit has not had the opportunity to rule on the "reasonableness" of fees charged to an ERISA pension plan, the Seventh Circuit has addressed this very issue in a recent decision.  *Hecker*, 556 F.3d at 586.  In *Hecker*, the Seventh Circuit held that the plaintiffs therein failed to state a claim for excessive fees when the fees being charged ranged from 0.07% to just over 1%.  *Id*. at 586.  The Court found: "The fact that it is possible that some other funds might have had even lower ratios is beside the point; nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund (which might, of course, be plagued by other problems)."  *Id.*

Here too, once clarified from looking at the referenced documents, the fees charged by the SAMMF were between 0.89% and 0.94% during the relevant period.  (Exh. F, SAMMF Prospectus, p.24.)   Per the Seventh Circuit's analysis in *Hecker*, such fees simply do not constitute "excessive fees" under ERISA.  *Id. Accord Loomis v. Exelon Corp.*, No. 06-cv-4900, 2009 WL 4667092 (N.D. Ill., Dec. 9, 2009) (finding fees ranging between 0.03% to 0.96% failed to state a claim for excessive fees); PWBA Fees Study, *supra*, at § 4.3, Table IV-5.

As these courts reasoned, there are different costs based on different types of investments.  Just like there is no duty under ERISA for a plan to offer the *cheapest* investment

possible, there is also "no statute or regulation prohibiting a fiduciary from selecting funds from one management company … [or] requir[ing] plan fiduciaries to include any particular mix of investment vehicles in their plan" (*id.* at 586), especially when the persons responsible for managing the fund must take into account the complexities of relationships between fees and returns and services offered.   *Hecker*, 556 F.3d at 586.

This authority confirms that Plaintiff's comparison of the relative fees charged by the Vanguard Fund and SAMMF is erroneous and meaningless.  First, Plaintiff gets his numbers wrong.  Plaintiff incorrectly alleges that the expenses of the VMM were .13% (*see* ¶ 111) and those of the SAMMF were between 1.05% and 1.78% (*see* ¶ 105).  However, the prospectuses of the Funds clearly establish that the expenses of the Vanguard Fund for the Investor class (corresponding to the amount of investment the Plan made) were 0.29%, 0.24%, and 0.23% respectively for the years ending 2006, 2007, and 2008.  (Exh. H, Vanguard Prospectus, p.27 ("Ratio of Total Expenses to Average Net Assets").)  Correspondingly, the SAMMF expenses for the investment of the Plan's sweep account monies were 0.89%, 0.90%, and 0.94% for the same years.  (Exh. F, SAMMF Prospectus, p.24 ("Ratio of Expenses to Average Net Assets").)

But even the correct numbers are not truly comparable.  As explained above, these two funds performed entirely different functions in the Plan's portfolio.  Comparison of the fees charged simply does not support a plausible claim of imprudence or disloyalty.

Moreover, the total fees charged to the Plan, including the advisory fees, internal expenses of the electronic fund transfers, mutual funds, and managers used, have averaged between 0.61% and 0.64% since the Wharton/FSC Securities advisers have worked with the Plan.  (*See* Exh. G, p.1.)  As a matter of law, the Court should find that this fee range is not excessive.  *Hecker*, 556 F.3d at 586; *Loomis*, 2009 WL 4667092, at *3.

### (2)     *SAMMF Did Not Have Inferior Returns.*

Plaintiff's allegations regarding SAMMF's "inferior returns" suffer from the same problems as his allegations about fees.   Once again, Plaintiff's numbers themselves are erroneous.   For instance, Plaintiff incorrectly alleges "The returns on investments in the Vanguard Prime Money Market Fund for 2006, 2007 and 2008 were 5.08%, 5.30% and 2.93%, respectively." (Compl., Count VI, ¶ 4.)   The prospectus of the Fund clearly establishes that the returns of the Vanguard Fund for the Investor class (corresponding to the amount of investment the Plan made) were 4.38%, 5.23%, and 3.60% respectively for the years ending 2006, 2007, and 2008.   (Exh. H, Vanguard Prospectus, p.27.)   Correspondingly, the returns for the SAMMF for the investment of the Plan's sweep account monies were 4.22%, 4.32%, and 1.84% for the same years.   (Exh. F, SAMMF Prospectus, p.24 ("Class A Total Return").)

Moreover, these comparisons do not establish or support a plausible fiduciary breach because the two investments are not related, much less connected as Plaintiff presumes.   As is clear from the Complaint, Plaintiff believes the Vanguard Fund was liquidated and the same assets were invested in the SAMMF instead.   This is simply, demonstrably, not true.   (*See* Exh. G.)   The primary money market account utilized by the Plan at all times was the Vanguard Fund, which held on average for the 3 years prior to December 31, 2008 approximately 3 times amount of plan assets, compared to the amount of cash held in the sweep account, the SAMMF.   (*Id.*)   In sum, comparisons of the returns received by two different funds, performing different investment portfolio functions, does not establish a plausible claim of breach of fiduciary duty.

### IV.   COUNTS VII & VIII FAIL AS A MATTER OF LAW BECAUSE INVESTING IN THE HUSSMAN STRATEGIC GROWTH FUND WAS NEITHER INCONSISTENT WITH THE PLAN DOCUMENTS NOR IMPRUDENT.

#### A.   Investing in HSGF Is Consistent with the Plan Documents.

In Count VII, Plaintiff attempts to assert a breach of fiduciary duty claim for investing in the Hussman Strategic Growth Fund ("HSGF"), because Plaintiff alleges the HSGF is not a permitted investment option under the terms of the Plan documents; namely, the Investment Policy Statement (the "IPS"). (Compl., Count VII, ¶¶ 4-6.) Even if Wharton, FSC Securities, and/or FSC were fiduciaries (they are not, see above), Plaintiff's claim fails because the investment policy upon which it is based confirms the opposite: such an investment is permitted.

Fiduciaries are required to comply with Plan documents/instruments, to the extent those documents do not conflict with ERISA. ERISA § 404(a)(1)(D); 29 U.S.C. § 1104(a)(1)(D) ("[A] fiduciary shall discharge his duties with respect to a plan … in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]."); *Kennedy v. Plan Admin. for DuPont Sav. & Inv. Plan*, 129 S.Ct. 865, 868 (2009) (quoting 29 U.S.C. § 1104(a)(1)(D)); *Bennett v. Conrail Matched Sav. Plan Admin. Comm.*, 168 F.3d 671, 679 (3d Cir. 1999) ("ERISA basically requires that fiduciaries comply with the plan as written unless it is inconsistent with ERISA.") Governing plan documents include investment policy statements: "Investment strategy policies are typically considered 'plan documents' that investment managers must follow in exercising their discretion." *Alco Indus., Inc. v. Wachovia Corp.*, 527 F.Supp.2d 399, 404 (E.D. Pa. 2007) (citing 29 U.S.C. § 1104(a)(1)(D)). A fiduciary that adheres to the ERISA-compliant governing plan documents cannot be found to have breached this duty. *C.f. Weiss v. Prudential Ins. Co. of Am.*, 497 F.Supp.2d 606, 611 (D.N.J. 2007) (citing *Vitale v. Latrobe Area Hosp.*, 420 F.3d 278, 285 (3d Cir. 2005); and *Hlinka v. Bethlehem Steel Corp.*, 863 F.2d 279, 286 (3d Cir. 1988)).

Here, Plaintiff alleges that any investment in the HSGF is *prohibited* by the IPS adopted by the Committee in December of 2005. (Compl. ¶¶ 130-137; Count VII ¶¶ 1-6; ("fund … was

prohibited, due to its characteristics, by the investment policy").)  The IPS (attached so the Court can review the entirety of the document) demonstrates otherwise, however.  (*See* Exh. B, IPS.)

First and foremost, it must be noted that the HSGF is a *fund*.  (*See* Exh. I, HSGF Prospectus, *passim*.)  HSGF is not itself a stock, an option, or a future; it maintains a portfolio of numerous types of securities.  (*Id.*)  The Plan's investment policy indicates that investments are *permitted* in "Aggressive Growth" stock funds such as the HSGF.  (*Cf.* Exh. B, IPS, pp.1-2 (listing as a permissible category "large growth stocks" *with* Exh. J, Morningstar Report on HSGF (describing HSGF's current investment style as "large growth") *and with* Exh. I, HSGF Prospectus (describing investment strategy)).)  A review of the entirety of the IPS confirms that there is, in fact, *no* prohibition on investing in a *fund* such HSGF.

Perhaps in silent recognition of this fact, Plaintiff seeks to parse the "restricted investments" sentence on page 2 of the IPS to assert that HSGF violates the language regarding investing in options and futures.  Again, however, the precise language dooms Plaintiff's claim here.  As Plaintiff admits (*see* Compl. ¶¶ 132, 136), the investment policy *permits* investments in options/futures *when* the purpose is for *hedging.*  (Exh. B, p.2 ("no options and futures (except for hedging)".)  As the Court will note (in addition to the fact that the Plan is not, itself, investing in options/futures, but in a *fund* that may purchase/sell options/futures), the HSGF prospectus confirms that its buying/selling of options/futures is a *hedging* strategy.[11]

---

[11]  *See* Exh. I, HSGF Prospectus, p.4: "Specific strategies for reducing or 'hedging' market exposure may include buying put options on individual stocks or market indices, writing covered call options on stocks which the Fund owns or call options on market indices, and establishing short futures positions or option combinations (simultaneously writing call options and purchasing put options) on one or more market indices correlated with the Fund's portfolio. The total notional value of the Fund's hedge positions is not expected to exceed the value of stocks owned by the Fund, so that the most defensive position expected by the Fund will be a 'fully hedged' position in which long and short exposures are of equal size."

Thus, on its face, the investment policy *permits* rather than *prohibits* the investment into funds such as HSGF.  Because the investment into HSGF is permitted by the IPS (a plan document for investment purposes), there can be no violation of ERISA § 404(a) (1)(D) as a matter of law and Count VII must be dismissed.

## B.    Investing in HSGF Is Not Imprudent.

Plaintiff also contends that the HSGF was an imprudent investment.  (Compl. Count VIII.)  However, the only facts alleged to establish that HSGF was an imprudent investment are related to periods when it was not designed to perform well.  When considered in proper context, the HSGF's performance has been extremely good, thus defeating this claim.

As noted above, the Third Circuit requires analysis of imprudence based on the facts and circumstance specific to a particular investment.  First it should be noted here that Plaintiff's factual allegations regarding the performance of HSGF are materially misleading.  (Compl. ¶ 138; Count VIII ¶ 4.)  Plaintiff's selective citation to performance measurements – despite explicit law stating that the analysis of prudence should be based on *strategically informed actions/decisions* rather than a *result*[12] – substantially understates the performance of the HSGF especially since its purpose is to out perform in distressed stock market periods.  Plaintiff also apparently contends that the only year relevant to the fiduciaries' analysis of the HSGF is the year directly before the decision to invest in the fund.[13]  Instead, the fiduciaries properly considered the HSGF's performance since its inception in 2000.

---

[12]  As stated above, the prudence standard is an objective one, focusing on a fiduciary's conduct in arriving at an investment decision, not on the results of that decision.  *In re Unisys Sav. Plan Litig.*, 74 F.3d at 434; *see also Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 253 (5th Cir. 2008) (focus of prudence inquiry is "how the fiduciary acted," and not "whether his investments succeeded or failed") (quoting *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983)).

[13]  This perspective demonstrates exactly why the Plan employs professionals, with knowledge of the history and cyclical nature of the stock markets, to manage its investments long term.

In any event, as is clear from the publicly-available metrics, the HSGF is a strategically defensive equity fund that consistently (and substantially) outperforms the S&P 500 (and many other relevant benchmarks, like Barclay's, Lehman Brothers, etc.) during distressed periods in the stock markets. (Exh. I, HSGF Prospectus, pp. 4-5 (HSGF earned double-digit positive returns on investment during the bear market in 2001-2002 as compared to the S&P 500 which was negative for both years).) Of course the last few years of bear markets have seen a seriously negative return on investments nearly across the board, with the S&P 500 posting a ~37% loss in 2008, as compared with only a ~9% loss by the HSGF – thus, the HSGF investment actually *helped* rather than hurt the Plan this past year.[14]  (*Id.*)

Such metrics underscore the rationale for why the law has developed to require the analysis to look to the reasons for the investment in the context of the aims of the Plan and its needs and characteristics rather than a snap-shot view of performance at one particular point in time. Given the information available to the fiduciaries and to the investment advisers at the time the decisions were made, coupled with the positive performance of the fund at issue, the Plan's investment in HSGF cannot be said to be imprudent. Plaintiff's conclusory allegations, based on improper analysis of the legal issue at hand, are insufficient to state a plausible claim under *Iqbal*, and therefore Count VIII fails to state a claim.

## V.    COUNT IX FAILS AS A MATTER OF LAW AGAINST THE FSC DEFENDANTS BECAUSE DEFENDANTS WERE OBLIGATED TO FOLLOW THE INVESTMENT POLICY, WHICH DOES NOT VIOLATE ERISA IN ANY WAY.

Count IX essentially alleges that the entirety of the investment strategy was imprudent.

---

[14] To underscore the importance of the use of defense equity strategies such as that available through investing in the HSGF, a $4 million investment in HSGF from 1/1/2006 to 1/1/2009 would be worth $3,988,400 (3 year average -0.29% rate of return); the same investment in the S&P 500 from 1/1/2006 to 1/1/2009 would be worth $3,791,600 (3 year average -5.21% rate of return). (*Cf.* Exh. I, pp. 4-5 *with* Exh. J (showing HSGF +5.50 over S&P for 3 year average).)

(Compl., Count IX ¶¶ 4-6.)  The alleged "facts" in support consist, *in toto*, of the following:

> 4.  The investment policy executed with [Wharton] provided for a portfolio allocation of the Plan's assets equal to 80% in equities and 20% in fixed income.
>
> 5.  The portfolio allocation resulted in an excessive concentration in equities when compared to properly managed balanced and target date funds, especially considering the ages of the Plan participants.
>
> 6.  The investment strategy undertaken by the [FSC Defendants] risk in excess of what was reasonable, and did not take into account the age of the participants.

For the reasons set forth below, this claim is subject to dismissal as a matter of law.

As noted above, ERISA fiduciaries are *required* to comply with the governing plan documents so long as those documents do not conflict with ERISA.  ERISA § 404(a) (1)(D); 29 U.S.C. § 1104(a)(1)(D); *Kennedy*, 129 S.Ct. at 868; *Bennett*, 168 F.3d at 679. Thus, unless the investment policy statement ("IPS") *violated* ERISA, the fiduciaries were required to follow it.

Plaintiff's Complaint fails to establish how, if at all, the IPS violates ERISA such that the fiduciaries were required to ignore it.  The fact that Plaintiff simply disagrees with the designated and agreed allocation in the IPS (80/20) is simply not enough to make such an allocation illegal. Plaintiff offers no facts – merely his opinion and conclusion to support this claim.  Furthermore, the attached chart shows that the more conservative allocation that Plaintiff contends was required would have resulted in less Plan assets, both during Plaintiff's career and during the period that Wharton/FSC Securities advised the Committee.  (*See* Exh. K, part 1, Comparison chart.)  Thus, Plaintiff is essentially asserting that the FSC Defendants violated ERISA by following an investment strategy that resulted in a ***higher*** return than the more conservative strategy he advocates.  (*Id.*)  As such, Plaintiff fails to allege any plausible basis for deeming the IPS illegal or contrary to ERISA and his claims fail under *Iqbal* and *Twombly*.  Count IX should be dismissed.

## VI.   COUNTS III-IX FAIL AS AGAINST FSC BECAUSE IT IS NOT, AND NEVER HAS BEEN, A FIDUCIARY OF THE PLAN.

In addition to the reasons set forth above, Counts III, IV, V, VI, VII, VIII, and IX also fail as to FSC because FSC is *not* a Plan fiduciary and is thus entitled to dismissal[15] of all claims asserted against it in these Counts as a matter of law.

### A.   Fiduciary Status Is a Necessary Element of a Fiduciary Breach Claim.

To establish liability for any breach of fiduciary duty under ERISA, plaintiffs must first show that the defendants are in fact fiduciaries with respect to the plan.  *E.g., In re Unisys Corp. Retiree Medical Benefits ERISA Litig.*, 579 F.3d 220, 228, 230 (3d Cir. 2009) (fiduciary status is first element of breach of fiduciary duty claim).  Without fiduciary status, there can be no claim for breach of fiduciary duty.

A defendant "does not become a fiduciary simply by a litigant's assertion that this is the case." *Akers v. Palmer*, 71 F.3d 226, 230 (6th Cir. 1995).  Conclusory allegations which merely parrot the statutory requirements are insufficient as a matter of law to establish the requisite fiduciary status.  *See Voyk v. Bhd. of Locomotive Eng'rs*, 198 F.3d 599, 604 (6th Cir. 1999); *Moffitt v. Whittle Comms., L.P.*, 895 F. Supp. 961, 970 (E.D. Tenn. 1995).   Dismissal is especially appropriate where, as here, the governing plan documents demonstrate that the conclusory allegations regarding fiduciary status in the complaint are without merit. *E.g., Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) (union properly dismissed where "[t]he Plan documents in no way give the Union any discretionary authority or control [over the Plan or its assets]"); *Agway, Inc., Employees' 401(k) Thrift Investment Plan v.*

---

[15] The determination of fiduciary status is appropriately decided on a motion to dismiss.  *See, e.g., Pegram v. Herdrich*, 530 U.S. 211 (2000) (affirming district court's dismissal of ERISA claims under Rule 12(b)(6) where allegations of fiduciary status were insufficient);  *Srein v. Frankford Trust Co.*, 323 F.3d 214, 220 (3d Cir. 2003).

*Magnuson*, No. 03-CV-1060, 2006 WL 2934391, *13-14 (N.D.N.Y. Oct. 12, 2006) (dismissing claims against defendants where the plan documents specified they had no authority over plan investments or assets).

**B.      FSC is Neither a Named Nor a Functional Fiduciary of the Plan.**

There are two types of fiduciaries under ERISA, named and functional.  A "named fiduciary," are those identities identified as such in the plan document. 29 U.S.C. § 1102(a)(2). A "functional fiduciary," is anyone who exercises discretionary authority or control over the management of the plan or its assets.  29 U.S.C. § 1002(21)(A); *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993) ("ERISA ... defines fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan."); *Board of Trs. of Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 174 (3d Cir. 2002) ("*Foodtown*").

Plaintiff concedes that FSC is not a named fiduciary under the Plan.  (*See* Compl. ¶¶ 56-59 (acknowledging that only the Inductotherm/Indel Defendants are "named fiduciaries" under the Plan).)  Thus, FSC can only be held responsible for breach of ERISA fiduciary duties if it has assumed responsibility for managing plan assets/investments.

Even though Plaintiff acknowledges that FSC's *only* function in this case is as the parent of FSC Securities[16], he nonetheless contends that FSC is a fiduciary based largely on the vague and conclusory allegation that FSC was in some unspecified way connected to the FSC / Wharton investment adviser relationship with the Plan. (Compl. ¶¶ 17, 87, 98, 99.)  This is simply insufficient as a matter of law to establish functional fiduciary status.  *See Unum v. Ward*, 526 U.S. 358, 378-79 (1999) (plaintiff cannot rely on agency theory to expand scope of liability

---

[16] (Compl. ¶ 17: " … The Financial Service Corporation makes no [SEC] filings, is not licensed to transact business in the State of New Jersey ***and its only function appears to be that as parent of its 100% owned subsidiary of the FSC Securities Corporation***. …" emphasis added.)

under ERISA); *Reich v. Compton*, 57 F.3d 270, 277-78 (3d Cir. 1995) (plaintiff could not rely on alter ego doctrine as a basis to expand liability under ERISA § 406).

Moreover, Plaintiff's conclusory allegations are blatantly contradicted by the governing Plan and investment documents.  As Plaintiff expressly acknowledges in the Complaint, the responsibility for selecting and managing the Plan's investment options rests with the Trustees. (Compl. ¶¶ 58-59.)  Further, the investment advisory agreement and the Plan's investment policy make it clear that the individual registered representatives who do business as Wharton, and their broker-dealer, FSC Securities, are the investment advisers to the Trustees, *not FSC*.  (*See* Exh. B, IPS; Exh. C, IAA.)  *None* of these official plan documents mentions FSC *at all*, much less as an entity with any control, authority, responsibility or role with regard to the Plan's investments.

Plaintiff attempts to make much ado about nothing by noting that the Form 5500s for the Plan list FSC as a "service provider" on Schedule C; however, Plaintiff conveniently ignores the fact that Schedule H of the same document indicates that *Wharton Business Group* advises with regard to the Plan investments.  (*See* Exh. L, 2006 Form 5500 Schedule H Attachment; Exh. M, 2007 Form 5500 Schedule H Attachment.)

In essence, Plaintiff avers that FSC is a fiduciary by virtue of its *subsidiary*'s role with regard to the Plan's assets.  (Compl. ¶¶ 17, 82, 84, 86, 87.)  These allegations do not establish that FSC *itself* took any action that subjected it to functional fiduciary status, and such allegations cannot withstand the express plan documents, which demonstrate FSC is *not* a functional fiduciary for this purpose.  *E.g., Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 61 (4th Cir. 1992) (concluding a defendant was not a fiduciary by examining the plan documents); *In re Williams Co. ERISA Litig.*, 271 F.Supp.2d 1328, 1338-39 (N.D. Okla. 2003) (dismissing claims against defendant where plan documents refuted plaintiffs' allegations of fiduciary

status); *Crowley v. Corning*, 234 F. Supp. 2d 222, 228-29 (W.D.N.Y. 2002) (same).[17]

Because FSC is neither a named nor a functional fiduciary, as is demonstrated both by the allegations in the Complaint and the investment/plan documents that are central thereto, FSC is entitled to dismissal of Counts III-IX as a matter of law. *Foodtown*, 296 F.3d at 174 ("Appellant has not alleged any basis upon which Twin and Foodtown owe fiduciary duties under ERISA. Therefore, this count must be dismissed for failure to state a claim.").

## VII.   COUNT XVI IS NOT A SEPARATE CAUSE OF ACTION, BUT RATHER A SET OF REMEDY REQUESTS.

The FSC Defendants adopt and refer the Court to the arguments and authorities in Part II. of the SunAmerica Defendants' Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint (the "SunAmerica Defendants' Brief"). As demonstrated therein, Count XVI does not state a viable claim against any defendant and must be dismissed.

## VIII.   PLAINTIFF'S STATE LAW CLAIMS IN COUNTS XVII, XVIII & XXI FAIL AS A MATTER OF LAW.

In Count XVII, Plaintiff alleges that all Defendants "fraudulently concealed or failed to disclose to Plaintiff and members of the Plan" information regarding expenses charged relative to the SAMMF, the risks of the investments in the Plan, appropriate benchmarks by which to monitor the Plan's performance, the true identity of persons responsible for managing the Plan, the relationship among the various AIG entities and the alleged violations of law committed by the AIG entities. (Compl., Count XVII, ¶ 2.)  The Complaint also brings claims against Wharton under the common law and the New Jersey Uniform Securities Laws for misrepresentations and omissions regarding its registration status with the SEC.  (Compl. Counts XVIII and XXI.)

---

[17] Moreover, Plaintiff does not attempt to allege vicarious liability on the part of FSC for its subsidiary's actions, perhaps because ERISA does not permit such claims. *See Unum*, 526 U.S. at 378-79; *Reich*, 57 F.3d at 277-78.

The FSC Defendants adopt and refer the Court to the arguments and authorities in Part III. of the SunAmerica Defendants' Brief.   As demonstrated therein, ERISA and/or SLUSA preempt the state law claims in Counts XVII, XVIII and XXI.   Moreover, such claims have no merit because the information that was allegedly concealed was, in fact, publicly available and known to Plaintiff.   Finally, the nature of the Plan prevented Plaintiff from taking any action with regard to such information.

## IX.     COUNT XX FAILS TO STATE A VALID 10b-5 SECURITIES FRAUD CLAIM.

Plaintiff purports to bring a securities fraud class claim against Defendant "Wharton Business Group" under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder ("10b-5 claim").   Plaintiff attempts to allege that Wharton made misrepresentations and omissions as part of a scheme to "deceptively obtain clients for its brokerage and investment advisory services business which is engaged in the purchase or sale of securities."   (Compl. Count XX, ¶ 2.)   Plaintiff's claim, however, fails by a wide margin to satisfy the rigorous standards for pleading a securities fraud claim.   Indeed, the deficiencies are fatal and irremediable by amendment.

To state a 10b-5 securities fraud claim, a plaintiff must be an actual purchaser or seller of securities and must allege in detail that the defendant, acting with scienter, made a material misrepresentation or omission that caused a loss.[18]   Under the Private Securities Litigation Reform Act ("Reform Act") and Rule 9(b) of the Federal Rules of Civil Procedure, the

---

[18] To state a claim for securities fraud under Section 10(b) and Rule 10b-5, a Complaint must allege the following elements: (1) a misstatement or omission (2) of a material fact (3) with scienter (4) in connection with the purchase or sale of a security (5) upon with plaintiff reasonably relied, and, (6) that reliance proximately caused injury to the plaintiff.   *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005).   *Kline v. First Western Government Sec., Inc.*, 24 F.3d 480, 487 (3d Cir. 1994).

Complaint must specify in detail the facts supporting every element of a Section 10(b) claim. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319-22 (2007).  Plaintiff's conclusory statements can be given no weight on a motion to dismiss. *Iqbal*, 129 S.Ct. at 1949. Dismissal is mandatory if the Complaint fails this test.  15 U.S.C. § 78u-4(b)(3)(A).

Plaintiff's Complaint fails to state a 10b-5 claim for three fundamental reasons.[19]  First, Plaintiff completely fails to allege, and cannot allege, that he is a purchaser or seller of securities, and thus, Plaintiff lacks standing to bring a 10b-5 claim.  Second, Plaintiff fails to allege loss causation.  Third, Plaintiff fails adequately to allege that any Defendant acted with scienter.

### A.      Plaintiff Lacks Standing to Assert a 10b-5 Claim.

The United States Supreme Court has held that a plaintiff must be an **actual** purchaser or seller of securities in order to have standing to bring a securities fraud claim under Section 10(b) and Rule 10b-5.  *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731 (1975).  Mere **holders** of securities may not bring claims for securities fraud.  *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 80 (2006); *see also The Winer Family Trust v. Queen*, 503 F.3d 319, 325 (3d. Cir. 2007).  Further, Plaintiff must establish individual standing and cannot acquire standing merely by bringing a class action.  *Queen*, 503 F.3d at 325-26.

Plaintiff nowhere in his Complaint alleges that he actually purchased or sold any securities.  While Plaintiff alleges generally that "Plaintiffs . . . purchased and sold securities relying on the Wharton Business Group's material misstatements," (Compl. Count XX, ¶ 9), he fails to allege any date on which he acquired stock, the number of shares acquired, or the

---

[19]   Plaintiff's claim under the New Jersey Uniform Securities Laws also fails for the same reasons that Plaintiff's claim under Section 10(b) of the Exchange Act fails.  *See Metz v. United Counties Bancorp*, 61 F. Supp. 2d 364, 380 (D.N.J. 1999) (dismissing plaintiff's New Jersey Uniform Securities Law claim based on its dismissal of the plaintiff's Section 10(b) claim).

consideration, if any, given for such "purchase." Rather, the Complaint merely alleges that Plaintiff was a participant in the Plan. (*Id.* ¶ 9.) However, it has specifically been held that a participant in a compulsory ERISA plan is not a "purchaser" within the meaning of a 10b-5 claim. *In re Cendant Corp. Sec. Litig.*, 81 F.Supp.2d 550, 555 (D.N.J. 2000); *see also Childers v. Northwest Airlines, Inc.*, 688 F.Supp. 1357, 1365 (D. Minn. 1988). Accordingly, Plaintiff has not sufficiently pled a purchase or sale of a security with the particularity required to state a valid 10b-5 claim. *See Fraser v. Fiduciary Trust Co. Int'l*, No. 04 CIV 6958, 2005 WL 6328596, *4 (S.D.N.Y. Jun. 23, 2005). For this reason alone, Plaintiff's 10b-5 claim must be dismissed. *See Blue Chip Stamps*, 421 U.S. at 1934-35; *Fraser*, 2005 WL 6328596, at *5 n.5.

### B. Plaintiff Fails To Allege Facts Essential to Establish Loss Causation.

Plaintiff's 10b-5 claim fails for the additional reason that the Complaint fails to allege specific facts that would establish the essential element of loss causation. Under the Supreme Court's decision in *Dura Pharm., Inc. v. Broudo*, to demonstrate loss causation a plaintiff must allege a causal connection between the alleged loss (*e.g.*, a stock price drop following a curative disclosure) and the alleged prior misrepresentations. *Dura*, 544 U.S. at 347. As many courts have held, loss causation is lacking if the complaint does not point to a curative disclosure that "reveals the truth" about the specific misconduct alleged in the complaint. *See, e.g.*, *Catogas v. Cyberonics*, 292 Fed. Appx. 311, 314 (5th Cir. 2008); *Glaser v. Enzo Biochem, Inc.*, 464 F.3d 474, 477 (4th Cir. 2006); *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 175 (2d Cir. 2005).

Here, the only alleged misrepresentation and omissions on which Plaintiff's 10b-5 claim are based relates to "the Wharton Business Group's" registration status with the SEC. The Complaint, however, utterly fails to plead loss causation with respect to these alleged misstatements because Plaintiff does not allege that this purported "fraud" was ever "revealed,"

or that such revelation caused Plaintiff any loss to the Plan or his retirement benefits under the Plan.  Indeed, the Complaint alleges no nexus between the alleged misrepresentations and any loss suffered by Plaintiff other than a conclusory allegation that Defendants "caused the Plan and the participants to suffer substantial losses commencing sometime in 2005 and through the present date."  (Compl. ¶ 234.)  Thus, beyond the inalterable fact that Plaintiff does not have standing to sue, Plaintiff's claim also should be dismissed for failure to plead loss causation.

### C.      Plaintiff Does Not Adequately Allege Scienter.

The Complaint utterly fails to satisfy the Reform Act's elevated standard for pleading the scienter element of a 10b-5 claim.  Under the Reform Act, a plaintiff must plead scienter with particular facts that give rise to a strong inference that the defendant acted with the required state of mind.  *Queen*, 503 F.3d at 327.  This showing must be made as to each individual defendant and as to each alleged act or omission.  *Id.*

In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, the Supreme Court set forth a test to determine whether the scienter pleading requirement of the Reform Act has been met.  127 S.Ct. 2499.  The Supreme Court held that plaintiffs in private securities fraud actions must plead facts in their complaints that raise an inference of scienter that is "more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Id.* at 2505.  The *Tellabs* court explained that a complaint will survive "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Id.* at 2510.  A plaintiff alleging a claim under the Reform Act "must demonstrate that it is *more likely* than not that the defendant acted with scienter."  *Id.* at 2513.  To satisfy this pleading standard, Plaintiff

must allege with particularity that each named Defendant against which the 10b-5 claim is asserted knew, or was severely reckless in not knowing, about the alleged fraud.

The Complaint contains only conclusory allegations that "[u]pon information and belief, the Wharton Business Group made these material misrepresentations with the knowledge of their falsity or in reckless disregard thereof."  (Compl. Count, XX, ¶ 7.)  The Complaint, however, does not offer any direct, well-pled allegations of any Defendant's knowledge.  Plaintiff's conclusory statements can be given no weight on a motion to dismiss.  *Iqbal*, 129 S.Ct. at 1949.  Therefore, Plaintiff's failure to allege with particularity any specific facts that give rise to a strong inference of scienter, as required by the Reform Act and the *Tellabs* decision, dooms Plaintiff's 10b-5 claim to dismissal.

## X.    THE RICO CLAIM (COUNT XXII) FAILS AS A MATTER OF LAW.

The FSC Defendants expressly adopt the RICO claim arguments in the Company Defendants' Brief as if fully set forth herein.  In particular, Plaintiff lacks standing even to assert a RICO claim because Plaintiff has failed to adequately allege that any of the actions taken by the Defendants proximately caused any injury to Plaintiff.  (*See* Company Defs.' Brief, Part I.1.)  Further, Plaintiff fails to plead any facts to support his RICO allegations, instead relying on conclusory allegations that may not be given any weight on a motion to dismiss.  (*See* Company Defs.' Brief, Part I.2.)  Moreover, Plaintiff fails to plead any legally viable predicate acts necessary to support a RICO claim.  (*See* Company Defs.' Brief, Part I.3.)  For all of these reasons and all of the reasons expressed in the Company Defendants' Brief, Plaintiff's RICO claim fails as to the FSC Defendants.

## CONCLUSION

For the reasons set forth above, the Complaint fails to state any viable claim for relief

against the FSC Defendants.  The FSC Defendants respectfully request an Order from the Court dismissing all claims.

Dated:  December 21, 2009.

Respectfully submitted,

**ALSTON & BIRD LLP**

s/ Craig Carpenito_____
Craig Carpenito (CC-1686)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Phone: (212) 210-9400
Fax: (212) 210-9444
Email: craig.carpenito@alston.com

Theodore J. Sawicki, Esq. (*pro hac vice*)
H. Douglas Hinson, Esq. (*pro hac vice*)
ALSTON & BIRD LLP
1201 West Peachtree St.
Atlanta, GA  30309
Phone: (404) 881-7000
Fax: (404) 881-7777
Email: tod.sawicki@alston.com
Email: doug.hinson@alston.com

**Counsel for FSC Defendants:**  Financial Service Corporation, FSC Securities Corporation, and "Wharton Business Group"

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that the within and foregoing was filed with the Clerk of the Court using the CM/ECF system, which will automatically provide notice to the following attorneys of record by electronic means:

> Arnold C. Lakind
> SZAFERMAN, LAKIND, BLUMSTEIN & BLADER, P.C.
> 101 Grovers Mill Road, Suite 200
> Lawrenceville, NJ  08648
> Email: alakind@szaferman.com
>
> Moshe Maimon
> LEVY, PHILLIPS & KONIGSBERG, LLP
> 800 Third Avenue, 13th Floor
> New York, NY  10022
> Email: mmaimon@lpklaw.com
>
> Matthew Steven Barndt
> Vincent E. Gentile
> DRINKER BIDDLE & REATH LLP
> 105 College Road East, Suite 300
> Princeton, NJ  08542
> Email:  matthew.barndt@dbr.com
> Email:  vincent.gentile@dbr.com

This 21st day of December, 2009.


> <u>s/ Craig Carpenito</u>
> Craig Carpenito, Esq.