## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

Civil No. 1:09-cv-5202-JBS-AMD

BORIS GOLDENBERG, REINALDO PACHECHO, ANDREW LEOW and GERALD COMEAU, as representatives of a class of similarly situated persons and on behalf of THE INDUCTOTHERM COMPANIES MASTER PROFIT SHARING PLAN #001, Plaintiffs, vs. INDEL, INC., individually and a/k/a INDUCTOTHERM INDUSTRIES, INC. and INDUCTOTHERM CORPORATION; AMERICAN INTERNATIONAL GROUP, INC.; FSC SECURITIES CORPORATION; FINANCIAL SERVICE CORPORATION; SUNAMERICA ASSET MANAGEMENT CORP.; SUNAMERICA CAPITAL SERVICES, INC.; SUNAMERICA FUND SERVICES, INC.; WHARTON BUSINESS GROUP; HENRY M. ROWAN, JOHN H. MORTIMER, DAVID L. BRADDOCK, THOMAS P. MCSHANE, MANNING J. SMITH, LAURENCE A. KRUPNICK, AND HARRY G. TREFZ, as Trustees to the Inductotherm Companies Master Profit Sharing Plan #001; JOHN DOES 1-25 (Individuals Serving on the Board of Directors of Indel, Inc. whose names are not currently known); JOHN DOES 26-50 (Individuals Serving on the Board of Directors of Inductotherm Industries Inc. whose names are not currently known); JOHN DOES 51-75 (Individuals Serving on the Board of Directors of Inductotherm Corporation whose names are not currently known); JOHN DOES 75-125 (Members of the Committee for the Inductotherm Companies Master Profit Sharing Plan #001, whose names are not currently known); and John Does 126-200 (Other fiduciaries for the Inductotherm Companies Master Profit Sharing Plan #001 and parties whose names and identities are not presently known to Plaintiffs that were enriched by the receipt of the Plan's assets), Defendants.

---

Plaintiffs' Brief in Opposition to
Inductotherm Defendants' Motion to Dismiss

---

SZAFERMAN, LAKIND,
  BLUMSTEIN & BLADER, P.C.
101 GROVERS MILL RD, STE 200
LAWRENCEVILLE, NJ 08648
Telephone: (609) 275-0400
Fax: (609) 275-4511
Attorneys For Plaintiffs

LEVY, PHILLIPS & KONIGSBERG, LLP
101 GROVERS MILL RD, STE 200
LAWRENCEVILLE, NJ 08648
Telephone: (212) 605-6200
Fax: (212) 605-6290

Arnold C. Lakind, Esq.
Moshe Maimon, Esq.
Robert L. Lakind, Esq.
Theresa Vitello, Esq.
        On the Brief

544202.1

# TABLE OF CONTENTS

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   Fiduciary Obligations and the Indel Defendants . . . . . . . . . . 1

    B.   Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A.   The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.   The Inductotherm Companies Master Profit
         Sharing Plan #001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    C.   The Trust Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    D.   The Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    E.   The Trustees Misrepresentations . . . . . . . . . . . . . . . . . . . . 12

    F.   The Plaintiffs' Complaint . . . . . . . . . . . . . . . . . . . . . . . . . 13

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    Point I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

         The Indel Defendants Breached Their Fiduciary Duty by
         Failing to Abide by Plan Documents Insofar as the Plan
         Trust Agreement Lacks All of the Information Mandated
         by the Plan

    Point II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

         The Indel Defendants Breached Their Fiduciary Duty
         When They Diverted Plan Assets, Well Managed by Hewitt
         and State Street at a Reasonable Fee, to Charlotte Capital,
         LLC, to Whom the Plan Paid Excessive Fees

Point III . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

    The Indel Defendants Breached Their Fiduciary Duty by
    Misrepresenting That the Plan Was "Conservatively
    Invested" and the Identity of the Plan's Investment
    Manager

    A.    The Indel Defendants Misrepresented to the
          Plaintiffs that the Plan Assets Were
          Conservatively Invested . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

    B.    Defendants Misrepresented the True Identity
          of the Plan's Investment Manager . . . . . . . . . . . . . . . . . . . . 28

    C.    Plaintiffs Have Alleged Reliance . . . . . . . . . . . . . . . . . . . . . 31

    D.    Extracontractual Damages . . . . . . . . . . . . . . . . . . . . . . . . . 32

Point IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

    Inductotherm Breached its Fiduciary Duties in the Hiring
    of Investment Managers

    A.    The Fiduciary Status of FSC Securities
          Corporation May Not Be Determined at the
          Pleading Stage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

    B.    Plaintiffs Have Plausibly Asserted that the
          FSC Defendants are Fiduciaries . . . . . . . . . . . . . . . . . . . . . 37

    C.    Indel's Decision to Retain FSC Securities
          Corporation Was a Breach of Fiduciary
          Duty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

Point V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

    Inductotherm Breached its Fiduciary Duty When it
    Retained the Wharton Business Group

Point VI . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

    Plaintiffs Have Alleged a Claim under 29 U.S.C. §1105(a),
    That the Indel Defendants Are Liable for the Fiduciary
    Breaches of the AIG Defendants

Point VII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

    The Plan Fails to Allocate Fiduciary Responsibilities

Point VIII . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

    Count XVI of Plaintiffs' Complaint, Insofar as it Seeks
    Equitable Relief as a Consequence of Allegations of
    Defendants' Misconduct Incorporated by Reference into
    this Count, States a Cause of Action

Point IX . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

    Given the Strength of the ERISA Claims, Plaintiffs Will
    Voluntarily Dismiss Their State Law Claims

Point X . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

    Plaintiffs Do Not Oppose Dismissal of Their Racketeering
    Claim Without Prejudice

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

## TABLE OF AUTHORITIES

## FEDERAL CASES

Ackerman v Warnaco, Inc., 55 F.3d 117 (3d Cir. 1997) . . . . . . . . . . . . . . . . . 47

In re AEP ERISA Litig., 327 F.Supp.2d 812 (S.D.Ohio 2004) . . . . . . . . . . . . . 36

Ashcroft v Iqbal, 129 S. Ct. 1937 (2009) . . . . . . . . . . . . . . . . . . . . . 3, 24, 38, 44

Bell Atl. Corp. v Twombly, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . 3

Beye v. Horizon BC/BS of New Jersey,
    568 F.Supp. 2d 556 (D.N.J. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 36, 50

Bixler v. Central Pa. Teamsters Health and Welfare Fund,
    12 F.3d 1292 (3rd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 30

Braden v Wal-Mart Stores, Inc.,
    588 F.3d 585 (8th Cir 2009) . . . . . . . . . . . . . . 1, 3, 23, 24, 27, 29, 42, 44, 49

California Division of Labor Standards Enforcement v.
    Dillingham Construction, N.A., Inc., 519 U.S. 316 (1997) . . . . . . . . . . . . . 49

Consolidated Beef v New York Life Ins. Co.,
    949 F.2d 960 (8th Cir. 1991) cert. den. 503 U.S. 985 (1992) . . . . . . . . . . . . 41

Curico v. John Hancock Mutual Life Ins., 33 F.3d 226 (3rd Cir. 1994) . . . . . . . 32

Curtiss Wright Corp. v Schoonejongen, 514 U.S. 73 (1995) . . . . . . . . . . . . . . 48

Dishman v. UNUM Life Ins. Co. of Am., 269 F.3d 974 (9th Cir.2001) . . . . . . . 51

In re Elec. Data Sys. Corp. "ERISA" Litig.,
    305 F.Supp.2d 658 (E.D.Tex.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Firestone Tire & Rubber Co. v Bruch, 489 U.S. 101 (1989) . . . . . . . . . . . . . . . 28

Fischer v. Phila. Elec. Co., 994 F.2d 130 (3d Cir. 1993) . . . . . . . . . . . . . . . . . 25

Glaziers and Glassworkers Union Local No. 252 Annuity Fund, et. al. v.
    Newbridge Securities, Inc. et. al., 93 F.3d 1171 (3rd Cir. 1996 ) . . . . 30, 43, 51

Graden v Conexant Systems, Inc., 496 F.3d 291 (3rd Cir. 2007) . . . . . . . . 33, 47

Haddock v Nationwide Financial Services, Inc.,
    419 F.Supp. 2d 156, 164 (D. Conn. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 41

Harris Trust and Savings Bank v. Solomon Smith Barney, Inc.,
    530 U.S. 238 (2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Harte v. Bethlehem Steel Corp., 214 F.3d 446 (3rd Cir. 2000)  . . . . . . . . . . . . 31

Harzewski v Guidant Corporation, 489 F.3d 799 (2007)  . . . . . . . . . . . . . 33, 47

Hecker v Deere & Co., 556 F.3d 575 (7th Cir. 2009)  . . . . . . . . . . . . . . . 23, 24

Kennedy v Plan Adm'r, 129 S.Ct. 865 (2009)  . . . . . . . . . . . . . . . . . . . . . 15

LaRue v DeWolff, Boberg & Associates, Inc.,
    522 U.S. 248 (2008)  . . . . . . . . . . . . . . . . . . . . . . . . 20, 33, 34, 47

Lowen v TowerAsset Management, Inc., 829 F.2d 1209 (2d Cir 1987)  . . . . . . . 37

Massachusetts Mut. Life. Ins. Co. v. Russell, 473 U.S. 134 (1985) . . . . . . . . 33, 34

McGowann v NJR Service Corp., 423 F.3d 241 (3rd Cir 2007)  . . . . . . . . . . . 15

McMillan v. Perroff, 913 F.2d 310 (6th Cir. 1990)  . . . . . . . . . . . . . . . . . . 15

McTernan v. City of New York, 57 F.3d 521 (3d. Cir. 2009)  . . . . . . . . . . . . 4, 27

Metropolitan Life Ins. Co. v Glenn, 128 S.Ct. 2343 (2008)  . . . . . . . . . . . . . 28

O'Neil v Ret. Plan for Salaried Employees of RKO Gen Inc,
    37 F.3d 55 (2d Cir. 1994)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Pension Fund Mid Jersey Trucking Industry Local 701 v Omni Funding Group,
    731 F. Supp. 161 (D.N.J. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 41

Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987 )  . . . . . . . . . . . . . . . . . 49

In re Polaroid Erisa Litig., 362 F.Supp.2d 461 (S.D.N.Y. 2005)  . . . . . . . . . . 36

In re Schering Plough ERISA Litigation, 420 F.3d 231 (3rd Cir. 2005)  . . . . . . 33

In re Sprint Corp. ERISA Litig., 388 F.Supp.2d 1207 (D.Kan.2004) . . . . . . . . . 36

Smith v Provident Bank, 170 F.3d 609 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . 36

Stanton v. Shearson Lehman/American Express,
     631 F.Supp. 100 (N.D.Ga. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Thomas, Head & Greisen Employees Trust v Buster,
     24 F.3d 1114 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

Tibble v Edison International, 639 F.Supp. 2d 1074 (C.D. Cal 2009) . . . . . . . . . 23

In re Unisys Corp Retiree Medical Benefit "ERISA" Litigation,
     57 F.3d 1255 (3rd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

In re Unisys Savings Plan Litigation, 74 F.3d 420 (3rd Cir. 1996) . . . 2, 21, 28, 30

United Wire, Metal and Machine Health and Welfare Fund, et al.
     v. Morristown Memorial Hospital, 995 F.2d 1179 (3d Cir. 1993), . . . . . . . . 50

Woods v Southern Company, 396 F. Supp. 2d 1351 (N.D.Ga. 2005) . . . . . . . . . 36

In re WorldCom, Inc., 263 F.Supp.2d 745 (S.D.N.Y.2003) . . . . . . . . . . . . . . . 36

In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.,
     312 F.Supp.2d 1165 (D.Minn.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

## DOCKETED CASES

George v Kraft Foods Global, Inc,
     No. 08C3799, 2009 WL 4884027 (N.D. Ill, Dec. 19, 2009) . . . . . . . . . . . 36

Gipson v Wells Fargo & Company,
     C.A. No. 08-4546, 2009 WL 702004 (D.Minn, March 13, 2009) . . . . . . . . 23

Mass. Mutual Life v. Marinari,
     CIV. 07-2473 (FLW), 2009 WL 5171862 (D.N.J. Dec. 29, 2009) . . . . . . . . 50

Nightingale & Associates, L.L.C. v Hopkins,
    C.A. No. 07-4239, 2008 WL 484765 (D.N.J. Nov. 5, 2008) . . . . . . . . . . . . 32

Procacci v Drexel Burnham Lambert, Inc.,
    C.A. No. 89-0555, 1989 WL 121984 (E.D. Pa., Oct. 16, 1989) . . . . . 41, 42, 47

Taylor v United Technologies, Corp.,
    No. 3:06 cv 1494, 2007 WL 2302284 (D.Conn. Aug. 9, 2007) . . . . . . . . . . 23

Tussey v ABB, Inc.,
    No. 06-4305-cv-NRL, 2008 WL 379666 (W.D. Mo. Feb. 11, 2008) . . . . . . . 23

## FEDERAL STATUTES

18 U.S.C. §§1961 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

29 U.S.C. §1001 (21)(i) and (iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

29 U.S.C. §1002(21) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

29 U.S.C. §§1021 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

29 U.S.C. §§1023 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

29 U.S.C. §1102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

29 U.S.C. §1104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15, 19, 32, 35, 46

29 U.S.C. §1105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 44, 45, 46, 47, 48

29 U.S.C. § 1106 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

29 U.S.C. §1108 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

29 U.S.C. §1109 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 45, 46, 48

29 U.S.C. §1132 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## FEDERAL REGULATIONS

29 <u>C.F.R.</u> §2510-3.21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

29 <u>C.F.R.</u> §2519.3-21 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

## FEDERAL RULES OF CIVIL PROCEDURE

<u>Fed R. Civ. Pro.</u> 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## PRELIMINARY STATEMENT

This brief is submitted on behalf of the Plaintiffs in response to the motion to dismiss[1] filed by Indel, Inc., a/k/a Inductotherm Industries, Inc; Inductotherm Corporation (collectively "Indel, Inc."), Henry Rowan, John H. Mortimer, David L. Braddock, Thomas P. McShane, Manning J. Smith, Laurence A. Krupnick and Harry G. Trefz (collectively, the "Indel Defendants").

### A.    Fiduciary Obligations and the Indel Defendants

Central to the disposition of this motion is the principle that fiduciary duties imposed by the Employee Retirement Income Security Act of 1974 (ERISA) (codified in United States Code sections §§ 1001-1461) are "the highest known to the law." Braden v Wal-Mart Stores, Inc., 588 F.3d 585, 598 (8th Cir 2009) ("Braden"). ERISA requires that a fiduciary fulfill the "twin duties of loyalty and prudence" acting "solely in the interest of [plan] participants and beneficiaries." Braden, supra, 588 F.3d at 595.

The scope of these duties must be construed with the recognition that ERISA's purpose, the Third Circuit has ruled, is

---

[1]   After Defendants filed their motion to dismiss, Plaintiffs filed their First Amended Complaint.  The amended pleading added three Plaintiffs and made a number of modest changes to the pleading, none of which impact the Defendants' motion.  All references to the Complaint are to the initial Complaint.

to protect and strengthen the rights of employees, to enforce strict fiduciary standards, and to encourage the development of private retirement plans. In re Unisys Savings Plan Litigation, 74 F.3d 420, 434 (3d.Cir. 1996).

In fundamental and very harmful ways, the Indel Defendants acted in utter disregard of these obligations. Among other things, they:

- Failed to adopt a trust agreement that appropriately constrained investment discretion, as required by the plan documents;

- Misrepresented the quality of plan investments;

- Replaced reputable and reasonably priced investment managers with unqualified investment managers;

- Knowingly concealed fiduciary breaches; and

- Squandered plan assets by paying excessive fees to unqualified managers.

Defendants have moved to dismiss Plaintiffs' Complaint in a brief that is more in the nature of a jury summation than it is a proper motion to dismiss. In many instances, Defendants' arguments misread the Complaint[2], and purport to respond to

---

[2]   By way of example, Defendants misread Plaintiffs' Complaint insofar as they argue that the Complaint "concedes that the Plan investment 'performance compares favorably' to the Dow" and cite paragraph 203 of the Complaint to support that proposition. Plaintiffs make no such concession. Rather, Plaintiffs allege that the Plan's quarterly reports were misleading because performance was compared to inappropriate benchmarks (Complaint, ¶¶201 to 205). In fact, the Complaint alleges that the 27.6% loss sustained by the Plan in 2008 exceeded the loss of "97% of conservative allocation funds," which was the appropriate benchmark given the Defendants' representations (Complaint, ¶204).

allegations that were not made and ignore those that were.   In other instances, Defendants advance factual arguments and rely upon exhibits that are inappropriate for consideration on a motion to dismiss.

### B.   Standard of Review

The standards applicable to a motion to dismiss under <u>Fed R. Civ. Pro.</u> 12(b)(6) are well settled.   A plaintiff's complaint need only state a claim for relief that is "plausible on its face." <u>Ashcroft v Iqbal,</u>129 <u>S. Ct.</u> 1937, 1949 (2009) ("<u>Ashcroft</u>"), and need not show a probability of success.   A well pleaded complaint may not be dismissed even if the "proof of [the] facts alleged is improbable" or even if the likelihood of recovery is remote or even unlikely. <u>Bell Atl. Corp. v Twombly,</u> 550 <u>U.S.</u> 544, 556 (2007).   A plaintiff's well placed factual allegations must be taken as true, and the complaint must be read as a whole, not parsed piece by piece. <u>Braden,</u> <u>supra,</u> 588 <u>F.3d</u> at 594.

A court must draw all reasonable inferences in favor of the plaintiff; it may not require a plaintiff to plead facts that contradict those advanced by the moving party. <u>Id</u> at 595.   Nor may it require that a plaintiff, in an ERISA action, plead facts that show "precisely how the defendant's conduct was unlawful" <u>Id</u>.   Rather, our Courts recognize that

> ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences.

Id. at 598.

That being said, Plaintiffs' Complaint is drafted in great detail as a consequence of the fact that Defendants have committed patent and substantial violations of a number of the most important provisions of ERISA. Defendants' brief relies on many documents that may not be considered on a motion to dismiss. McTernan v. City of New York, 57 F.3d 521 (3d. Cir. 2009). While Plaintiffs object to consideration of those documents, they have, in an excess of caution, addressed arguments and factual assertions drawn from those documents.

## STATEMENT OF THE CASE

### A.    The Parties

The Plaintiffs, and all putative class members, are or were participants in the Inductotherm Companies Master Profit Sharing Plan #001 (the "Plan," Complaint, ¶¶1 and 9). The Defendants in this matter fall into two categories: Indel, Inc., as the Plan's sponsor, the Plan's Trustee, the Plan's Committee, and members and the Board of Directors of Indel, Inc.[3] The remaining Defendants consist of those associated with the American International Group, Inc. (AIG). The AIG Defendants are AIG and its 100% owned subsidiaries: FSC Securities Corporation, Financial Service

---

[3]    The Plan's Trustees are Messrs Rowan, Mortimer, Braddock, McShane, Smith, Krupnick and Trefz (Complaint, ¶15). The identities of Indel's Board of Directors and the individuals serving on the Plan's Committee are not publically available or known to Plaintiffs.

538556.2                                      4

Corporation, SunAmerica Asset Management Corp., Sunamerica Capital Services, Inc., Sunamerica Fund Services, Inc. and the Wharton Business Group (collectively, "the AIG Defendants;" Complaint, ¶¶16 to 22).

### B.   The Inductotherm Companies Master Profit Sharing Plan #001

The Plan, apparently adopted in 1976 (Db4)[4], is a defined contribution plan (i.e., 401(k) Plan) (Complaint ¶ 15).  Under the terms of the Plan, participants have the option to contribute up to 10% of their salaries, and Indel, Inc., is authorized to contribute additional funds (Complaint, ¶54).  As Defendants note, Plan participants have no control over investment decisions (Db5)[5].  Rather, the Plan Trustees, during the relevant period, retained Financial Service Corporation, FSC Securities Corporation and the Wharton Business Group (collectively the "FSC Defendants") to provide investment management services.

Plan participants are entitled to receive their benefits (i) upon retirement, (ii) earlier, (a) by rolling their account balances into an eligible retirement plan, (an Individual Retirement Account), (b) by withdrawing up to 15% of their accounts at

---

[4]   "Db" refers to the brief of Defendants.

[5]   On Page 5 of their brief, Defendants incorrectly allege that the Plan is not a 401(k) Plan. As stated in both the Complaint ¶54, and Defense Exhibits E (Notes Financial Statement, p. 4), Defense Exhibit F (Notes to Financial Statement) p. 5, and Defense Exhibit G (Notes to Financial Statement) p.5, the Plan is a defined contribution Plan. According to the Department of Labor, "examples of defined contribution include 401(k) plans . . . " (Plaintiffs' Appendix 11).

age 55, (c) or by withdrawing funds in the event of an emergency (Complaint, ¶55).

## C.    The Trust Agreement

The Plan refers to a "Trust Agreement":

> Investment of Contributions [both Indel, Inc.'s and Plaintiffs] is (sic)
> governed by the provisions of the Trust Agreement (Defense Exhibit B,
> 5.2(a)).

To the extent permitted by the "Trust Agreement," Indel, Inc., is to direct Plaintiffs'

and Indel, Inc.'s contributions to any accounts available under the "Trust Agreement"

(Defense Exhibit B, 8.1). The Plan further provides that the Committee Defendants

are to designate funding and investment policies under the Plan's "Trust Agreement"

(Defense Exhibit B, 8.1).

Based upon a letter dated August 19, 2009, on Indel, Inc. letterhead and signed

by Trustee Defendant, Thomas McShane, Plaintiffs were made to believe that a Trust

Agreement did not exist (Complaint, ¶60). Defendants, in their brief, now claim that

Mr. McShane was mistaken, and a Trust Agreement does in fact exist. This belated

disclosure does not undermine Plaintiffs' allegations. As discussed below, that

agreement, which Defendants now present, is wholly inadequate as it contains none

of the information called for by the Plan documents. As a consequence, the Plan

fiduciaries have been operating largely without constraints.

**D.    The Defendants**

The Defendants are the plan sponsors, a variety of fiduciaries, as well as AIG, the parent corporation of the remaining AIG Defendants.

**1.    Indel, Inc.**

Indel, Inc., is the "plan sponsor," as that term is used in 29 U.S.C. §1002(16)(B).  It is a named fiduciary of the Plan; the administrator of the Plan; and possesses discretion to amend the Plan.  It has the responsibility to select, monitor and remove fiduciaries (Complaint, ¶56).

**2.    The Individual Defendants**

The seven identified individual Defendants are the Plan's Trustees, who, pursuant to the Plan, are named fiduciaries.  The Trustees are responsible for the management of the assets under the Plan, implementing the Investment Committee's investment polices, and executing the Investment Committee's directions (Complaint, ¶59).

**3.    The Wharton Business Group**

In December 2005, Indel, Inc. executed the "Inductotherm, Inc. Profit Sharing Plan Investment Policy" (the "WIP") with the Wharton Business Group, a branch office of FSC Securities Corporation (Db25). The WIP delegated responsibility for the management of Plan assets to the Wharton Business Group (Complaint, ¶139).

BJ Webster and Marc Hembrough signed the WIP on behalf of the Wharton Business Group (Db6).

The exact status of the Wharton is murky. After this lawsuit was started, its website, www.whartonbusinessgroup.com, was removed from the internet (Declaration of Arnold Lakind, ¶2, Exhibit A). Prior to its removal, the website stated that Wharton was located at 740 Springdale Avenue, Exton Pennsylvania, 19422 (the "Exton Address") where it employed six "associates," including Messrs. Webster and Hembrough (Declaration of Arnold Lakind, ¶3, Exhibit B, p.2) .

Five of those associates, including Messrs. Webster and Hembrough, are registered with the Financial Industry Regulatory Authority ("FINRA"). While the Wharton website, www.whartonbusinessgroup.com, does not refer to FSC Securities Corporation, all of Wharton's registered associates have reported to FINRA that they are "currently employed by" FSC Securities Corporation, and that the Exton Address is a "Branch Office" of FSC Securities Corporation (Declaration of Arnold Lakind, ¶¶4 to 8, Exhibits C, pp. 1 and 3; D, pp. 1 and 3; E, pp. 1 and 4; F, pp. 1 and 3; G, pp. 1 and 2).[6]

On November 16, 2006, the State of New Jersey revoked the authority of the Wharton Business Group of Pennsylvania, Inc., located at the Exton Address, to

---

[6]   These documents are referred to in Plaintiffs' Complaint.

transact business in this State (Complaint, ¶155). On September 21, 2005, the

Securities and Exchange Commission (SEC) terminated the registration status of the

Wharton Business Group, LLC, located at the Exton Address (Complaint, ¶160 and

161).  Approximately one month after the filing of this lawsuit, according to the

Pennsylvania Department of State, a Delaware formed limited liability company,

known as the "Wharton Business Group, LLC of Pennsylvania," commenced business

at the Exton Address.  (Declaration of Arnold Lakind, ¶9, Exhibit H).

####   4.   Financial Service Corporation and FSC Securities Corporation

On December 15, 2005, one day after the execution of the WIP, between Indel,

Inc. and the Wharton Business Group, Mr. Hembrough (signatory to the WIP) signed

on behalf of FSC Securities Corporation, the "FSC Securities Corporation Vision

2020 Advisor Investment Advisory Client Services Agreement" (the "FSC Investment

Agreement") (Defense Exhibit K) with Indel, Inc. Defendants.  FSC Securities

Corporation is a wholly owned subsidiary of Financial Service Corporation, whose

ultimate parent is AIG (Complaint, ¶¶19, 79 and 84).

The Plan's IRS Form 5500[7] for Plan years 2006 and 2007 listed the Financial

---

[7]   Pursuant to 29 U.S.C. §§1021 and 1023, Indel, Inc., is required to file
with the IRS an annual return/report on behalf of the Plan (IRS Form 5500)
(Complaint, ¶61).  Schedule C of the Form 5500 is required to disclose the identity
of companies that provide services to the Plan that are compensated from Plan
assets, as well as the amount of the compensation (Complaint, ¶62).

Service Corporation as the only service provider to the Plan and as providing to the Plan "Investment Management Services" (Defense Exhibits F (Schedule C) and G (Schedule C)). Therefore, Financial Service Corporation is a fiduciary to the Plan pursuant to 29 U.S.C. §1002(21) (Complaint, ¶82). Financial Service Corporation is not registered with the SEC, makes no filings with the SEC, and is not authorized to transact business within the State of New Jersey (Complaint, ¶86).

FSC Securities Corporation, Financial Service Corporation's 100% owned subsidiary, is registered with the SEC as a broker dealer and an investment advisor, is registered with FINRA, and is licensed to transact business in the State of New Jersey (Complaint, ¶86). FSC Securities Corporation has been cited for numerous regulatory violations, among them, filing false statements with the SEC and/or the Commodity Futures Trading Commission (FTC) (Complaint, ¶92). Defendant, FSC Securities Corporation, of which the Wharton is a branch office, has also been cited by several state authorities for transacting business through unregistered branch offices (Complaint, ¶184).

### 5.    The SunAmerica Defendants

The "Sun Defendants" are SunAmerica Asset Management Corp., SunAmerica Corp. Services Inc., and SunAmerica Fund Services, Inc.    SunAmerica Asset Management Company, a wholly owned subsidiary of AIG (Complaint, ¶20),

provides administrative and supervisory functions for SunAmerica Money Market Funds, Inc. (Complaint, ¶¶116 and 117).

Like its affiliate, FSC Securities Corporation, SunAmerica Asset Management Corp. has been found to have committed numerous regulatory violations, including filing false statements with the SEC and/or the CFTC; it has, as well, been convicted of a felony. (Complaint, ¶122).

SunAmerica Capital Service, Inc., is SunAmerica Asset Management Corp.'s 100% owned subsidiary (Declaration of Arnold Lakind, ¶10, Exhibit I, p.6). SunAmerica Fund Services, Inc. is an affiliate of SunAmerica Asset Management Corp. (Declaration of Arnold Lakind, ¶20, Exhibit S, p. 22).

Sometime in 2007, FSC Securities Corporation liquidated the Plan's $8,262,500 investment in the Vanguard Prime Money Market Fund (Vanguard Fund), an unrelated and well respected money market fund, and invested $8,412,993, into the affiliated SunAmerica Money Market Fund (SAMMF) (Complaint, ¶103). The fees charged by the SAMMF were considerably more than the comparable fees charged by the Vanguard Fund, and the performance of the SAMMF was markedly inferior to that of the Vanguard Fund (Complaint, ¶¶111 to 113).

## 6.   AIG

According to the financial statements provided by Defendants, between 2006

and 2007, approximately $70,000,000 of the Plan's $75,000,000 (over 90% of the

Plan's assets) in assets (Defense Exhibits E, F and G) was invested in "AIG

Securities." These investments were made by the FSC Defendants who, like the Sun

Defendants, were AIG subsidiaries. AIG, the parent of all FSC and Sun Defendants,

received revenues generated by its subsidiaries. (Declaration of Arnold Lakind, ¶10,

Exhibit I, p.1). (Complaint, ¶95).

### E.    The Trustees Misrepresentations

In 2008, the Trustees informed Plan participants that Plan assets were

"conservatively invested" (Complaint, Count X, ¶4). However, at that time, the Plan

had 80% of its assets in equities (Complaint, ¶197). Data provided by Morningstar,

referred to in the WIP, reveals that only .5% of all mutual funds denominated as

"conservative" had a higher equity to fixed income ratio (Complaint, ¶199). The

Plan's 2008 loss, 27.6%, exceeded that of 97% of all conservative allocation mutual

funds (Complaint, ¶204). Defendants thus misrepresented the risk associated with

Plan investments.

In addition, Defendants never informed the Plan participants that the Wharton

Business Group, FSC Securities Corporation, the Financial Services Corporation, and

the Sun Defendants were all affiliated and were all AIG subsidiaries (Complaint,

¶90). Nor did the Defendants apprise Plaintiffs of the extensive regulatory citations

issued to their investment manager, the FSC Securities Corporation, and to Sun

America Asset Management Corp., who benefitted from FSC Securities Corporation's

investment decisions (Count X, ¶9). As a result, the AIG Defendants engaged in

undisclosed, as well as unlawful and expensive revenue sharing arrangements.

**F.    The Plaintiffs' Complaint**

The table below sets forth the allegations made against the various Indel

Defendants, briefly describes their misconduct, and cites the applicable legal

standards:

| Count | Brief Description of Allegation[8] | Authority |
|---|---|---|
| I (pp. 78 to 81) | Breach of fiduciary duty by failing to abide by Plan documents due to inadequate Trust Agreement | 29 U.S.C. §§1104(a) |
| II (pp. 81 to 83) | Breach of fiduciary duty by paying excessive fees to Charlotte Capital, LLC | 29 U.S.C. §§1104(a) |
| X (pp. 100 to 102) | Breach of fiduciary duty by misrepresenting (1) that the Plan was conservatively invested, and (2) the correct identity of the investment manager | 29 U.S.C. §1104(a) |
| XII (pp. 104 to 107) | Breach of fiduciary duty by failing to use care, skill and prudence when selecting the Plan's investment manager, FSC Securities Corporation/ Financial Services Corporation | 29 U.S.C. §1104(a) |

---

[8]  Plaintiffs' allegations against other Defendants are addressed in a
separate brief and are not included in this table.

| XIII<br>(pp. 107 to 109) | Breach of fiduciary duty by failing to use care, skill and prudence when selecting the Plan's investment manager, the Wharton Business Group | 29 U.S.C. §1104(a) |
|---|---|---|
| XIV<br>(pp. 110 to 112) | Breach of co-fiduciaries' duties by concealing the AIG Defendants' breaches of fiduciary duties and prohibited transactions | 29 U.S.C. §1105 |
| XV<br>(pp. 113 to 114) | Failure to allocate operation and management responsibilities | 29 U.S.C. §1102(b) |
| XVI<br>(pp. 115 to 116) | Prayer for equitable relief to address operation deficiencies | 29 U.S.C. §1132(a) |
| XVII<br>(pp. 123 to 132) | Indel Defendants' and others fraudulent concealment of excessive fees, the relationship among the AIG subsidiaries, the true risk of the investments and other matters | Fraudulent concealment |
| XXII<br>(pp. 123 to 132) | The Indel Defendants and others engaged in various violations of the Racketeer Influenced and Corrupt Organization Act | 18 U.S.C. §§1961 et seq |

## ARGUMENT

### POINT I

### THE INDEL DEFENDANTS BREACHED THEIR FIDUCIARY DUTY BY FAILING TO ABIDE BY PLAN DOCUMENTS INSOFAR AS THE PLAN TRUST AGREEMENT LACKS ALL OF THE INFORMATION MANDATED BY THE PLAN

29 U.S.C. §1104(a)(1) provides that

[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and -

(D) **in accordance with the documents and instruments governing the plan.** (Emphasis Added).

This provision is to be rigorously enforced such that a Plan must be administered in the manner set forth in Plan documents. See, McGowann v NJR Service Corp., 423 F.3d 241, 246 (3rd Cir 2007) abrogated on other grounds Kennedy v Plan Adm'r, 129 S. Ct. 865 (2009). See also, McMillan v. Perroff, 913 F.2d 310 (6th Cir. 1990) (administration in accordance with plan documents promotes certainty).

Count I of Plaintiffs' Complaint alleges that the Indel Defendants breached their fiduciary duty by failing to abide by the Plan documents by virtue of their failure to adopt a Trust Agreement "in accordance with the documents . . . governing the plan."

For purposes of this motion, it is undisputed that

> The Plan provides that the investment of Inductotherm's and Plaintiff's contributions under the Plan will be governed by the "Trust Agreement." The Plan provides that, to the extent permitted by the "Trust Agreement," the Committee Defendants and Inductotherm shall direct Plaintiffs' and Inductotherm's contributions to any accounts available under the "Trust Agreement." The Plan provides that any losses, income or expenses to the Plaintiffs' accounts are to be determined in accordance with the "Trust Agreement. (Complaint, Count I, ¶4).

It is likewise undisputed that the "Plan was operated without any investment guidelines with respect to contributions" (Complaint, Count I, ¶8).

Article 5.2 of the Plan provides in part as follows:

> **Investment of contributions is governed by the provisions of the Trust Agreement**. To the extent permitted by the Trust Agreement, the parties named below [referring to the Committee Defendants][9] shall direct the Contributions to any of the **accounts available under the Trust Agreement** and may request the transfer of assets resulting from those Contributions between such accounts. To the extent that a Participant is so entitled does not direct the investment of his Account, **such Account shall be invested ratably in the accounts available under the Trust Agreement** . . .. (Defense Exhibit B, p. 14, §5.2)(Emphasis added).

The Plan further provides that income, expenses and losses are to be allocated in accordance with the Trust Agreement (Defense Exhibit B, p. 15, §5.2(e)). In addition, the Plan states:

> **As provided in the Trust Agreement** and within the scope of investment policies designated by the Committee, the Trustee shall have sole responsibility for the administration of the Trust Agreement and the

---

[9]   Bracketed material added.

538556.2                                                16

management of assets held under the Trust Agreement. . . . It is intended that each Fiduciary shall be responsible for the proper exercise of his powers, duties, **responsibilities and obligations under the Plan and the Trust Agreement** . . .. (Defense Exhibit B, p. 23 §8.1)(Emphasis added).

When Plaintiffs filed their Complaint, they credited the statement, included in the letter of Defendant McShane, that

there is no separate document entitled Trust Agreement. The Plan you [Plaintiff Goldenberg] received is the complete document (Complaint, ¶145).

The Indel Defendants now contend that the Plan that was sent to Mr. Goldenberg was not the "complete document." Assuming, Defendants' recent contention to be correct, it is nonetheless clear that the one page "Trust Agreement"(Defense Exhibit A), does not comply with the Plan, as it fails to include matters mandated by the Plan.

Clearly the "Trust Agreement" is different than the Plan itself; otherwise it would not be referred to in the Plan. The "Trust Agreement," now provided, does not comply with the Plan documents because it (1) contains no provisions governing the "investment of contributions;" (2) fails to describe the accounts "available" under the "Trust Agreement;" (3) fails to provide for the method to allocate contributions in the absence of an employee election; and (4) fails to address the "duties, responsibilities and obligations" of the fiduciary, all as required in §§5.2 and 8.1 of the Plan.

The IRS determination letter, upon which Defendants rely, does not excuse these deficiencies. The IRS has not "repeatedly reviewed" the Plan; it reviewed it once, in 2002, and not for compliance with ERISA (which is in Title 29 of the United States Code), but for compliance with the Internal Revenue Code (which is in Title 26 of the United States Code). The IRS letter unambiguously states that it

> relates only to the status of your plan under the Internal Revenue Code. **It is not a determination** regarding the effect of **other federal** or local statutes. (Emphasis added) (Defense Exhibit N).

The IRS letter specifically directs Indel to IRS Publication 794 (Declaration of Arnold Lakind, ¶12, Exhibit K) for an explanation of the significance of the IRS determination. That publication, at page 1, reiterates any IRS determination letter relates only to the requirements of "IRC section 401(a)." Likewise, the various IRS Revenue Procedures[10] cited by the Indel Defendants are irrelevant because they

---

[10]     Not one of the IRS Revenue Procedures cited by Defendants supports their contention that receipt of a determination letter confirms compliance with ERISA. Rev. Proc. 2008-6 (Defense Exhibit 10) states: "[s]cope of [d]etermination [l]etter ... [i]n general, employee plans are reviewed by the Service for compliance with the form requirements (that is those plan provisions that are required as a condition of qualification under § 401(a))." (Referring to the Internal Revenue Code) Rev. Proc. 2007-44 (Defense Appendix 11), which was partially amended by Rev. Proc. 2008-56 (Defense Appendix 12), modifies the period during which a plan may be amended retroactively to comply with the Internal Revenue Code and sets deadlines to submit applications for determination letters. (Rev. Proc. 2007-44 §§ 2 to 3) See also, Rev Proc. 2008-6 stating "Rev. Proc. 2007-44 describes a new system of remedial amendment cycles...and the deadlines to submit...determination letters." (Defense Appendix 10, § 2.03).

address Internal Revenue Code issues, not ERISA matters.

Neither Count I, which addresses Defendants' failure to abide by Plan documents, nor any other count of the Complaint is based on any provision of the Internal Revenue Code. The tenor of Count I is not simply that a Trust Agreement does not exist. Rather, it is that Defendants breached their fiduciary duty, imposed by 29 U.S.C. 1104(a)(1)(D), by virtue of their failure to adopt a Trust Agreement required by the Plan to constrain the management of the Plan's assets. The Plan required a Trust Agreement with investment guidelines, methodologies and a host of other protective provisions, none of which existed; and their absence contributed to the abuses that followed. Defendants' failure, apparent from the very document they have belatedly provided, is a breach of fiduciary duty.

## POINT II

**THE INDEL DEFENDANTS BREACHED THEIR FIDUCIARY DUTY WHEN THEY DIVERTED PLAN ASSETS, WELL MANAGED BY HEWITT AND STATE STREET AT A REASONABLE FEE, TO CHARLOTTE CAPITAL, LLC, TO WHOM THE PLAN PAID EXCESSIVE FEES**

29 U.S.C. §1104(a) requires plan fiduciaries to discharge their duties "solely in the interest of the participants and beneficiaries of the plan."

In Count II of their Complaint, Plaintiffs allege that the Indel Defendants breached their fiduciary duty by paying excessive fees to Charlotte Capital, LLC.

Thus, the Complaint continues, in 2005, the Defendants paid $49,283 to Charlotte Capital, LLC (Charlotte) to manage $5,491,717 of Plan assets, a management fee equal to .8974% of the assets under management.  During that same year, the Plan paid a combined fee of $77,973 to Hewitt Investment Group (Hewitt) and State Street Global Advisors (State Street), for managing $57,027,267, a management fee of .13672% (Complaint, Count II, ¶¶4 and 5). That is, the Defendants paid Charlotte 63% of the amount it paid others for managing less than 10% of the assets managed by the others.  During the same year that the Plan was paying Charlotte, the latter, according to the State of North Carolina, had its SEC license terminated. (Declaration of Arnold Lakind, ¶13, Exhibit L).

Defendants move to dismiss this Count alleging that (1) the amount at issue is small; (2) a management fee of less than 1% is, according to the Department of Labor, reasonable; (3) there is no obligation to retain the cheapest service provider; and (4) Charlotte performed more extensive services than Hewitt and State Street.

Defendants' first argument was rejected by the Supreme Court. The magnitude of the loss or the amount of the improper payment is irrelevant to a determination of its lawfulness. cf, LaRue v DeWolff, Boberg & Associates, Inc., 128 S. Ct. 1020, 1024 (2008) ("the legal issue under §502(a) of ERISA is the same whether his account includes 1% or 99% of the total assets in the plan").

Nor do any Department of Labor (DOL) publications create a safe harbor for fees under 1%. Rather, as the Complaint alleges, the DOL requires a fiduciary to "[c]ompare all services to be provided with the total costs for each provider" (Complaint, Count II, ¶3), which entails an evaluation of the process the fiduciary employed:

> Under the common law of trusts, a trustee is duty-bound 'to make such investments and only such investments as a prudent [person] would make of his own property having in view the preservation of the estate and the amount and regularity of the income to be derived. . . .'
>
> *      *      *
>
> Consistent with these common law principles, the courts measure section 1104(a)(1)(B)'s 'prudence' requirement according to an objective standard, focusing on a fiduciary's conduct in arriving at an investment decision, not on its results, and asking whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment. In addition, the prudence requirement is flexible, such that the adequacy of a fiduciary's independent investigation and ultimate investment selection is evaluated in light of the "'character and aims'" of the particular type of plan he serves. (Internal citations omitted). In re Unisys Savings Plan Litig, 74 F.3d 420 at 433 to 435 (3rd Cir. 1996).

The opinions cited by Defendants are not to the contrary. The DOL has repeatedly observed that

> a fiduciary has . . . a duty to consider all of the relevant circumstances, including the knowledge, skill and **compensation** of the manager. (Emphasis added) (DOL Information Letter, Defense Appendix 15, p. 5).

We believe the selection and monitoring process engaged by the responsible

fiduciary should include: 1. [a] review of comparable providers and service arrangements (e.g., quality and cost). . . . (Field Assistance Bulletin, 2002-3, Defense Appendix 19, p. 1).

In many instances, the DOL authorities cited by Defendants refrain from commenting on the reasonableness of the fee. For example, DOL Information Letter, (Evaluation Associates) (12/29/81) (Defense Appendix 13, p. 2), addressed only the applicability of a prohibited transaction exemption contained in 29 U.S.C. §1108(b)(2), and did not opine on what compensation would be reasonable. In DOL Opin Ltr. 89-31A and ERISA Procedure 76-1, the Department observed that whether the amount of compensation received by a service provider is reasonable is a question of fact, and that the DOL would generally refrain from ruling on questions of fact (Defense Appendix 16, p. 4 to 5). The DOL stated further that it "generally will not issue opinions on such questions." (Id., p. 4 to 5) (See also ERISA Procedure 76-1 which describes the procedure for requesting a DOL advisory opinion, which states with regard to fees, that "there are certain areas where, because of the inherently factual nature of the problem involved . . . the department ordinarily will not issue advisory opinions." (Plaintiffs' Appendix 13; §5.01)).

Concededly, a fiduciary need not, as Defendants note, scour the market to find the cheapest possible fund management. However, Defendants' cases that rejected an excessive fee claim did so because the plans were participant-directed and afforded

thousands of investment options with a broad variety of expense ratios. See e.g.
Hecker v Deere & Co., 556 F.3d 575, 586 (7th Cir. 2009) (employer offered more than
2500 funds with fees as low as .07%) and Tibble v Edison International, 639 F.Supp.
2d 1074 (C.D. Cal 2009) (employer offered funds with fees as low as .03%, a case
decided on summary judgment, not on a motion to dismiss).

ERISA requires that a fiduciary engage in a rigorous review of fees when it
offers but a few investment alternatives. Braden, supra, 588 F.3d at 596
(distinguishing Hecker v Deere & Co., supra, and holding that a claim that a fiduciary
paid excessive fees, where participants have limited investment options or none at all,
should not be dismissed on motion). Accord Tussey v ABB, Inc., No. 06-4305-cv-
NRL, 2008 WL 379666 (W.D. Mo. Feb. 11, 2008) (Plaintiffs' Appendix 7), Taylor
v United Technologies, Corp., No. 3:06 cv 1494, 2007 WL 2302284 (D.Conn. Aug.
9, 2007) (Plaintiffs' Appendix 9); and Gipson v Wells Fargo & Company, C.A. No.
08-4546, 2009 WL 702004 (D.Minn, March 13, 2009,) (Plaintiffs' Appendix 2)
(plaintiffs state a claim where they allege that Wells Fargo mutual funds had higher
fees than comparable Vanguard funds).

Defendants finally allege that this claim must fail because the Complaint fails
to make an "apples to apples" comparison (Db14) and does not mention the
investment return that was obtained by Charlotte (Db13). Even if such a comparison

were required at the pleading stage - which it is not - that comparison cannot be made here because the Charlotte investment was liquidated in 2005, and the return cannot be known in the absence of discovery. This is precisely the reason why disposition of this claim on a motion to dismiss would be inappropriate.

An evaluation of a claim of excessive fees cannot be made in the absence of discovery. See, Braden, supra. A plaintiff who lacks discovery cannot, at the pleading stage, be required to rebut possible exculpatory explanations; it is enough, as is the case here, that an ERISA plaintiff plead that the exercise of discretion was improper because of the "ready availability of better options." Braden, supra at 596 (i.e. Hewitt and State Street).

The notion that Defendants did not fulfill their fiduciary duty of loyalty or competence is, at this stage of the litigation, more than "plausible." Ashcroft, supra. Plaintiffs have put forth sufficient evidence, in the form of comparing Charlotte's fees to those charged by Hewitt and State Street, to support their claim. The Plan participants had no option to select a less expensive manager than Charlotte; all decisions regarding retention of investment managers were made by the Indel Defendants. See Braden, supra and compare Hecker, supra. For the foregoing reasons, Count II should not be dismissed.

## POINT III

**THE INDEL DEFENDANTS BREACHED THEIR FIDUCIARY DUTY BY MISREPRESENTING THAT THE PLAN WAS "CONSERVATIVELY INVESTED" AND THE IDENTITY OF THE PLAN'S INVESTMENT MANAGER**

In Count X of the Complaint, Plaintiffs allege that the Indel Defendants acted as Plan fiduciaries (Complaint, Count X, ¶4), and in that capacity, made the following misrepresentations:

- In the Plan's 2008 quarterly reports, Defendants misrepresented that the Plan's assets were conservatively invested and they were not; and

- Various communications failed to disclose that the Wharton Business Group, the outside investment advisor, was a branch office of AIG and that other AIG affiliates were involved in Plan management.

An "ERISA fiduciary may not affirmatively mislead plan participants." In re Unisys Corp Retiree Medical Benefit "ERISA" Litigation, 57 F.3d 1255, 1260 (3rd Cir. 1995); see, also, Fischer v. Phila. Elec. Co., 994 F.2d 130, 135 (3d Cir. 1993) ("[p]ut simply when a plan administrator speaks, it must speak truthfully") and Bixler v. Central Pa. Teamsters Health and Welfare Fund, 12 F.3d 1292, 1301 (3rd Cir. 1994) ("[t]his duty to inform is a constant thread in the relationship between beneficiary and trustee; it entails not only a negative duty not to misinform . . .") Id.

## A.  The Indel Defendants Misrepresented to the Plaintiffs that the Plan Assets Were Conservatively Invested

The Indel Defendants stated, in the 2008 quarterly report to the Plaintiffs, that the Plan's assets were conservatively invested. They attempted to buttress that claim by comparing the Plan's 2008 performance to equity indicies, which mislead the reader to believe that, in 2008, the Plan's performance exceeded comparable investments (Count X, ¶¶4 and 5). However, when compared to conservative allocation mutual funds (the appropriate benchmark in light of the Indel Defendants' representation that the Plan's assets were conservatively invested) the Plan performed more poorly than 97% of the comparable funds (Count X, ¶6).

The Indel Defendants first argue, citing to paragraph 5 of Count X, that the Plaintiffs have conceded that the Plan's performance compares favorably to comparable equity indices (Db15). Defendants misstate Plaintiffs' allegations. Neither there, nor anywhere else in the Complaint, do Plaintiffs make that concession. Rather, Plaintiffs alleged that the Defendants' choice of a comparative index in their communication to participants was misleading:

> While the reported 2008 performance compared favorably to the indices shown, this is misleading because the Plan was intended to be, and should have been conservatively invested and was therefore never designed to assume as much risk as the indices listed in the Quarterly Report. (Complaint, Count X, ¶5).

Defendants' alternative argument, that the Plan's performance exceeded the

performance of Morningstar's conservative allocation category (Db15) is not appropriate for a motion to dismiss for four reasons. First, it inappropriately relies on information not included in the Complaint or in documents to which it refers. McTernan v City of York, Penn, supra. Second, that type of evidence is relevant to the defense of a claim, not to whether a claim has been stated. Braden, supra, 588 F.3d at 595 (plaintiff has no duty in responding to motion to dismiss to contradict movant's factual assertions).

Third, the unverifiable and hearsay chart proffered by the Defendants is based on a performance period from 1990 to 2008. The fact that the Plan allegedly performed better in years prior to the Defendants' misconduct hardly absolves Defendants from responsibility for the excessive loss sustained by the Plan in 2008, the year in which it made the misrepresentations, the year referred to in Plaintiffs' Complaint, and the year in which the Plan lost considerably more (-27.57% versus -18.94%) than the "conservative allocation" fund to which it is compared in Defendants' exhibit (Defense Exhibit L).

Finally, according to Defense Exhibit I, the Plan's overall asset allocation is 80% in equities. As set forth in paragraph 199 of Plaintiff's Complaint, 95% of all funds classified as "conservative" had fixed income holdings over 46%. Such an overweighing of equities classifies the Plan as a "growth" or an "aggressive growth"

portfolio[11] (Defense Exhibit I, p. 3).  Plaintiffs should have the opportunity to prove

that this is not a "conservative" investment strategy.

The cases cited by Defendants are not to the contrary; none involve misleading

disclosures; all involve interpretative issues.  See e.g. O'Neil v Ret. Plan for Salaried

Employees of RKO Gen Inc, 37 F.3d 55, 61 (2d Cir. 1994) (decision on earnings

allocations); Metropolitan Life Ins. Co. v Glenn, 128 S. Ct. 2343, 2348 (2008)

(eligibility for benefits) and Firestone Tire & Rubber Co. v Bruch 489 U.S. 101, 111

(1989) (denial of benefits).

Rather, as the Third Circuit has held in unequivocal terms, a plaintiff states a

claim when he alleges "material misrepresentations made by fiduciaries to

participants regarding the risks attendant to a fund investment." In re Unisys Savings

Plan Litigation v Unisys Corporation, supra, 74 F.3d at 442. Plaintiffs have satisfied

this requirement.

**B.     Defendants Misrepresented the True Identity of the Plan's
        Investment Manager**

The 2008 and 2009 quarterly reports identified the Wharton Business Group

---

[11]     Specifically, page 2 of the Defense Exhibit I provides that the "Overall
Asset Allocations" are as follows: 5% in Money Markets/Ultra Short Term Bonds;
15% in Short-Intermediate Bonds/Other Income; 45% in Large US Company
Stocks and Developed International Stocks and 35% in Mid-Small US
Stocks/Targeted Sectors/Emerging Markets.  Therefore, the asset allocation is
20% fixed income and 80% equities.

as the Plan's outside investment advisor (Complaint ¶¶192 to 195). Wharton Business

Group is affiliated with other AIG subsidiaries (Complaint, Count X, ¶7).  Plaintiffs

contend that transactions among these affiliated companies constitute prohibited

transactions under 29 U.S.C. §1106 because the AIG entities received Plan assets in

the form of fees, from those investments (Count III and IV).  These allegations state

a claim:

> By the same token, Braden's allegations are sufficient to state a claim
> that appellees breached their duty of loyalty by failing to disclose details
> about the revenue sharing payments. Braden alleges that those payments
> corrupted the fund selection process-that each fund was selected for
> inclusion in the Plan because it made payments to the trustee, and not
> because it was a prudent investment. If true, this information could
> influence a reasonable participant in evaluating his or her options under
> the Plan. Braden, supra, 588 F.3d at 600.

An ERISA fiduciary, the Court continued, has a duty to disclose any and all latent

conflicts of interest.

Defendants claim that no misrepresentation occurred because (1) Plaintiffs

knew that FSC Securities Corporation was the employer of Messrs. Hembrough and

Webster, and (2) Plaintiffs knew or could have easily discovered that AIG was the

indirect parent of FSC Securities Corporation (Db17).  This is not an appropriate

argument for a motion to dismiss, nor is it credible or supported by any evidence.

Defendants also argue that ERISA does not require a fiduciary to provide more

information than that required by ERISA's disclosure provisions. However, Plaintiffs

do not allege that Defendants must disclose more information than ERISA requires, but rather that, when disclosures are made, the disclosures must be complete and accurate:

> [T]his case is more accurately characterized as a dispute over an employer's duty, as an ERISA fiduciary, not to misinform employees though material misrepresentations and incomplete inconsistent or contradictory disclosures. Unysis, supra 57 F.3d 1265.

By way of example, in Glaziers and Glassworkers Union Local No. 252 Annuity Fund, et. al. v. Newbridge Securities, Inc. et. al., 93 F.3d 1171, 1180 to 1181 (3rd Cir. 1996), the Third Circuit reversed a District Court's ruling that a fiduciary need not disclose the minor disciplinary infractions of an account manager. The Court found a duty to disclose, even with no statutory requirement because a beneficiary would have no reason to inquire:

> **Under the common law of trusts, a fiduciary has a fundamental duty to furnish information to a beneficiary.**
>
> *            *            *
>
> We have never held that a request is a condition precedent to such a duty regardless of the circumstances known to the fiduciary. To the contrary, it is clear that circumstances known to the fiduciary can give rise to this affirmative obligation even absent a request by the beneficiary. "[T]he duty to disclose material information 'is the core of a fiduciary's responsibility.'" Bixler, 12 F.3d at 1300. Indeed, absent such information, the beneficiary may have no reason to suspect that it should make inquiry into what may appear to be a routine matter.
>
> *            *            *

The trustee is free to stand aloof, while others act, if all is equitable and fair. He cannot rid himself of the duty to warn and denounce, if there is improvidence or oppression, either apparent on the surface, or lurking beneath the surface, but visible to his practiced eye. Id at 1180 to 81. (Emphasis added).

## C.    Plaintiffs Have Alleged Reliance

Notwithstanding Defendants' Contention (Db18), Plaintiffs' Complaint alleges

reliance:

> 8.     Early withdrawals, prior to retirement, are permissible under the Plan.
>
> 9.     If the Plaintiffs had accurate information regarding the Plan's investment advisors, investment strategy and investment performance during the 2008 Plan year, they would have been able to make an informed decision as to whether to withdraw their benefits from the Plan.
>
> *                    *                    *
>
> 11.    As a direct and proximate result of these breaches of fiduciary duty, the Plan, and indirectly the Plaintiffs suffered millions of dollars in losses. (Complaint, Count X, ¶¶8, 9 and 11).

Here, participants in the Plan could assume control of the investment of their

retirement benefits by rolling them into an IRA.  This type of rollover is also

permitted pursuant to §402 of the Internal Revenue Code.

"ERISA was enacted, in part, to ensure that employees receive sufficient

information about their rights under employee benefit plans to make well-informed

employment and retirement decisions." Harte v. Bethlehem Steel Corp. 214 F.3d

446, 451 (3rd Cir. 2000). Thus, as the Third Circuit has held, reliance, for purposes of a breach of fiduciary duty claim under ERISA, can be proven by inaction.   In Curico v. John Hancock Mutual Life Ins. 33 F.3d 226, (3rd Cir. 1994), Plaintiffs filed a breach of fiduciary duty claim based on the fiduciary's material misrepresentation. Specifically, plaintiffs alleged that the misrepresentation caused them not to purchase additional accidental death and dismemberment insurance. Id. at 236 to 237.  Ruling in favor of the plaintiffs under 29 U.S.C. §1104(a)(1), the Third Circuit held that reliance was established since, on account of the fiduciary's misrepresentation, the plaintiffs were lulled into inaction. Id. at 237 and 238 to 239.  See also Restatement (Second) Torts §548; Nightingale & Associates, L.L.C. v Hopkins, C.A. No. 07-4239, 2008 WL 484765 (D.N.J. Nov. 5, 2008) (Appendix 6).

Had the Indel Defendants made full and proper disclosure regarding (1) the disciplinary history of the investment manager, (2) the conflicts of interest, and (3) the Plan's performance, Plaintiffs could have withdrawn their accounts as allowed by the Plan.  Plaintiffs were lulled into inaction by the Indel Defendants' omissions and misrepresentations.

## D.    Extracontractual Damages

29 U.S.C §1109(a) provides that a fiduciary who breaches any of its obligations

shall be personally liable to make good to such plan any losses to the
plan resulting from each such breach, and to restore to such plan any

profits of such fiduciary . . ..

Thus, ERISA authorizes recovery by a Plan "for fiduciary breaches that impair the value of plan assets in a participant's account." LaRue v DeWolff, Boberg & Associates, Inc., supra, 552 U.S. at 256, n. 4 ); accord,  In re Schering Plough ERISA Litigation, 420 F.3d 231 (3rd Cir. 2005).  In addition, retired employees can sue for restoration of benefits to their proper level as of the date of retirement. See, Graden v Conextant Systems, Inc., 496 F.3d 291 (3rd Cir. 2007), where the Third Circuit found:

> Benefits are benefits; in a defined-contribution plan they are the value of the retirement account when the employee retires, and a breach of fiduciary duty that diminishes that value gives rise to a claim for benefits measured by the difference between what the retirement account was worth when the employee retired and cashed it out and what it would have been worth then had it not been for the breach of fiduciary duty (quoting from Harzewski v Guidant Corporation, 489 F.3d 799, 805 (2007))

Thus, in a defined contribution plan, such as exists here, a participant "can sue for an adjustment in the benefits designed to give him what he would have received." Harzewski v Guidant Corporation, 489 F.3d 799, 805 (7th Cir. 2007).

Defendants claim that Plaintiffs are not entitled to these damages, in reliance of  LaRue v. Wolff, Boberg & Associates, Inc., supra, 552 U.S. 248 and Massachusetts Mut. Life. Ins. Co. v. Russell, 473 U.S. 134 (1985) (Db 19).

Defendants' reliance on LaRue is misplaced as that case **allows** the plaintiffs'

damage claim in a defined contribution plan. Specifically, the Court wrote:

> Whether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms that concerned the draftsmen of §409. Consequently, our references to the "entire plan" in Russell, which accurately reflect the operation of §409 in the defined benefit context, **are beside the point in the defined contribution context**. (Emphasis added).

Id at 256 to 257.   The type of plan at issue in this case is a "defined contribution plan," (Complaint, ¶54) (See also Defense Exhibit F, 2006 Financial Statement, Section 3), and under LaRue, Plaintiffs may recover damages.

Likewise, the Defendants' reliance on Russell supra, is also misplaced because the Supreme Court in La Rue supra, specifically stated that the holding in Russell was inapplicable in a defined contribution case.  "[T]he rationale for Russell 's holding supports the opposite result in this case." LaRue 552 U.S. at 250.  "Russell...[is] besides the point in the defined contribution context." Id. at 256.  As stated in both the Complaint ¶54, and Defense Exhibits E (Notes Financial Statement, p. 4), Defense Exhibit F (Notes to Financial Statement) p. 5, and Defense Exhibit G (Notes to Financial Statement) p.5, the Plan is a defined contribution Plan.

# POINT IV

## INDUCTOTHERM BREACHED ITS FIDUCIARY DUTIES IN THE HIRING OF INVESTMENT MANAGERS

Count XII of the Complaint alleges that the Inductotherm Defendants breached their fiduciary duties under 29 U.S.C. §1104(a)(1)(B), by retaining FSC Securities Corporation[12] as the Plan's investment manager.  In their brief, Defendants argue that the FSC Securities Corporation is not an "investment manager" as defined in ERISA, and that the Complaint contains insufficient allegations that the process employed to select FSC Securities Corporation was imprudent.

### A.    The Fiduciary Status of FSC Securities Corporation May Not Be Determined at the Pleading Stage

Any determination as to whether a party is an ERISA fiduciary is premature at this stage:

> [T]he determination of whether a party is an ERISA fiduciary is a 'functional one', the determination will not typically be resolved at the motion to dismiss stage . . . [but rather],  the Court will be able to

---

[12]   The Indel Defendants state, at note 13 of their brief, that listing "FSC Securities Corporation" (a service provider to the Plan) on the Plan's Form 5500 for Plan years 2006, 2007 and 2008 as the "Financial Service Corporation" is "a repeated typographical error. . . .". Plaintiffs acknowledge that this is correct.  As stated in ¶¶86 and 87 of the Statement of Facts of the Complaint, FSC Securities Corporation is the Financial Service Corporation's 100% owned subsidiary (its only subsidiary) and transacts all of its business through that subsidiary. Therefore, if the subsidiary (FSC Securities Corporation) is a fiduciary, so is the parent (Financial Services Corporation) 29 C.F.R. §2519.3-21.

undertake the fiduciary duty inquiry only after full discovery. Beye v. Horizon BC/BS of New Jersey, 568 F.Supp. 2d 556, 576 (D. N.J. 2008).

Other courts share this District's reluctance to grant a motion to dismiss addressed to

fiduciary status:

> Nevertheless, in light of the flexible and fact-intensive concept of a "functional fiduciary" under ERISA, the Federal Rules' adoption of liberal "notice pleading," and the infant stage of this litigation, the Court is reluctant to dispose of Plaintiff's ERISA claims based on the absence of exacting factual averments respecting the existence of Defendants' fiduciary status or the outer contours of their fiduciary capacities. See In re Polaroid Erisa Litig., 362 F.Supp.2d at 470 ("an ERISA complaint need do little more than track the statutory definition to establish a defendant's fiduciary status in compliance with Rule 8") (internal quotations omitted); In re AEP ERISA Litig., 327 F.Supp.2d 812, 827 (S.D.Ohio 2004) ("[T]his Court subscribes to the view that fiduciary status is a fact-intensive inquiry, making the resolution of that issue inappropriate for a motion to dismiss."); In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig., 312 F.Supp.2d 1165, 1180-81 (D.Minn.2004) (questions of fiduciary status and capacity are ill-suited to resolution on Rule 12(b)(6) motion); In re Elec. Data Sys. Corp. "ERISA" Litig., 305 F.Supp.2d 658, 665 (E.D.Tex.2004) ("It is typically premature to determine a defendant's fiduciary status at the motion to dismiss stage of the proceedings."); In re Sprint Corp. ERISA Litig., 388 F.Supp.2d 1207, 1227 (D.Kan.2004) (it is premature to determine scope of fiduciary duties and whether particular defendant acted in fiduciary capacity on motion to dismiss); In re WorldCom, Inc., 263 F.Supp.2d 745, 759-60 (S.D.N.Y.2003) (holding sufficient allegations of fiduciary status that did "little more than track the statutory definition of a fiduciary[,]" and rejected defendant's argument that "boilerplate and conclusory allegations" of fiduciary status were insufficient to state a claim under Rule 8). Woods v Southern Company, 396 F. Supp. 2d 1351, 1365 (N.D.Ga. 2005).

See also Smith v. Provident Bank, 170 F.3d 609., 613 (6th Cir. 1999) and George v

Kraft Foods Global, Inc, No. 08C3799, 2009 WL 4884027 (N.D. Ill, Dec. 19, 2009)

(Appendix 2) at *18:

> [B]ecause the determination of a party's fiduciary status with respect to a particular activity in this case is a fact-sensitive inquiry, such a determination is best left for a later stage of these proceedings.

The fact sensitive nature of the inquiry is motivated by the concern, in the ERISA context, that a defendant could engage in

> shell-game-like maneuvers to shift fiduciary obligations to one legal entity while channeling profits from self-dealing to a separate legal entity under their control. Lowen v TowerAsset Management, Inc., 829 F.2d 1209, 1220 (2d Cir 1987).

A determination of fiduciary status at the pleading stage is improper.

**B.    Plaintiffs Have Plausibly Asserted that the FSC Defendants are Fiduciaries**

Even at the pleading stage, there is more than sufficient evidence to support the fiduciary status of the FSC Defendants.

**1. The Definition of "Fiduciary"**

Under 29 U.S.C. §1002(21)(A), a person is a fiduciary with respect to a plan to the extent:

> (i) he exercises **any discretionary authority or discretionary control** respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he **renders investment advice** for a fee or other compensation, **direct or indirect,** with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has **any**

**discretionary authority or discretionary responsibility in the administration of such plan.** (Emphasis added.)

## 2.    The FSC Defendants are Fiduciaries

Plaintiffs' claim that the FSC Defendants are fiduciaries is based upon the (1) Wharton Business Group Investment Policy (WIP), (2) the Plan's Form 5500 filings, and the FSC Investment Agreement. These documents alone establish that the claim is "plausible" within the meaning of 29 U.S.C. §1002(21)(A). Ashcroft, supra.

The WIP delegates a host of discretionary functions to the Wharton Business Group, a branch office of FSC Securities Corporation[13]. Among other things, it requires that Wharton/FSC "[i]dentify the needs and goals of the portfolio," "[d]etermine your tolerance for risk and your time horizon," "[s]et long term investment objectives," "[d]etermine the asset allocation mix appropriate,"

---

[13]  FSC Securities Corporation is bound by the provisions of the WIP because it was executed by Messrs. Hembrough and Webster; both registered with FINRA as being employed by FSC Securities Corporation and list the Exton Address as a "Branch Office" of FSC Securities Corporation (Declaration of Arnold Lakind, ¶¶ 4 and 5, Exhibits C, pp. 1 and 3, D, pp. 1 and 3). There can be no dispute regarding Mr. Hembrough's ability to contractually bind FSC Securities Corporation because Defense Exhibit K authorizes Mr. Hembrough to act on behalf of FSC Securities Corporation.  Specifically, page 1 of Defense Exhibit K states that the "undersigned acts on behalf of the Adviser (defined as FSC Securities Corporation)," who, on page 13, is identified as Mr. Hembrough (the signatory to the WIP).  Furthermore, as the Wharton Business Group does not possess any of the required licenses to perform the services contained in the WIP (Complaint, ¶¶ 155 to 161), it could not have operated independently of FSC Securities Corporation, which holds all of the necessary licenses (Complaint ¶86).

"[d]etermine the investment methodology used with regard to manager selection, portfolio reviews, performance measurement, rebalancing and changes to policy," and "[i]mplement our decisions." (Defense Exhibit I, p. 2).

The WIP contains a chart that lists a proposed asset allocation, but allows ranges so that FSC Securities Corporation, through its branch office, Wharton, may rebalance the portfolio. It limits the portion of the portfolio that any manager may manage and requires that "[t]he managers selected within each asset class will have consistently outperformed (a) the unmanaged index," or be replaced (Defense Exhibit I, p. 4). Addendum II to the WIP states, among other things, that investment managers have the duty of:

> Investing the Plan's assets with the care, skill, prudence and diligence that a prudent professional investment manager, familiar with such matters and acting in a like capacity, would use in the investment of such assets.
>
>         *                   *                  *
>
> Informing Inductotherm of all significant matters pertaining to the investment of the Plan's assets.

The WIP thus anticipates that the Wharton Business Group, and therefore FSC Securities Corporation, has discretionary authority as described in 29 U.S.C. §1002 (21)(A)(i) and (iii), and renders investment advice as described in 29 U.S.C. §1002(21)(A)(ii) and 29 C.F.R. §2510-3.21.

Defendants IRS Form 5500 (Defense Exhibits F and G) identify Financial

Service Corporation (which Defendants admit is intended to refer to FSC Securities

Corporation) as providing investment management services to the Plan for years 2006

and 2007.

Third, the "FSC Investment Agreement," (executed between FSC Securities

Corporation and the Indel Defendants) in title ("[I]nvestment Advisory Client Service

Agreement") and content, supports a finding of fiduciary status. Specifically, Section

8 of the agreement states:

> Pension, retirement, profit sharing and other plans governed by ERISA,
> or any other Clients should not rely on advice from Adviser or IAR as
> investment advice in relation to any assets **except those assets actually
> placed in a program under this Agreement or subject specifically to
> an investment advisory contract.**  ADVISER CANNOT AND WILL
> NOT ACCEPT THE LEGAL STATUS OF INVESTMENT ADVISER
> OR FIDUCIARY FOR ANY ASSETS OF THE CLIENT OUTSIDE OF
> A PROGRAM SUBJECT TO AN ADVISORY AGREEMENT.
> **(emphasis added.)**

(Defense Exhibit K, p. 7).  Therefore, the FSC Defendants acknowledge their role as

an advisor with regard to assets "actually placed in a program under this Agreement"

are advisors with regard to "assets actually placed in [the] program."

Moreover, ERISA mandates that the definition of fiduciary is to be liberally

construed. See Thomas, Head & Greisen Employees Trust v Buster, 24 F.3d 1114 (9th

Cir. 1994) (Court finds fiduciary status based upon functions nearly identical to those

outlined in the WIP); Consolidated Beef v New York Life Ins. Co., 949 F.2d 960, 964

(8th Cir. 1991) cert. den. 503 U.S. 985 (1992) and Haddock v Nationwide Financial

Services, Inc., 419 F. Supp. 2d 156, 164 (D. Conn. 2006).

Even if the FSC Defendants' role were limited to recommending investments,

they are still fiduciaries when a beneficiary routinely follows those recommendations.

See e.g. Pension Fund Mid Jersey Trucking Industry Local 701 v Omni Funding

Group, 731 F. Supp. 161 (D. N.J. 1990); Stanton v. Shearson Lehman/American

Express, 631 F.Supp. 100 (N.D. Ga. 1986); and Procacci v Drexel Burnham Lambert,

Inc., C.A. No. 89-0555, 1989 WL 121984 (E.D. Pa., Oct. 16, 1989) (Appendix 7).

Since the FSC Defendants have "discretionary authority", "render investment

advice" and/or have "discretionary responsibility", 29 U.S.C. §1002(21)(A), they

qualify as "fiduciaries."

The Indel Defendants also argue that the FSC Defendants are not an

"investment manager" to the Plan as defined in 29 U.S.C. §1002(38) because they did

not execute a written acknowledgment of fiduciary status, which is purportedly

required under 29 U.S.C.§1002(38) (Db20 to Db21). However, receipt of an

acknowledgment does not determine whether one is a fiduciary; rather, if received,

the acknowledgment might, under certain circumstances, relieve the Plan sponsor,

Indel, Inc., for liability for the misconduct of the delegee, the FSC Defendants.

Procacci supra, 1989 WL 121984, 4-5.

C.  **Indel's Decision to Retain FSC Securities Corporation was a Breach of Fiduciary Duty**

The test of the Indel Defendants' conduct, as they note, is process driven. At the pleading stage, an ERISA plaintiff cannot be required to describe precisely how a defendant's conduct was unlawful; knowledge of specifics resides with the defendant. Braden, supra. It would be inappropriate to dismiss this Complaint without affording Plaintiffs the opportunity to undertake discovery. Id.

Plaintiffs have, however, plead a plausible claim of misconduct. Information publicly available from the SEC, the Complaint at ¶92 alleges, revealed that FSC Securities Corporation had (1) made false statements to the SEC or CFTC; (2) violated SEC and CFTC regulations; (3) been assessed civil penalties; (4) made false statements to regulatory authorities, and so on. Hewitt and State Street, the FSC Defendants' predecessors, had unblemished regulatory records (Complaint, ¶93).

In May 1999, FSC Securities Corporation was fined by the State of Florida for failing to register seven of its branch offices with the State (Declaration of Arnold Lakind ¶14, Exhibit M, p. 29 to 30). In January 2007, FSC Securities Corporation was again fined and censured by the State of Florida for transacting business through unregistered locations (Declaration of Arnold Lakind ¶16, Exhibit O, p. 43).

In June 2005, FSC Securities Corporation was fined and censured by the

National Association of Security Dealers for maintaining revenue sharing programs in which participating mutual funds paid a fee in return for preferential marketing and distribution access to the firm. (Declaration of Arnold Lakind ¶14, Exhibit M, p. 13). In 1998, it was fined by the State of Connecticut for transacting business in that state through an unregistered branch office. (Declaration of Arnold Lakind ¶16, Exhibit O, p. 56). Also in 1998, the SEC censured and fined this company for failing to adequately supervise the principal of one of its branch offices, who recommended unsuitable securities. (Declaration of Arnold Lakind, ¶ 16, Exhibit O, p. 58).

In addition, a review of FSC's Form ADV, filed with the SEC, would have revealed that FSC Securities Corporation had only limited experience managing retirement plans. As stated in its ADV, at a maximum, only 10% of its clients are pension or profit sharing plans (Declaration of Arnold Lakind ¶15, Exhibit N, p.2).

In <u>Glaziers and Glassworkers Union Local No. 252 Annuity Fund</u>, et.al. v. <u>Newbridge Securities, Inc. et. al.</u>, <u>supra</u>, 93 <u>F.3d</u> 1171, this Circuit ruled that even the failure to disclose a modest regulatory infraction could be a breach of a fiduciary duty, *ipso facto,* a fiduciary's decision to hire an investment manager with a host of far more egregious regulatory violations must also be a violation of a fiduciary duty.

Assuming these facts to be true and drawing all inferences in favor of the non-moving party, Plaintiffs have stated a "plausible" claim, <u>Ashcroft</u>, <u>supra</u>, that the

Indel Defendants' investigation fell short of fulfilling the fiduciary duty characterized as "the highest known to the law." Braden, supra, 588 F.3d at 598. Such a claim is not in any event, amenable to resolution on a motion to dismiss.

POINT V

**INDUCTOTHERM BREACHED ITS FIDUCIARY DUTY WHEN IT RETAINED THE WHARTON BUSINESS GROUP**

The analysis in Point V above applies with equal force to the decision of the Indel Defendants to retain the Wharton Business Group, since it is a branch office of FSC Securities Corporation (Complaint ¶175).

POINT VI

**PLAINTIFFS HAVE ALLEGED A CLAIM UNDER 29 U.S.C. §1105(a), THAT THE INDEL DEFENDANTS ARE LIABLE FOR THE FIDUCIARY BREACHES OF THE AIG DEFENDANTS**

Pursuant to 29 U.S.C. §1105(a)

In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary . . . in the following circumstances:

(1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

(2) if, by his failure to comply with section 1104(a)(i) of this title in the administration of specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach.

The Indel Defendants are liable to Plaintiffs on two independent grounds, one under

29 U.S.C. §1105(a), and the other under 29 U.S.C. §1109(a).

29 U.S.C. §1105(a) creates joint and several liability for knowing participation

or facilitation of a fiduciary breach. In three ways, the Indel Defendants violated 29

U.S.C. §1105(a).  First, Plaintiffs allege that Defendants' communications to the

Plaintiff class concealed the role of FSC Securities Corporation; misrepresented that

the Plan's assets were conservatively invested; misrepresented the Plan's 2008

performance relative to wrongfully selected benchmarks; exaggerated the diligence

with which Wharton monitored investment activity; and concealed, from Plan

participants, the relationship among the AIG affiliates (Complaint, Count XIV, ¶¶4

to 8).  "Defendants," the Complaint continues, "knowingly participated in and/or

attempted to conceal the breaches of fiduciary duties" on the part of the AIG

Defendants (Complaint, Count XIV, ¶10).  This misconduct violates 29 U.S.C.

§1105(a)(1).

In their brief, Defendants do not argue that their communications to Plan

participants were not misleading.  Instead, they focus on the Form 5500 they filed

with the IRS as disclosing the role of FSC Securities Corporation (Db27). Defendants

do not cite a single case that holds that a Plan participant is deemed to be aware of the

Trustee's tax filings.  Nor do Defendants contend that the IRS, the Plan participants,

or anyone else was informed of the relationships among the AIG affiliates. Defendants simply fail to respond to the allegations of Count XIV.

Second, Plaintiffs contend that the Indel Defendants violated 29 <u>U.S.C.</u> §1104(a) by selecting the FSC Defendants as investment managers. <u>See</u>, Point IV above. 29 <u>U.S.C.</u> §1104(a) requires a fiduciary to act prudently. By acting imprudently, the FSC Defendants have violated 29 <u>U.S.C.</u> §1105(a)(2) by virtue of the Indel Defendant's failure to comply with 29 <u>U.S.C.</u> §1104(a).

There is a third reason why the Indel Defendants are liable for all fiduciary violations. At page 20 of their brief, Defendants state that "the Plan does not have an investment manager as defined in ERISA 3(38)". If that is, in fact determined to be true, than the responsibility for all violations of the fiduciary duties of prudence, loyalty and the like remains with the Indel Defendants. 29 <u>U.S.C.</u> §1109. Under certain limited circumstances, if an "investment manager" is appointed in accordance with 29 <u>U.S.C.</u> §1002(38) (ERISA §3(38)), the appointing fiduciary may be relieved of liability for any wrongdoing of the appointee investment manager. The Indel Defendants deny that they had an investment manager and therefore they remain responsible for all misdeeds associated with Plan investments.

Even had an investment manager been appointed, if the appointing fiduciaries (i.e. the Indel Defendants) fail to meet the technical requirements of 29 <u>U.S.C.</u>

§1002(38) when appointing the manager (i.e., the FSC Defendants), then the non-compliant appointment, this Court has held, does not relieve the appointing fiduciary of liability. See, Procacci v. Drexel Burnham Lambert, Inc., supra, 1989 WL 121984, * 4 to 5 (Appendix 7). The Court there wrote:

> In my view, defendants' position is premised on a fundamental misconception of the interrelationship between "investment manager" status, "fiduciary" status and ERISA liability. The purpose of section 1002(38) [ERISA 3(38)], which permits delegation of trustee authority to investment managers, is to allow the named trustees to insulate themselves from ERISA liability for the acts of the investment manager, not to protect fiduciaries from liability for their own misconduct. See 29 U.S.C. § 1105(d)(1). Therefore, the lack of a proper delegation under section 1002(38), while it may leave the trustee open to ERISA liability, does not insulate the investment manager from ERISA liability.

In the absence of a fully compliant appointment, the Indel Defendants remain liable for all losses resulting from Plan mismanagement.

Contrary to the Indel Defendants' assertion, Plaintiffs allege reliance (Complaint, Count XIV, ¶10) and damages (Compliant, Count XIV, ¶11). Plaintiffs seek disgorgement of profits on behalf of the Plan, LaRue, supra, 552 U.S. at 248, and Harris Trust and Savings Bank v. Solomon Smith Barney, Inc., 530 U.S. 238, 250 (2000) (plaintiff may maintain action for disgorgement), and restoration of diminished benefits on behalf of those who retired, Graden, supra, 496 F.3d at 291, and Harzewski, supra, 489 F.3d at 805, but not extracontractual damages. Finally, Defendants' reliance upon Ackerman v Warnaco, Inc., 55 F.3d 117, 124 (3d.Cir.

1997) is misplaced.  The Court there did not hold that damages were unavailable; it held that damages, other than those permitted by statute, were unavailable.  The damages sought here are authorized by statute.

Therefore, the Indel Defendants are liable (1) under 29 U.S.C. §1105(a)(1) for knowing concealment; (2) under 29 U.S.C. §1105(a)(2) for their poor fiduciary selection, and (3) if the Indel Defendants retained investment management authority, as they claim, (3) under 29 U.S.C. §1109 for breach of their own responsibilities which are described in Points I, II,  III and IV of this brief and Points III, IV and V of Plaintiffs' brief in response to the FSC Defendants' Motion to Dismiss.

## POINT VII

### THE PLAN FAILS TO ALLOCATE FIDUCIARY RESPONSIBILITIES

Plaintiffs acknowledge that under Curtiss Wright Corp. v Schoonejongen, 514 U.S. 73 (1995), the Plan provision allocating responsibilities, while brief, is not unlawful.  Therefore, Plaintiffs do not oppose dismissal of Count XV.

## POINT VIII

### COUNT XVI OF PLAINTIFFS' COMPLAINT, INSOFAR AS IT SEEKS EQUITABLE RELIEF AS A CONSEQUENCE OF ALLEGATIONS OF DEFENDANTS' MISCONDUCT INCORPORATED BY REFERENCE INTO THIS COUNT, STATES A CAUSE OF ACTION

Count XVI of Plaintiffs' Complaint incorporates by reference the allegations

538556.2                                48

of the balance of the Complaint and seeks an equitable remedy. A complaint is to be viewed as a whole and not parsed paragraph by paragraph. Braden supra 588 F.3d at 594. By virtue of incorporating other provisions of the Complaint, this Count alleges a cause of action.

## POINT IX

### GIVEN THE STRENGTH OF THE ERISA CLAIMS, PLAINTIFFS WILL VOLUNTARILY DISMISS THEIR STATE LAW CLAIMS

Count XVII of Plaintiffs' Complaint sets forth claims for fraudulent concealment, under state law, alleging that the Indel Defendants failed to disclose: (a) that the transfer of Plan assets from the Vanguard Fund to the SunAmerica Money Market Fund resulted in the Plan being charged excessive fees; (b) the relationship among the various AIG entities; (c) the true risk of the investments in the Plan; (d) appropriate benchmarks by which to monitor Plan performance; (e) the violations of law committed by the various AIG affiliates; and (f) the true identity of persons responsible for Plan management (Complaint, Count XVII, ¶2).

Under ERISA, if a state law claim "relates to" an ERISA plan, then it is expressly preempted. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45 to 46, (1987). A claim "relates to" an ERISA plan and is expressly preempted if allowing the claim to go forward would thwart the statutory objectives of ERISA. See California Division of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc., 519

U.S. 316, 330 (1997). Notably absent from Defendants' motion is any explanation of how prosecution of a common law concealment claim "would thwart the statutory objectives of ERISA."[14]

The Third Circuit Court of Appeals in United Wire, Metal and Machine Health and Welfare Fund, et al. v. Morristown Memorial Hospital, 995 F.2d 1179 (3d Cir. 1993), aptly described how a state law relates to an ERISA Plan. There the court wrote:

> A rule of law relates to an ERISA plan if it is specifically designed to affect employee benefit plans, it if singles out such plans for special treatment, or if the rights and restrictions it creates are predicated on the existence of such a plan.
>
>       *                *              *
>
> This does not end our inquiry, however. A state rule of law may be preempted even though it has no such direct nexus with ERISA plans if its effect is to dictate or restrict the choices of ERISA plans with regard to their benefits, structure, reporting and administration, or if allowing states to have such rules would impair the ability of a plan to function simultaneously in a number of states. Id at 1192 to 1193.

---

[14]    A New Jersey District Court has recently held that New Jersey state law claims for fraud are not preempted under ERISA, see Mass. Mutual Life v. Marinari, CIV. 07-2473 (FLW), 2009 WL 5171862, * 9 (D. N.J. Dec. 29, 2009), See also, Beye v. Horizon Blue Cross Blue Shield of New Jersey, 568 F.Supp. 2d 556, 569 (D.N.J. 2008) (pre-emption does not apply to a negligent misrepresentation claim if that claim can be evaluated "without referring to the terms of the plan" or to the fraud claim if it does not "require the court to determine whether the plaintiff was due benefits under the Plan").

Relying on its holding in <u>United Wire</u>, <u>id</u>, the Third Circuit in <u>Glaziers and Glassworkers Union Local No. 252 Annuity Fund, et.al. v. Newbridge Securities, Inc. et. al.</u>, <u>supra</u>, 93 <u>F.3d</u> at 1185 to 1186, reversed a District Court's preemption ruling as premature, since it was made before the requisite finding concerning the fiduciary status of the defendant. That would argue in favor of deferring any preemption analysis, at least until the arguments made by the Defendants here concerning their fiduciary status are resolved.

However, given the strength of Plaintiffs' ERISA claims, and given the acknowledged difficulty in clearly establishing a rule determining when state law claims are preempted under ERISA, see <u>Dishman v. UNUM Life Ins. Co. of Am.</u>, 269 <u>F.3d</u> 974, 980 (9th Cir.2001) ("[d]eveloping a rule to identify whether ERISA preempts a given state law ... has bedeviled the Supreme Court."), Plaintiffs agree to voluntarily dismiss Count XVII of their Complaint (Fraudulent Concealment Against All Defendants) and the Court need not engage in a preemption analysis.

## POINT X

### PLAINTIFFS DO NOT OPPOSE DISMISSAL OF THEIR RACKETEERING CLAIM WITHOUT PREJUDICE

Defendants also seek dismissal of Count XXII of Plaintiffs' Complaint, which alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). While none of the arguments advanced by the defense warrant dismissal,

Plaintiffs have identified other substantive issues with their RICO claim.  For that reason, and in order to avoid additional motion practice, Plaintiffs would not oppose the dismissal of Count XXII without prejudice and seek leave to re-allege their RICO claim.

## CONCLUSION

For all of the foregoing reasons, the motion to dismiss filed by the Indel Defendants should, except for those counts which Plaintiff concedes may be dismissed, be denied.

Respectfully submitted,

SZAFERMAN, LAKIND,
BLUMSTEIN & BLADER, P.C.

By: _____
Arnold C. Lakind

LEVY, PHILLIPS & KONIGSBERG

By: _____
Moshe Maimon