IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BORIS GOLDENBERG, REINALDO PACHEDO, ANDREW LEOW, AND GERALD COMEAU, AS REPRESENTATIVE OF A CLASS OF SIMILARLY SITUATED PERSONS AND ON BEHALF OF THE INDUCTOTHERM COMPANIES MASTER PROFITS SHARING PLAN #001, | ) ) ) ) ) ) ) ) | **HONORABLE JEROME B. SIMANDLE** |
| PLAINTIFFS, | ) ) ) | |
| VS. | ) ) ) | **CASE NO. 1:09-cv-05202-JBS-AMD** |
| INDEL, INC., INDIVIDUALLY AND A/K/A INDUCTOTHERM INDUSTRIES, INC. AND INDUCTOTHERM CORPORATION, ET AL., | ) ) ) ) | |
| DEFENDANTS. | ) ) | |

## REPLY BRIEF IN SUPPORT OF
## THE SUNAMERICA DEFENDANTS'
## <u>MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>

CRAIG CARPENITO, ESQ.

ALSTON & BIRD LLP
90 Park Avenue
New York 10016-1387
(212) 210-9400
(212) 210-9444 fax

THEODORE J. SAWICKI, ESQ.
H. DOUGLAS HINSON, ESQ.

ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309
(404) 881-7000

Attorneys for Defendants: American International Group, Inc. ("AIG"), SunAmerica Asset Management Corp. ("SAAMCO"), SunAmerica Capital Services, Inc. ("SACS"), and SunAmerica Fund Services, Inc. ("SAFS"), collectively the "SunAmerica Defendants"

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................. 1

ARGUMENT .................................................................................................... 2

   I.    COUNT XI FAILS AS AGAINST THE SUNAMERICA
       DEFENDANTS. ........................................................................................2

         A.   The SunAmerica Defendants Are Not "Parties in Interest." ...................2

         B.   Plaintiffs Have Failed to Establish a "Knowing Participation"
             Claim..........................................................................................................6

   II.   COUNT XVI DOES NOT STATE A VIABLE § 502(a)(3) CLAIM. ............................8

   III.  THE SECTION 12(a)(2) CLAIM (COUNT XIX) IS FATALLY
       FLAWED.................................................................................................10

         A.   Plaintiffs Lack Standing to Bring a Section 12(a)(2) Claim....................10

         B.   The Amended Complaint Does Not Adequately Allege That
             Defendants Solicited Plaintiffs to Purchase Securities.........................11

         C.   The "Service Fee" Was Not Omitted or Misleading. .............................11

         D.   The Plaintiffs Have Failed to Establish Loss Causation.........................13

   IV.  THE STATE LAW FRAUDULENT CONCEALMENT AND RICO
       CLAIMS IN COUNTS XVII AND XXII SHOULD BE DISMISSED
       WITH PREJUDICE...............................................................................14

CONCLUSION................................................................................................. 14

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (U.S. 2009) .................................................. 1

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ............................................... 1

*Boeckman v. A.G. Edwards, Inc.*, No. 05-658, 2007 WL 4225740 (S.D. Ill. Aug. 31, 2007).... 5, 7

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) .................................. 9

*Chao v. Johnston*, No. 06-cv-226, 2007 WL 2847548, at *2-3 (E.D. Tenn., July 9, 2007).......... 7

*Gibson v. Wells Fargo & Co.*, No. 08-4546, 2009 WL 702004 (D. Minn. Mar. 13, 2009) .......... 5

*Haddock v. Nationwide Fin. Servs., Inc.*, 419 F. Supp. 2d 156 (D. Conn. 2006).......................... 6

*Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000) ..................... 7

*Hecker v. Deere & Co.*, 556 F.3d 575, 584 (7th Cir. 2009)............................................ 7

*IATSE Local 33 Section 401(k) Plan Bd. Of Trustees v. Bullock*, No. 08-3949,
    2008 WL 4838490 (C.D. Cal. Nov. 5, 2008)............................................................ 5

*In re Morgan Stanley Information Fund Sec. Litig.*, 592 F.3d 347 (2d Cir. 2010)...................... 12

*In re Suprema Specialties Inc. Securities Litigation*, 438 F.3d at 256 (3d Cir. 2006)................. 10

*In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 234 (3d Cir. 2009).......... 8

*L.I. Head Start Child Dev. Serv., Inc. v. Frank*, 165 F. Supp. 2d 367 (E.D.N.Y. 2001) ............... 8

*Peacock v. Thomas*, 516 U.S. 349, 353 (1996).......................................................... 8

*Ruppert v. Principal Life Ins. Co.,* No. 07-CV-00344, 2009 WL 5667708, at *7
    (S.D. Iowa Nov 05, 2009)............................................................................ 6

*State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 676-77
    (D.N.J. 2009).......................................................................................... 3

**FEDERAL STATUTES**

29 U.S.C. § 1002(14) ........................................................................................ 4

29 U.S.C. § 1002(14)(A)..................................................................................... 2

**TABLE OF AUTHORITIES (Continued)**

                                                                                    Page

**FEDERAL REGULATIONS**

29 C.F.R. § 2509.75-3 ............................................................................................. 5

29 C.F.R. § 2510.3-21 ......................................................................................... 3, 5

iii

## INTRODUCTION

When viewed properly through the lens of the Supreme Court's pronouncements in *Iqbal* and *Twombly*,[1] Plaintiffs' Amended Complaint[2] states *no* plausible claims for relief against the SunAmerica Defendants – *none*.   Counts XI (alleging participation in ERISA prohibited transactions), XVI (for "appropriate equitable relief" under ERISA § 502(a)(3)), XVII (the defunct state law fraudulent concealment claim), XIX (the Securities § 12(a)(2) claim), and XXII (the defunct RICO claim) all fail on the face of the Complaint, and require dismissal.   (*See* Compl., pp. 102-03, 114-15, 118-19, 123-32.)

The prohibited transaction claims alleged in Count XI fail on their face because the SunAmerica Defendants are not "parties in interest" with regard to the challenged transactions (which also fail, for the reasons in the FSC Defendants' briefs).   The equitable relief claim in Count XVI fails to do anything other than ask for relief for other (non-existent) ERISA fiduciary breaches.   The Securities § 12(a)(2) claim fails on its face because Plaintiffs lack standing to bring the claim and because it is not sufficiently pled.   And finally, the state law and RICO claims in Counts XVII and XXII are defunct (Plaintiffs, presumably in recognition that these are dead ends, have withdrawn them), but should be dismissed by this Court with prejudice, instead of withdrawn without prejudice.

---

[1] As the Supreme Court recently clarified, it is not enough to allege "facts that are 'merely consistent with' a defendant's liability"; rather, a plaintiff must allege *facts* – not legal conclusions, not bald assertions – supporting a "*plausible*" claim for relief under *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (U.S. 2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[2] After Defendants' Motions to Dismiss were filed, Plaintiffs filed an Amended Complaint which made minor changes to the Complaint, including adding Plaintiffs.   For consistency's sake, this Reply Brief refers to the original paragraph numbers of the Complaint; however, all arguments are meant to apply to the Amended Complaint, as it is in all meaningful respects identical to the Complaint, save for additional plaintiffs and different paragraph numbers.

These claims are utterly bereft of merit and the SunAmerica Defendants should not linger on this docket a moment longer. The face of the Complaint and the law applicable thereto doom the claims alleged against the SunAmerica Defendants; thus, they are entitled to dismissal.

## ARGUMENT

### I.   COUNT XI FAILS AS AGAINST THE SUNAMERICA DEFENDANTS.

#### A.   The SunAmerica Defendants Are Not "Parties in Interest."

Count XI alleges that the SunAmerica Defendants are liable for participating in the alleged fiduciary breaches and "prohibited transactions" referenced in Counts III & IV. (Compl., Count XI; Doc. 37-6, at pp. 15-35.) Count XI fails for the same reasons that all the other alleged fiduciary breach and prohibited transaction claims fail. (*See* FSC Defendants' Reply Brief.)

Plaintiffs also contend that the SunAmerica Defendants are parties in interest under 29 U.S.C. § 1002(14)(A) (defining "party in interest" to include "any fiduciary" of the plan) because they are an affiliate of the FSC Defendants. (Doc. 37-6, at p. 31.) Specifically, Plaintiffs contend that under 29 C.F.R. § 2510.3-21, that "the term 'fiduciary' also includes affiliates of the advising fiduciary." (*Id.*) Thus, Plaintiffs argue that since the SunAmerica Defendants are "affiliates of the advising fiduciary" (presumably one or more of the FSC Defendants), the SunAmerica Defendants are themselves fiduciaries, thus making them parties in interest for purposes of the alleged prohibited transactions. The argument fails on three fronts.

First, as demonstrated in the FSC Defendants' Reply Brief at Parts III-IV (which is incorporated herein by reference), the FSC Defendants are not fiduciaries. Therefore, even if Plaintiffs' creative interpretation of the regulations was correct (it is not), the SunAmerica Defendants would not be fiduciaries in their own right or, according to Plaintiffs' interpretation, parties in interest.

Second, Plaintiffs do not allege in their Complaint that the SunAmerica Defendants are parties in interest because they are fiduciaries. Rather, Plaintiffs *only* allege that the SunAmerica Defendants are parties in interest because they received fees for providing services to the SunAmerica mutual fund at issue. (Compl., ¶¶ 110-129; Count IV ¶¶ 4-5.) When faced with the dispositive authorities demonstrating that these allegations are legally infirm, Plaintiffs do an about face and attempt to amend their Complaint by way of their Response Brief. However, Count IV must rise or fall on the allegations actually averred in the Complaint, which Plaintiffs cannot amend by way of their Response Brief. *See, e.g., State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 676-77 (D.N.J. 2009).

Third, and most fundamentally, the regulation upon which Plaintiffs rely for this argument in no way supports their position. The regulation merely provides that an investment adviser to an employee benefit plan will be deemed a fiduciary under ERISA § 3(21)(A)(ii) if such person renders investment advice to a plan and:

> (ii) such person either directly or indirectly (e.g., through or together with any affiliate) ---
>
> (A) Has discretionary authority or control . . . with respect to purchasing or selling securities or other property for the plan; . . .

29 C.F.R. § 2510.3-21. The meaning of this clause is patently clear: an affiliate will be deemed a fiduciary if the investment adviser *acts through or together with such affiliate* in exercising discretionary control or authority over the disposition of plan assets. *Id.* Nowhere does this regulation provide that the mere status as an affiliate is sufficient to deem the affiliate a fiduciary in its own right.

Indeed, such a reading would render the statutory definition of "party in interest" entirely superfluous. ERISA provides a concise definition of party in interest, which specifically

3

addresses when related corporate entities will be deemed parties in interest.  ERISA § 3(14), 29

U.S.C. § 1002(14).[3]  If, as Plaintiffs contend, any affiliate of a mutual fund in which a plan

invests is a fiduciary, and thus a "party in interest," then there would be no reason to define the

term to encompass only certain related entities in the statute.  The regulation's plain language

---

[3] The statute defines a party in interest as:

(14) The term "party in interest" means, as to an employee benefit plan—

   (A) any fiduciary (including, but not limited to, any administrator, officer, trustee, or custodian), counsel, or employee of such employee benefit plan;

   (B) a person providing services to such plan;

   (C) an employer any of whose employees are covered by such plan;

   (D) an employee organization any of whose members are covered by such plan;

   (E) an owner, direct or indirect, of 50 percent or more of--

      (i) the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of a corporation.

      (ii) the capital interest or the profits interest of a partnership, or

      (iii) the beneficial interest of a trust or unincorporated enterprise, which is an employer or an employee organization described in subparagraph (C) or (D);

   (F) a relative (as defined in paragraph (15)) of any individual described in subparagraph (A), (B), (C), or (E);

   (G) a corporation, partnership, or trust or estate of which (or in which) 50 percent or more of--

      (i) the combined voting power of all classes of stock entitled to vote or the total value of shares of all classes of stock of such corporation,

      (ii) the capital interest or profits interest of such partnership, or

      (iii) the beneficial interest of such trust or estate, is owned directly or indirectly, or held by persons described in subparagraph (A), (B), (C), (D), or (E);

   (H) an employee, officer, director (or an individual having powers or responsibilities similar to those of officers or directors), or a 10 percent or more shareholder directly or indirectly, of a person described in subparagraph (B), (C), (D), (E), or (G), or of the employee benefit plan; or

   (I) a 10 percent or more (directly or indirectly in capital or profits) partner or joint venturer of a person described in subparagraph (B), (C), (D), (E), or (G). ***

29 U.S.C. § 1002(14).

4

provides that an affiliate becomes a fiduciary (and thus a party in interest) only when the affiliate is actually involved in the exercise of discretion over a plan's assets.

The authorities Plaintiffs cite are not to the contrary. For example, *Gibson v. Wells Fargo & Co.*, No. 08-4546, 2009 WL 702004 (D. Minn. Mar. 13, 2009), does not even address the issue of whether an affiliate is a fiduciary or a party in interest under ERISA § 3(14) or 29 C.F.R. § 2510.3-21; thus, it is unclear how this case is supportive of their position.[4] The Advisory Opinion cited by Plaintiffs also does not address application of ERISA § 3(14) or 29 C.F.R. § 2510.3-21, nor does it otherwise analyze the fiduciary status of an affiliate. And the Interpretive Bulletin cited by Plaintiffs (29 C.F.R. § 2509.75-3) is also irrelevant. It merely states the obvious – if a mutual fund or its adviser becomes a party in interest as defined by the statute for reasons other than the plan's investment in the mutual fund at issue, ERISA § 3(21)(B) (the mutual fund exemption from the definition of "fiduciary") would not, then, provide an exemption.[5]

Finally, Plaintiffs' efforts to distinguish Defendants' authorities also fall flat. For example, *IATSE Local 33 Section 401(k) Plan Bd. Of Trustees v. Bullock*, No. 08-3949, 2008 WL 4838490 (C.D. Cal. Nov. 5, 2008) and *Boeckman v. A.G. Edwards, Inc.*, No. 05-658, 2007 WL 4225740 (S.D. Ill. Aug. 31, 2007) both support the assertion that the provision of ancillary services to a mutual fund company does not render the service providers parties in interests –

---

[4] Although the *Gibson* court does not analyze the party in interest status of any of the defendants, because this case involved an investment in a proprietary mutual fund (*i.e.*, the employer's plan was investing in its own mutual funds) the funds' investment adviser and underwriters would be parties in interest under ERISA §3(21) due to the ownership interest of the employer. That is not the situation we have here; Inductotherm/Indel do not have their own mutual funds.

[5] Plaintiffs' argument that Defendants' reading of the statute would render PTE 77-4 superfluous is frivolous. As noted above, an affiliate can become a party in interest under ERISA § 3(14) as a result of certain ownership interests or under 29 C.F.R. § 2510.3-21 when an investment adviser exercises discretionary control over plan assets in concert with or through an affiliate.

which is precisely why these cases were cited. Moreover, Plaintiffs' assertion that these cases are distinguishable because an independent fiduciary was making the investment decisions in those cases is also without merit since, as demonstrated above, that is precisely the situation here: it is the Trustees, not the FSC Defendants, that have the discretionary authority to invest the Plan's assets. Plaintiffs' effort to distinguish *Hecker* and *Boeckman* on the additional grounds that the plaintiffs in those cases controlled the investment of the plan's assets (Doc 37-6, p. 34) is also unavailing. As noted in Defendants' moving papers and herein, the Trustees controlled the investment of the Plan's assets—not the FSC Defendants.[6]

### B.    Plaintiffs Have Failed to Establish a "Knowing Participation" Claim.

Plaintiffs argue that they have properly pled claims against the SunAmerica Defendants and AIG. As set forth in Parts III-IV of the FSC Defendants' Reply Brief, which is incorporated herein by reference, because the FSC Defendants are not fiduciaries and because the SunAmerica Defendants are not parties in interest, their alleged "participation" in the ERISA claims alleged in the Complaint necessarily fails as to these Defendants.

Plaintiffs next argue that they have stated a proper "knowing participation" claim against AIG because they alleged in the Complaint that AIG was the ultimate recipient of the fees collected by the SunAmerica Defendants. Although Plaintiffs seem to initially concede that to state such a claim they must allege a "knowing participation," they argue that it would be

---

[6] Plaintiffs also overstate the holding in *Haddock v. Nationwide Fin. Servs., Inc.*, 419 F.Supp.2d 156 (D. Conn. 2006) as the court merely held that there was an *issue of fact as* to whether the "revenue sharing payments" that were being paid to the Nationwide were plan assets. *Id.* at 171. Moreover, the court's statement that the existence of plan assets was not dispositive of the claim (Doc. 37-6, p. 34) was made in relation to the breach of fiduciary duty claim *not* the prohibited transaction claim. In any event, even if Plaintiffs' reading of this case were accurate (it is not), *Haddock* stands in stark contrast to the weight of authority on this issue (including the DOL's position as stated in *Hecker*). *E.g., Hecker v. Deere & Co.*, 556 F.3d 575, 584 (7th Cir. 2009); *Boeckman*, 2007 WL 4225740, at *3; *Ruppert v. Principal Life Ins. Co.*, No. 07-CV-00344, 2009 WL 5667708, at *7 (S.D. Iowa Nov 05, 2009).

inappropriate to dismiss their claims at the motion to dismiss stage because "knowledge" is an inherently factual inquiry.  Plaintiffs' argument misses the mark.

The question raised by Defendants' Motion to Dismiss is not whether Plaintiffs can ultimately "prove" the requisite knowledge; but rather, whether Plaintiffs have *pled* proper factual allegations that AIG knowingly participated in the alleged prohibited transactions/breaches of fiduciary duties in their Complaint.  With regard to this latter issue, the answer is at once clear—the Complaint is bereft of any such allegations.  Recognizing this fatal flaw, Plaintiffs argue—*without citing to any authority whatsoever*—that they only need to allege "knowledge" when the claim involves a purchase of property for value.  Plaintiffs are wrong.

Nothing in *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000) states that its holding permitting claims only against persons who "knowingly participate" in a prohibited transaction is limited to the purchase of property:

> It also bears emphasis that the common law of trusts sets limits on restitution actions against defendants other than the principal 'wrongdoer.' Only a transferee of ill-gotten trust assets may be held liable, and then only when the transferee (assuming he has purchased for value) knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust. Translated to the instant context, the transferee must be demonstrated to have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful. Those circumstances, in turn, involve a showing that the plan fiduciary, with actual or constructive knowledge of the facts satisfying the elements of a § 406(a) transaction, caused the plan to engage in the transaction.

*Harris Trust*, 530 U.S. at 251. Although the Court references "purchased for value," this merely reflects the fact that the *Harris Trust* case involved a transfer of property.  There is simply no principled reason for imposing what would amount to strict liability for a transfer of cash assets versus a knowledge requirement for the purchase of property.  Indeed, Defendants have not

located a single case that has adopted Plaintiffs' reading of *Harris Trust*[7] and, tellingly, Plaintiffs fail to point to any authority to support their position. Because Plaintiffs have failed to plead facts showing that AIG knowingly participated in the alleged prohibited transactions, their claims must be dismissed.

For these reasons, Plaintiffs have not stated a viable claim against the SunAmerica Defendants, and thus the Court should dismiss Count XI, with prejudice.

## II.   COUNT XVI DOES NOT STATE A VIABLE § 502(a)(3) CLAIM.

Plaintiffs' Response Brief fails to salvage their infirm "claim" in Count XVI. Plaintiffs' only defense to Defendants' legal arguments is that "[b]y virtue of incorporating other provisions of the Complaint, this Count alleges a cause of action." (Doc. 37-6, p. 56.) But Plaintiffs fail to cite any authority supporting their position that this impermissible "shotgun" pleading style – incorporating all prior paragraphs in the complaint, whether relevant or not, whether proper factual allegations or irrelevant legal conclusions, into every cause of action pled – somehow suffices to state a claim under ERISA § 502(a)(3). (Doc. 37-6, p. 56.) In fact, it does not.

As stated in SunAmerica Defendants' opening brief, the "appropriate equitable relief" provided for in § 502(a)(3) does not exist in a vacuum; a plaintiff must establish an ERISA violation before its provisions for relief come into play. *See Peacock v. Thomas*, 516 U.S. 349, 353 (1996) ("Section 502(a)(3) 'does not, after all, authorize "appropriate equitable relief" at large, but only "appropriate equitable relief" for the purpose of "redress[ing any] violations or ... enforc[ing] any provisions" of ERISA or an ERISA plan.' ") (quoting *Mertens v. Hewitt Assocs.*,

---

[7]   Numerous courts, however, have applied the knowing participation requirement from *Harris Trust* to claims involving the misuse of plan assets. *E.g., Chao v. Johnston*, No. 06-cv-226, 2007 WL 2847548, at *2-3 (E.D. Tenn., July 9, 2007) (applying knowing participation requirement to impermissible loan of plan assets); *L.I. Head Start Child Dev. Serv., Inc. v. Frank*, 165 F. Supp. 2d 367 (E.D.N.Y. 2001) (applying knowing participation standard to claim seeking disgorgement of attorney fees paid by plan).

508 U.S. 248, 253 (1993)); *In re Unisys Corp. Retiree Med. Benefits ERISA Litig.*, 579 F.3d 220, 234 (3d Cir. 2009) ("*Where a plaintiff establishes a breach of fiduciary duty*, the plaintiff is entitled to equitable relief pursuant to ERISA § 502(a)[(3)] … .") (emphasis added).  For all the reasons set forth in the FSC Defendants' and SunAmerica Defendants' briefs, Plaintiffs' Complaint fails to establish an ERISA violation.

Further, the claim simply does not state a plausible claim for relief under *Iqbal* and *Twombly*.  The sole case cited by Plaintiffs in support of their contention that Count XVI should survive is the Eighth Circuit's decision in *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009).  Besides being non-precedential in this Court, the actual holding from *Braden* is that "the complaint should be read as a whole, not parsed piece by piece to determine whether each *allegation* [note, the *Braden* court did not say each claim for relief], in isolation, is plausible." *Id.* at 594 (emphasis added).  *Braden* does *not* stand for the proposition that plaintiffs are excused from pleading *factual allegations* supporting a viable *cause of action*, nor that courts need not bother reviewing the paragraphs in a claim to determine whether the facts alleged (if any) support a plausible claim for relief.[8]  Here, there are no allegations in Count XVI, fact or otherwise, that even purport to describe the basis of a plausible claim for relief.  *Braden* simply does not salvage Count XVI.

Count XVI is a remedy request that does not stand on its own two feet.  It would be exactly the same functionally if the remedies requested in Count XVI were incorporated into the "Wherefore" clause rather than denoted a "Count."  It is unsupported by any factual allegations establishing a right to relief separate from the claims pled elsewhere in the Complaint.  Thus, it is

---

[8]  To the extent *Braden* can bear such a broad reading as Plaintiffs propose, Defendants respectfully submit that such a holding departs from governing Supreme Court precedent (*Iqbal* and *Twombly*) and should not be followed.

9

subject to dismissal to the extent Plaintiffs intend for it to be a stand-alone cause of action.

## III.   THE SECTION 12(a)(2) CLAIM (COUNT XIX) IS FATALLY FLAWED.

The SunAmerica Defendants established in their opening brief that Plaintiffs lack standing to assert a claim under Section 12(a)(2) and have failed to allege that any Defendant is a statutory seller under Section 12(a)(2). (Doc. 16, pp. 15-17.) The opening brief also established that Plaintiffs' 12(a)(2) claim further fails because it does not allege a misrepresentation or omission or that such misrepresentation or omission caused a loss. (*Id.* at 17-18.)

### A.   Plaintiffs Lack Standing to Bring a Section 12(a)(2) Claim.

Plaintiffs assert in their Response Brief that "the case law is clear that a plaintiff who has purchased pursuant to a prospectus has clearly met § 12(a)(2)'s standing requirement," but Plaintiffs completely fail to address Defendants' argument that Plaintiffs have not pleaded that any of them actually **purchased** an interest in a security.

The only case relied on by Plaintiffs in support of their assertion that they have standing is distinguishable. Plaintiffs cite *In re Suprema Specialties Inc. Securities Litigation*, 438 F.3d at 256 (3d Cir. 2006), as an example of a case where a pension plan was one of the plaintiffs and the Court let it proceed past the motion to dismiss stage on its 12(a)(2) claim. In *Suprema*, however, the pension fund plaintiff alleged that it purchased newly-issued shares of stock in a public offering of the company in which it invested. *Suprema*, 438 F.3d at 267. Thus, the *Suprema* case is distinguishable. First, the pension fund itself was the plaintiff – not the individual participants in the fund. Second, the pension fund actually alleged that it purchased shares of stock in the offering. Here, contrary to *Suprema*, Plaintiffs have not alleged, nor can they allege, that they **purchased** shares of the SAMMF. (*See also* discussion in FSC Defendants' Reply Brief at Part IX.B.)

10

Thus, Plaintiffs lack standing to pursue their Section 12(a)(2) claim.

**B.    The Amended Complaint Does Not Adequately Allege that Defendants Solicited Plaintiffs to Purchase Securities.**

Plaintiffs assert that they have adequately alleged that the SunAmerica Defendants solicited Plaintiffs to purchase shares of the SAMMF by pleading that the SunAmerica Defendants drafted the SAMMF Prospectus.[9]  (Doc. 37-6, p. 61.)  In reality, Plaintiffs do not allege that the SunAmerica Defendants drafted the SAMMF Prospectus – instead, they allege that, to the extent they did, they violated Section 12(a)(2).  (*Id.*)  Alleging that a party is liable to the extent it drafted a document is different from alleging that the party actually drafted that document.  Regardless, a party other than the direct seller can be subject to Section 12(a)(2) only if that party directly and actively participated in the solicitation of the immediate sale to Plaintiffs, and mere involvement in preparing a prospectus is not sufficient to establish solicitation of a sale.  (Doc. 16, p. 16.)  Accordingly, Plaintiffs have not sufficiently pleaded that any Defendant solicited a sale under Section 12(a)(2).

**C.    The "Service Fee" Was Not Omitted or Misleading.**

Contrary to Plaintiffs' assertion in their Response Brief that the SunAmerica Defendants "do not even attempt to deny that the prospectus contained an omission or misstatement" (Doc. 37-6, p. 62), the SunAmerica Defendants specifically stated in their opening brief that the allegedly omitted information was actually disclosed and was not misleading.  (Doc. 16, p. 17 & n.8.)  Plaintiffs do not dispute that the "servicing fee" was actually disclosed in the SAMMF Prospectus.  (Doc. 37-6, p. 63.)

---

[9] Plaintiffs do not contest Defendants' argument that Plaintiffs have failed to plead that any Defendant directly sold shares to Plaintiffs.

Plaintiffs argue that "[s]imply because an item is contained within the prospectus does not automatically mean it is not misleading." (Doc. 37-6, p. 63.)  Rather, Plaintiffs assert that the "threshold question" is "whether the [Defendants] had a duty to disclose" and cite to *In re Morgan Stanley Technology Fund Securities Litigation*, 643 F. Supp. 2d 366, 374 (S.D.N.Y. 2009) *aff'd*, 592 F.3d 347 (2d Cir. 2010).  (Doc. 37-6, p. 63.)  The SunAmerica Defendants agree that the Court should determine whether there was even a duty to disclose the information, which is why they asserted in their opening brief that Plaintiffs had failed to plead that there was any duty to disclose the allegedly omitted information from the table pursuant to Form N-1A or any other SEC regulations.  (Doc. 16, p. 17 n.8.)  The SunAmerica Defendants cited the very same case that Plaintiffs cite, which, importantly, granted the defendants' motion to dismiss the 12(a)(2) claim for the very reason that the Form N-1A did not require the disclosure.  *See In re Morgan Stanley Technology Fund Sec. Litig.*, 643 F. Supp. 2d at 375.  In affirming the district court's opinion in the *Morgan Stanley* case, the Second Circuit stated that "it is one thing to suggest that . . . the Funds were not prohibited from providing additional information," but "[i]t is entirely different to argue, as plaintiffs do, that defendants were required to make additional disclosures by the Form's General Instructions" that "'[t]he prospectus disclosure requirements in Form N-1A are intended to elicit information for an average or typical investor who may not be sophisticated in legal or financial matters."  *In re Morgan Stanley Information Fund Sec. Litig.*, 592 F.3d 347, 361 (2d Cir. 2010) (emphasis removed).  Plaintiffs do not allege that Form N-1A required the SunAmerica Defendants to disclose the allegedly omitted "service fee" as a line item in the table on page six of the SAMMF Prospectus.  Accordingly, Plaintiffs' 12(a)(2) claim should be dismissed for the independent reason that there was no duty to disclose this information.

Plaintiffs argue that, because the servicing fee was disclosed on page 23 instead of as a line item in the table on page six of the SAMMF Prospectus (setting forth the fees and expenses that the investor may pay), "a reasonable investor would [not] anticipate the existence of this fee." (*Id.*, pp. 63-64.)   Plaintiffs' argument fails, however, because as explained in the SunAmerica Defendants' opening brief, the table on page six contained a category entitled "Other Expenses," which included "all expenses not otherwise disclosed in the table that are deducted from the Fund's assets or charged to all shareholder accounts." (Doc. 16, p. 17 n.8.) Thus, the "servicing fee" would have been included among the "Other Expenses" listed in the table.   Accordingly, the reasonable investor did not have to "anticipate" the existence of the "servicing fee" because it was already included among the expenses in the table.   Further, because it was included in the table, it was not an "additional" fee, as Plaintiffs suggest. (*See* Doc. 37-6, p. 64.)

Because the "servicing fee" was included in the table on page six, and disclosed separately on page 23, of the SAMMF Prospectus, there was no omission or misstatement, and thus, the Court need not reach the issue whether it was material. (*See* Doc. 37-6, p. 62 (arguing that materiality is a mixed question of law and fact that will rarely be disposed of on a motion to dismiss).)

**D.      The Plaintiffs Have Failed to Establish Loss Causation.**

Plaintiffs assert that they have successfully alleged loss causation because the allegedly hidden "service fee" reduces the return that the Fund will provide to the investor. (Doc. 37-6, p. 65.) Plaintiffs' argument presumes that the fee was "hidden," but, as explained above, it was not.   Because there was no omission or misstatement, there was no Section 12(a)(2) violation that could have caused any compensable loss.

13

IV.   **THE STATE LAW FRAUDULENT CONCEALMENT AND RICO CLAIMS IN COUNTS XVII AND XXII SHOULD BE DISMISSED WITH PREJUDICE.**

Plaintiffs' brief offers to voluntarily dismiss Plaintiffs' state law fraudulent concealment claim and RICO claim, but the claims should be dismissed *with* prejudice because they are legally meritless, for the reasons set forth in Defendants' opening brief.  (Doc. 16, pp. 9-14; Doc. 18, p. 34.)  The specter of their reappearance should not be left to shadow the docket here.

**CONCLUSION**

For the reasons set forth above and in Defendants' opening brief, the Complaint fails to state any viable claim for relief against the SunAmerica Defendants.   The SunAmerica Defendants respectfully request an Order from the Court dismissing all claims alleged against them.

Dated:  April 9, 2010.

Respectfully submitted,

**ALSTON & BIRD LLP**

s/ Craig Carpenito_____
Craig Carpenito (CC-1686)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Phone: (212) 210-9400
Fax: (212) 210-9444
Email: craig.carpenito@alston.com

Theodore J. Sawicki, Esq. (*pro hac vice*)
H. Douglas Hinson, Esq. (*pro hac vice*)
ALSTON & BIRD LLP
1201 West Peachtree St.
Atlanta, GA  30309
Phone: (404) 881-7000
Fax: (404) 881-7777
Email: tod.sawicki@alston.com
Email: doug.hinson@alston.com

***Counsel for SunAmerica Defendants:***  American
International Group, Inc., SunAmerica Asset
Management Corp., SunAmerica Capital Services,
Inc., and SunAmerica Fund Services, Inc.