# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

### Docket No. 1:09-cv-05202-JBS-AMD

BORIS GOLDENBERG, REINALDO PACHECHO, ANDREW LEOW and GERALD COMEAU, as representatives of a class of similarly situated persons and on behalf of THE INDUCTOTHERM COMPANIES MASTER PROFITS SHARING PLAN #001, Plaintiffs, vs. INDEL, INC., individually and a/k/a INDUCTOTHERM INDUSTRIES, INC. and INDUCTOTHERM CORPORATION; AMERICAN INTERNATIONAL GROUP, INC.; FSC SECURITIES CORPORATION; FINANCIAL SERVICE CORPORATION; SUNAMERICA ASSET MANAGEMENT CORP.; SUNAMERICA CAPITAL SERVICES, INC.; SUNAMERICA FUND SERVICES, INC.; WHARTON BUSINESS GROUP; HENRY M. ROWAN, JOHN H. MORTIMER, DAVID L. BRADDOCK, THOMAS P. MCSHANE, MANNING J. SMITH, LAURENCE A. KRUPNICK, AND HARRY G. TREFZ, as Trustees to the Inductotherm Companies Master Profit Sharing Plan #001; JOHN DOES 1-25 (Individuals Serving on the Board of Directors of Indel, Inc. whose names are not currently known); JOHN DOES 26-50 (Individuals Serving on the Board of Directors of Inductotherm Industries Inc. whose names are not currently known); JOHN DOES 51-75 (Individuals Serving on the Board of Directors of Inductotherm Corporation whose names are not currently known); JOHN DOES 75-125 (Members of the Committee for the Inductotherm Companies Master Profit Sharing Plan #001, whose names are not currently known); and John Does 126-200 (Other fiduciaries for the Inductotherm Companies Master Profit Sharing Plan #001 and parties whose names and identities are not presently known to Plaintiffs that were enriched by the receipt of the Plan's assets), Defendants.

## BRIEF IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND

SZAFERMAN, LAKIND,
 BLUMSTEIN & BLADER, P.C.
101 GROVERS MILL ROAD, STE 200
LAWRENCEVILLE, NJ 08648
BY: Robert L. Lakind, Esquire
Telephone: (609) 275-0400
Fax: (609) 275-4511

LEVY, PHILLIPS & KONIGSBERG, LLP
101 GROVERS MILL ROAD, STE 200
LAWRENCEVILLE, NJ 08648
BY: Moshe Maimon, Esquire
Telephone: (212) 605-6200
Fax: (212) 605-6290

Attorneys For Plaintiffs

599353.1

# TABLE OF CONTENTS

Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   The Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.   The Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    C.   The Extension of Time to Seek Amendments to Pleadings . . . . . . . . 6

    D.   The Proposed Amendments . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

              PLAINTIFFS' MOTION TO AMEND THE COMPLAINT
              SHOULD BE GRANTED BECAUSE PLAINTIFFS
              HAVE MET THE REQUIREMENTS OF RULE 15(a)

    A.   Requests ffor Leave to Amend Pursuant to
          Fed.R.Civ.P. 15(a) Should be Liberally
          Granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    B.   Defendants Cannot Satisfy Their Burden to
          Demonstrate that Leave to Amend is
          Inappropriate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    C.   Plaintiffs' Amendments Are Not Futile . . . . . . . . . . . . . . . 21

    D.   There Has Been No Undue Delay . . . . . . . . . . . . . . . . . . . . 28

    E.   There Have Been No Repeated Failures to
          Cure Deficiencies By previous Amendments . . . . . . . . . . . 30

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

# TABLE OF AUTHORITIES

## FEDERAL CASES

Bechtel v. Robinson, 886 F.2d 644 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . 18

Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . 21

Braden v. Walmart, 588 F.3d 585 (8th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . 23

In re Burlington Coat Factory Security Litigation,
    114 F.3d 1410 (3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21

Bussian v. RJR Nabisco, Inc., 223 F.3d 286 (5th Cir. 2000) . . . . . . . . . . . . . . . 24

Dole v. Arco Chemical Co., 921 F.2d 484 (3d Cir. 1990) . . . . . . . . . . . . . . . . . . 18

Foman v. Davis, 371 U.S. 178 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

GIW Industries, Inc. v. Trevor, Stewart, Burton & Jacobsen, Inc.,
    895 F.2d 729 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 28

Goldenberg v. Indel, Inc.,
    741 F.Supp.2d 618 (D.N.J. 2010) . . . . . . . . . . . . . . 2, 4, 10, 14, 23, 24, 26

Long v. Wilson, 393 F.3d 390 (3d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Unisys Savings Plan Litigation, 74 F.3d 420 (3d Cir. 1996) . . . . . . . . . 26, 28

## DOCKETED CASES

Honeywell Intern., Inc. v. Raytheon Co.,
    No. 08-3952, 2009 WL 2392884 (D.N.J. Aug. 3, 2009) . . . . . . . . . . . . . 20

Reszler v. Travelers Property Casualty Insurance,
    No. 06-586, 2007 WL 1035024 (D.N.J. Apr. 3, 2007) . . . . . . . . . . . . . . . 20

Tibble v. Edison Intern., No. 07-5359, 2010 WL 2757153 (C.D.Cal.,2010) . . . . 22

<u>Tri-County Concerned Citizens Associate v. Carr</u>,
     No. 98-4184, 2000 WL 1824172 (E.D. Pa. Dec. 12, 2000) . . . . . . . . . . . 20

## FEDERAL STATUTES

29 U.S.C. § 1106(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ERISA §404(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ERISA §404(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10, 26

ERISA §404(a)(1)(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5, 24

ERISA §406(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 9, 10

ERISA §502(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## FEDERAL RULES

Fed. R. Civ. P. 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# PROCEDURAL HISTORY

Plaintiffs, Boris Goldenberg, Reinaldo Pacheco, Andrew Loew and Gerald Comeau, as representatives of a class of similarly situated persons and on behalf of the Inductotherm Companies Master Profit Sharing Plan #001 (the "Plan"), file this brief in support of their motion to amend their First Amended Complaint in this matter.

On October 9, 2009, Boris Goldenberg, as representative of a class of similarly situated persons and on behalf of the Plan, filed a class action complaint (the "Complaint") against Indel, Inc., various entities and persons associated with Indel, Inc and the American International Group, Inc., along with several of its subsidiaries. The Complaint contained twenty-two counts, most pleading causes of action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). On December 24, 2009, Plaintiff amended the Complaint to add Plaintiffs, Reinaldo Pacheco, Andrew Loew and Gerald Comeau, who, like Mr. Goldenberg, were past or present Indel employees (the "First Amended Complaint"). Plaintiff made no other material changes to the Complaint.

Thereafter, the Defendants filed motions to dismiss all Counts of the Complaint. On March 10, 2010 Plaintiffs voluntarily withdrew Counts XV, XVII, XVIII and XXII. On September 17, 2010 this Court denied the Defendants' motion to dismiss Counts I, III, V, VI, VII, IX and XI, however it did grant

Defendants' motion to dismiss Counts II, IV, VIII, X, XII, XIII, XIV, XVI, XIX, XX and XXI.  All of the remaining Counts arise under ERISA.

Following the resolution of the motion to dismiss, Plaintiffs timely propounded discovery upon the Defendants.  As a result of information learned from papers included with Defendants' motion to dismiss and from documents provided in discovery, Plaintiffs seek leave to file a Second Amended Complaint.

## STATEMENT OF FACTS

Plaintiffs' Complaint, in substance, alleges that the Defendants mismanaged the assets of the  Inductotherm Companies Master Profit Sharing Plan #001.  Goldenberg v. Indel, Inc., 741 F.Supp.2d 618, 623 (D.N.J. 2010) (Goldenberg).  The Plan is a defined contribution Plan, maintained for the benefit of Indel employees and; which means that Plaintiffs' retirement benefits depend upon the performance of Plan investments.  The Defendants have responsibility for the investment of the assets of this ERISA plan.  Id.

### A.    The Parties

The Defendants fall into two categories: those associated with Plaintiffs' employer and the Plan sponsor; and those associated with independent companies who provided investment advice and investment vehicles to the Plan.  The first category of Defendants  includes Indel a/ka/ Inductotherm Industries, Inc. and Inductotherm Corporation ("Inductotherm")(which is the sponsor of the Plan) as

well as several entities related to Inductotherm who are responsible for the

management of the Plan. These entities include the Plan's Trustees, the Plan's

Committee, and the Board of Directors of Inductotherm (collectively "the

Inductotherm Defendants"). The Inductotherm Defendants have acknowledged

that they are Plan fiduciaries. Id at 625.

The second category of Defendants includes FSC Securities Corporation,

the Wharton Business Group ("Wharton"), American International Group, Inc.

("AIG"), SunAmerica Asset Management Corp., SunAmerica Capital Services,

Inc., and SunAmerica Fund Services, Inc., all of whom are affiliated with AIG

(collectively "the FSC Defendants")..

Wharton and FSC Securities Corporation became service providers to the

Plan when they executed the Wharton "Investment Policy Statement" and the

"FSC Securities Corporation Vision2020 Advisor, Investment Advisory Client

Services Agreement." Id at 625-26. This Court has determined that the Plaintiffs

have adequately alleged that the Wharton Business Group and FSC Securities

Corporation (collectively "FSC/Wharton") are fiduciairies.

**B.    The Complaint**

Count I of the original and the First Amended Complaint alleges that the

Inductotherm Defendants breached their fiduciary duties under ERISA

§404(a)(1)(D), which requires that Plan fiduciaries, among other things, discharge

their duties in accordance with the documents and instruments that govern the plan. This count is based in part on the Plan documents which provide that the "Investment of Contributions [to the Plan] is governed by the provisions of the Trust Agreement." Id at 630. According to the Complaint, the Inductotherm Defendants failed to adopt a Trust Agreement and thus violated ERISA §404(a)(1)(D). This Court has held that this Count states a claim for relief. Goldenberg, id at 630.

Count II alleges a violation of ERISA §406(b), which, "prohibits fiduciaries from managing the Plan in their own interests or in the interests of a party with interests adverse to the Plan." Id at 631. Plaintiffs allege that the decision of FSC /Wharton to invest Plan assets in the SunAmerica Money Market Fund ("SAMMF") was a prohibited transaction under 29 U.S.C. § 1106(b) [i.e., ERISA §406(b)] because [SAMMF] is associated with AIG, the parent corporation of the FSC Defendants. This Court has held that his Count states a claim for relief. Id at 633.

Counts V and VI also relate to FSC/Wharton's investment of Plan assets into the SunAmerica Money Market Fund. These Counts plead breaches of fiduciary duties under ERISA §§404(a)(1)(A) (Count VI) and (B) (Count V). ERISA §404(a)(1)(A) requires that fiduciaries "act with loyalty to the employee benefit plan's participants in making investment decisions," and ERISA

404(a)(1)(B) requires that fiduciaries "act with . . . prudence in making investment decisions." Id at 633.

In Count V of their Complaint, Plaintiffs allege that the FSC Defendants breached their duty of prudence by recommending that Plan assets be removed from a Vanguard Fund and invested in the SAMMF, as the latter fund charged higher fees and had lower historical returns than the comparable Vanguard fund, and because the SunAmerica Fund's investment advisor had an adverse regulatory and criminal history. Id at 633 to 34.  In Count VI, Plaintiffs contend that the only reason for the investment in the SunAmerica Fund was the Fund's relationship to the corporate parent of FSC Securities, and therefore that investment was a breach of the duty of loyalty. Id at 634. This Court has held that both counts stated claims upon which relief could be granted.  Id at 636.

Count VII relates to FSC /Wharton's investment of Plan assets into the Hussman Strategic Growth Fund ("HSGF"), a long/short fund.  With respect to this investment, "Plaintiffs claim that the FSC Defendants breached their fiduciary duty [pursuant to ERISA §404(a)(1)(D)] by recommending that the Trustees invest in the HSGF because they contend, such an investment was prohibited by the Plan's investment policy [drafted by Wharton] which forbids purchase of options and short sales." Id.  This Court has denied the FSC Defendants' motion to dismiss this claim as well.  Id at 637.

Count IX alleges a violation of ERISA §404(a)(1)(B) on the ground that "FSC Defendants breached their fiduciary duty by drafting and executing an Investment Policy that placed 80% of the Plan's assets in equities." The Complaint alleges that " a reasonably prudent fiduciary, considering the age of the Plan participants, would never have recommended that the Plan assume so much risk and would have placed more of the Plan's assets in sources of fixed income." Id 637 to 38. This Court has denied the FSC Defendants' motion to dismiss this claim. Id at 638.

Count XI seeks relief, pursuant to ERISA §502(a)(3), requiring the SunAmerica Defendants [AIG, SunAmerica Asset Management Corp., SunAmerica Capital Services, Inc., and SunAmerica Fund Services, Inc.] to disgorge the profits they made from the Plan's investment in the SunAmerica Money Market Fund." Id at 639. This Court has denied the FSC Defendants' motion to dismiss this claim as well. Id at 640.

## C. The Extension of Time To Seek Amendments to Pleadings

On November 22, 2009, the Court entered a Scheduling Order which required Plaintiffs to seek leave to amend their Complaint or to add new parties by March 11, 2011.

On January 3, 2010, Plaintiffs served their Requests for the Production of Documents on all Defendants. On February 22, 2011, the FSC Defendants

produced a number of documents, but informed Plaintiffs that their document production would thereafter proceed on a rolling basis  The Inductotherm Defendants did not make any production of documents until the evening of Friday March 4, 2011, at which time they mailed several documents to the Plaintiffs. (Declaration of Robert Lakind (hereafter "Dec RL"),  ¶ 2).

Given the incompleteness of the Defendants' productions and the need to review discovery when finally provided, Plaintiffs requested that Defendants consent to a request to the Court for an extension of time beyond the March 11, 2011 deadline which had been set as the date for filing a motion for leave to amend the First Amended Complaint.  Both Defendants refused.  On March 9, 2011, the Court granted Plaintiffs' request for an extension of time to file their motion to amend the First Amended Complaint.  (Dec RL, ¶ 3).

In their discovery productions, all Defendants designated large amounts of documents as confidential (including many of which are in the public domain) and others as "for attorneys eyes only."   Plaintiffs were of the view that, with the exception of a select few pages, none of the published articles or publicly filed documents are entitled to any form of protection, but Plaintiffs were concerned that reference to these documents in any future amended complaint would run afoul of the Protective Order entered in this matter.  Accordingly, Plaintiffs sought the Court's advice as to how best to proceed.  (Dec RL, ¶ 4).

On March 16, 2011, the Court issued an order implementing a procedure

which would facilitate the filing of Plaintiffs' motion for leave to file a Second

Amended Complain without running afoul of the Protective Order.  This

procedure required that, on March 31, 2011, Plaintiffs were to serve a copy of

their proposed Second Amended Complaint along with the motion for leave to

amend  on the Defendants.  The Defendants were to review both pleadings to

determine which portions they would seek to have sealed.  Then, on April 5, 2011,

the Court is to hold a telephone conference to address deadlines concerning the

motion to amend as well as any issues related to the Defendants' attempt to seal

portions of either pleading (Dec RL, ¶ 4).

### D.     The Proposed Amendments

The Second Amended Complaint ("SAC"),  attached to the Declaration of

Robert Lakind as Exhibit F, amends Counts III and IX of the First Amended

Complaint and adds six new counts based upon documents provided by

Defendants after Plaintiffs filed their First Amended Complaint.[1]

### 1.     The Amendments to Counts III and IX.

The amendments to Counts III and IX largely clarify and conform the

---

[1] The SAC also removes Gerald Comeau, who passed away on February 6,
2011, as a named Plaintiff.  In addition, in view of the Court's dismissal of the
Financial Service Corporation on September 17, 2010, the SAC removes this
Defendant from the SAC.

allegations in those counts to discovery provided by Defendants.

### a.   Count III

Count III of the original complaint alleges that FSC/Wharton committed a prohibited transaction pursuant to ERISA §406(b) by virtue of their investment of Plan assets into the SAMMF.

At the time the Plaintiffs filed the First Amended Complaint, they only had access to the Plan's filings with the Internal Revenue Service "which showed that between December 31, 2006 and December 31, 2007, the Vanguard account was emptied [referring to the Vanguard Prime Money Market Fund] and the SunAmerica account was funded" Id at 634.  In their motion to dismiss, the FSC Defendants produced monthly Brokerage Account Statements for the Plan for the period of December 31, 2005 through December 31, 2008, which revealed that, during these months, FSC/Wharton concurrently used both the SunAmerica Money Market Fund and the Vanguard Prime Money Market Fund as the Plan's money market fund (SAC Count III ¶12).

The amendments to Count III clarify that FSC/Wharton, rather than completely liquidating the Plan's investment in the Vanguard Prime Money Market Fund, concurrently invested Plan assets in the Vanguard Prime Money Market Fund and the SAMMF. The amendments to Count III also plead that, prior to the retention of FSC/Wharton, the Plan's service providers used only the

Vanguard Prime Money Market Fund as the Plan's money market investment option, and that FSC/Wharton was aware of this fact (SAC Count III ¶9).

Neither of these amendments has a material impact on Plaintiffs' claims in Count III because the allegation that the investment of any Plan assets in the SAMMF constitutes a prohibited transaction under ERISA §406(b) states a claim upon which relief may be granted. See Goldenberg, 741 F.Supp.2d at 633 ("Plaintiffs' position is that buying shares of the Fund, on the investment advice of FSC Securities, was itself a prohibited transaction. The authority upon which the Defendants' themselves rely recognizes that the 'transactions . . .' are not exempted").

### b.    Count IX

Count IX of the original Complaint alleges that FSC/Wharton breached their fiduciary duties, pursuant to ERISA §404(a)(1)(B), by placing 80% of the Plan's assets in equities, given the fact that many Plan participants were aged.   The Court found this Count to state a viable claim, and Plaintiffs wish to amend it to buttress certain allegations and correct other aspects of the Count.

In discovery, the FSC Defendants have produced documents which suggest that, in 2008 (when the plan suffered significant losses), they reduced the equity holdings to 62% of the Plan assets (SAC ¶¶163-64).   The SAC alleges that this 62% figure is misleading in two respects. First, the accounting provided by

FSC/Wharton misclassifies certain equity holdings as fixed income holdings. Id. Second, it would appear that this alleged shift from equity to fixed income was not the result of a purposeful decision, but rather resulted from the dramatic decline in the value of the equity portion of the investment portfolio which reduced the proportion of the portfolio which it represented. Therefore, the second amended Count clarifies allegations with regard to equity concentrations.

In discovery, the Inductotherm Defendants have produced information about the ages of the Plan's participants for Plan years 2005 through 2010, and this information indicates that the Plan had a large number of significantly older employees, both prior to and during the 2008 Plan year.   Given the ages of the employees, even a 62% equity allocation, the SAC alleges, was too aggressive and was imprudent for the Plan's older participants.

Count IX has also been updated to include information learned in discovery indicating that the Plan's pervious service provider had a significantly smaller proportion of the Plan's assets invested in equities (less than 62%) (Count IX ¶10). In addition, the amendment alleges that the Trustee Defendants' minutes from March of 2009 acknowledge that "[a]fter reviewing performance of the investments in the stock market, Wharton Business Group recommended moving the portfolio to 50% in equities and 50% in cash, bonds and fixed income." (SAC ¶174).  It appears that no Defendant took steps to implement this recommendation.

In addition, Plaintiffs have since learned that Defendant SunAmerica Asset Management Corp. operates two mutual funds that it advertises as "being appropriate for prudent investors to provide for retirement . . . or other purposes that prescribe an investment time horizon." (SAC ¶181). These funds are managed in such a fashion as to shrink the equity percentage as the funds' maturity dates approach (which are August 15, 2015 and August 15, 2020, respectively). That is, as time passes, SunAmerica Asset Management Corp. shifts the funds' portfolio allocation away from equities and into fixed income products (SAC ¶¶183-86). Both of these funds have a time horizon similar to that of many of the Plan's participants, and the investment strategy for both of these funds reflects that a significantly greater portion of their assets are invested in fixed income products in comparison to the Plan's investment allocation (SAC ¶186).

## 2. Additional Claims Included in the SAC

The SAC seeks to add six new Counts, which are numbered in the SAC as Counts XXIII to XXIX.[2]

---

[2] With these six additional Counts, the SAC includes a total of fourteen Counts. Plaintiffs have numbered these Counts as XXIII to XXIX because Plaintiffs maintained the numbering of the dismissed Counts but deleted their text.

### a.    Count XXIII

Count XXIII alleges that FSC/Wharton breached their fiduciary duties by failing to invest any Plan assets that were designated for a money market fund in the institutional share class of the Vanguard Prime Money Market Fund.  Mutual funds generally have different share classes; each share class invests in the same pool of diversified securities; generally, the only difference between the share classes are the fees charged by each (SAC ¶¶111-12).   As each share class invests in the same diversified pool of securities, the share class with the smallest fees provides the greatest returns (SAC ¶112).

The Vanguard Prime Money Market Fund has two share classes, an Institutional Class and an Investor Class.  The Institutional Class is the less expensive of the two and has had greater returns than the Investor Class (Count XXIII ¶¶ 3-4).

On several occasions, FSC/Wharton provided documents to the Inductotherm Defendants which represented that it was investing the Plan's assets that were designated for a money market fund in the Vanguard Prime Money Market Fund Institutional Class (Count XXIII ¶¶ 7-10).  None of these representations disclosed that assets were also invested in the more expensive Vanguard Prime Money Market Fund Investor Class or the more expensive

SunAmerica Money Market Fund (Count XXIII ¶9).

The failure to invest all of the Plan's assets that were designated to be invested in a money market fund in the Vanguard Prime Money Market Fund Institutional Class, as FSC/Wharton represented it would, constitutes a breach of fiduciary duty.

### b.    Counts XXIV and XXV

Counts XXIV and XXV derive from FSC/Wharton's investment of Plan assets into the Diamond Hill Long Short Fund and the Dover Sector Long/Short Fund.  This Court previously ruled that the Plan's investment into the Hussman Strategic Growth Fund (the "HSGF"), also a long short fund, may have violated the terms of the Wharton Investment Policy Statement. <u>Goldenberg</u>, F.Supp.2d at 637.  This Count alleges that investments into the Diamond Hill Long Short Fund and the Dover Sector Long/Short fund also violated this policy. By making these investments, FSC/Wharton  breach its fiduciary duties under ERISA.

### c.    Count XXVI

Count XXVI alleges that Inductotherm Defendants breached their fiduciary duties by retaining FSC/Wharton.  The selection of a service provider is a fiduciary function. (Dec RL ¶9, Exhibit E, page 5 (Department of Labor publication).  Not until it sustained significant losses in 2008 did the Inductotherm

Defendants inquire into the experience or qualifications of FSC/Wharton to manage a retirement plan similar to the Indel Plan (Count XXVI ¶¶7-9). Had a timely inquiry been made, Indel would have learned that FSC/Wharton was not qualified to manage the Plan. This lack of experience and qualifications of FSC/Wharton caused the Plan to suffer losses caused in part by the lack of any due diligence on the part of the Inductotherm Defendants.

### d.   Count XXVII

Count XXVII alleges that the Inductotherm Defendants breached their fiduciary duties by accepting and executing the investment strategy that FSC/Wharton proposed and implemented (80% equities/20% fixed income). As discussed above, this investment strategy was imprudent in that it was too aggressive (too heavily concentrated in equities) for the Plan's older participants.

### e.   Counts XXVIII and XXIX

Counts XXVIII and XXIX arise from the same underlying theory plead in Count XXVII. Count XXVIII alleges wrongdoing on the part of the Inductotherm Defendants and Count XXIX alleges wrongdoing on the part of FSC/Wharton. The Plan provides that each Plaintiff is to have an individual account under the Plan (Count XXIX ¶4). The Inductotherm Defendants maintain these individual accounts to record each Plaintiff's/participant's share of Inductotherm's annual

contributions to their account (Count XXIX ¶5), which is based upon a percentage of each Plaintiff's annual salary (Count XXIX ¶4).

According to the Plan, the term "Investment Fund" means "the total assets held under the Plan for the purpose of providing benefits to Participants, resulting from contributions made under the Plan and earnings or losses thereon." (Count XXIX ¶5). While each Plaintiff has an individual account under the Plan, the investments attributable to each Plaintiff's account do not take into account the age of the individual Plan participant (Count XXIX ¶7). Rather, each Plaintiff receives a fractional interest in the aggregate Investment Fund (Count XXIX ¶7). Thus, each Plaintiff's account is credited with its share of the gains and losses of the entire Investment Fund (Count XXIX ¶7). As a result of the use of this uniform investment strategy for each account, each account holds the same investments, irrespective of the individual Plaintiff's age (Count XXIX ¶8).

Older participants/Plaintiffs required different - more conservative - investment strategies than those participants/Plaintiffs who are/were younger; younger participants/Plaintiffs required more aggressive strategies than did older participants. By failing to separately manage the accounts, Defendants breached their fiduciary duties.

The discovery produced by the Defendants reflects that neither the

Inductotherm Defendants nor the FSC Defendants ever considered the Plaintiffs'

ages or the implementation of separate investment strategies, based on the

Plaintiffs' ages (SAC¶¶ 165, 167, 205 and 206).  Thus, Count XXVIII alleges that

the Inductotherm Defendants breached their fiduciary duties by not implementing,

or requiring to be implemented, an age dependent  investment strategy by account.

Similarly, Count XXIX alleges that FSC Securities Corporation/Wharton breached

their fiduciary duties for the same reasons.

**ARGUMENT**

### PLAINTIFFS' MOTION TO AMEND THE COMPLAINT SHOULD BE GRANTED BECAUSE PLAINTIFFS HAVE MET THE REQUIREMENTS OF RULE 15(a)

**A.**    **Requests for Leave to Amend Pursuant to Fed. R. Civ. P. 15(a) Should be Liberally Granted**

Where, as here, more than 21 days have elapsed after service of a Rule 12(b)

motion to dismiss, a party may amend its pleading "only by leave of court or by

written consent of the adverse party."  Fed R. Civ. P. 15(a)(2).  This rule requires

that "leave shall be freely given when justice so requires."  Id.  Indeed, "[t]he

Federal Rules reject the approach that pleading is a game of skill in which one

misstep  . . . may be decisive to the outcome and accept the principle that the

purpose of pleading is to facilitate a proper decision on the merits."  Foman v.

Davis, 371 U.S. 178, 181-82 (1962). "A liberal, pro-amendment ethos dominates the intent and judicial construction of Rule 15(a)(2)." Edward Sherman, 3-15 Moore's Federal Practice - Civil § 15.14[1] (2008). Thus,

> [i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should . . . be freely given.

Foman, at 182. Moreover, the decision of whether to grant leave to amend is within the sound discretion of the District Court. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

### B.    Defendants Cannot Satisfy Their Burden to Demonstrate that Leave to Amend Is Inappropriate

#### 1.    Defendants Will Suffer No Prejudice, Much Less "Undue Prejudice"

As a preliminary matter, the Defendants will suffer no prejudice if the proposed amendments are permitted. "Prejudice to the non-moving party is the touchstone for the denial" of a motion to amend. Dole v. Arco Chem. Co., 921 F.2d 484, 488 (3d Cir. 1990). The non-moving party bears the burden of proving that it would be prejudiced by the amendment. Id and Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989).

To bear that burden, the non-moving party must demonstrate that the amendment "would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction." Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004).

Here, discovery is ongoing, and the Defendants are still yet to complete their discovery productions.   Several of the amendments merely clarify the allegations of the initial complaint (see Counts III and IX); others expand the application of claims already filed (XXIV, XXIV, XXVIII and XXIX) and still others allege claims implicit in those counts previously alleged but unknown until discovery was provided.  None of the Counts will require significant discovery because all of the relevant information is held by Defendants. Accordingly, permitting the Plaintiffs the opportunity to amend the First Amended Complaint will not cause Defendants to incur significant expenses or delay of this matter.  In fact, the only potential hardship to be suffered here would be on the Plaintiffs, should the court deny them the opportunity to amend their First Amended Complaint to add meritorious claims.

### 2.      This Motion is Made in Good Faith and Without Dilatory Motive

It cannot be said that Plaintiffs are acting in bad faith by seeking to amend

their First Amended Complaint.  Amending a complaint to clarify factual

allegations, add legal claims based upon facts already alleged, and adding claims

based on information the Plaintiffs learned through the Defendants' discovery

productions as well as information provided by the Defendants in their motions to

dismiss, does not rise to the level of conduct constituting bad faith.  See e.g.

Tri-County Concerned Citizens Assoc. v. Carr, No. 98-4184, 2000 WL 1824172,

at *3-4 (E.D. Pa. Dec. 12, 2000)(Dec of RL, Exhibit A) (finding bad faith where

plaintiff failed to follow court orders, gave disingenuous excuses for not following

those orders, and delayed filing amendment for months "intentionally or, at the

very least, unprofessionally"); see also Honeywell Intern., Inc. v. Raytheon Co.,

No. 08-3952, 2009 WL 2392884 (D.N.J. Aug. 3, 2009) (Dec of RL, Exhibit

B)(rejecting defendants' bad faith claim alleging that plaintiffs sought amendments

merely to get discovery in order "to conduct fishing expedition" to determine

whether they could state a case despite fact that new amendments were more

vague than original claim because no substantial changes to theory of case);

Reszler v. Travelers Property Casualty Ins., No. 06-586, 2007 WL 1035024, at

*104-5 (D.N.J. Apr. 3, 2007)(Dec of RL, Exhibit C)(no finding of bad faith or

dilatory motive where motion to amend filed after receipt of discovery).

Accordingly, this motion is not made in bad faith or with a dilatory motive.

599353.1                                    -20-

### C.    Plaintiffs' Amendments Are Not Futile

"Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." In re Burlington Coat Factory Sec. Litig., 114 F.3d at 1435.  In assessing futility, "the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." Id at 1434. (Accord Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996).  Under Rule 12(b)(6), dismissal is appropriate only if, accepting all the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Clearly, amendments designed to clarify and correct Counts III and IX are not futile. Nor, as discussed below, are the remaining proposed amendments.

### 1.    Count XXIII

Count XXIII alleges that FSC/Wharton breached their fiduciary duties by failing to invest any Plan assets that were designated for a money market fund in the institutional share class of the Vanguard Prime Money Market Fund.

As discussed above, the institutional share class offers the most cost effective investment of the several share classes offered by mutual funds. Recently provided discovery reveals that, on several occasions, FSC/Wharton

represented that they were investing the Plan's assets that were designated for a money market fund in the Vanguard Prime Money Market Fund Institutional Class (Count XXIII ¶¶ 7-10). Unmentioned was the fact that Plan assets were also invested in the more expensive Vanguard Prime Money Market Fund Investor Class or the SunAmerica Money Market Fund (Count XXIII ¶9).

These allegations support Plaintiffs' claim in Count XXIII, that by failing to invest the Plan assets that were designated for a money market fund in the Vanguard Prime Money Market Fund Institutional Class (the lowest priced share class), FSC/Wharton breached their fiduciary duties.

In Tibble v. Edison Intern.  No. 07-5359, 2010 WL 2757153, *30(C.D.Cal.,2010)(Dec of RL. Exhibit D) the court found a claim of this nature to be viable:

> In sum, the Plan fiduciaries simply failed to consider the cheaper institutional share classes when they chose to invest in the retail share classes of the William Blair, PIMCO, and MFS Total Return funds. Defendants have not offered any credible explanation for why the retail share classes were selected instead of the institutional share classes. **In light of the fact that the institutional share classes offered the exact same investment at a lower fee, a prudent fiduciary acting in a like capacity would have invested in the institutional share classes**. Defendants violated their duty of prudence when selecting the retail share classes of the William Blair Fund, the PIMCO Fund, and the MFS Total Return Fund. Damages resulting from the breach are discussed infra at Section IV. (Emphasis added).

See also <u>Braden v. Walmart</u>, 588 F.3d 585, 595 (8th Cir. 2009).  Similarly, this

Court, in <u>Goldenberg</u>, held that "[t]wo funds could be identical and still used

differently; this would not justify the use of one objectively inferior fund."

<u>Goldenberg</u>, 741 F.Supp. 2d at 635.

In sum, Plaintiffs' claim in Count XXIII, that FSC/Wharton  breached their

fiduciary duties by failing to invest any Plan assets that were designated for a

money market fund in an institutional share class, is not futile.

### 2.    Counts XXIV And  XXV

Counts XXIV and XXV relate to FSC/Wharton's investment of Plan assets

into the Diamond Hill Long Short Fund and the Dover Sector Long/Short Fund.

Like FSC/Wharton's investment of Plan assets into the  HSGF, also a long short

fund, investments into the Diamond Hill Long Short Fund and the Dover Sector

Long/Short fund violated the Wharton Investment Policy.

The Wharton Investment Policy describes restricted investments as follows:

> ....no options and futures (except for hedging) shall be purchased.
> There shall be no purchase of securities on margin and no short
> sales.(SAC ¶148)

This policy also lists the specific asset categories in which Plan assets may be

invested.  The policy does not authorize investments in "long short funds." (Count

XXIV ¶5).

The Diamond Hill Long Short Fund and the Dover Sector Long Short Fund engage in short sales; at times these sales are implemented through the options market, which further increases the risk of these strategies. (Counts XXIV ¶4 and Count XXV ¶4). Thus, the investment in both of these funds is prohibited by the Wharton Investment Policy, and FSC/Wharton breached its fiduciary duties pursuant to ERISA 404(a)(1)(D) when it made these investments.

This Court has previously held that allegations that an investment of Plan assets in a long/short fund [HSGF] violated the Wharton Investment Policy and stated a claim under ERISA 404(a)(1)(D). Goldenberg, 741 F.Supp.2d at 637. Therefore, the claims contained in Counts XXIV and XXV, which allege a breach of fiduciary duty on the same grounds, are not futile.

### 3.    Count XXVI

Count XXVI alleges that the Inductotherm Defendants breached their fiduciary duties when they failed to undertake a sufficient investigation prior to retaining FSC/Wharton. The Indel Defendants have conceded that they are fiduciaries. According to the Department of Labor, "[h]iring a service provider in of itself is a fiduciary function." (Dec RL, Ex. E at p.5). See also Bussian v. RJR Nabisco, Inc. 223 F.3d 286, 300. (5th Cir. 2000). Therefore, the hiring of FSC/Wharton was a fiduciary function.

Not until the Plan sustained significant losses in 2008, did the Inductotherm

Defendants inquire into the qualifications of FSC/Wharton to manage a plan with

characteristics similar to those of the Indel Plan (Count XXVI ¶¶7-9).  On August

20, 2009, the Inductotherm Defendants sent the following email to FSC/Wharton:

> Marc:
>
> As a separate email you have executed the revised Investment Policy
> Statement and I am sure you will send it back to me fully in due course.
>
> What I would like to address now, and annually thereafter, is information
> from Wharton Group as the service provider to our plan, along the
> following lines:
>
> 1.  Information about the firm itself, what are its activities in this field, what
> number of clients, and of what size are they servicing.
>
> 2.  Information on personnel, including the qualification of professionals,
> and a description of the support organization.
>
> 3.  Any litigation action against the firm or its members.
>
> 4.  A copy of any agreements that may exist that effect the Profit Sharing
> Plan assets, specifically the custodial agreement presently in place including
> all insurance contracts and agreements retained thereto. .... (Count XXVI
> ¶7).

Had the Inductotherm Defendants conducted this inquiry prior to retaining

FSC/Wharton, they would have learned that FSC/Wharton was not qualified to

manage the Plan (SAC ¶¶219-221).  This lack of experience and qualifications on

the part of FSC/Wharton caused the Plan to suffer losses.

In sum, Plaintiffs' allegations demonstrate that the Inductotherm Defendants breached their fiduciary duties under ERISA 404(a)(1)(B) by not conducting the necessary investigation of FSC/Wharton in advance of retaining this entity and thus Count XXVI is not futile.

### 4.    Count XXVII

Count XXVII alleges that the Inductotherm Defendants breached their fiduciary duties by accepting and executing the investment strategy that FSC/Wharton proposed and then implemented.  As described above, this investment strategy was imprudent in that it was too aggressive (heavily concentrated in equities) for the Plan's older participants.

Implementing an investment strategy that ignores participant ages and excessively invests Plan assets in equities  states a claim for breach of fiduciary duty under ERISA 404(a)(1)(B).  See Goldenberg 741 F.Supp.2d at 638. A fiduciary acting prudently would have "investigated the age . . . of employee participants," GIW Industries, Inc. v. Trevor, Stewart, Burton & Jacobsen, Inc., 895 F.2d 729, 733 (11th Cir. 1990), and implemented an investment strategy based on the Plaintiffs' ages.  See also In re Unisys Savings Plan Litig. 74 F.3d 420, 434 (3d Cir. 1996) ("a fiduciary's independent investigation and ultimate selection is evaluated in light of the character and aims of the particular plan he serves")

(internal quotations omitted). Thus, given the fact that the Plan participants fall within different age ranges, a fiduciary, acting prudently, would have designed an investment strategy with consideration of the ages of the Plan participants. That is, a prudent fiduciary would not have adopted a uniform investment strategy for all participants/Plaintiffs, regardless of their age.

### 5.    Counts XXVIII and XXIX

These Counts allege generally the same wrongs as those plead in Count XXVII, but under a different theory. As discussed above, the Plan provides that each Plaintiff is to have an individual account under the Plan (Count XXIX ¶4), in order to record each Plaintiff's/participant's share of Inductotherm's annual contributions to their account (Count XXIX ¶5). While each Plaintiff has an individual account under the Plan, the Plan invested its assets in the aggregate with no consideration of the ages of the Plan participants. (Count XXIX ¶7). Rather, each Plaintiff received a fractional interest in the Investment Fund (Count XXIX ¶7). As a result of the use of this uniform investment strategy for each account, each account holds the same investments, regardless of the individual Plaintiff's age (Count XXIX ¶8).

The composition of each individual account should have been adjusted with consideration of the age of the Plan participant on whose behalf the account was

maintained. A fiduciary acting prudently would have "investigated the age . . . of employee participants," GIW Industries, Inc. v. Trevor, Stewart, Burton & Jacobsen, Inc., 895 F.2d at 733. See also In re Unisys Savings Plan Litig. 74 F.3d at 434.

The discovery produced by the Defendants reflects that neither the Inductotherm Defendants nor the FSC Defendants ever implemented separate investment strategies for the individual accounts, based on the ages of Plan participants.

Thus, Count XXVIII alleges that the Inductotherm Defendants breached their fiduciary duties by not using the separate accounts to implement or to require implementation of an investment strategy that accounted for the Plaintiffs' ages. Count XXIX alleges the same wrong against FSC/Wharton. Given that a fiduciary, acting prudently, would have implemented an investment strategy that accounted for the Plaintiffs' ages, the claims alleged in Counts XXVIII and XXIX are not futile.

## D.     There Has Been No Undue Delay

Plaintiffs have not acted with undue delay in seeking to file their Second Amended Complaint. Plaintiffs' original Complaint was filed on October 9, 2009. On December 24, 2009 Plaintiffs filed their First Amended Complaint, which

contained no material modifications other than to add several Plaintiffs.  On

September 17, 2010, the Court ruled on all Defendants' Motions to Dismiss ,and

on November 22, 2010 the Court entered a Scheduling Order, which required

Plaintiffs to seek amendments to the pleadings or to add new parties by March 11,

2011.

   On January 3, 2011 Plaintiffs served their Requests for the Production of

Documents on all Defendants.  On February 22, 2011 the FSC Defendants

produced certain documents, but informed Plaintiffs that their document

production would be done on a rolling basis.  The Inductotherm Defendants did

not make any production of documents until the evening of Friday March 4, 2011.

Plaintiffs, on account of the Defendants' failure to make their discovery

productions in a timely manner, requested that the Defendants consent to

Plaintiffs' request for an extension of time to file their motion to amend the First

Amended Complaint, and Defendants refused. (Dec Rl, ¶¶ 2 to 4).

   It was not until Defendants included information in support of their motion

to dismiss and provided other information in their March 20th disclosures that

Plaintiffs could assess whether the Complaint should be amended.  Therefore,

Plaintiffs have not been dilatory.

**E.    There Have Been No Repeated Failures to Cure Deficiencies
       By Previous Amendments**

There have been no repeated failures to cure deficiencies.

## CONCLUSION

Plaintiffs' requested amendments are not futile; Plaintiffs have not acted in bad faith or with undue delay. Defendants will suffer no undue prejudice by permitting Plaintiffs to amend their Complaint based upon information provided by Defendants when filing their motion to dismiss and in discovery. Plaintiffs respectfully request that the Court grant their motion to file their Second Amended Complaint.

Respectfully submitted,

SZAFERMAN, LAKIND
    BLUMSTEIN & BLADER, P.C.

By:   s/Robert Lakind

Szaferman, Lakind,
    Blumstein & Blader, P.C.
101 Grovers Mill Road, Suite 200
Lawrenceville, NJ 08648
(609) 275-0400
Attorney for Plaintiffs

Date: April   , 2011