IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BORIS GOLDENBERG, ET AL., | ) | |
| | ) | |
| | ) | |
| PLAINTIFFS, | ) | HONORABLE JEROME B. SIMANDLE |
| | ) | |
| | ) | |
| VS. | ) | CASE NO. 1:09-cv-05202-JBS-AMD |
| | ) | |
| INDEL, INC., INDIVIDUALLY AND A/K/A | ) | |
| INDUCTOTHERM INDUSTRIES, INC. AND | ) | |
| INDUCTOTHERM CORPORATION, ET AL., | ) | |
| | ) | |
| DEFENDANTS. | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE FSC/SUNAMERICA
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

**Page**

I. BACKGROUND ......................................................................................................... 1

    A. Investment Of Plan Assets In The SunAmerica Money Market Fund .................................. 1

    B. The FSC/SunAmerica Defendants Have Refunded All Fees, Including
       Paying A Higher Interest Rate Than That Suggested By The Department of Labor ............ 2

    C. Even Though The FSC/SunAmerica Defendants Have Fully Remedied
       These Issues, Plaintiffs Have Refused To Dismiss The Relevant Counts ........................... 4

II. ARGUMENT ............................................................................................................. 5

    A. The Standard For Summary Judgment ............................................................................ 5

    B. Summary Judgment Is Appropriate When A Claim Has Been Mooted
       By A Defendant's Remedial Actions ................................................................................ 6

    C. Under The Facts Of This Case, The Relevant Counts Are Moot ...................................... 8

III. CONCLUSION .......................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Atl. Deli & Grocery v. United States,
No. 10-4363, 2011 U.S. Dist. LEXIS 55395
(D.N.J. May 23, 2011) (Simandle, J.)......................................................................5

Blanciak v. Allegheny Ludlum Corp.,
77 F.3d 690 (3d Cir. 1996)......................................................................................7

Bryant v. Nolan,
No. 09-2672, 2011 U.S. Dist. LEXIS 38050
(D.N.J. Apr. 7, 2011) (Simandle, J.)........................................................................6

Carducci v. Aetna U.S. Healthcare,
247 F. Supp. 2d 596 (D.N.J. 2003) (Simandle, J.)..............................................6, 7, 8

County of Los Angeles v. Davis,
440 U.S. 625 (1979).........................................................................................7, 8, 9, 10

Finberg v. Sullivan,
658 F.2d 93 (3d Cir. 1980)......................................................................................7

Kirby v. HUD,
745 F.2d 204 (3d Cir. 1984)....................................................................................7

N.J. Turnpike Auth. v. Jersey Cent. Power & Light,
772 F.2d 25 (3d Cir. 1985)......................................................................................10

Powell v. McCormack,
395 U.S. 486 (1969)................................................................................................6

Subaru of Am., Inc. v. DDB Worldwide Communs. Group, Inc.,
No. 08-6218 (JEI), 2010 U.S. Dist. LEXIS 29195 (D.N.J. Mar. 25, 2010)...............6

Symbol Techs., Inc. v. Metrologic Instruments, Inc.,
771 F. Supp. 1390 (D.N.J. 1991).............................................................................6

United States v. G-I Holdings, Inc.,
369 B.R. 832 (D.N.J. 2007) .....................................................................................6

STATUTES

29 U.S.C. §§ 1001...................................................................................................1, 7

Defendants American International Group, Inc. ("AIG"), FSC Securities Corporation

("FSC"), SunAmerica Asset Management Corp. ("SAAMCo"), SunAmerica Capital Services,

Inc. ("SACS"), SunAmerica Fund Services, Inc. ("SAFS"), and Wharton Business Group

("Wharton") (collectively referred to as the "FSC/SunAmerica Defendants"), by and through

undersigned counsel, respectfully submit this memorandum of law in support of their Motion for

Partial Summary Judgment (the "Motion"). As set forth herein, the Motion should be granted

because the FSC/SunAmerica Defendants have taken sufficient remedial steps to moot the claims

of Plaintiffs Boris Goldenberg, Reinaldo Pacheco, and Andrew Loew (collectively, "Plaintiffs")

in Counts III and XI, as well as those portions of Counts V and VI that purport to seek recovery

of fees paid to the FSC/SunAmerica Defendants in violation of the Employee Retirement Income

Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* ("ERISA").[1]

Notwithstanding the remedial measures taken by the FSC/SunAmerica Defendants,

which have provided equal or greater relief to Plaintiffs than they could possibly have obtained

had they prevailed on these counts, Plaintiffs have refused to voluntarily dismiss these counts.

Therefore, summary judgment should be granted to the FSC/SunAmerica Defendants on these

counts.

## I.    BACKGROUND

### A.    Investment Of Plan Assets In The SunAmerica Money Market Fund

At all times relevant to this action, FSC performed certain investment services for the

Inductotherm Companies Master Profit Sharing Plan #001 (the "Plan"), which was and continues

to be an employee pension benefit plan subject to ERISA. See Statement of Facts in Support of

---

[1]     Plaintiffs have named FSC and Wharton as defendants as to Counts III, V, and VI, and
        AIG, SAAMCo, SACS, and SAFS as defendants as to Count XI.

FSC/SunAmerica Defendants' Motion for Partial Summary Judgment ("SOF"), which is being filed concurrently herewith, at ¶ 9.  Certain Plan assets were placed in the SunAmerica Money Market Fund ("SAMMF"), which was used as the Plan's sweep account – or the account in which Plan assets are invested pending the purchase or redemption of investments, and in the day-to-day administration of the plan, including, but not limited to serving as the account from which contributions are deposited and from which distributions are paid.  SOF at ¶ 11.

FSC charged the Plan an investment advisory fee of 10 basis points (0.10%) on those Plan assets for which FSC provided investment services to the Plan.  SOF at ¶ 10.  Due to the investment of Plan assets in SAMMF, an annual advisory fee was paid to SAAMCo, in SAAMCo's capacity as the investment adviser to SAMMF, at a rate of between 40 and 50 basis points (0.40% - 0.50%) of SAMMF's average daily net asset value ("NAV"), depending upon the total assets invested in SAMMF.  SOF at ¶ 12.  In addition to advisory fees paid to SAMMF, 12b-1 fees were paid to SACS which were then remitted to FSC.  SOF at ¶ 12.  After June 1, 2009, SACS and SAAMCo voluntarily waived the 12b-1 fee and, therefore, as of that date, that amount was no longer remitted to FSC.  SOF at ¶ 12.  SAAMCo and SACS are affiliated with FSC as all three are indirect wholly owned subsidiaries of AIG.  SOF at ¶¶ 2, 8.

## B.     The FSC/SunAmerica Defendants Have Refunded All Fees, Including Paying A Higher Interest Rate Than That Suggested By The Department Of Labor

In order to avoid the cost of litigating the issues raised by Plaintiffs arising from the investment of Plan assets in SAMMF, the FSC/SunAmerica Defendants:  (1) calculated the fees paid by SAMMF to one or more of the FSC/SunAmerica Defendants by reason of the Plan's investment in SAMMF through the Plan's sweep account; and (2) credited those amounts, plus interest, to the Plan.  SOF at ¶ 13.  The FSC/SunAmerica Defendants have also ensured that all Plan assets have been removed from SAMMF, and therefore no additional fees will be paid to

FSC and/or any other FSC/SunAmerica Defendant or other entities affiliated with AIG based upon the investment of Plan assets in SAMMF. SOF at ¶ 14. Moreover, the FSC/SunAmerica Defendants have instituted additional controls to ensure that Plan assets will not be invested in the future in such a way that will result in fees being paid to FSC and/or any other FSC/SunAmerica Defendant or other entities affiliated with AIG based upon the selection of funds in which Plan assets are invested. SOF at ¶ 14.

The FSC/SunAmerica Defendants were able to determine a formula to calculate the amount of fees received based upon the Plan's investment in SAMMF. SOF at ¶ 15. In this calculation, the FSC/SunAmerica Defendants used a calculation of 50 basis points (0.50%) to determine the amount of the advisory fee paid to be refunded to the Plan, even though the actual amount of the advisory fee paid to SAAMCo was between 40 and 50 basis points (0.40% - 0.50%), in order to ensure that the amount refunded was *at leas*, equal to, and most likely in excess of, the actual fees received by SAAMCo. SOF at ¶ 15. Based upon this formula, the FSC/SunAmerica Defendants calculated that the total amount of fees paid to the FSC/SunAmerica Defendants as a result of the Plan's assets being maintained in the SAMMF during the period from December 2005 through May 2010 was no greater than $46,220.70. SOF at ¶ 22. Additionally, for the period from June 2010 through March 2011, during which no 12b-1 fees were remitted, the FSC/SunAmerica Defendants received no more than $520.16 in fees from SAMMF based upon the Plan's assets. SOF at ¶ 22.

In addition to voluntarily refunding these fees by crediting the Plan's FSC brokerage account, the FSC/SunAmerica Defendants also voluntarily paid interest on these amounts. SOF at ¶¶ 19-22. The U.S. Department of Labor's Voluntary Fiduciary Correction Program ("VFCP") provides a complex calculation to determine interest on a quarterly schedule, based

upon adjusting an annual interest rate by a quarterly interest rate.  SOF at ¶ 19.  The highest

applicable single VFCP annualized quarterly interest rate during the time period at issue was for

the quarter ending December 31, 2005, which posted an interest rate of 5.9870%.  SOF at ¶ 20.

Most of the quarters at issue were subject to a significantly lower VFCP interest rate.  For

example, beginning with the quarter ending December 31, 2007, the VFCP quarterly interest rate

was always less than 5%.  SOF at ¶ 20.  Notwithstanding that this rate was even higher than that

called for by the VFCP, the FSC/SunAmerica Defendants voluntarily elected to use the highest

single quarter's interest – 5.9870% – and round that up to an even 6%.  SOF at ¶¶ 20-22.  In

other words, the FSC/SunAmerica Defendants voluntarily paid a higher rate of interest than even

that required by the DOL's VFCP.  SOF at ¶ 21.  Applying a 6% interest rate to the maximum

possible amount of fees received by the FSC/SunAmerica Defendants creates a total amount

refunded to the Plan of $56,936.29.  SOF at ¶ 22.

On March 23, 2011, FSC wrote to the Plan to advise that $56,011.65 would be credited to

the Plan's FSC brokerage account, and that amount was subsequently refunded to the Plan.  SOF

at ¶ 23.  Additionally, two other credits were issued to the Plan in the amounts of $533.26 and

$391.38, respectively.  SOF at ¶ 24.  In total, among the three credits issued to the Plan, a total of

$56,936.29 was refunded to the Plan.  SOF at ¶ 24.

## C.  Even Though The FSC/SunAmerica Defendants Have Fully Remedied These Issues, Plaintiffs Have Refused To Dismiss The Relevant Counts

On July 11, 2011, undersigned counsel notified Plaintiffs' counsel of the remedial actions

taken and requested that Plaintiffs voluntarily withdraw Counts III and XI, as well as those

portions of Counts IV and V that purport to seek recovery of fees paid to the FSC/SunAmerica

Defendants.  SOF at ¶ 25.  Plaintiffs' counsel responded on July 29, 2011 stating that "[i]t would

appear that [Defendants'] calculations are accurate and we are prepared to dismiss Counts III, V,

VI and XI of our amended complaint."  SOF ¶ 26.  Despite Defendants' efforts to narrow the

scope of the litigation, and Plaintiffs' concession that dismissal is appropriate in this regard,

Plaintiffs' have nevertheless refused to sign a Stipulation of Dismissal. SOF ¶¶ 26-27.

## II.   ARGUMENT

Based upon the remedial actions taken by the FSC/SunAmerica Defendants, the Plaintiffs

have already received equal or greater relief than that which they could have possibly received

from the Court.  Accordingly, Counts III and XI, as well as those portions of Counts IV and V

that purport to seek recovery of fees paid to the FSC/SunAmerica Defendants, have been

mooted.  As Plaintiffs have refused to voluntarily dismiss these counts, the FSC/SunAmerica

Defendants are entitled to summary judgment on these counts.

### A.   The Standard For Summary Judgment

"Summary judgment is appropriate 'if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law.' . . . A fact is

'material' only if it might affect the outcome of the suit under the applicable rule of law." Atl.

Deli & Grocery v. United States, No. 10-4363 (JBS/AMD), 2011 U.S. Dist. LEXIS 55395, *6

(D.N.J. May 23, 2011) (Simandle, J.) (quoting Fed. R. Civ. P. 56(a)).  "Summary judgment will

not be denied based on mere allegations or denials in the pleadings; instead, some evidence must

be produced to support a material fact. . . . The nonmoving party must 'do more than simply

show that there is some metaphysical doubt as to the material facts.'" Id. (quoting Matsushita

Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).  "Where the nonmoving party

bears the burden of persuasion at trial, the moving party may be entitled to summary judgment

merely by showing that there is an absence of evidence to support an essential element of the nonmoving party's case." Bryant v. Nolan, No. 09-2672 (JBS/AMD), 2011 U.S. Dist. LEXIS 38050, *4 (D.N.J. Apr. 7, 2011) (Simandle, J.).

"Under Rule 56, a motion for summary judgment need not be dispositive of the entire controversy, but instead can be brought on only some of the claims." United States v. G-I Holdings, Inc., 369 B.R. 832, 836 (D.N.J. 2007). "The standard for partial summary judgment on an issue is equivalent to the standard for summary judgment." Symbol Techs., Inc. v. Metrologic Instruments, Inc., 771 F. Supp. 1390, 1395 (D.N.J. 1991). "The ability of a court to enter partial summary judgment 'serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact.'" G-I Holdings, 369 B.R. at 836 (quoting Advisory Committee Notes to Fed. R. Civ. P. 56). "In other words, the granting of partial summary judgment is appropriate where the Court, in its discretion, determines it will speed up the litigation." Subaru of Am., Inc. v. DDB Worldwide Communs. Group, Inc., No. 08-6218 (JEI), 2010 U.S. Dist. LEXIS 29195, *4 (D.N.J. Mar. 25, 2010).

## B.   Summary Judgment Is Appropriate When A Claim Has Been Mooted By A Defendant's Remedial Actions

"Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 (1969). "If 'developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome or prevent a court from being able to grant the requested relief, the case must be dismissed as moot.'" Carducci v. Aetna U.S. Healthcare, 247 F. Supp. 2d 596, 624

(D.N.J. 2003) (Simandle, J.) (quoting County of Morris v. Nationalist Movement, 273 F.3d 527, 533 (3d Cir. 2001)).  "The concept of mootness encompasses both constitutional principles under Article III, and jurisprudential policy considerations.  With regard to the latter, it is entirely proper for a court to focus on its present ability to provide any meaningful remedy in light of changed circumstances relating to the case.  For example, termination of a challenged act often may moot a case." Kirby v. HUD, 745 F.2d 204, 207 (3d Cir. 1984).

While, it is true, as this Court has noted, that, "as a general rule, voluntary cessation of challenged conduct during the course of the adjudication does not make the case moot," that rule is abrogated when "'(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" Carducci, 247 F. Supp. 2d at 624 (Simandle, J.) (quoting Phillips v. Pa. Higher Educ. Assis. Agency, 657 F.2d 554, 569 (3d Cir. 1981)).  This precedent arises out of the Supreme Court's decision in County of Los Angeles v. Davis, 440 U.S. 625 (1979), in which the Court held that "jurisdiction, properly acquired, may abate if the case becomes moot because (1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur, . . . and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." 440 U.S. at 631 (internal citations omitted).   The Third Circuit has stated that the two Davis factors constitute "a two-pronged test for mootness." Finberg v. Sullivan, 658 F.2d 93, 97 (3d Cir. 1980).

It is well-established that if a defendant takes sufficient remedial actions as to moot a defendant's claims, under the Davis prongs, that a defendant is entitled to summary judgment on the claim(s) which have already been remedied.  In other words, "[i]f developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or

prevent a court from being able to grant the requested relief, the case must be dismissed as moot." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996). In Carducci, an ERISA case, the defendant sought "summary judgment on [the plaintiff's] claims for prospective relief under the mootness doctrine because defendant has irrevocably released the subrogation lien" at issue. 247 F. Supp. 2d at 622 (Simandle, J.). The Court held that the defendant "has submitted clear evidence that it has voluntarily ceased the challenged conduct." Id. at 624. The Court thus concluded that "[w]hile voluntary cessation of challenged conduct during the litigation may not always make a case moot, the present case is moot based on the two factors elucidated by the Supreme Court." Id. at 625. Accordingly, the Court granted the defendant's motion for summary judgment. Id.

### C.   Under The Facts Of This Case, The Relevant Counts Are Moot

In the present case, summary judgment is appropriate because both of the Davis prongs make clear that the FSC/SunAmerica Defendants' remedial actions have mooted Counts III and XI, as well as Counts V and VI to the extent those counts seek recovery of fees paid to the FSC/SunAmerica Defendants. Of the two Davis prongs, the second prong, which provides that a claim is moot if "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation" (see 440 U.S. at 631), is easily established. Any alleged violation has been remedied as all Plan assets have been transferred out of SAMMF and are no longer in any affiliated mutual fund from which fees are paid to FSC and/or any of FSC's affiliated entities. Moreover, to the extent that Plaintiffs contend that they were injured by the payment of fees from SAMMF to the FSC/SunAmerica Defendants, the Plaintiffs have been made whole based upon the FSC/SunAmerica Defendants' refund of, *at least*, all such fees to the Plan, *including paying a higher rate of interest than even that required by the VFCP*. Moreover, the Plan's

- 8 -

Trustees have committed to sharing the benefit of the refund among both current and former Plan participants (thereby including all of the named Plaintiffs) based upon each current and former Plan participant's percentage participation in the Plan for each month in which fees were paid. Thus, by eliminating the alleged violation and making the Plaintiffs (and all other allegedly wronged Plan participants) whole, the FSC/SunAmerica Defendants "have completely and irrevocably eradicated the effects of the alleged violation," thereby satisfying the second Davis prong.

The first Davis prong is somewhat more complex but is also easily satisfied here. That prong provides that a matter is moot when "it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur." 440 U.S. at 631. In the present case, the steps taken by the FSC/SunAmerica Defendants, including not merely transferring Plan assets out of SAMMF, but also refunding all fees received from the Plan, including paying a higher rate of interest than even that required by the VFCP, clearly indicates that the FSC/SunAmerica Defendants are committed to preventing any future violations. Moreover, the FSC/SunAmerica Defendants have instituted additional controls to ensure that Plan assets will not be invested in the future in such a way that will result in fees being paid to FSC and/or any other FSC/SunAmerica Defendant or other entities affiliated with AIG based upon the selection of funds in which Plan assets are invested. See SOF at ¶ 14. However, the burden is not on the FSC/SunAmerica Defendants to prove that there will be no repetition in the future. Rather, the burden is on the Plaintiffs to show that the risk of repetition in the future is sufficiently high as to justify not granting summary judgment on the counts at issue – a burden which the Plaintiffs cannot possibly satisfy.

Under the first Davis factor, even where a matter would otherwise be moot:

- 9 -

> [I]f the underlying dispute between the parties is one "capable [of] repetition, yet evading review," it remains a justiciable controversy within the meaning of Article III. . . . The "capable of repetition yet evading review" exception is triggered where two elements are combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again. . . . Both of these conditions must be met if a case is to be saved from mootness.

N.J. Turnpike Auth. v. Jersey Cent. Power & Light, 772 F.2d 25, 31 (3d Cir. 1985).  However, whether or not there is a reasonable expectation that the alleged violation will recur "requires us to determine whether there is a 'demonstrated probability,' or a 'reasonable expectation,' as distinct from a 'mere physical or theoretical possibility,' that the conduct of which [plaintiff] complains will recur thereby keeping this matter susceptible to judicial resolution." Id. at 33. "'Capable of repetition' is not a synonym for 'mere speculation;' it is a substantive term on which the [party seeking to maintain the court's jurisdiction over the matter] must provide a reasonable quantity of proof – perhaps even by the preponderance of the evidence." Id.

Here, there is absolutely no basis, and Plaintiffs can produce no evidence, to suggest that any alleged violation arising out of the investment of Plan assets in SAMMF will recur. Accordingly, both Davis factors are satisfied and summary judgment should be granted on Counts III and XI, as well as those portions of Counts V and VI that purport to seek recovery of fees paid to the FSC/SunAmerica Defendants.

## III.    CONCLUSION

For the foregoing reasons, the FSC/SunAmerica Defendants respectfully request that the Court grant summary judgment on Counts III and XI, well as those portions of Counts V and VI that purport to seek recovery of fees paid to the FSC/SunAmerica Defendants.

Respectfully submitted this 2nd day of November, 2011.

**ALSTON & BIRD LLP**

- 10 -

/s/ Craig Carpenito
Craig Carpenito (CC-1686)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Phone: (212) 210-9400
Fax: (212) 210-9444
Email: craig.carpenito@alston.com

Theodore J. Sawicki, Esq. (*pro hac vice*)
H. Douglas Hinson, Esq. (*pro hac vice*)
ALSTON & BIRD LLP
1201 West Peachtree St.
Atlanta, GA  30309
Phone: (404) 881-7000
Fax: (404) 881-7777
Email: tod.sawicki@alston.com
Email: doug.hinson@alston.com

**Counsel for the FSC/SunAmerica Defendants**