# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BORIS GOLDENBERG, REINALDO PACHECHO, ANDREW LEOW and GERALD COMEAU, as representative of a class of similarly situated persons and on behalf of THE INDUCTOTHERM COMPANIES MASTER PROFITS SHARING PLAN #001, <br><br> Plaintiffs, <br><br> vs. <br><br> INDEL, INC., individually and a/k/a INDUCTOTHERM INDUSTRIES, INC. and INDUCTOTHERM CORPORATION, et al., <br><br> Defendants. | Civil No. 1:09-cv-5202-JBS-AMD |

---

# PLAINTIFFS' BRIEF IN SUPPORT OF
# CROSS MOTION FOR SUMMARY JUDGMENT
# ON PLAINTIFFS' PROHIBITED TRANSACTION CLAIMS

---

SZAFERMAN, LAKIND,
  BLUMSTEIN & BLADER, P.C.
By: Robert L. Lakind
    Arnold C. Lakind
101 Grovers Mill Rd., Suite 200
Lawrenceville, New Jersey 08648
Telephone: (609) 275-0400
Fax: (609) 275-4511
*Attorneys for Plaintiffs*

LEVY, PHILLIPS & KONIGSBERG, LLP
101 Grovers Mill Rd., Suite 200
Lawrenceville, New Jersey 08648
Telephone: (609) 275-0400
Fax: (609) 275-4511
*Attorneys for Plaintiffs*

627357.1

# **TABLE OF CONTENTS**

**Page**

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.   The Parties and Their Agreements . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.   FSC's Fiduciary Status . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.   The Investment of Plan Assets into the SAMMF, the
           Fees Charged and the Unlawful Kick Backs . . . . . . . . . . . . . . . . . . 4

    D.   Defendants' Failure to Disclose the Fees in Discovery . . . . . . . . . . . 7

    E.   FSC's Belated Disclosure of Improper Fees in its
           Summary Judgment Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    Point I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT
    ON THEIR PROHIBITED TRANSACTION AND BREACH OF
    LOYALTY CLAIMS

        A.   FSC Committed a Prohibited Transaction . . . . . . . . . . . . . . . 13

        B.   Defendants Should Be Ordered to Disgorge
              Their Illicit Gain . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        C.   FSC Breached Its Duty of Loyalty . . . . . . . . . . . . . . . . . . . 18

627357.1

Point II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

      DEFENDANTS ARE NOT ENTITLED TO SUMMARY
      JUDGMENT ON GROUNDS OF MOOTNESS

      A.    Plaintiffs Could Not Voluntarily Dismiss
              Their Claims Without Court Approval  . . . . . . . . . . . . . . . . 20

      B.    Even Fully Remedied Claims in a Class
              Action Are Not Moot Because the Class
              Representatives Have a Continuing Interest
              in Spreading Fees Among the Entire Class . . . . . . . . . . . . . 21

      C.    A Finding of Mootness Is Improper When
              Attorneys Fees Are Sought . . . . . . . . . . . . . . . . . . . . . . . . . 28

      D.    Plaintiffs' Claims Are Not Moot Because It
              *Cannot* be Said with Assurance that There is
              a Reasonable Expectation that the Alleged
              Violation will not Recur and They are
              Entitled to Equitable Relief Which has not
              Been Provided . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

## TABLE OF AUTHORITIES

### FEDERAL CASES

<u>Behrend v. Comcast Corp.</u>, 655 F.3d 182 (3d Cir. 2011) . . . . . . . . . . . . . . . . . . 22

<u>Carducci v Aetna U. S. Healthcare</u>, 247 F. Supp. 2d 596 (D. N.J. 2001)
      rev'd, <u>on</u> <u>other</u> grnds. <u>sub</u> <u>nom</u> <u>Levine v United Healthcare Corp.</u>
      402 F.3d 156 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

<u>Deposit Guaranty National Bank of Jackson, Miss. v. Roper</u>,
      445 U.S. 326 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 22

627357.1

Gannett Co. v. DePasquale, 443 U.S. 368 (1979) . . . . . . . . . . . . . . . . . . . . . . . . 30

Gardner v. Westinghouse Broadcasting Co.,
    559 F.2d 209 (3d Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

In re General Motors Pick-Up Truck Fuel  Tank Products Liability Litigation,
    55 F.3d 768 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Goldenberg v. Indel, 741 F.Supp.2d 618 (D.N.J. 2009) . . . . . . . . . 3, 4, 14, 17, 18

Haddock v. Nationwide Fin. Svs. Inc.,
    419 F. Supp. 2d. 156, 171 (D. Conn. 2006) . . . . . . . . . . . . . . . . . . . . . . 14

Hardt v. Reliance Standard Life Insurance Co., 130 S. Ct. 2149 (2010) . . . . 21, 22

Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.,
    530 U.S. 238 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Jersey Central Power & Light Co. v. the State of New Jersey,
    772 F.2d 35 (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Kanawi v. Bechtel Corp.,
    590 F.Supp.2d 1213, 1228 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . 14

Los Angeles County v. Davis, 440 U.S. 625 (1979) . . . . . . . . . . . . . . . . . . 29, 35

Lowen v. Tower  Asset Mgmt., 829 F.2d 1209 (2d Cir.1987) . . . . . . . . . . . . . 15

Lusardi v. Xerox Corp., 975 F.2d 964 (3rd Cir. 1992) . . . . . . . . . . . . . . . . . . 26

New Jersey Tpk. Authority v. Jersey Central Power & Light,
    772 F.2d 25 (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

In re Pet Food Products Liability Litigation,
    629 F.3d 333 (3d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Phillips Petroleum v. Shutts, 472 U.S. 797 (1985) . . . . . . . . . . . . . . . . . . . . . 25

Phillips v Pa. Higher Education Assis. Agency, 657 F.2d 554 (3d Cir. 1981)  . . 35

Powell v. McCormack, 395 U.S. 486 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

In Re Regions Morgan Keegan ERISA Litig.,
    692 F. Supp. 2d 944 (W.D. Tenn. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Reich v. Compton, 57 F.3d 270, 287 (3d Cir. 1995).  . . . . . . . . . . . . . . . . . . . 14

SEC v. Medical Committee For Human Rights, 404 U.S. 403 (1972) . . . . . . . . 29

In re Schering Plough ERISA Litigation, 589 F.3d 585 (3d Cir. 2009) . . . . . . . 28

Symczyk v. Genesis Healthcare Corp., 656 F.3d 189 (3d Cir. 2011) . . . . . . . . . 26

U. S. v. Concentrated Phosphate Exp. Association, 393 U.S. 199 (1968) . . . . . . 31

Weiss v. Regal Collections, 385 F.3d 337 (3d Cir. 2004) . . . . . . . . . . . 25, 26, 27

## FEDERAL STATUTES

ERISA §3 (14) (A), 29 U.S.C. §1002(14)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . 17

ERISA §406(a), 29 U.S.C. §1106(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

ERISA §406(b), 29 U.S.C. §1106(b) . . . . . . . . . . . . . . . . . . . . . . 1, 12, 13, 14

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) . . . . . . . . . . . . . . . . . . . 12, 17, 18

ERISA §502(g), 29 U.S.C. § 1132(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## FEDERAL RULES OF CIVIL PROCEDURE

Fed.R.Civ.P. 23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

Fed.R.Civ.P. 68 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

627357.1

## PRELIMINARY STATEMENT

This brief is submitted on behalf of Plaintiffs, Boris Goldenberg, Reinaldo Pacheco and Andrew Leow (collectively "Plaintiffs"), in support of their cross motion for summary judgment on Plaintiffs' Prohibited Transaction claims in this Employee Retirement Income Security Act of 1974 ("ERISA") case. This brief is also submitted in opposition to Defendants', American International Group, Inc. ("AIG"), FSC Securities Corporation (including its branch office of the Wharton Business Group) ("FSC"), SunAmerica Asset Management Corp. ("SAAMCo"), SunAmerica Capital Services, Inc., ("SACS") and SunAmerica Fund Services, Inc. ("SAFS") motion for summary judgment on Counts III and XI, as well as portions of Counts V and VI of Plaintiffs' First Amended Complaint ("Complaint"). For purposes of this brief, SAAMCo, SACS and SAFS are, at times, collectively referred to as the "SunAmerica Defendants."

Defendants seek dismissal of several counts of Plaintiffs' putative class action ERISA Complaint, arguing that those counts are moot because all fee payments, which Plaintiffs claim to have been prohibited transactions under ERISA §406(b), 29 U.S.C. §1106(b), have been refunded. These claims, however, are not moot for several reasons. First, Plaintiffs' efforts to obtain class certification would be advanced were they to prevail on these claims. Class

627556.1

certification would allow the spreading of attorneys fees from the three

representative Plaintiffs to the hundreds of class members, who are the

beneficiaries of the relief but paid none of the costs incurred to secure it.  Since the

class as a whole benefitted from the refund, the representative Plaintiffs have a

cognizable interest in pursuing class certification and, therefore, the Prohibited

Transaction claims, which can be readily certified for class treatment, are not

moot.  See Deposit Guaranty Nat'l Bank of Jackson, Miss. v. Roper, 445 U.S. 326,

330 (1980).  Second, Defendants have not eliminated the probability that the

challenged conduct will recur and, therefore, Plaintiffs are entitled to pursue their

claims for equitable relief.

In their brief, Defendants' seek to portray the refund of fees as driven by the

desire to avoid litigation costs; however, this contention is unconvincing. ▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[1] and as

demonstrated below, Defendants FSC Securities Corporation/Wharton Business

---

[1]Defendants have designated the documents that support this statement as confidential.  Therefore, this statement and the supporting documents are not being filed by Plaintiffs on the ECF system.  Rather, the courtesy copy of Plaintiffs' Brief that is being mailed to the Court will contain this text (i.e.,it will not be redacted as it is on the ECF system filing) and further the accompanying Declaration that is also being mailed to the Court, will contain a copy of the supporting documents.  Further, Plaintiffs will also provide the Defendants with an unredacted version of their brief, as well as a copies of the associated supporting documents.

627556.1

Group, abetted by the SunAmerica Defendants, have committed ERISA Prohibited

Transactions and, therefore, judgment should be entered in favor of Plaintiffs on

these claims.

## STATEMENT OF FACTS

### A.    The Parties and Their Agreements

This case involves the financial mismanagement of the Inductotherm

Companies Master Profit Sharing Plan (the "Plan"). Goldenberg v. Indel, 741 F.

Supp. 2d 618, 623 (D.N.J. 2009).  The Plan is sponsored by Inductotherm

Industries, Inc., who, along with its Board of Directors, the Plan's Trustee and the

Plan's Investment Committee (the "Inductotherm Defendants"), operate the Plan.

The Inductotherm Defendants acknowledge that under ERISA they are

"fiduciaries" to the Plan. Id. at 625.

In December of 2005, the Inductotherm Defendants retained FSC Securities

Corporation and its branch office, the Wharton Business Group, to manage the

assets of the Plan. Id. at 624; see also, Declaration of Robert Lakind ("Dec RL")

(Dec RL ¶¶ 2-5, 6 and 7, Ex. A, B,C, D, E and F) and Plaintiffs' Statement of

Material Facts in Support of their Motion for Partial Summary Judgment ("PSOF")

( PSOF ¶¶ 1-10).  FSC Securities Corporation and the Wharton Business Group

are hereinafter collectively referred to as "FSC."   FSC's  responsibilities to

manage the Plan are set forth in two agreements.  The first agreement is the FSC

Securities Corporation VISION2020 Advisory Investment Advisory Client
Services Agreement (the "FSC Advisory Agreement"), signed on  FSC's behalf by
its  employees, Marc Hembrough and Robert Gueriera.  (Dec RL ¶ 6, Ex. E; PSOF
¶ 4).  The second agreement is the Wharton Business Group Investment Policy,
signed on FSC's behalf by its employees Marc Hembrough and B.J. Webster.
(Dec RL ¶ 7, Ex. F; PSOF ¶ 5).

In the course of performing its management functions, FSC invested Plan
assets in the SunAmerica Money Market Fund ("SAMMF"), a fund administered
by FSC affiliates, the SunAmerica Defendants.  (Dec RL ¶ 12, Ex. I; PSOF ¶¶ 11,
16).

**B.    FSC's Fiduciary Status**

On December 21, 2009, FSC filed a motion to dismiss (Docket No. 18)
Plaintiffs' ERISA claims, arguing that it was not a fiduciary to the Plan.  Based on
the terms of the above agreements, the Court denied that motion, <u>Goldenberg</u>, 741
F. Supp. 2d at 625-29, and, at depositions,  Messrs. Hembrough and Webster have
conceded their status as ERISA fiduciaries. (Dec RL ¶¶ 8-9, Ex. G p. 58:5-6; and
H p. 233:16-24; PSOF ¶¶ 7-9).  Therefore, FSC's fiduciary status is no longer in
dispute.

627556.1

**C.    The Investment of Plan Assets into the SAMMF, the Fees Charged and the Unlawful Kickbacks**

Pursuant to the Vision2020 Investment Advisory Client Services Agreement, the Plan paid FSC a fee of .10% for its overall management of the Plan's portfolio. (Defendants' Statement of Facts In Support of FSC/SunAmerica Defendants Motion for Partial Summary Judgment, Docket No. 119-1 ("DSOF") ¶¶ 9-10).   In addition to this .10% fee, FSC received payments from SAAMCo and SACS on account of its investment of Plan assets into the SAMMF.  (DSOF ¶¶ 12 and 15; Defendants' Declaration of John T. Genoy, Docket No. 119-5 ("Dec JTG") ¶¶ 4-8 and 10).  Thus, FSC used its control over Plan assets to make investments in its affiliate, SAMMF, which produced fees for the SunAmerica Defendants and kickbacks to FSC.  (Dec JTG ¶¶ 4-8 and 10).

From December 2005 through March 2011, FSC invested Plan assets in the SAMMF (DSOF ¶ 15), which is a registered investment company or, as commonly referred to, a "mutual fund." (Plaintiffs' Appendix of Unpublished Authorities ("App.") A).  This investment forms the basis of Plaintiffs' claims in Counts III and XI of their Complaint, as well as portions of the claims in  Counts V and VI. (Defense Brief ("Db") 1).

All of the SunAmerica Defendants were service providers to the SAMMF (Dec JTG ¶ 3).  SAAMCo serves as the investment advisor to the SAMMF, while

627556.1

SACS serves as the fund's distributor. (Dec JTG ¶ 3). For their services, SAAMCo and SACS charged fees on the Plan's investment in the SAMMF. (DSOF ¶15 and Dec JTG ¶¶ 4-8). For its investment management services to the SAMMF, between the period of December 2005 and March 2011, SAAMCo charged an investment management fee that ranged between "0.46% to 0.49%...." (Dec JTG ¶ 4). Also during this time, pursuant to the "agreement memorialized in the Advisor Group Partner Agreement, the Shareholder Information Agreement Addendum and amended by a set of emails dated December 3 and 4, 2009" SAAMCo kicked back a portion of this investment management fee to FSC. (Dec JTG ¶¶ 4, 7, 8 and 10).

In addition, SACS, as the SAMMF's Distributor, between the period of December 1, 2005 through June 2, 2009, charged all assets invested in the SAMMF, annual 12b-1 fees (i.e., distribution fees)[2] equal to "0.15%." (Dec JTG ¶ 5). Between the period of December 2005 and June 2009, "pursuant to the Dealer Agreement between SACS and FSC Securities Corporation ('FSC')" the .15% 12b-1 fees were kicked back to FSC. (Dec JTG ¶¶ 5,6, 8 and 10; DSOF ¶ 15).

---

[2] According to the SEC, 12b-1, drawn from the applicable Federal Regulation, is the name of the fee that is used to pay for a fund's distribution/marketing services. Thus "'Distribution fees' include fees paid for marketing and selling fund shares, such as compensating brokers and others who sell fund shares...." (App. B, p. 4)

627556.1

SAAMCo, SAFS, SACS, and FSC, are all indirect wholly owned subsidiaries of AIG.  (DSOF ¶¶ 2, 8).  Further, within AIG's corporate structure, FSC, SAAMCo, and SACS are all subsidiaries of AIG Retirement Services, Inc. (Dec RL ¶ 10, Ex. I; PSOF ¶ 16).   As discussed in more detail below, these fees and the kickbacks form the basis of Plaintiffs' Prohibited Transaction claim in Count III of their Complaint, as well as their disgorgement claim in Count XI.

Therefore, based upon information provided by Defendants:

- FSC was an ERISA fiduciary (Dec RL ¶¶ 6-9, Ex. E, F, G p. 58:5-6, and H p. 233:16-24);

- Plan assets were used to pay fees of the SunAmerica Defendants (Dec JTG ¶¶ 4-5; DSOF ¶ 15);

- The fees paid to SunAmerica Defendants, SAAMCo and SACS, were kicked back to FSC (Dec JTG ¶¶ 6-8 and 10); and

- FSC and the SunAmerica Defendants were affiliated (DSOF ¶¶ 2, 8; Dec RL ¶10, Ex. I; PSOF ¶ 16).

**D.     Defendants' Failure to Disclose the Fees in Discovery**

As discussed in more detail below, one reason for denying a mootness claim derives from the possibility that the misconduct will be repeated.  Given Defendants' failure to disclose unlawful payments in discovery, there is a considerable possibility that the misconduct will recur.

In its responses to Plaintiffs' written discovery, FSC concealed its receipt of kickbacks, and instead claimed that the only compensation it received for

627556.1

managing the Plan's assets was the .10% fee paid to it pursuant to the FSC Advisory Agreement.  On February 22, 2011, FSC responded to Plaintiffs' Interrogatories 18 and 19.

Interrogatory 18 inquired as follows: "[i]f you contend the investment in the SAMMF was not a Prohibited Transaction, explain the basis of such contention....."(Dec RL ¶ 11, Ex. J p. 18; PSOF ¶ 19). In the sixth paragraph of their response to that interrogatory, FSC stated:

> [i]n addition, the FSC Defendants did not [among other things]...**receive any consideration for their own personal account from any party dealing with the Plan in connection with a transaction involving assets of the plan.**

(Dec RL ¶ 11, Ex. J p. 20; PSOF ¶ 19 (emphasis added)).

Interrogatory 19 asked "[i]f you contend that investment into the SAMMF satisfied the criteria for a Prohibited Transaction exemption, explain the basis of that contention...." (Dec RL ¶ 11, Ex. J p. 20; PSOF ¶ 19).  FSC's response to that interrogatory included the following statement:

> PTCE 77-4 [Prohibited Transaction exemption 77-4] permitted investment of Plan assets in mutual funds with which the FSC Defendants were affiliated through common ownership, such as the SAMMF.  **More specifically, the Plan does not pay a sales commission with respect to any purchase or sale of an investment in the SAMMF ...  In addition, the Plan does not pay any advisor fees other than those set forth in the FSC Advisory Agreement.**

(Dec RL ¶ 11, Ex. J p. 21;  PSOF ¶ 19) (emphasis added) .

627556.1

The term "FSC Advisory Agreement," according to FSC, refers to the Vision2020 Advisor Investment Advisory Client Services Agreement, (Dec RL, ¶ 11 Ex. J p. 19; PSOF ¶ 19), pursuant to which the Plan pays FSC a .10% fee (Dec RL ¶ 6, Ex. E p. WBG 06-00025; PSOF ¶ 19) (which is independent and separate of any fees FSC received from SAAMCo and SACs on its investment of Plan assets into the SAMMF).

In addition to these misrepresentations regarding its compensation, FSC produced, in discovery, ████████████████████████████████████, ████████████████████:

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████ [3]

(Dec RL ¶ 12, Ex. K; PSOF ¶ 21) (emphasis added).  It is notable that the compensation that FSC received from SACS was derived from the 12b-1 fees

---

[3]Defendants have designated the document that contains this quotation as confidential.  Therefore, this quotation and the supporting document is not being filed by Plaintiffs on the ECF system.  Rather, the courtesy copy of Plaintiffs' Brief that is being mailed to the Court will contain this quotation (i.e.,it will not be redacted as it is on the ECF system filing) and further the accompanying Declaration that is also being mailed to the Court, will contain a copy of the supporting document.  Further, Plaintiffs will also provide the Defendants with an unredacted version of their brief, as well as a copy of the associated supporting document.

627556.1

which SACS charged on the portion of the Plan's assets that were invested in the
SAMMF. (Dec JTG ¶¶ 4-8, 10; DSOF ¶ 15).  However, none of these monies (i.e.,
the investment management fees SAAMCo charged on Plan assets invested in the
SAAMF and paid to FSC and the 12b-1 fees SACS charged on Plan assets
invested in the SAAMF) were repaid to the Plan until March 2011, when FSC
sought to remedy its misconduct.  (Declaration of Tod Sawicki ("Dec TS")
(Docket No. 119-8, ¶ 3, Ex. A).

In addition to concealing these kickbacks in their paper discovery
responses, thus far, Defendants have refused to produce a corporate representative
of SAAMCo for a deposition despite the fact that Plaintiffs served their deposition
notice on SAAMCo on May 6, 2011.  (Dec RL ¶ 13, Ex. L).[4]

### E.    FSC's Belated Disclosure of Improper Fees in its Summary Judgment Motion

In striking contrast to FSC's discovery responses, in connection with
Defendants' Motion for Summary Judgment, John T. Genoy, Chief Financial
Officer and Chief Operating Officer of SAAMCo and President of SACS, stated in
his Declaration:

> [t]he distribution fee paid by SACS to FSC during the period from
> December 1, 2005, and the fees paid by SAAMCo to FSC pursuant to the

---

[4] On November 29, 2011, the SunAmerica Defendants agreed to produce a
SAAMCo corporate representatives if their summary judgment motion is denied.

627556.1

Agreement [between the period of December 2005 to March of 2011]... **are ... fees or payments SACS, SAAMCo or SAFS paid to or for the benefit of FSC....**

(Dec JTG ¶ 10) (emphasis added); <u>see</u> <u>also</u> paragraph 6 of Mr. Genoy's Declaration: stating, "[p]ursuant to the Dealer Agreement between SACS and FSC Securities Corporation ('FSC')...SACS made monthly payments of a distribution fee to FSC at the rate of 0.15% per annum ...."; <u>see</u> <u>also</u> paragraph 7 of Mr. Genoy's Declaration, stating, "...SAAMCo also paid fees to FSC pursuant to the agreement memorialized in the Advisor Group Partner Agreement, the Shareholder Information Agreement Addendum...."

The abovementioned agreements are attached as Exhibits A and B of Mr. Genoy's Declaration.  Since these agreements are subject to Defendants' motion to seal (which Plaintiffs' oppose), Plaintiffs will not comment on their contents other than to point the Court to paragraphs 1 and 12 of Exhibit A to Mr. Genoy's Declaration and to the fees listed in Schedule A thereof, as well as to paragraph 3 of Exhibit B to Mr. Genoy's Declaration and to the fees listed in Exhibit A thereof.

Notwithstanding the fact that they denied receipt of fees in their discovery responses, FSC, on March 23, 2011, sent Inductotherm Defendants' Thomas McShane and Laurence Krupnick, a letter stating that "$56,011.65 should be credited to your Plan...." (Dec RL ¶ 14, Ex. M; Dec TS ¶ 3, Ex. A; PSOF ¶ 23).

627556.1

This credit occurred because of FSC's impermissible receipt of a portion of the investment management and 12b-1 fees from the SAMMF.  (Dec. JTG ¶¶ 4-8, 10; Dec RL ¶ 14, Ex. M).  The letter was signed by "FSC Securities Corporation" and FSC employee Mr. Hembrough was copied on the letter.

FSC did not thereafter amend its discovery responses.[5]  In fact, on May 4, 2011, FSC provided supplemental responses to "Certain of Plaintiffs' First Set of Interrogatories to the FSC Defendants," but it did not correct its answers to interrogatories numbered 18 and 19, to reflect its March 23, 2011 admission to the Inductotherm Defendants that it was paid fees on account of its investment of Plan assets in the SAMMF.  (Dec RL ¶ 15, Ex. N; PSOF ¶ 25).  Only on July 11, 2011, did counsel for FSC finally alert Plaintiffs to the fact that FSC had been receiving kickbacks from the SACS and SAAMCo, on account of FSC's investment of Plan assets into the SAMMF.  (Dec RL ¶ 16, Ex. O; PSOF ¶ 26).

## ARGUMENT

Plaintiffs seek summary judgment on their claim (Count III) that FSC committed a prohibited transaction under ERISA § 406(b), 29 U.S.C. §1106(b), by investing Plan assets in the SAAMF, as well as their claim (Count XI) under

_____

[5]  Further, the documents attached to the Declaration of John T Genoy, as Exhibits A and B, which he relies on in his declaration, were not produced to Plaintiffs until June 24, 2011.

627556.1

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), against the SunAmerica Defendants for participating in FSC's prohibited transaction.  The SunAmerica Defendants seek partial summary judgment dismissing "Counts III and XI, as well as portions of Counts V and VI that seek recovery of fees paid to the FSC/SunAmerica Defendants in violation of" ERISA.  (Db1).  Because Defendants' motion to dismiss on grounds of mootness and Plaintiffs' motion for summary judgment implicate, at least in part, the same legal issues, they are discussed together.

## POINT I

### PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR PROHIBITED TRANSACTION AND BREACH OF LOYALTY CLAIMS

**A.**    **FSC Committed a Prohibited Transaction**

      **1.**    **ERISA § 406(b), 29 U.S.C. § 1106(b):**

Count III of Plaintiffs' Complaint alleges that:

> By investing in the SunAmerica Money Market Fund, which resulted in a payment of fees to multiple wholly owned AIG subsidiaries and payment to AIG, the Financial Service Corporation, FSC Securities Corporation and the Wharton Business Group committed a Prohibited Transaction under ERISA §§ 406(b)(1), (2) and (3), 29 U.S.C. §§ 1106(b)(1), (2) and (3).

(Dec RL ¶ 17, Ex. P; PSOF ¶ 28).

ERISA § 406(b) provides in pertinent part as follows:

(b) Transactions between plan and fiduciary

-13-

A fiduciary with respect to a plan shall not--

(1) deal with the assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

The Third Circuit has described this provision as follows: "[s]ection 406(b) prohibits a plan fiduciary from engaging in ... self-dealing." Reich v. Compton, 57 F.3d 270, 287 (3d Cir. 1995). Further, ERISA requires that § 406(b) be "broadly construed and....liability be imposed .... even where there is no taint of scandal, no hint of self-dealing ...." Id. at 288 (internal quotations omitted).

On September 17, 2010, the Court denied FSC's motion to dismiss Count III. Goldenberg v. Indel, 741 F. Supp. 2d at 632-33. Other Courts/authorities have held that ERISA § 406(b), 29 U.S.C. § 1106(b), prohibited transactions occur when a fiduciary invests Plan assets with an affiliate. See In re Regions Morgan Keegan ERISA Litig., 692 F. Supp. 2d 944, 959-61 (W.D. Tenn. 2010); Kanawi v. Bechtel Corp., 590 F. Supp. 2d 1213, 1228 (N.D. Cal. 2008); Prohibited Transaction Exemption ("PTE") 77-4 (App. C) (unless waived, payment of "investment management...fee" to investment manager of a mutual

-14-

fund, where the advisor to the fund is a plan fiduciary, is a Prohibited

Transaction); <u>Department of Labor Advisory Opinion "DOL Adv. Op." 93-13A</u>

(App. D) (The PTE 77-4 exemption applies only if, among other things, the plan is

given a credit for fees it would otherwise pay in an amount equal to the fund's

investment management fee); <u>DOL Adv. Op. 94-35A</u> (App. E).  <u>See also</u> <u>Haddock</u>

<u>v. Nationwide Fin. Svs. Inc.</u>, 419 F. Supp. 2d. 156, 171 (D. Conn. 2006) (denying

fiduciary's motion for summary judgment with respect to plaintiffs' ERISA §

406(b), 29 U.S.C. § 1106(b), prohibited transaction claim, where fiduciary

received kickbacks from a mutual fund on account of investment of plan assets in

such mutual funds, but claimed such kick backs offset other fees); <u>cf</u>  <u>Lowen v.</u>

<u>Tower Asset Mgmt.</u>, 829 F.2d 1209, 1212 (2d Cir.1987) (investment in a company

in which a fiduciary has an interest is a prohibited transaction under ERISA §§

406(b)(1) and (3)).

    FSC cannot seriously dispute that its investment of Plan assets in the

SAMMF did not constitute a prohibited transaction under ERISA § 406(b), 29

U.S.C. § 1106(b).



.[67] Further, in his declaration, John T. Genoy,

_____

    [6]  Defendants have designated the documents that support this statement as
confidential.  Therefore, this statement and the supporting documents are not

627556.1

being filed by Plaintiffs on the ECF system.  Rather, the courtesy copy of Plaintiffs' Brief  that is being mailed to the Court will contain this text (i.e.,it will not be redacted as it is on the ECF system filing) and further the accompanying Declaration that is also being mailed to the Court, will contain a copy of the supporting documents.  Further, Plaintiffs will also provide the Defendants with an unredacted version of their brief, as well as a copies of the associated supporting documents. Plaintiffs note that FSC has only provided Plaintiffs unsigned and undated copies of the filings that it was required to make with the IRS.  However, at the deposition of Mr. Hembrough, FSC's counsel confirmed that in 2011 these forms were filed with the IRS. (Dec RL ¶ 8, Ex. G pp. 67:10-25; 68:1-13).

      [7]  Plaintiffs complaint does not allege that FSC received payments on account of its investment of Plan assets in the SAMMF.  That information was not publically available and the documents which reveal that fact are the ones that FSC seeks to seal.  Further, in discovery, Plaintiffs attempted to obtain this information, however, as described above, in FSC's interrogatory responses, it specifically denied receiving any compensation on account of its investment of Plan assets (Dec RL ¶ 11, Ex. J pp. 20-21), and, as also described above, produced a document which stated it did not receive any 12b-1 fees on account of its investment of Plan assets in the SAMMF.  (Dec RL ¶ 12, Ex. K)(continued)...

      While this fact is not required to establish Plaintiffs prohibited transaction claims, it certainly supports them.  Further even to the extent the Court were to find that it was a required element, Plaintiffs attempted, in discovery, to learn this information, but FSC elected to initially conceal it from them.  FSC's brief seems to suggest that the only fee it receives is the .10% fee provided pursuant to the VISION2020 Advisor Investment Advisory Client Services Agreement and the 12b-1 fee SACS charges for the portion of the Plan's assets that are invested in the SAMMF and then pays to FSC.  Thus, page 2 of FSC's brief states:

      "FSC charged the Plan an investment advisory fee of 10 basis points (0.10%) on those Plan assets for which FSC provided investment services to the Plan.  SOF ¶ 10. [*This advisory fee is the fee that FSC charges pursuant to the VISION2020 Advisor Investment Advisory Client Services Agreement, and is independent of the fees it received on account of investing Plan assets in the SAMMF*].  Due to the investment of Plan assets in SAMMF, an

Chief Financial Officer and Chief Operating Officer of SAAMCo and President of

SACS, confirms that FSC committed a prohibited transaction:

> [t]he distribution fee paid by SACS to FSC during the period from
> December 1, 2005, and the fees paid by SAAMCo to FSC pursuant to the
> Agreement [between the period of December 2005 to March of
> 2011]...are...fees or payments SACS, SAAMCo or SAFS paid to or for the
> benefit of FSC....

(Dec JTG ¶ 10).  In sum, Plaintiffs are entitled to summary judgment on Count III

of their Complaint.

### 2.    ERISA § 406(a), 29 U.S.C. § 1106(a):

This Court dismissed Plaintiffs' claims under ERISA § 406(a), 29 U.S.C. §

1106(a), finding that the SunAmerica Defendants, as corporate siblings to FSC,

did not qualify as "parties in interest."  Goldenberg, 742 F. Supp. 2d at 633.

Defendants had not disclosed in their motion to dismiss, and had concealed in

discovery, that FSC received kickbacks from the SunAmerica Defendants.  In

contrast to FSC's discovery responses, John T. Genoy states, in connection with

---

> annual advisory fee was paid to SAAMCo, in SAAMCo's capacity as
> investment adviser to SAMMF....   In addition to the advisory fees paid to
> SAMMF, 12b-1 fees were paid to SACS which were then remitted to FSC."

(Db 2).

This description is incomplete as it fails to note that SAAMCo, which
charged the SAMMF an investment management fee, paid a portion of such fee to
FSC.  (Dec JTG ¶¶ 4, 7, 10).

627556.1

Defendants Motion for Summary Judgment that:

> [t]he distribution fee paid by SACS to FSC during the period from
> December 1, 2005, and the fees paid by SAAMCo to FSC pursuant to the
> Agreement [between the period of December 2005 to March of
> 2011]...are...fees or payments SACS, SAAMCo or SAFS paid to or for the
> benefit of FSC....

(Dec JTG ¶ 10).  As a Plan fiduciary, FSC is a "party in interest."  ERISA §

3(14)(A), 29 U.S.C. § 1002(14)(A).  The use of Plan assets to fund the kickback to

FSC, therefore, violated ERISA § 406(a) 29 U.S.C.  § 1106(a). as well.  Since this

claim was dismissed, based upon Defendants' failure to disclose the concealed

kick backs to FSC, Plaintiffs cannot seek judgment on it, but seek leave to amend

to add this claim, i.e. the kick back to FSC as an ERISA § 406(a), 29 U.S.C. §

1106(a), prohibited transaction.

## B.    Defendants Should be Ordered to Disgorge Their Illicit Gains

Count XI of Plaintiffs' Complaint alleges that under ERISA § 502(a)(3), 29

U.S.C. § 1132(a)(3), the SunAmerica Defendants must disgorge any fees they

received on account of FSC's commission of prohibited transactions.  (Dec RL ¶

17, Ex. P; PSOF ¶ 31).  Under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), a party

that participates in a prohibited transaction is subject to disgorgement.  Harris

Trust and Sav. Bank v. Salomon Smith Barney, Inc., 530 U.S. 238, 239 (2000)

(ERISA 502(a)(3) "admits of no limit (aside from the 'appropriate equitable relief'

caveat) on the universe of possible defendants.  Indeed, § 502(a)(3) makes no

627556.1

mention at all of which parties may be proper defendants-the focus, instead, is on redressing the 'act or practice which violates any provision of [ERISA Title I].'"); see also Goldenberg,741 F.Supp.2d at 639-40.

Both SAAMCo and SACS have admitted they charged fees on the portion of Plan assets which FSC invested in the SAMMF. Therefore, both SAAMCo and SACS are liable for the conduct complained of in Count XI (i.e., participating in a prohibited transaction), and Plaintiffs are entitled to summary judgment with respect to these Defendants.[8]

## C.  FSC Breached its Duty of Loyalty

Count VI of Plaintiffs' Complaint alleges that FSC, by investing Plan assets in the SAMMF, breached its duty of loyalty under ERISA § 404(a)(1)(A). (Dec RL ¶ 17, Ex. P; PSOF ¶ 30). ERISA § 404(a)(1)(A) provides that:

> a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and

---

[8] With respect to AIG, it, like FSC's interrogatory responses, represented that it did not receive any fees on account of FSC's investment of Plan assets into the SAMMF. Therefore, Plaintiffs believe that they may not rely on these Defendants representations and such facts must be confirmed through either depositions or representations, in the form of a declaration, from an employee of such entity that can demonstrate in their declaration that they have sufficient knowledge to make such representation. With respect to SAFS, the prospectus for the SAMMF for year ended December 31, 2010, states "SAFS receives a fee from the Funds, computed and payable monthly based upon an annual rate of 0.22% of average daily net assets of Class A...." (Dec RL ¶ 19, Ex. R) .

627556.1

(ii) defraying reasonable expenses of administering the plan....

ERISA § 404(a)(1)(A).  FSC invested Plan assets in the SAMMF and then received a concealed kickback from SAAMCo and SACS of a portion of the Plan assets it invested in the SAMMF.  The adviser that managed the Plan prior to FSC's retention, in late 2005, used the Vanguard Prime Money Market Fund as the Plan's only money market investment option.  (Dec RL ¶ 20, Ex. S).  Clearly, by investing Plan assets in a money market fund that paid kickbacks to FSC, FSC violated ERISA § 404(a)(1)(A).[9]

*                              *                              *

In sum, Plaintiffs are entitled to summary judgment on Counts III, VI and XI of their Complaint.

---

[9] Count V alleges that the use of the SAMMF, which (A) had fees well in excess of those of the Vanguard Prime Money Market Fund, and (B) underperformed the Vanguard Prime Money Market Fund, constituted a violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) (Dec RL ¶¶ 21, 22, Ex. T, U-A, U-B).  The Plan's prior service provider did not use the SAMMF as the Plan's money market fund, and instead used the Vanguard Prime Money Market Fund as the Plan's money market investment option.  (Dec RL ¶ 20, Ex. S).  While these facts all strongly support Plaintiffs' claim, at this time they are not moving for summary judgment with respect to this Count (only opposing the Defendants' motion for summary judgment with respect to this Count), but reserve their right to move for summary judgment with respect to this claim at a later date or in the alternative to proceed with this Count at trial.

627556.1

# POINT II

## DEFENDANTS ARE NOT ENTITLED TO SUMMARY JUDGMENT ON GROUNDS OF MOOTNESS

### A.   Plaintiffs Could not Voluntarily Dismiss Their Claims Without Court Approval

As Defendants note, they had requested that Plaintiffs voluntarily dismiss several counts of their Complaint because Defendants' misconduct, they claim, had been remedied by reimbursement of the improperly paid fees.  Plaintiffs felt that they could not do so for three reasons.  First,  Plaintiffs were of the view that even an uncertified class could not be settled or claims dismissed without court approval.  As the Third Circuit Court of Appeals wrote last year in In re Pet Food Products Liability Litigation, 629 F.3d 333 (3d Cir. 2010):

> We ask district courts to apply an even more rigorous, "heightened standard" in cases "where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously. We have explained that this "heightened standard is designed to ensure that class counsel has demonstrated sustained advocacy throughout the course of the proceedings and has protected the interests of all class members."

629 F.3d at 350 (citations omitted); see also Gardner v. Westinghouse Broadcasting Co., 559 F.2d 209, 219 (3d Cir. 1977) (Seitz, J. concurring ("even before class certification, the action may not be settled or dismissed without court approval"); see Dec TS, Ex. D).

627556.1

Second, two issues remained outstanding notwithstanding the repayment:
(1) the ability of the representative plaintiffs to spread their legal fees and costs
among the entire class who benefitted from the relief; and (2) Defendants'
responsibilities to pay Plaintiffs' attorneys' fees under ERISA.  Hardt v. Reliance
Standard Life Ins. Co., 130 S. Ct. 2149, 2158-59 (2010).  Third, this case has not
yet been certified as a class.  If it is later to be certified and were counsel to have
voluntarily dismissed claims, those putative class members who lacked notice and
the opportunity to evaluate the dismissed claims, would arguably be bound by the
dismissal.  For these reasons, even were the calculation of the amount repaid by
Defendants accurate, the claims could not be voluntarily dismissed.[10]

**B.    Even Fully Remedied Claims in a Class Action are not Moot Because the Class Representatives have a Continuing Interest in Spreading Fees Among the Entire Class**

Defendants are not entitled to summary judgment because their payment of
a refund does not resolve who is responsible for attorneys fees in this ERISA
putative class action.  The representative Plaintiffs have a continuing interest in

---

[10]  See also Dec RL ¶ 23, Ex. V, where counsel for Plaintiffs, in a July 29,
2011, letter stated that they were "prepared to dismiss Counts III, V, VI and XI"
pending resolution of the attorneys' fee and notice issues.  At no time did
Plaintiffs agree to voluntarily dismiss these Counts, and their refusal to dismiss is
what precipitated FSC's current motion. (Db1).

627556.1

the resolution of the prohibited transaction claims[11] in order to facilitate class

certification so that the full weight of the attorneys fees, incurred for the benefit of

the entire class, does not fall upon the representative Plaintiffs.  Moreover, the

representative Plaintiffs and the members of the uncertified class  have an interest

and counsel has a fiduciary obligation,  In re General Motors Pick-Up Truck Fuel

Tank Products Liability Litigation, 55 F.3d 768, 801 (3d Cir. 1995) and Behrend

v. Comcast Corp., 655 F.3d 182, 212 at n. 12 (3d Cir. 2011), to attempt to shift

attorneys fees to the Defendant-wrongdoers, as permitted by Hardt v. Reliance

Standard Life Ins. Co., 130 S. Ct. 2149 (2010), in order to enlarge the benefits to

the class members.

       According to the Supreme Court, when a defendant tenders a settlement to a

class representative, the class representative's claims are not moot because the

representatives retain an economic interest in class certification, so as to have their

attorney's fees shared by the class.  See  Deposit Guaranty Nat'l Bank of Jackson,

Miss. v. Roper, 445 U.S. 326, 330 (1980).  The prohibited transaction claims at

issue here have classwide uniform implications and their inclusion in a class

_____

       [11]As stated above, Count III alleges that FSC is liable to Plaintiffs/the Plan
for committing prohibited transactions under ERISA § 406(b), 29 U.S.C. §
1106(b).  Count XI alleges that the SunAmerica Defendants are liable to Plaintiffs
for participating in FSC's prohibited transaction. Plaintiffs also have a continuing
interest in resolution of their breach of loyalty claim, Count VI.

627556.1

certification motion enhances the likelihood that Plaintiffs will prevail and be able to shift the bulk of their legal fees from the three class representatives to the hundreds of individuals who benefitted from FSC's repayment.

Roper, like the instant matter, involved a putative class action. In that case, the defendant had tendered an amount to the class representatives equivalent to what plaintiffs would have recovered had they prevailed in individual actions, including a small payment for attorneys fees. Id. at 329. The plaintiffs rejected the offer because they sought to appeal the District Court's denial of their class certification motion; the District Court nonetheless dismissed the case as moot. Id. at 330. The Fifth Circuit Court of Appeals reversed the District Court and the Supreme Court affirmed.

Chief Justice Burger, writing for the Court observed that:

> [n]either the rejected tender offer nor the dismissal of the action over plaintiffs' objections mooted the plaintiffs' claim on the merits so long as they retained an economic interest in class certification.

Id. at 333. The class representatives "maintained...that they retained a continuing individual interest in the resolution of the class certification question by virtue of their desire to shift part of the cost to those who will share in its benefits if the class is certified...." Id. at 336. In finding that this was a sufficient interest to overcome the mootness claim, the Supreme Court stated:

> A significant benefit to claimants who choose to litigate their individual

627556.1

claims in a class-action context is the prospect of reducing their costs of litigation, **particularly attorney's fees, by allocating such costs among all members of the class who benefit from any recovery.** Typically, the attorney's fees of a named plaintiff proceeding without reliance on Rule 23 could exceed the value of the individual judgment in favor of any one plaintiff. Here the damages claimed by the two named plaintiffs totaled $1,006.00. **Such plaintiffs would be unlikely to obtain legal redress at an acceptable cost, unless counsel were motivated by the fee-spreading incentive and proceeded on a contingent-fee basis.** This, of course, is a central concept of Rule 23.

Id. at 338 n. 9. (Emphasis added).

In addition to recognizing the personal interest of the litigant, the Court

acknowledged that the public interest in encouraging class actions would be

advanced if they could not be easily mooted:

The use of the class-action procedure for litigation of individual claims may offer substantial advantages for named plaintiffs; it may motivate them to bring cases that for economic reasons might not be brought otherwise. Plainly there has been a growth of litigation stimulated by contingent-fee agreements and an enlargement of the role this type of fee arrangement has played in vindicating the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost. The prospect of such fee arrangements offers advantages for litigation by named plaintiffs in class actions as well as for their attorneys. For better or worse, the financial incentive that class actions offer to the legal profession is a natural outgrowth of the increasing reliance on the "private attorney general" for the vindication of legal rights; obviously this development has been facilitated by Rule 23.

Id. at 338  (Footnotes omitted, other than footnote 9, which is reproduced above)

The Court of Appeals for the Third Circuit has endorsed the logic of Roper.

See Weiss v. Regal Collections, 385 F.3d 337, 345 (3d Cir. 2004).  This case was

627556.1

brought under the Fair Debt Collection Practices Act ("FDCPA"), a statute that,

like ERISA, relies on private attorneys for its enforcement and includes attorneys'

fees provisions to motivate private litigation. <u>Id</u>. at 345.  There, before plaintiff

could move for class certification, the defendant paid him his individual damages.

<u>Id</u>. at 343.  The defendant then filed a motion to dismiss on mootness grounds,

which the District Court granted.  The plaintiff appealed to the Third Circuit.  <u>Id</u>.

at 340.   Reversing, the Court wrote:

> The purposes behind Fed.R.Civ.P. 23 are well-recognized. '**A significant
> benefit to claimants who choose to litigate their individual claims in a
> class-action context is the prospect of reducing their costs of litigation,
> particularly attorney's fees, by allocating such costs among all members
> of the class who benefit from the recovery.**' <u>Roper</u>, 445 U.S. at 338 n. 9,
> 100 S.Ct. 1166. The Supreme Court also commented that '[c]lass actions ...
> may permit the plaintiffs to pool claims which would be uneconomical to
> litigate individually. For example, this lawsuit involves claims averaging
> about $100 per plaintiff; most of the plaintiffs would have no realistic day in
> Court if a class action were not available.' <u>Phillips Petroleum v. Shutts</u>, 472
> U.S. 797, 809, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). This
> '[c]ost-spreading can also enhance the means for private attorney general
> enforcement and the resulting deterrence of wrongdoing.' <u>In re Gen'l
> Motors Corp., Pick-Up Truck Fuel Tank Prods. Liab. Litig.</u>, 55 F.3d 768,
> 784 (3d Cir.1995). Allowing defendants to 'pick off' putative lead plaintiffs
> contravenes one of the primary purposes of class actions-the aggregation of
> numerous similar (especially small) claims in a single action.
>
> *          *          *
>
> Congress also intended the FDCPA to be self-enforcing by private attorney
> generals. Representative actions, therefore, appear to be fundamental to the
> statutory structure of the FDCPA. Lacking this procedural mechanism,
> meritorious FDCPA claims might go unredressed because the awards in an
> individual case might be too small to prosecute an individual action. For

this reason, defendants' view of the interplay between Fed.R.Civ.P. 23 and Fed.R.Civ.P. 68 would frustrate Congress's explicit directive that the FDCPA be enforced by private attorney generals acting in a representative capacity. Alleged violators of federal law would be allowed to tender the statutory amount of damages to a named plaintiff, derailing a putative class action and frustrating, the goals and enforcement mechanism of the FDCPA.

Id. at 344-45 (internal citations deleted from last paragraph of quotation); see also Symczyk v. Genesis Healthcare Corp., 656 F.3d 189, 197 (3d Cir. 2011) (citing Weiss v. Regal Collections, 385 F.3d 337, 348 (3d Cir. 2004)) ("[w]hen a defendant's Rule 68 offer threatens to preempt the certification process, reconciling the conflicting imperatives of Rules 23 and 68 requires allocating sufficient time for the process to 'play out.'").

More recently, the Third Circuit in Symczyk v. Genesis HealthCare Corp. 656 F.3d 189 (3d Cir. 2011) recognized the unique nature of class litigation when considering a mootness claim:

Although traditional mootness rules would ordinarily apply absent an affirmative ruling on class certification, in certain circumstances, to give effect to the purposes of Rule 23, it is necessary to conceive of the named plaintiff as a part of an indivisible class and not merely a single adverse party even before the class certification question has been decided.

(Internal citations and quotations omitted). Id. 196-97. Only when a representative plaintiff accepts a settlement - which the Plaintiffs did not do here - do conventional mootness principles apply. See Lusardi v. Xerox Corp., 975 F.2d

627556.1

964 (3d Cir. 1992).[12]

The argument against mootness here is far stronger than in Roper, Weiss

and later cases. Here, the class representatives obtained relief for the entire class.

If the representatives are foreclosed from seeking class certification on the

prohibited transaction claim, they would be worse off for having brought the

litigation, than had they done nothing. The entire class, in contrast would have the

full benefit of the relief but bare none of the costs incurred.

Additionally, a dismissal would deter injured parties and their counsel from

pursuing such cases in the future. See Weiss v. Regal Collections, 385 F.3d 337

(3d Cir. 2004).[13] Our jurisprudence encourages ERISA class actions. In re

---

[12] In Lusardi, plaintiffs, in December of 1990, executed a "Memorandum of Understanding" ("MOU") "in which the named plaintiffs agreed to a 'full and unconditional release of all claims...Covenant not to sue....'" Id. at 968. The MOU was executed by the Court and the Judge "entered a Stipulation and Order dismissing all of the individual claims of the named plaintiffs." Id. at 969. Here, Plaintiffs have not executed an MOU, or a Stipulation dismissing their claims; rather, they have refused to dismiss the claims that are the subject of the Defendants' motion.

[13] In Weiss, the statute at issue relied on the actions of private attorneys for enforcement. Further, it encouraged private attorneys to take such cases through the promise of awarding attorneys' fees. Weiss, 385 F.3d at 345. The Department of Labor has recognized the importance of private enforcement of ERISA. See DOL's amicus brief to the Second Circuit Court of Appeals in Coan v. Kaufman, 457 F.3d 250 (2nd Cir. 2006), No. 04-57173, submitted to the Court by the DOL on March 25, 2006 stating "[a]lthough the Department of Labor has primary interpretive and enforcement authority for Title I of ERISA, the Secretary does not have the resources to pursue litigation regarding every allegation of fiduciary

Schering Plough ERISA Litigation, 589 F.3d 585, 604 (3d Cir. 2009). If Plaintiffs were foreclosed from resolving claims that support class certification, such as the ERISA prohibited transaction claims at issue here, by virtue of a payment on those claims, it would be more difficult to obtain class certification. This would undermine the interest in facilitating private enforcement and the desire to promote class actions in the ERISA context.

### C.    A Finding of Mootness is Improper When Attorneys Fees are Sought

Even outside of the class action context, where plaintiff has not secured all of the relief sought, its claim survives a mootness challenge. See Jersey Central Power & Light Co. v. the State of New Jersey, 772 F.2d 35 (3d Cir. 1985), where the court held that plaintiff's claim survived a mootness challenge because the plaintiff had requested several forms of relief in its complaint all of which had not been provided:

> [E]ven if one of these requests subsequently becomes moot, this Court must still consider the viability of the remaining requests. ... The plaintiff, JCP&L, sought in its complaint not only injunctive and declaratory relief but also damages and attorney's fees.

---

imprudence. Accordingly, the Secretary has an interest in ensuring that private litigants are able to vindicate their rights under ERISA." (App. F). Like the statute construed in Weiss, ERISA provides that plaintiffs, in certain circumstances, are entitled to attorneys fees. ERISA § 502(g), 29 U.S.C. § 1132(g).

627556.1

772 F.2d at 39-40.

Thus, while the Court there found that the claim for injunctive relief was moot, it also found that "the availability of damages or other monetary relief almost always avoids mootness . . ." and that "a viable claim for damages is usually sufficient to preserve the saliency of the action." Id. at 41. As is the case here, finding that the District Court had yet to make any findings with respect to damages or attorney's fees, the court expressly reserved plaintiff's claims for damages and attorneys' fees for future determination.

> **D.     Plaintiffs' Claims are not Moot Because it *Cannot* be Said with Assurance that There is a Reasonable Expectation that the Alleged Violation will not Recur and they are Entitled to Equitable Relief Which has not Been Provided**

The Supreme Court, in <u>Los Angeles County v. Davis</u>, 440 U.S. 625 (1979), held that, if other conditions for mootness have been satisfied, a claim is still not moot unless "it can be said with assurance that 'there is no reasonable expectation ...' that the alleged violation will recur." 440 U.S. at 631 (<u>quoting</u> <u>United States v. W. T. Grant Co.</u>, 345 U.S. 629, 633 (1953)); <u>see also</u> <u>SEC v. Medical Committee For Human Rights</u>, 404 U.S. 403 (1972). According to <u>Davis</u> and its progeny, "a matter is not necessarily moot simply because the order attacked has expired; if the underlying dispute between the parties is one 'capable repetition, yet evading review,' it remains a justiciable controversy within the meaning of Article III."

627556.1

New Jersey Tpk. Auth. v. Jersey Central and Light, 772 F.2d 27, 31 (3rd Cir. 1985)

(citing Nebraska Press Association v. Stuart, 427 U.S. 539, 546 (1976)).  In order

to determine whether the underlying dispute is "capable of repetition, yet evading

review" there are two requirements:

> (1) the challenged action was in its duration too short to be fully litigated
> prior to its cessation or expiration, and

> (2) there is a reasonable expectation that the same complaining party would
> be subjected to the same action again.

New Jersey Tpk. Auth., 772 F.2d at 31 (citing Murphy v. Hunt, 455 U.S. 478, 482

(1982) (per curiam); Gannett Co. v. DePasquale, 443 U.S. 368, 377 (1979)

(quoting Weinstein v. Bradford, 423 U.S. 147, 149 (1975) (per curiam)); Powell v.

McCormack, 395 U.S. 486, 89 (1969).

### 1.    The Challenged Action was of Short Duration

Clearly, Defendants' misconduct was short in duration, beginning when

they assumed responsibility for the Plan.  That was the earliest date upon which

FSC began engaging in prohibited transactions by investing Plan assets in the

SAMMF and receiving kickbacks.

Prior to the time that Plaintiffs filed their lawsuit, there was no way to know

of the illegal kickbacks, by SunAmerica Defendants SAAMCo and SACS to

Defendant FSC, as they were not disclosed in any public documents or reported to

-31-

627556.1

the Plan participants.[14]  Even after the lawsuit was filed, Plaintiffs were unable to

learn of the full scope of Defendants' misconduct because they concealed the

payments to FSC in their February 22, 2011 Interrogatory answers and the May 4,

2011 amendments.  (See supra at pp. 7 to 9; See also Dec RL ¶¶ 11, 12, 15, Ex. J

pp. 19-21, Ex. K, Ex. N; PSOF ¶¶ 19, 21, 26).  Only on July 11, 2011, did counsel

for FSC finally alert Plaintiffs to the fact that FSC had been receiving kickbacks

from SACS and SAAMCo, on account of FSC's investment of Plan assets into the

SAMMF.  (Dec RL ¶ 16, Ex. O; PSOF ¶ 26).  Therefore, both the duration of the

wrong and the period of time since its discovery were so short as to not allow the

claims to be "fully litigated prior to its cessation or expiration."  New Jersey

Turnpike Auth., 772 F2d at 31.

> **2.    Not Only is There a Likelihood that the Wrongs will Recur, but Defendants Continue to Engage in Similar Wrongs**

Clearly, the  "[m]ere voluntary cessation of allegedly illegal conduct does

not moot a case; if it did, the courts would be compelled to leave '(t)he defendant

* * * free to return to his old ways.'"  U. S. v. Concentrated Phosphate Exp.

Ass'n, 393 U.S. 199, 203 (1968) (citing United States v. W. T. Grant Co., 345 U.S.

629, 632 (1953)).  For six reasons, there is a reasonable likelihood that

---

[14] In fact, the Defendants seeks to seal the documents which disclose such payments.  This statement is was redacted on the ECF filing of this motion on account of the Defendants' Motion to Seal certain documents.

627556.1

Defendants' misconduct will be repeated.

First, Defendants failed to remedy the wrong when the Plaintiffs filed their Complaint. Instead, FSC moved to dismiss the Complaint and claimed that they had not engaged in any prohibited transaction. Second, FSC provided inaccurate answers to Plaintiffs' Interrogatories, denying the receipt of kickbacks by FSC. If, in sworn answers to discovery, FSC provided misleading information, there is no reason to assume that they will not commit similar wrongdoing when they are free of the scrutiny brought on by this litigation.

Third, in their present brief, Defendants claim that their decision to replenish the Plan was driven by the desire to "avoid the cost of litigating the issues raised by Plaintiffs." (Db2). Certainly that cost is not a significant deterrent to a repeat of the same misconduct.

627556.1

████████████████████),[15] but failed to fulfill its fiduciary duty to accurately inform Plan participants of its misconduct, continuing to describe its decision to remedy the misconduct as a cost saving device.[16]

Fifth, Defendants assert that they have instituted "additional controls" to preclude a recurrence. However, given the lack of specificity with regard to what the Defendants mean by "additional controls," there is no way to determine what they are, if they will be effective or how Defendants addressed this problem with other ERISA plans.

In fact, despite pledges to this Court to the contrary, it appears as if FSC continues to engage in a prohibited transaction. FSC replaced the SAMMF "with the Dreyfus Cash Management Fund." (Dec RL ¶ 14, Ex. M; PSOF ¶ 23). Thus, the funds previously placed in the SAMMF are now in the Dreyfus Money Market

---

[15]This text is redacted on the ECF filing of Plaintiffs brief on account of FSC's designation of certain documents as confidential. An unredacted brief has been mailed to the Court.

[16]Defendants have designated the documents that support this statement as confidential. Therefore, this statement and the supporting documents are not being filed by Plaintiffs on the ECF system. Rather, the courtesy copy of Plaintiffs' Brief that is being mailed to the Court will contain this text (i.e.,it will not be redacted as it is on the ECF system filing) and further the accompanying Declaration that is also being mailed to the Court, will contain a copy of the supporting documents. Further, Plaintiffs will also provide the Defendants with an unredacted version of their brief, as well as a copies of the associated supporting documents.

627556.1

Fund - which also pays kickbacks to FSC.  Proof of this is buried within the FSC

website in a document entitled "Revenue-Sharing Disclosure - FSC Securities

Corporation's Disclosure Document for Mutual Fund, Insurance Products, Real

Estate Investment Trust, Direct Participation Program, Third Party Money

Manager Investors and Expense Reimbursements."  (Dec RL ¶ 24, Ex. W; PSOF ¶

32).  The introductory paragraph of that document states that:

> [i]f you are an ERISA Plan please review the appropriate investment
> section(s) below to understand the compensation that FSC Securities
> Corporation may be receiving as it relates to 'Indirect compensation' and
> Section 408(b)(2) fee disclosure.

Id.  It appears to be FSC's position that so long as it discloses the prohibited

transactions, they are permitted.

On the bottom of the second page and top of the third page on this

document, in a section entitled "FSC Securities Corporation's Revenue Sharing

Disclosure for Mutual Funds," FSC tries to explain what is clearly a prohibited

arrangement that it shares with what it calls "sponsors." (Dec RL ¶ 24, Ex. W;

PSOF ¶ 32).  FSC explains that:

> [i]n addition to the customary sales commissions paid in connection with
> sales of mutual funds including money market funds these sponsors make
> payments to FSC Securities Corporation to participate in the program.

(Dec RL ¶ 24 Ex. W; PSOF ¶ 32).  Listed among the "sponsors" participating in

this revenue sharing arrangement, known as the Partner Program, is not only

627556.1

SAAMCo, but also **Dreyfus**. (Dec RL ¶ 24 Ex. X; PSOF ¶ 32). Thus, FSC has swapped the SAMMF for another mutual fund that pays it kick backs. This behavior contradicts the FSC's proclamation that it has taken adequate steps to ensure that a violation will not recur.

Moreover, the cases upon which Defendants rely in their brief which address mootness either are not class actions or do not involve conduct likely to recur. See e.g. Carducci v. Aetna U.S. Healthcare, 247 F. Supp. 2d 596 (D.N.J. 2001); rev'd on other grounds, N.J. Turnpike Auth., 772 F2d at 25, and Los Angeles County, 440 U.S. at 625 (no likelihood of reuse of invalid civil service examination) or a finding that the dispute is not moot. Phillips v Pa. Higher Educ. Assis. Agency, 657 F2d 554 (3d Cir. 1981).

Thus, Plaintiffs have established a reasonable likelihood that the unlawful behavior will recur.

627556.1

## CONCLUSION

For the foregoing reasons, Plaintiffs are entitled to summary judgment on

Count III, VI and XI of their Complaint.  Defendants' Motion to Dismiss on

grounds of mootness should be denied.

Respectfully submitted,

SZAFERMAN, LAKIND,
   BLUMSTEIN & BLADER, P.C.

By:   /s/ Robert L. Lakind
       Robert L. Lakind

SZAFERMAN, LAKIND,
 BLUMSTEIN & BLADER, P.C.
101 Grovers Mill Rd., Suite 200
Lawrenceville, New Jersey 08648
Telephone:  (609) 275-0400
Fax:  (609) 275-4511

LEVY, PHILLIPS & KONIGSBERG, LLP
101 GROVERS MILL ROAD, SUITE 200
LAWRENCEVILLE, NEW JERSEY 08648
Telephone: (212) 605-6200
Fax: (212) 605-6290

627556.1