SZAFERMAN, LAKIND,
 BLUMSTEIN & BLADER, P.C.
101 GROVERS MILL ROAD, SUITE 200
LAWRENCEVILLE, NEW JERSEY 08648
Telephone: (609) 275-0400
Fax: (609) 275-4511

LEVY, PHILLIPS & KONIGSBERG, LLP
101 GROVERS MILL ROAD, SUITE 200
LAWRENCEVILLE, NEW JERSEY 08648
Telephone: (212) 605-6200
Fax: (212) 605-6290

Attorneys For Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BORIS GOLDENBERG, REINALDO PACHECHO, ANDREW LEOW and GERALD COMEAU, as representative of a class of similarly situated persons and on behalf of THE INDUCTOTHERM COMPANIES MASTER PROFITS SHARING PLAN #001,<br><br>               Plaintiffs,<br>vs.<br><br>INDEL, INC., individually and a/k/a INDUCTOTHERM INDUSTRIES, INC. and INDUCTOTHERM CORPORATION, et al.,<br><br>              Defendants. | Civil No. 1:09-cv-5202-JBS-AMD<br><br>**PLAINTIFFS' STATEMENT OF MATERIAL FACTS (A) IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGEMENT AND (B) IN OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |

626995.1

Plaintiffs, by and through undersigned counsel and pursuant to Local Civil Rule 56.1, respectfully submit this Statement of Material Facts in support of their Motion for Partial Summary Judgment and in Opposition to the FSC/SunAmerica Defendants Motion for Partial Summary Judgment. Plaintiffs respectfully submit that the following constitute undisputed material facts:

1.  Marc Hemrbough, B.J. Webster and Robert Gueriera are FSC Securities Corporation employees (Declaration of Robert Lakind ("Dec RL") ¶¶2-4; Ex. A, B and C.).

2.  The Wharton Business Group lists its address as 740 Springdale Drive, Suite 208, Exton Pennsylvania 19341. (Dec RL ¶5, Ex. D)

3.  The Wharton Business Group is a branch office of FSC Securities Corporation (Dec RL ¶¶2-4, Ex. A, B and C) (The Wharton Business Group and FSC are hereinafter collectively referred to as FSC.)

4.  Messrs Hembrough and Gueriera are the signatories, on behalf of FSC, to the FSC Securities Corporation VISION2020 Advisor Investment Advisory Client Services Agreement, which was executed on December 15, 2005, between FSC and the Inductotherm Companies Master Profit Sharing Plan. (Dec RL ¶6, Ex E)

5.  Messrs. Hembrough and Gueriera are the signatories to the Wharton Business Group Investment Policy, which was executed on December 9, 2005, on behalf of the Inductotherm Companies Master Profit Sharing Plan (the "Plan"). (Dec RL ¶7, Ex F)

6.  Pursuant to the agreements listed in paragraphs 4 and 5, FSC became a service provider to the Plan, and rendered investment advice/management services to the Plan.

7.  Mr. Hembrough stated in his deposition "... I do view myself as a fiduciary to the

plan." (Dec RL ¶8, Ex. G p. 58:5-6)

8. In Mr. Webster's deposition he was asked the following question: "Do you believe that you acted as if you were a fiduciary to the plan?" He responded by stating: "I do." (Dec RL ¶9, H, p. 233:19-21)

9. In Mr. Webster's deposition, he was asked the following question: "Do you believe that Mr. Hembrough acted as if he was a fiduciary to the plan?" He responded by stating "I believe so. Yes." (Dec RL ¶9, H, p.233:22-4).

10. FSC, commencing in December of 2005, began providing services to the Plan. (Dec ¶¶6 and 7, Ex. E and F).

11. Between December of 2005 and March of 2011, FSC invested Plan assets in the SunAmerica Money Market Fund ("SAMMF") (Defendants FSC/SunAmerica Statement of Material Facts In Support of FSC/SunAmerica Defendants Motion for Partial Summary Judgment ("DSOF") ¶15).

12. The Plan's prior service provider did not use the SAMMF as the Plan's money market investment option, rather it used the Vanguard Prime Money Market Mutual Fund, which charged lower fees than the SAMMF. (Dec RL ¶¶20, 21 and 22, Ex. S, T and U)

13. Defendants SunAmerica Asset Management Company ("SAAMCo"), SunAmerica Capital Services ("SACS") and SunAmerica Fund Services ("SAFS") are service providers to the SAMMF. "SAAMCo is the investment adviser to [the] SAMMF. SACS is the Distributor to [the] SAMMF." "SAFS is the Servicing Agent to [the] SAMMF." (Declaration of John T. Genoy (Docket No. 119-5) ("Dec JTG") ¶3).

14. SAAMCo, as the SAMMF's investment adviser, between the period of December

1, 2005 to March 31, 2011, charged all assets invested in the SAMMF, an annual investment management fee ranging from "0.46% to 0.49...." (Dec JTG ¶4)

15. SACS, as the SAMMF's Distributor, between the period from December 1, 2005 through June 2, 2009, charged all assets invested in the SAMMF, annual 12b-1 fees (i.e., distribution fees) equal to "0.15%." (Dec JTG ¶5)

16. SAAMCo, SAFS and SACS, and FSC, are all indirect wholly owned subsidiaries of AIG (DSOF ¶¶ 2 and 8). Further, within AIG's corporate chain, FSC, SAAMCo, and SACS are all subsidiaries of AIG Retirement Services, Inc. (Dec RL ¶10 Ex I)

17. Between December of 2005 and March of 2011, pursuant to the "agreement memorialized in the Advisor Group Partner Agreement, the Shareholder Information Agreement Addendum and amended by a set of emails dated December 3 and 4, 2009" paid a portion of the investment management fee it charged investments into the SAMMF, to FSC; meaning SAAMCo paid a portion of the fees it charged the Plan assets FSC invested in the SAMMF, to FSC. (Dec JTG¶¶4, 7, 8 and 10; DSOF ¶15)

18. Between December of 2005 and June of 2009, "pursuant to the Dealer Agreement between SACS and FSC Securities Corporation ('FSC')" paid the .15% 12b-1 fees it received from the SAMMF to FSC; meaning SACS paid all the fees it charged the portion of Plan assets FSC invested in the SAMMF to FSC (Dec JTG¶¶5,6, 8 and 10; DSOF ¶ 15).

19. On, February 22, 2011, FSC responded to Plaintiffs' First Set of Interrogatories to the FSC Defendants. Plaintiffs' Interrogatory 18 stated the following: "[i]f you contend the investment in the SAMMF was not a prohibited transaction, explain the basis of such contention....."(Dec RL ¶11, Ex. J p. 18). In the sixth paragraph of FSC's response to that

626995.1

interrogatory it stated: "[i]n addition, the FSC Defendants did not [among other things]...**receive any consideration for their own personal account from any party dealing with the Plan in connection with a transaction involving assets of the plan.**" (Dec RL ¶11, Ex. J p. 20) (emphasis added). Plaintiffs' Interrogatory 19 stated "[i]f you contend that investment into the SAMMF satisfied the criteria for a prohibited transaction exemption, explain the basis of that contention...." (Dec RL ¶11, Ex. J p. 20). The FSC Defendants response to that interrogatory including the following: "PTCE [prohibited transaction exemption 77-4] permitted investment of Plan assets in mutual funds with which the FSC Defendants were affiliated through common ownership, such as the SAMMF. More specifically, the Plan does not pay a sales commission with respect to any purchase or sale of an investment in the SAMMF. ... **In addition, the Plan does not pay any advisor fees other than those set forth in the FSC Advisory Agreement.**" (Dec RL¶11, Ex J p. 21) (emphasis added)  The FSC Advisory Agreement is the defined term FSC uses in its discovery responses for the Vision2020 Advisor Investment Advisory Client Services Agreement (Dec RL¶11, Ex J, p. 19) , pursuant to which the Plan pays FSC a .10% fee (which is independent and separate of any fees FSC received from SAAMCo and SACS on its investment of Plan assets into the SAMMF) (Dec RL ¶6, Ex E).

20.     John T. Genoy Chief Financial Officer and Chief Operating Officer of SIMCOE and President of SACS, stated in the declaration he filed in connection with the Defendants current motion: "[t]he distribution fee paid by SACS to FSC during the period from December 1, 2005, and the fees paid by SAAMCo to FSC pursuant to the Agreement [between the period of December 2005 to March of 2011]...are...fees or payments SACS, SAAMCo or SAFS paid to or for the benefit of FSC...." (Dec JTG ¶10)

21. In November of 2005, FSC provided a document to the Plan which stated the following:

[1]

(Dec RL ¶12 Ex. K)

22. Between the period of December of 2005 and March of 2011, SAAMCo paid to FSC a portion of the investment management fee it charged on the portion of Plan assets FSC invested in the SAMMF. (Dec JTG ¶¶ 4,7, 8 and 10) Further, between the period of December of 2005 and June of 2009, SACS paid all of the 12b-1 fees it charged on the portion of Plan assets FSC invested in the SAMMF to FSC. (Dec JTG ¶¶5,6,8 and 10)

23. On March 23, 2011, FSC sent Inductotherm Defendants' Thomas McShane and Laurence A. Krupnick, a letter, which stated, among other things, the following:

Dear Plan Sponsor/Fiduciary:

After reviewing our procedures for investment of your Plan's sweep account, we have determined that $56,011.65 should be credited to your Plan....

Based on our review, we concluded that assets held in your Plan's sweep account were invested for a period of time in the SunAmerica Money Market Fund (the 'Fund'), which were inconsistent with our internal policies. As a result that investment option will be

---

[1] Defendants have designated the document that is the source of this quotation as confidential. Therefore, the text of this document and the document are *not* being filed by Plaintiffs on the ECF system. Rather, the courtesy copy of Plaintiffs' Statement of Material Facts that is being mailed to the Court will contain this text (i.e., it will not be redacted as it is on the ECF system filing) and further the accompanying Declaration that is also being mailed to the Court, will contain a copy of this document. Further, Plaintiffs will also provide the Defendants with this document as well an unredacted version of their Statement of Material Facts.

626995.1

replaced with the Dreyfus Cash Management Fund.

(Dec RL ¶14 Ex. M)

24. The March 23, 2011, letter was signed by "FSC Securities Corporation" and FSC employee Mr. Hembrough was copied on this letter. (Dec RL ¶14 Ex. M) However, in Mr. Hembrough's deposition he claimed to have first learned of this refund by FSC at his "next meeting...[with] Inductotherm" or "[i]t could have been by phone." (Dec RL ¶8, Ex G 69:7-11) Regardless, Mr. Hembrough claims that upon learning of this fact he told his attorney "right away." (Dec RL ¶8, Ex G 69:11)

25. On May 4, 2011, FSC provided supplemental responses to "Certain of Plaintiffs' First Set of Interrogatories to the FSC Defendants." However, in its supplemental responses, FSC did not amend/correct its answers to interrogatories numbered 18 and 19, despite its March 23, 2011 admission to the Inductotherm Defendants that it was paid fees, that were derived from the Plan assets FSC invested in the SAMMF. (Dec RL ¶15, Ex. N)

26. On July 11, 2011, counsel for FSC mailed/emailed Plaintiffs a copy of FSC's March 23, 2011, letter to the Inductothernm Defendants. This mailing was also accompanied by a cover latter from counsel to FSC which stated that the approximate $56,000 payment from FSC to the Inducothterm Defendants would be allocated among both current and former Plan participants. (Dec RL ¶16, Ex. O)

27. 

626995.1



[redacted]²

28. Count III of Plaintiffs First Amended Complaint allege that "by investing in the SunAmerica Money Market Fund, which resulted in a payment of fees to multiple wholly owned AIG subsidiaries and payment to AIG,...FSC Securities Corporation and the Wharton Business Group committed a prohibited transaction under ERISA §§ 406(b)(1), (2) and (3), 29 U.S.C. §§ 1106(b)(1), (2) and (3)." (Dec RL ¶17, Ex. P) On September 17, 2010, the Court denied FSC's motion to dismiss this Count. Goldenberg v. Indel, Inc., 741 F.Supp.2d 618, 633 (D.N.J. 2010).

29. Counts V of Plaintiffs' First Amended Complaint alleges that for, among other reasons, FSC breached its fiduciary duty of prudence under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), by investing Plan assets in the SAMMF, due to its excessive fees. (Dec RL ¶17, Ex. P) On September 17, 2010, the Court denied FSC's motion to dismiss this Count. Goldenberg 741 F.Supp.2d at 636.

30. Count VI of Plaintiffs First Amended Complaint alleges that FSC breached its

---

²Defendants have designated the documents that are the source of this statement as confidential. Therefore, the statement is redacted from the version of Plaintiffs' Statement of Material Facts that they filed on the ECF system. Further, the documents that Defendants designated as confidential that support these statements are not being filed by Plaintiffs on the ECF system. Rather, the courtesy copy of Plaintiffs' Statement of Material Facts that is being mailed to the Court will contain this text (i.e., it will not be redacted as it is on the ECF system filing) and further the accompanying Declaration that is also being mailed to the Court, will contain a copy of the documents that support this statement. Further, Plaintiffs will also provide the Defendants with these documents as well an unredacted version of their Statement of Material Facts.

fiduciary duty of loyalty under ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), by investing Plan assets in the SAMMF because such fund paid "fees to AIG wholly owned subsidiaries" (i.e., SAAMCo and SACS). (Dec RL ¶17, Ex. P)  On September 17, 2010, the Court denied FSC's motion to dismiss this Count. Goldenberg 741 F.Supp.2d at 636.

31.   Count IX alleges that the SunAmerica Defendants are liable under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to disgorge any fees they received by participating in FSC's prohibited transaction. (Dec RL ¶17, Ex. P)   On September 17, 2010 the Court denied these Defendants motion to dismiss this Count. Goldenberg 741 F.Supp.2d at 639-40.

32.   On March 23, 2011, FSC replaced the SAMMF with the Dreyfus Cash Management Fund as the Plan's money market investment option. (Dec RL ¶14, Ex. M)  A document on FSC's website, titled "Revenue-Sharing Disclosure - FSC Securities Corporation's Disclosure Document for Mutual Fund, Insurance Products, Real Estate Investment Trust, Direct Participation Program, Third Party Money Manager Investors and Expense Reimbursements" states the following:

> [i]f you are an ERISA Plan please review the appropriate investment section(s) below to understand the compensation that FSC Securities Corporation may be receiving as it relates to 'Indirect compensation' and Section 408(b)(2) fee disclosure. (Dec RL ¶24, Ex. W)

The document then lists Dreyfus as an entity that pays revenue sharing payments to FSC. (Dec RL ¶24, Ex. W) .

Respectfully submitted this 5th day of December 2011

                                                SZAFERMAN, LAKIND,
                                               BLUMSTEIN & BLADER, P.C.

                                               <u>/s/ Robert Lakind</u>
                                               Robert Lakind
                                               SZAFERMAN, LAKIND,
                                               BLUMSTEIN & BLADER, P.C.
                                               101 Grovers Mill Road, Suite 200
                                               Lawrenceville, NJ 08648
                                               Phone: 609-275-0400
                                               Fax: 609-275-6050

626995.1