IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

BORIS GOLDENBERG, ET AL.,     )
          )
          )
         PLAINTIFFS,     )   HONORABLE JEROME B. SIMANDLE
          )
          )
VS.          )   CASE NO. 1:09-cv-05202-JBS-AMD
          )
INDEL, INC., INDIVIDUALLY AND A/K/A     )
INDUCTOTHERM INDUSTRIES, INC. AND     )
INDUCTOTHERM CORPORATION, ET AL.,     )
          )
         DEFENDANTS.     )
          )

**FSC/SUNAMERICA DEFENDANTS' BRIEF IN OPPOSITION TO
PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND
REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................- 1 -

PROCEDURAL POSTURE OF THE CROSS-MOTIONS ..............................- 2 -

ARGUMENT ..................................................................................................- 4 -

I. DEFENDANTS' MOTION SHOULD BE GRANTED ................................- 4 -

  A. Plaintiffs Could Obtain No Relief Even If The Cross-Motion Was
     Granted And Judgment Was Entered In Favor Of The Plaintiffs ....................- 5 -

  B. Plaintiffs Could Have And Should Have Voluntarily Dismissed The Counts .................- 6 -

  C. Plaintiffs' Attorneys' Fees Should Have No Impact On Defendants' Motion .................- 7 -

    1. If Defendants' Motion Is Granted, Plaintiffs Are Free To Attempt
       To Recover Their Attorneys' Fees Incurred Related To The Counts .........................- 7 -

    2. There Is No Basis To Deny Defendants' Motions In Order To Spread
       Attorneys' Fees Among The Putative Class ...............................................- 8 -

  D. Plaintiffs Have Failed To Establish That The Counts Have Not Been Mooted ............- 12 -

    1. The Counts Were Not "Too Short To Be Fully Litigated" Prior To The
       FSC/SunAmerica Defendants' Remediation ............................................- 13 -

    2. Plaintiffs Have Failed To Establish That The FSC/SunAmerica Defendants'
       Receipt Of Fees Is Likely To Be Repeated ..............................................- 15 -

II. PLAINTIFFS' CROSS-MOTION SHOULD BE DENIED ............................- 18 -

  A. The Burden Rests With Plaintiffs To Show That No Genuine Issue Of
     Fact Or Law Exists ..........................................................................- 18 -

  B. Disputed Issues Of Fact And Applicable Law Preclude Granting Summary
     Judgment On The Merits of Plaintiffs' Prohibited Transaction Claims .........................- 19 -

1.  Plaintiffs Have Not Established That  The FSC Defendants Caused
    The Alleged Prohibited Transactions At Issue ........................................................ - 20 -

2.  The Use Of The SAMMF As The Plan's Sweep Account Is Exempt From
    ERISA's Prohibited Transaction Rules ................................................................... - 23 -

3.  Plaintiffs Fail To Meet Their Burden To Prove That No Genuine Issues Of
    Material Fact Exists ............................................................................................... - 26 -

C.  Plaintiffs Could Not Recover Any Damages If Their Motion Was Granted .................. - 29 -

CONCLUSION .................................................................................................................. - 30 -

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

Acme Mkts., Inc. v. Wharton Hardware and Supply Corp.,
890 F.Supp. 1230 (D.N.J. 1995) ...................................................................18

Am. Pipe & Constr. Co. v. Utah,
414 U.S. 538 (1974)...................................................................................11

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986)...................................................................................18

Celotex Corp. v. Catrett,
477 U.S. 317 (1986)..............................................................................18, 26

Confer v. Custom Eng'g Co.,
952 F.2d 34 (3d Cir. 1991).........................................................................21

Cty. of Los Angeles v. Davis,
440 U.S. 625 (1979)...................................................................................12

Deposit Guar. Nat'l Bank of Jackson, Miss. v. Roper,
445 U.S. 326 (1980)................................................................................9, 10

Diop v. ICE/Homeland Sec.,
656 F.3d 221 (3d Cir. 2011).......................................................................14

Goldenberg v. Indel, Inc.,
741 F. Supp. 2d 618 (D.N.J. 2010) ...........................................................21

Hardt v. Reliance Std. Life Ins. Co.,
130 S. Ct. 2149 (2010)............................................................................7, 8

Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.,
500 U.S. 238 (2000)...................................................................................21

Hecker v. Deere & Co.,
556 F.3d 575 (7th Cir. 2009) .....................................................................23

In re Pet Food Prods. Liab. Litig.,
629 F.3d 333 (3d Cir. 2010).........................................................................6

Jalil v. Avdel Corp.,
873 F.2d 701 (3d Cir. 1989).......................................................................18

Jersey Cent. Power & Light Co. v. New Jersey,
    772 F.2d 35 (3d Cir. 1985)..................................................................7, 8

Kerkhof v. MCI Worldcom Inc.,
    282 F.3d 44 (1st Cir. 2002)....................................................................11

Lockhead Corp. v. Spink,
    517 U.S. 882 (1996)..............................................................................21

Merle v. United States,
    76 F. App'x. 466 (3d Cir. 2003) ............................................................14

N.J. Turnpike Auth. v. Jersey Cent. Power & Light,
    772 F.2d 25 (3d Cir. 1985)........................................................12, 15, 16

OSHA Data/CIH, Inc. v. United States DOL,
    220 F.3d 153 (3d Cir. 2000)......................................................12, 13, 14

Ruckelshaus v. Sierra Club,
    463 U.S. 680 (1983)................................................................................7

Symczyk v. Genesis HealthCare Corp.,
    656 F.3d 189 (3d Cir. 2011)....................................................................9

Templin v. Independence Blue Cross,
    No. 09-4092, 2011 U.S. Dist. LEXIS 98482 (E.D. Pa. Aug. 19, 2011) ....................8

Tibble v. Edison Int'l,
    639 F.Supp.2d 1074 (C.D. Cal. 2009) ....................................................22

Walz ex rel. Walz v. Egg Harbor Tp. Bd. of Educ.,
    187 F. Supp. 2d 232 (D.N.J. 2002) ..................................................18, 19

Weiss v. Regal Collections, Inc.,
    385 F.3d 337 (3d Cir. 2004)..........................................................6, 9, 10

**STATUTES**

29 U.S.C. §§ 1001, *et seq*..........................................................................1

29 U.S.C. § 1002......................................................................................20

29 U.S.C. § 1106....................................................19, 20, 21, 22, 24, 27

29 U.S.C. § 1108..........................................................................24, 25, 26

29 U.S.C. § 1132..................................................................................9, 29

**OTHER AUTHORITIES**

29 C.F.R. § 2550.408c-2 ..............................................................................................25, 26

47 Fed. Reg. 18732 (1977) ................................................................................................24

Fed. R. Civ. P. 23 ............................................................................................................6, 12

Fed. R. Civ. P. 26 ...............................................................................................................28

Fed. R. Civ. P. 56 ...............................................................................................................26

## INTRODUCTION

Defendants American International Group, Inc. ("AIG"), FSC Securities Corporation ("FSC"), SunAmerica Asset Management Corp. ("SAAMCo"), SunAmerica Capital Services, Inc. ("SACS"), SunAmerica Fund Services, Inc. ("SAFS"), and Wharton Business Group ("Wharton") (collectively, the "FSC/SunAmerica Defendants"), by and through counsel, respectfully submit this Brief in Opposition to Plaintiffs' Cross-Motion for Partial Summary Judgment ("Plaintiffs' Motion" or the "Cross-Motion") and Reply in Support of their Motion for Partial Summary Judgment ("Defendants' Motion") (collectively, the "Motions").

For the reasons set forth herein and in Defendants' Motion, Plaintiffs have not disputed any genuine issue of fact that the class-wide repayment of the fees at issue renders moot Counts III and XI of Plaintiffs' First Amended Complaint ("FAC"), as well as those portions of Counts V and VI that seek recovery of fees paid to the FSC/SunAmerica Defendants (collectively, the "Counts"), purportedly in violation of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"). Accordingly, the FSC/SunAmerica Defendants respectfully submit that they are entitled to summary judgment on the Counts.

Moreover, Plaintiffs' Motion – which needlessly attempts to reach the merits of Plaintiffs' mooted prohibited transaction claims – utterly fails to establish any right of Plaintiffs to summary judgment. As discussed herein, numerous purported material facts alleged by Plaintiffs are in dispute, and there are legal impediments to finding that a prohibited transaction occurred. Therefore, Plaintiffs have no right to summary judgment on the Counts. Indeed, many of the arguments Plaintiffs have asserted in support of their Cross-Motion actually undercut their arguments in opposition to Defendants' Motion. Therefore, the FSC/SunAmerica Defendants respectfully request that the Court deny Plaintiffs' Motion and grant Defendants' Motion.

## PROCEDURAL POSTURE OF THE CROSS-MOTIONS

To begin, the present posture of the Motions – and what led the parties to file the Motions – merits discussion. The FSC/SunAmerica Defendants filed their Motion after undisputedly remedying a situation in which fees were paid to some of them by the SunAmerica Money Market Fund (the "SAMMF") as a result of the Inductotherm Companies Master Profit Sharing Plan #001 (the "Plan") using the SAMMF as its "sweep account," despite such fees being contrary to the FSC/SunAmerica Defendants' internal policies. Once those fees were discovered, the FSC/SunAmerica Defendants remedied that situation by refunding all fees received, plus interest at a significantly higher rate than even that recommended by the Department of Labor ("DOL"). Nowhere in their Cross-Motion do Plaintiffs dispute that the Plan, and thereby all of its participants – including the Plaintiffs and the putative class they seek to represent – have been fully reimbursed, with interest, for all such fees.

Accordingly, undersigned counsel contacted Plaintiffs' counsel to see if Plaintiffs would voluntarily dismiss the Counts in order to limit the issues before the Court. Plaintiffs' counsel expressly acknowledged that "[i]t would appear that [the FSC/SunAmerica Defendants'] calculations are accurate" and declared the Plaintiffs were "prepared to dismiss Counts III, V, VI and XI of our amended complaint." See Statement of Material Facts in Support of FSC/SunAmerica Defendants' Motion for Partial Summary Judgment (Docket #119-1) (the "DSOF") at ¶ 26. However, Plaintiffs subsequently refused to actually dismiss the Counts.

As Plaintiffs refused to voluntarily dismiss the Counts, the FSC/SunAmerica Defendants had no choice but to file Defendants' Motion. Even though Plaintiffs had already conceded that dismissal of the Counts was appropriate, they opposed Defendants' Motion, asserting a number of completely baseless arguments. Indeed, as discussed below, many of Plaintiffs' arguments

- 2 -

against Defendants' Motion are completely undercut by the fact that Plaintiffs themselves moved for summary judgment on those same Counts. Significantly, however, even now, *Plaintiffs do not dispute the substance of Defendants' Motion – that the fees at issue in their Counts have been fully repaid on a putative class-wide basis*. Rather, Plaintiffs contest Defendants' Motion because they believe, incorrectly, that if Defendants' Motion is granted they will have no possibility of recovering their attorneys' fees with respect to those particular Counts.

Plaintiffs did not stop at opposing Defendants' Motion, but also needlessly sought to have the Court address the underlying merits of the Counts, despite the fact that there is no dispute that Plaintiffs and the putative class they seek to represent have received all of the relief that is requested as a result of those Counts. Moreover, Plaintiffs' Motion cannot be granted because – unlike Defendants' Motion – it is based upon a plethora of purported facts that are in dispute, and Plaintiffs' legal arguments regarding what constitutes a prohibited transaction are without merit.

In short, it appears that every step Plaintiffs have taken since being made aware of the remediation has been to further the singular goal of obtaining an award of attorneys' fees. The ultimate irony, as discussed herein, is that even if Defendants' Motion is granted – or had Plaintiffs voluntarily dismissed the Counts – nothing would preclude Plaintiffs from eventually seeking an award of attorneys' fees based upon these Counts (though, regardless of the outcome of the present Motions, Plaintiffs would likely not be entitled to a fee award). Thus, Plaintiffs have needlessly and unnecessarily prolonged this litigation by requiring the Parties to litigate the present Motions, thereby necessitating all parties to incur substantial additional attorneys' fees, solely for the purpose of procuring a fee award that they could have sought in any event.

It is for these reasons, as discussed more fully below, that the Court should grant Defendants' Motion and deny Plaintiffs' Cross-Motion.

**ARGUMENT**

## I.     DEFENDANTS' MOTION SHOULD BE GRANTED

In their Cross-Motion, Plaintiffs raise a number of arguments to support their position that either the Counts have not been mooted or that, even if they have been mooted, the Court should still not grant Defendants' Motion.  Those arguments are baseless.  First, there is absolutely no dispute by the Plaintiffs that they, and the putative class that they seek to represent, have received all relief which they have requested or to which they could be entitled for the Counts.  Thus, Plaintiffs cannot seriously dispute that the Counts have been mooted.

Second, Plaintiffs erroneously contend that the Court should deny Defendants' motion so that a putative class could recover attorneys' fees related to the Counts and so that the fees could be spread among the putative class.  This position is erroneous both because, unlike other actions, ERISA plaintiffs need not actually prevail in order to seek their attorneys' fees, and because Plaintiffs' contention that they must be entitled to spread their attorneys' fees among the putative class incorrectly presumes that there could be a class-wide judgment.  As fees have been refunded on a putative class-wide basis, there could be no class-wide judgment in which Plaintiffs' counsel could share.  Thus, certifying a class for the Counts would be pointless.

Finally, Plaintiffs erroneously contend that they have satisfied their burden to establish that this case satisfies an exception to the mootness doctrine.  However, Plaintiffs have not established either that this case was too short to be fully litigated or that the FSC/SunAmerica Defendants are likely to receive revenue sharing payments in the future as a result of where Plan assets are placed.  Given that Plaintiffs failed to make either showing and that they carry the burden to establish *both* in order to obtain an exception from the mootness doctrine, the exception clearly does not apply and Defendants' Motion should be granted.

**A.    Plaintiffs Could Obtain No Relief Even If The Cross-Motion Was
        Granted And Judgment Was Entered In Favor Of The Plaintiffs**

Nowhere in their Cross-Motion do Plaintiffs challenge the *gravamen* for Defendants'
Motion – namely, that the FSC/SunAmerica Defendants have undisputedly remediated the
purported effects of the Counts by refunding to the Plan – to the benefit of all Plan participants,
including both the named Plaintiffs and the entire putative class – all fees received with interest.
Thus, this undisputed principle alone should be sufficient to grant Defendants' Motion.

Additionally, the fact that Plaintiffs have also moved for summary judgment on the
Counts provides further support to establish that the Counts have been mooted.  Plaintiffs do not
request in their First Amended Complaint any injunctive relief that would preclude the Plan from
using a sweep account that would pay fees to any of the FSC/SunAmerica Defendants.  See
generally FAC, Docket #24, at "Prayer for Relief" section, pp. 133-137.  To the contrary, the
only relief requested for the Counts is that the FSC/SunAmerica Defendants be required to
disgorge any fees received.  See id. at pp. 133-134, ¶¶ C-E.  Likewise, the only relief Plaintiffs
seek in their Motion is disgorgement.  See Cross-Motion at pp. 18-19.

Thus, even if Plaintiffs' Motion were granted, Plaintiffs would receive *nothing* because
all fees received have already been disgorged.  As Plaintiffs have not sought relevant injunctive
relief, there would be no restrictions on the FSC/SunAmerica Defendants' future conduct with
respect to the Plan (other than the possibility of future liability).  Therefore, Plaintiffs cannot
possibly satisfy their burden of establishing that the Counts are not moot, when they have filed
their own Cross-Motion which would result in the exact same substantive outcome – *i.e.* nothing
owed to Plaintiffs other than the possibility of attorneys' fees and no restriction of future activity
– as would Defendants' Motion.  Accordingly, any conceivable argument by the Plaintiffs that
the Counts have not been mooted is clearly without any basis.

- 5 -

**B.** **Plaintiffs Could Have And Should Have Voluntarily Dismissed The Counts**

Despite that all parties agree that all fees have been refunded, Plaintiffs claim they did not voluntarily dismiss the Counts because they "were of the view that even an uncertified class could not be settled or claims dismissed without court approval." See Cross-Motion at p. 21. This position is inaccurate. Plaintiffs cite to In re Pet Food Prods. Liab. Litig., 629 F.3d 333, 350 (3d Cir. 2010) for the proposition that a heightened standard applies "in cases where settlement negotiations precede class certification, *and approval for settlement and certification are sought simultaneously*." (quoted in Cross-Motion at p. 21) (internal citations omitted) (emphasis added). That is simply not the case here. Voluntary dismissal is not a settlement nor is class certification sought simultaneously with the approval of a non-existent settlement. Rather, the FSC/SunAmerica Defendants simply requested that Plaintiffs voluntarily dismiss the Counts which all parties agree have been remediated for the entire *uncertified* putative class.

Further establishing that Plaintiffs could and should have voluntarily dismissed the Counts is Weiss v. Regal Collections, Inc., 385 F.3d 337 (3d Cir. 2004), another case cited by Plaintiffs (see Cross-Motion at pp. 25-27) but which they ignore with respect to their position that the Court's approval was required in order to voluntarily dismiss the Counts.[1] In Weiss, the Third Circuit noted that Fed. R. Civ. P. 23(e) was amended in 2003 to state that "[t]he claims, issues, or defenses of a *certified* class may be settled, voluntarily dismissed, or compromised only with the court's approval" (emphasis added). Accordingly, the amended rule does not require Court approval pre-certification and instead "requires approval only if the claims, issues, or defenses of a *certified* class are resolved by . . . voluntary dismissal . . ." 385 F.3d at 349 n. 21

---

[1]   Plaintiffs were aware of this holding in Weiss when they refused to dismiss the Counts because the relevant holding was raised in a letter sent by undersigned counsel to Plaintiffs' counsel on August 9, 2011. A copy of this letter is Ex. A to the Declaration of Theodore J. Sawicki (the "Sawicki Dec."), which is being filed contemporaneously herewith.

(emphasis in original). Of course, Plaintiffs have not yet even moved to certify a class. Therefore, Plaintiffs did not need the Court's approval to voluntarily dismiss the Counts.

**C.   Plaintiffs' Attorneys' Fees Should Have No Impact On Defendants' Motion**

1.   *If Defendants' Motion Is Granted, Plaintiffs Are Free To Attempt To Recover Their Attorneys' Fees Incurred Related To The Counts*

Apparently the only reason why the Counts remain at issue is Plaintiffs' concern for their attorneys' fees. Plaintiffs' arguments are founded on the notion that if the Counts are dismissed, they could not recover those fees. Putting aside whether Plaintiffs should recover attorneys' fees for the Counts, this presumption is simply inaccurate. In Hardt v. Reliance Std. Life Ins. Co., 130 S. Ct. 2149 (2010), the Supreme Court held that, in ERISA cases, "a court 'in its discretion' may award fees and costs 'to either party,' . . . as long as the fee claimant has achieved 'some degree of success on the merits.'" 130 S. Ct. at 2152. Hardt extended to ERISA the holding in Ruckelshaus v. Sierra Club, 463 U.S. 680 (1983), that, in certain statutes, Congress "expand[ed] the class of parties eligible for fees awards from prevailing parties to partially prevailing parties – parties achieving some success, even if not major success." 130 S. Ct. at 2157 (quoting Ruckelshaus, 463 U.S. at 688). Thus, Plaintiffs will be able, at the conclusion of this case, to attempt to obtain their attorneys' fees if they can convince the Court that: (1) they achieved "some degree of success on the merits" on the Counts; and (2) the Court should exercise its discretion to award such fees.

Nevertheless, Plaintiffs argue for Defendants' Motion to be denied because of their claim for fees. Specifically, they contend that a finding of mootness is "improper" when attorneys' fees are sought. See Cross-Motion at pp. 29-30. Plaintiffs cite to in Jersey Cent. Power & Light Co. v. New Jersey, 772 F.2d 35, 40 (3d Cir. 1985) ("Jersey Central II"), where the court held that while a claim for injunctive relief was moot, other forms of relief such as damages and attorneys'

fees were not.  However, the <u>Hardt</u> Court's recognition that ERISA falls within the exception to the general rule that a party must actually prevail to obtain attorneys' fees distinguishes <u>Jersey Central II</u>.  Here, unlike <u>Jersey Central II</u>, any attorneys' fee claim would survive (subject to the merits of that claim), even if Defendants' Motion is granted.

Thus, Plaintiffs' concerns with respect to their claim for fees are utterly without merit.  If Plaintiffs would have simply voluntarily dismissed the Counts, then they still could have sought, at the conclusion of this litigation, to recover their fees related to the Counts, just as they will be able to do if and when Defendants' Motion is granted.[2]  Therefore, the only effect on Plaintiffs' attorneys' fees that would be achieved by denying Defendants' Motion would be to permit the Plaintiffs to continue to accrue unnecessary fees related to the remediated Counts.

2.  ***There Is No Basis To Deny Defendants' Motions In Order To Spread Attorneys' Fees Among The Putative Class***

Plaintiffs further contend that granting Defendants' Motion "does not resolve who is responsible for attorneys' fees in this ERISA putative class action."  <u>See</u> Cross-Motion at p. 22.

---

[2]    Although the issue is not yet ripe or before the Court, the FSC/SunAmerica Defendants expect to oppose any fee motion regarding the Counts.  Although the FSC/SunAmerica Defendants invited Plaintiffs to identify the fees that they would seek for the Counts, they declined to do so.  Moreover, Plaintiffs unnecessarily and dramatically increased the fees related to the Counts by refusing to voluntarily dismiss the Counts and requiring briefing on the Motions.  Perhaps most significantly, any purported success that Plaintiffs may claim to have achieved with respect to the Counts would be entirely outweighed by what the FSC/SunAmerica Defendants expect to be Plaintiffs' total failure for all of the other counts in their Complaint.

Additionally, precedent from within this Circuit establishes that because any relief that Plaintiffs obtained was provided by the FSC/SunAmerica Defendants' own actions, this would not be sufficient success to justify a fee award.  <u>See</u> <u>Templin v. Independence Blue Cross</u>, No. 09-4092, 2011 U.S. Dist. LEXIS 98482, *23 (E.D. Pa. Aug. 19, 2011) (holding that "Plaintiffs have failed to make a threshold showing that they achieved some success on the merits," because "although Plaintiffs received that which they sought as relief in this case, albeit in an untimely manner, this relief was provided by Defendants, not the Court, and was not achieved by any substantive determination by the Court.").  Here, even if the Court granted Plaintiffs' Motion, that would not provide any relief to Plaintiffs because the requested relief – disgorgement – has already been voluntarily provided by the FSC/SunAmerica Defendants.  Therefore, just as in <u>Templin</u>, any relief would "not [be] achieved by any substantive determination by the Court." <u>Id.</u>

Plaintiffs argue that they "and the members of the uncertified class have an interest and counsel has a fiduciary obligation . . . to attempt to shift attorneys' fees to the [FSC/SunAmerica Defendants] . . . in order to enlarge the benefits to the class members." See id. at p. 23.

As a preliminary matter, this argument is entirely disingenuous. Any putative class already received the maximum benefit to which they are entitled through the refunding of fees by the FSC/SunAmerica Defendants. While it is true that a putative class would not receive the "benefit" of a possible attorneys' fee award related to the Counts, it is because the putative class did not incur the burden of expending fees to obtain that refund. The purpose of a fee award in an ERISA case is to make an injured party whole. As the putative class did not have to incur any attorneys' fees to be made whole, there is no further benefit for the putative class to gain.

In this regard, Plaintiffs contend that they should not be required to bear the burden of the attorneys' fees relevant to the Counts alone and that the Counts should be kept alive so that a class can be certified that would share in the burden of those fees. This argument fails as a matter of law for a number of reasons. First, this argument ignores the point discussed above, that Plaintiffs would be entitled to seek to recover their attorneys' fees relevant to the Counts. Therefore, regardless of whether the fees are attributable to the present Plaintiffs or any putative class is ultimately irrelevant. Under either circumstance, the party incurring the fees would have the right to attempt to seek recovery of those fees under ERISA § 502(g)(1).

Moreover, the cases cited by Plaintiffs for the proposition that they must be entitled to "spread the fees" among the class are simply inapposite. Plaintiffs make much of the Supreme Court's decision in Deposit Guar. Nat'l Bank of Jackson, Miss. v. Roper, 445 U.S. 326 (1980) and the Third Circuit's holdings in Weiss and in Symczyk v. Genesis HealthCare Corp., 656 F.3d 189 (3d Cir. 2011), which they argue support the position that an otherwise mooted case

should remain alive where there is a possibility of the named Plaintiffs spreading their costs among a putative class. To the contrary, what each case reflects is that a party should be entitled to seek to certify a class even where the defendants have remediated *only the named plaintiff's claims*. The purpose of this rule is obvious: if plaintiffs filed a class action and could receive a greater benefit by having their attorneys' fees spread among the class (through counsel's taking a contingency fee out of a class-wide award), plaintiffs should not be denied the opportunity to receive that benefit merely because *only* the named plaintiffs' claims were mooted.[3]

The present case is entirely different because, in the cases cited by Plaintiffs, there was the possibility of a class-wide award in which counsel could share through a contingency fee.[4] By applying a contingency fee to a class-wide judgment, counsel's fees would be spread among the class. Thus, by having counsel's fees shared by the class – *i.e.*, by having counsel share in the class-wide award – rather than only requiring the named Plaintiffs to fund counsel's fees, the named Plaintiffs retained an economic interest in certifying a class.

Here, there is no possibility of the putative class obtaining a judgment that could be shared with Plaintiffs' counsel related to the Counts because there are no longer any fees to be disgorged. This is unlike the cases cited by Plaintiffs in which defendants "picked off" the named plaintiffs and remedied only their individual claims, rather than the class-wide claims. Here, fees have been refunded to *all* Plan participants and, therefore, the FSC/SunAmerica Defendants' remediation has been on a putative class-wide basis. As there is no possibility of a

---

[3]    As the Third Circuit has noted, in <u>Roper</u>, the Supreme Court "expressed concern at a defendant's ability to 'pick off' named plaintiffs by mooting their private individual claims." <u>Weiss</u>, 385 F.3d at 343 (quoting <u>Roper</u>, 445 U.S. at 339).

[4]    See <u>Roper</u>, 445 U.S. at 338 n. 9 (noting that in many class actions "plaintiffs would be unlikely to obtain legal redress at an acceptable cost, unless counsel were motivated by the fee-spreading incentive and proceeded on a contingent fee basis"); <u>id.</u> at 351 (Powell, J., dissenting) (noting that <u>Roper</u> involved a "customary type contingent fee.").

class-wide judgment, then there would be nothing to share with Plaintiffs' counsel through a contingency fee. If a class was certified and judgment was entered for the class on the Counts, the value of that judgment would have to be zero because there would be nothing for the class to recover. No matter what percentage Plaintiffs' counsel might be entitled to, even 100% of zero is zero. Thus, there is no benefit to Plaintiffs spreading attorneys' fees over a class-wide basis, when the way those fees would be spread is by giving Plaintiffs' counsel some percentage of nothing.[5] Accordingly, this argument cannot preclude granting Defendants' Motion.

Moreover, even if Plaintiffs' arguments had any merit, those arguments would be completely undercut by the fact that Plaintiffs have themselves moved for summary judgment on the Counts. What Plaintiffs effectively argue is that the Counts must be kept alive so that the Counts can be made a part of their forthcoming motion for class certification. However, in their Cross-Motion, Plaintiffs have expressly requested that the Court enter judgment for them on the Counts. If Plaintiffs' Motion was granted and judgment were entered (which it should not be for the reasons set forth in Section II, *infra*), it would not be possible to certify a class for the Counts. See, e.g., Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 547 (1974) ("A recurrent source of abuse under the former Rule [23] lay in the potential that members of the claimed class could in some situations await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests. . . . The 1966 amendments were designed, in part, specifically to mend this perceived defect in the former Rule and to assure that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments."); Kerkhof v. MCI Worldcom Inc., 282 F.3d

---

[5]        Plaintiffs have not suggested, nor are the FSC/SunAmerica Defendants aware of any mechanism for Plaintiffs' counsel to spread their fees over the putative class other than by taking a piece of a class-wide judgment. For example, there would seem to be no way for Plaintiffs' counsel to directly bill members of the putative class for their attorneys' fees.

44, 54-55 (1st Cir. 2002) ("Post-judgment certification . . . would frustrate the opt-out mechanism for Rule 23(b)(3) classes provided in Rules 23(c)(2) and (c)(3), which were intended to avoid situations in which class members could choose to join only when the judgment favored the class."). Thus, Plaintiffs' own Cross-Motion belies their entire argument that Defendants' Motion should not be granted so that a class can be certified for the Counts.

### D.   Plaintiffs Have Failed To Establish That The Counts Have Not Been Mooted

Finally, Plaintiffs contend that the Counts have not been sufficiently mooted to justify granting Defendants' Motion.  As noted in Defendants' Motion and as unchallenged in the Cross-Motion, the Supreme Court has held that "jurisdiction, properly acquired, may abate if the case becomes moot because (1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur . . . and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Cty. of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (internal citations omitted).  Plaintiffs do not appear to challenge the second prong – that the FSC/SunAmerica Defendants' remediation of the Counts has "completely and irrevocably eradicated the effects of the alleged violation." Id.

Rather, Plaintiffs challenge the first prong.   As the Third Circuit has held, notwithstanding the eradication of the effects of an alleged violation, a case may be "capable of repetition, yet evading review."  This exception to the mootness doctrine:

> is triggered where two elements are combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again. . . . Both of these conditions must be met if a case is to be saved from mootness.

N.J. Turnpike Auth. v. Jersey Cent. Power & Light, 772 F.2d 25, 31 (3d Cir. 1985) ("Jersey Central I").  The burden is on the Plaintiffs to satisfy both elements.  See OSHA Data/CIH, Inc. v. United States DOL, 220 F.3d 153, 168 (3d Cir. 2000) ("In order to qualify for [the 'capable of

repetition yet evading review'] exception, [Plaintiff] has the burden of meeting both parts of the following test: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.") (internal citations omitted).

1.   ***The Counts Were Not "Too Short To Be Fully Litigated"***
***Prior To The FSC/SunAmerica Defendants' Remediation***

Plaintiffs cite to the following factors which they contend supports their position that "the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration":  (1) prior to the filing of their Complaint, there was no way to know that the FSC/SunAmerica Defendants were receiving fees based upon the Plan's utilization of the SAMMF; (2) their erroneous contention that the FSC/SunAmerica Defendants' discovery responses were inaccurate;[6] and (3) Plaintiffs claim to have first been notified of the remediation in July 2011.  See Cross-Motion at pp. 31-32.  Each of those arguments is addressed in turn.

Plaintiffs first argue that "[p]rior to the time that Plaintiffs filed their lawsuit, there was no way to know" that the FSC/SunAmerica Defendants were receiving fees.  See Cross-Motion at p. 31.  The fact that Plaintiffs raised the Counts in their initial Complaint, filed on October 9, 2009, shows this to be simply incorrect.  The Plaintiffs alleged the receipt of those fees multiple times in that initial Complaint.  See Docket #1 at p. 85 (alleging that SAAMCo, SACS, and SAFS "received . . . fees on account of" the Plan's use of the SAMMF and that "AIG is enriched by the fees received from such subsidiaries"); id. at p. 93 (alleging that the FSC/SunAmerica Defendants "caus[ed] the Plan to invest in the [SAMMF] and to pay fees to AIG wholly owned

---

[6]      As set forth in Section II, *infra*, Plaintiffs' claim that these discovery responses were inaccurate is baseless.  However, putting the substance of that contention aside, Plaintiffs were clearly on notice that the FSC/SunAmerica Defendants were receiving fees prior to filing their initial Complaint in 2009 given the inclusion of the Counts in that Complaint.  Therefore, these 2011 discovery responses did not in any way prevent Plaintiffs from learning about the fees.

subsidiaries . . ."); id. at p. 103 (claiming that SAAMCo, SACS, SAFS, and AIG "caused the Plan to invest in the [SAMMF] and pay fees/payments to such parties in connection therewith.").

If there was no way to know of these fees without having first filed the present lawsuit, Plaintiffs could not have raised the Counts in that Complaint. The Plan's use of the SAMMF was in no way concealed at any time from the time Plan assets were first placed in the SAMMF in 2005 until Plan assets were removed in March 2011. Accordingly, any of the Plaintiffs (or any other Plan participant) could have initiated an action at any time during the four years between when the Plan began using the SAMMF and when Plaintiffs filed their action.

Likewise, Plaintiffs' two other bases for arguing that the conduct at issue was "too short to be fully litigated" fail for the same reason. Plaintiffs argue that the FSC/SunAmerica Defendants' discovery responses and the disclosure of the refund of the fees, both of which occurred in 2011, establish that there was insufficient time to litigate. Perhaps if Plaintiffs could argue they were unaware of the fees prior to these events, their position would have some merit. However, given the inclusion of the Counts in Plaintiffs' Complaint in 2009, it is obvious that actions in 2011 cannot be what gave Plaintiffs the knowledge to litigate the Counts.

Despite the fact that Plaintiffs have the burden, they fail to even suggest any standard for what would have been sufficient time to litigate the Counts. Ultimately, more than six years have passed since the Plan first began to use the SAMMF.[7] Additionally, it has been more than

---

[7]     This is significant because the Third Circuit has suggested that there has not been sufficient time to litigate if there was not more than *two years* between the conduct at issue and the remedial actions. See Diop v. ICE/Homeland Sec., 656 F.3d 221, 227 (3d Cir. 2011) ("Diop's detention for another year, six months, and twenty days was less than the two years the Supreme Court has found to be too short to be fully litigated in other contexts."); Merle v. United States, 76 F. App'x. 466, 468 (3d Cir. 2003) ("The Government does not contest with much vigor that, as the duration of a campaign for the House of Representatives necessarily cannot exceed two years (the time between elections), the life expectancy of Merle's claim is too short to be fully litigated prior to cessation or expiration.").

two years since Plaintiffs filed their initial Complaint.  Therefore, there is no basis to conclude that the Plaintiffs have satisfied their burden.

2.  ***Plaintiffs Have Failed To Establish That The FSC/SunAmerica Defendants' Receipt Of Fees Is Likely To Be Repeated***

As Plaintiffs have failed to establish that the Plan's utilization of the SAMMF was "too short to be fully litigated," it is unnecessary for the Court to examine whether or not the challenged conduct is likely to be repeated as Plaintiffs must make *both* showings.  However, even if the Court were to reach the second part of the analysis, Plaintiffs have failed to make the requisite showing.  As noted in Defendants' Motion, and as unchallenged in Plaintiffs' Motion, Plaintiffs have the burden to prove that the risk of repetition in the future is so high that the case cannot be deemed moot.  As the Jersey Central I Court held, whether or not there is a reasonable expectation that the alleged violation will recur "requires us to determine whether there is a 'demonstrated probability,' or a 'reasonable expectation,' as distinct from a 'mere physical or theoretical possibility,' that the conduct of which [plaintiff] complains will recur thereby keeping this matter susceptible to judicial resolution."  772 F.2d at 33.  "'Capable of repetition' is not a synonym for 'mere speculation;' it is a substantive term on which the [plaintiff] must provide a reasonable quantity of proof – perhaps even by the preponderance of the evidence."  Id.

Plaintiffs contend that a number of purported bases establish that "there is a reasonable likelihood that Defendants' misconduct will be repeated."[8]  See Cross-Motion at pp. 32-33.  First, they contend that the FSC/SunAmerica Defendants did not disgorge their fees immediately after Plaintiffs filed their Complaint.  See id. at p. 33.  However, Plaintiffs suggest no basis

---

[8]      One purported basis raised by the Plaintiffs is their contention that the FSC/SunAmerica Defendants did not provide accurate discovery responses related to the Counts.  As set forth in Section II, *infra*, this position is entirely erroneous.  However, even if it were accurate, Plaintiffs (who have the burden to do so) fail to state any basis whatsoever as to how these discovery responses prove that the FSC/SunAmerica Defendants would again receive revenue sharing payments from the Plan's sweep account.

whatsoever how this in any way means that any purported delay is likely to result in repetition in the future, given that it is undisputed that the fees have now been refunded to the Plan.

Second, Plaintiffs argue that because Defendants' Motion "was driven by the desire to 'avoid the cost of litigating the issues raised by Plaintiffs,' . . . that cost is not a significant deterrent to a repeat of the same misconduct." See id. That argument is farcical. Over the course of this litigation, the FSC/SunAmerica Defendants have incurred significantly more in attorneys' fees related to the Counts than the $56,936.29 in fees that they received (including interest) and then refunded to the Plan. See DSOF at ¶ 22. The FSC/SunAmerica Defendants' litigation costs alone related to the Counts exceed any fees that they received (and that does not even take into account that the FSC/SunAmerica Defendants *refunded* all of those fees).



The final arguments raised by Plaintiffs should be addressed together. Fourth, Plaintiffs contend that the FSC/SunAmerica Defendants have not defined the "additional controls" that

---

9       As noted in Plaintiffs Motion, the documents underlying this discussion have been designated as confidential. Accordingly, like Plaintiffs, the FSC/SunAmerica Defendants have redacted this text from the electronically-filed copy of this Brief. The FSC/SunAmerica Defendants will provide an unredacted copy to the Court and to Plaintiffs' counsel.

would prevent repetition; and fifth, Plaintiffs point to the fact that the Plan now uses the Dreyfus Cash Management Fund (the "DCMF") instead of the SAMMF and that a disclosure on FSC's website indicates that the Plan may receive fees in some contexts from Dreyfus. Plaintiffs' fifth point defeats their fourth. The additional controls that will prevent the FSC/SunAmerica Defendants from receiving fees going forward is the fact that Plan assets are now placed in the DCMF, a fund which is not affiliated with any of the FSC/SunAmerica Defendants and pays no fees to the FSC/SunAmerica Defendants based upon the Plan's use. See Ex. B to the Sawicki Dec., Second Declaration of Matthew Schlueter (the "Schlueter 2nd Dec.") at ¶¶ 2-4.[10]

With respect to their fifth point, while Plaintiffs are correct that FSC may receive fees in *some* contexts from Dreyfus, Plaintiffs have not produced a single shred of evidence to indicate that FSC receives any fees from Dreyfus based upon the Plan's use of the DCMF as its current sweep account. Instead, Plaintiffs make the utterly baseless argument that because FSC discloses on its website that it may receive fees from Dreyfus in some contexts, then *ipso facto*, the FSC/SunAmerica Defendants must be receiving revenue sharing payments based upon the Plan's use of the DCMF. In fact, FSC receives no such fees from Dreyfus based upon the Plan's use of the DCMF. See Ex. B to the Sawicki Dec., Schlueter 2nd Dec., at ¶¶ 3-4.

Ultimately, all Plaintiffs have done is throw every argument that they could think of against the wall in the hopes that one would stick. Unfortunately for them, absolutely nothing they have raised in any way suggests a likelihood of repetition. Thus, Plaintiffs have utterly failed to satisfy their burden that the challenged conduct is likely to recur. Therefore, Plaintiffs

---

[10]   Ex. A to the Schlueter 2nd Dec. contains proprietary information. Therefore, Ex. A to the Schlueter 2nd Dec. will be the subject of a Motion to Seal and will not be publicly filed herewith. The FSC/SunAmerica Defendants will provide a copy of Ex. A to the Schlueter 2nd Dec. to the Court and to Plaintiffs' counsel.

have not established an exception to the mootness doctrine and Defendants' Motion should be granted.

**II.    PLAINTIFFS' CROSS-MOTION SHOULD BE DENIED**

### A. The Burden Rests With Plaintiffs To Show That No Genuine Issue Of Fact Or Law Exists

On a motion for summary judgment, "the burden is on the moving party to show that no genuine issue of material fact exists." Acme Mkts., Inc. v. Wharton Hardware and Supply Corp., 890 F.Supp. 1230, 1238 (D.N.J. 1995) (Simandle, J.).  In considering a motion for summary judgment, the court must view the record "in the light most favorable to the non-moving party."  Id. at 1238.  Summary judgment should not be granted when "the non-movant provides evidence in the form of affidavits, pleadings, depositions, answers to interrogatories or admissions on file to show that a question of material fact remains."  Id.  Whether a fact is "material" is determined by the substantive law defining the claims.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Indeed, the "moving party *always* bears the initial burden of showing that no genuine issue of material fact exists, regardless of which party ultimately would have the burden of persuasion at trial." Walz ex rel. Walz v. Egg Harbor Tp. Bd. of Educ., 187 F. Supp. 2d 232, 237 (D.N.J. 2002) (Simandle, J) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Jalil v. Avdel Corp., 873 F.2d 701, 706 (3d Cir.1989)) (emphasis added).  When the non-moving party will bear the burden of proof at trial, the moving party still bears the burden of "showing – that is, pointing out to the District Court—that there is an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325.

## B. Disputed Issues Of Fact And Applicable Law Preclude Granting Summary Judgment On The Merits of Plaintiffs' Prohibited Transaction Claims

In their Cross-Motion,[11] Plaintiffs argue that the FSC/SunAmerica Defendants committed a prohibited transaction under Section 406(b) of ERISA, 29 U.S.C. § 1106(b), when they used the SAMMF as the Plan's sweep account and also received certain fees from the SAMMF. Therefore, Plaintiffs contend they are entitled to summary judgment on Counts III and XI of their Complaint.[12]

Plaintiffs' entire argument boils down to just a few assertions: (1) "FSC's fiduciary status is no longer in dispute" (see Cross-Motion at p. 4); (2) "[s]ection 406(b) of ERISA prohibits a plan fiduciary from engaging in. . . self-dealing" (see id. at p. 14); (3) the FSC/SunAmerica Defendants used the SAMMF as the Plan's sweep account (see id. at p. 4); (4) the SAMMF is an "affiliate" of FSC (see id. at p. 4); and (5) "[o]ther courts/authorities [outside the Third Circuit] have held that ERISA § 406(b), 29 U.S.C. § 1106(b) prohibited transactions occur when a fiduciary invests Plan assets with an affiliate." (see id. at p. 14.) After raising these assertions, and without *any* analysis, Plaintiffs summarily conclude that the FSC/SunAmerica Defendants "cannot seriously dispute that its investment in Plan assets in the SAMMF did not constitute a prohibited transaction under ERISA § 406(b), 29 U.S.C. § 1106(b)." See id. at p. 15.

---

[11]     The standard by which the court decides a summary judgment motion does not change when the parties file cross-motions. Walz, 187 F. Supp. 2d. at 237 (citing Weissman v. USPS, 19 F. Supp. 2d 254 (D.N.J.1998)). "When ruling on cross-motions for summary judgment, the court must consider the motions independently" and "view the evidence on each motion in the light most favorable to the party opposing the motion." Id. (internal citations omitted.)

[12]     Initially, Plaintiffs claim to only seek judgment on Counts III and XI of their FAC, but it appears they may also seek judgment on Count VI. Compare Cross-Motion at p. 12 with p. 20. Regardless, because all of these Counts arise from the same underlying conduct, Plaintiffs' Motion should be denied as to any and all of the Counts.

Plaintiffs' prohibited transaction argument is not only overly simplistic, but also makes a number of tangential leaps, in order to conclude that there are no genuine issues of material fact and that they are entitled to judgment in their favor. The FSC/SunAmerica Defendants do not dispute that Plaintiffs have alleged the basic elements of a prohibited transaction (although such alleged prohibited transaction is moot for the reasons discussed in Section I, *supra*). But whether the FSC/SunAmerica Defendants indeed violated ERISA § 406(b) is not nearly as simple as Plaintiffs make it seem. Plaintiffs do not make any effort to address the fact that the FSC/SunAmerica Defendants did not, and could not, *cause* the transactions at issue. Moreover, Plaintiffs completely ignore the FSC/SunAmerica Defendants' defense that the Plan's use of the SAMMF is *exempt* from ERISA's prohibited transaction rules for at least two reasons. In this regard, there are a number of materially disputed issues and significant legal impediments that preclude entering summary judgment on their prohibited transaction claims.[13]

1.    ***Plaintiffs Have Not Established That  The FSC Defendants Caused The Alleged Prohibited Transactions At Issue***

Section 406(b) of ERISA provides, in pertinent part, that an ERISA fiduciary[14] shall not: (1) deal with the assets of the plan in his own interest or for his own account; or (2) receive any consideration for his own personal account from any party dealing with such plan in connection with such a transaction involving the assets of the plan. 29 U.S.C. § 1106(b). In

---

[13]    It was exactly these factual and legal disputes – and the associated litigation costs – that the FSC/SunAmerica Defendants sought to *avoid* by remediating this situation in the first instance. Indeed, the legal fees that the parties will have spent in litigating the Motions will far exceed the amount the FSC/SunAmerica Defendants spent to remedy the Counts.

[14]    ERISA § 3(21), 29 U.S.C. § 1002(21), provides that a person or entity is a fiduciary with respect to a plan to the extent that person or entity: (i) exercises any discretionary authority or discretionary control respecting management of such plan, or exercises any authority or control respecting management or disposition of a plan's assets; (ii) renders investment advice for a fee or other compensation, direct or indirect, or has any authority or responsibility to do so; or (iii) has any discretionary authority or discretionary responsibility in the administration of such plan.

order to succeed with a claim under ERISA § 406, a plaintiff must first establish that the defendant is a fiduciary. See ERISA § 406(b) ("A fiduciary with respect to the plan shall not . . . "); accord Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc., 500 U.S. 238, 251 (2000). In addition, however, in order to show a violation of ERISA § 406, "a plaintiff must show that a fiduciary *caused* the plan to engage in the allegedly unlawful transaction." Lockhead Corp. v. Spink, 517 U.S. 882, 888-89 (1996) (emphasis added).

As a threshold matter, Plaintiffs' Cross-Motion is devoid of any *undisputed facts* establishing fiduciary status for any of the FSC/SunAmerica Defendants. Instead, Plaintiffs baldly assert that: "FSC's fiduciary status is no longer in dispute." See Cross-Motion, at p. 4. However, the only "facts" alleged in support of this conclusion include the Court's 2010 opinion on the FSC/SunAmerica Defendants' Motion to Dismiss (holding only that Plaintiffs had sufficiently *alleged* FSC and Wharton's fiduciary status to sustain a cause of action for breach of fiduciary duty – but in no way ruling that those entities were, as a matter of law, fiduciaries)[15] and a few edited excerpts from the testimony of Messrs. Hembrough and Webster (which contains nothing more than their own subjective opinions of their status).

Setting aside that Plaintiffs have only marginally attempted to satisfy their burden[16] by baldly asserting that the FSC/SunAmerica Defendants fiduciary status is "no longer in dispute," Plaintiffs have not in any way attempted to establish that the FSC/SunAmerica Defendants *caused* the Plan to enter into the alleged prohibited transactions at issue. The undisputed facts demonstrate quite the opposite. Under the terms of the Plan, the Plan's Trustees have the

---

[15]      See Goldenberg v. Indel, Inc., 741 F. Supp. 2d 618, 625 (D.N.J. 2010).

[16]      Plaintiffs carry the burden of establishing that any of the FSC/SunAmerica Defendants are fiduciaries. See Confer v. Custom Eng'g Co., 952 F.2d 34, 41 (3d Cir. 1991) ("[T]he plaintiffs have failed to carry their burden of coming forward with specific facts to indicate that these officers assumed the status of ERISA fiduciaries.").

exclusive authority to manage the Plan's investments.  See Ex. C to the Sawicki Dec., the Plan, at § 8.1.  Although FSC/Wharton serves as an investment adviser to the Trustees, the agreement under which it performs this role confirms that they act as a *non-discretionary adviser,* meaning they have no discretionary authority or control over the Plan's assets or its investments.  See Ex. D to the Sawicki Dec., the FSC Securities Corporation VISION2020 Advisor Investment Advisory Client Services Agreement, at p. 2, ¶ 3.   Specifically, the agreement states that they are acting "on a non-discretionary basis," that the Plan will invest only as the Trustees direct, and that the Trustees are "under no obligation to accept any of [FSC/Wharton]'s recommendations, and [the Trustees] retains sole discretion over the investments to be purchased and sold . . . "  Id.  Indeed, there is not a single fact to indicate that FSC/Wharton *controlled* the Plan's investments such that they can be held liable for a violation of ERISA § 406(b).

Tibble v. Edison Int'l, 639 F.Supp.2d 1074, 1088-89 (C.D. Cal. 2009) is directly on point.  In Tibble, the plaintiff asserted a prohibited transaction claim under ERISA § 406 based on the plan having invested in a mutual fund company.  Id. at 1086.  The plaintiff alleged the investment in the mutual fund company resulted in a benefit to the plan's sponsor because it resulted in the plan sponsor paying a smaller percentage of the plan's recordkeeping costs.  Id. Even though the plan's administrative committee had selected the mutual fund company, the plaintiff alleged that the plan sponsor violated ERISA § 406(b) because it received consideration for its own account and acted in a transaction that was adverse to the plan.  Id.. The court rejected the plaintiff's claims out of hand because in order "to be liable for a violation of § 1106(b)(3), the fiduciary receiving the 'consideration' must have had control over the 'transaction' in question."  Id. at 1087 (citing Lockheed, 517 U.S. at 888).  The court

reasoned that while the plan sponsor received the benefit of the alleged prohibited transaction, it was not the party that *caused the plan to invest in the mutual fund at issue*.   Rather, the court found that the plan's benefit committee, which was an independent entity from the sponsor, *caused* the investment in the mutual fund.   Since the plaintiff failed to show that the sponsor controlled the committee's decision, the claim failed.  Id. at 1087-88.  Accord Hecker v. Deere & Co., 556 F.3d 575, 584 (7th Cir. 2009).

For the same reasons, summary judgment is precluded here.  As demonstrated above, FSC/Wharton did not make the decision to invest the Plan's assets in the SAMMF, nor could they under the explicit terms of the Plan.   Rather, this decision was made by the Plan's Trustees, which are wholly independent from the FSC/SunAmerica Defendants.  As such, none of the FSC/SunAmerica Defendants caused, nor could they have caused, the Plan to enter into the alleged prohibited transactions.  Thus, Plaintiffs are not entitled to summary judgment.

### 2.  *The Use Of The SAMMF As The Plan's Sweep Account Is Exempt From ERISA's Prohibited Transaction Rules*

At their core, Plaintiff's prohibited transaction claims rest on the assertion that because the Plan's investment adviser, FSC/Wharton, is alleged to be affiliated with the other FSC/SunAmerica Defendants, the Plan's use of the SAMMF violated ERISA § 406(b) because the FSC/SunAmerica Defendants allegedly benefited from the fees paid to the by the SAMMF. As set forth above, FSC/SunAmerica Defendants do not dispute that Plaintiffs have alleged the basic elements of a prohibited transaction claim.   However, these claims nonetheless fail as a matter of law because as set forth in the FSC/SunAmerica Defendants' Answer to the FAC ("Answer"),[17] and in response to Plaintiffs' Interrogatories, the Plan's use of the SAMMF as the Plan's "sweep account" is exempt from ERISA's prohibited transaction rules.

---

[17]      See Docket #58, at pp. 52-57 (Eighth, Tenth, and Fifteenth Defenses).

As set forth above, ERISA § 406 prohibits fiduciaries from engaging in self-dealing, and from engaging in certain transactions with parties in interest. Recognizing that these prohibitions were overbroad because many of these transactions could, in fact, be beneficial to plans, Congress also enacted ERISA § 408(b), which contains statutory exemptions from these prohibitions, and ERISA § 408(a), which authorizes the Secretary of Labor (the "Secretary") to grant administrative exemptions on an individual or class basis. 29 U.S.C. § 1108.

In 1977, the Secretary issued a "class exemption" from ERISA § 406 to permit the exact conduct of which Plaintiffs complain here. Prohibited Transaction Class Exemption ("PTCE") 77-4, 47 Fed. Reg. 18732 (1977), permits investment firms to invest assets from ERISA plans they control in mutual funds with which they are affiliated. Specifically, PTCE 77-4 states that the "restrictions" of ERISA§ 406 "shall not apply" to the purchase or sale by an ERISA plan of shares of an open-end investment company registered under the Investment Company Act of 1940, the investment advisor for which is also a fiduciary with respect to the plan (or an affiliate thereof) provided that the following conditions are met: (1) the plan pays no commission in connection with such purchase or sale; (2) the plan pays no redemption fee in connection with the sale by the plan to the investment company of such shares, *unless* the fees are paid only to the investment company and are disclosed; (3) the plan pays no investment management, investment advisory, or similar fee with respect to plan assets invested in the fund, *other than those paid by the fund in accordance with its advisory agreement;*[18] and (4) the fees are disclosed to an independent fiduciary who approves the purchase and sales of fund shares. See PTCE 77-4. Thus, PTCE 77-4 expressly permits investment advisory firms to invest assets from ERISA plans they advise in mutual funds that they manage as long as these conditions are met. Id.

---

[18]    A plan can pay advisory fees based upon total assets under management if the plan is credited for any fees paid by the investment company to the advisor.  See PTCE 77-4.

- 24 -

Here, the use of the SAMMF as the Plan's sweep account satisfies PTCE 77-4.  See Ex. E to the Sawicki Dec., FSC and Wharton's Responses and Objections to Plaintiffs' First Set of Interrogatories, at p. 18-21. There is also no dispute that the SAMMF is an open-end investment company (*i.e.*, mutual fund) registered under the Investment Company Act of 1940.  See Ex. F to the Sawicki Dec, the SAMMF Prospectus.  It is also undisputed that the Plan does not pay a "sales commission" with respect to the Plan's use of the SAMMF, nor does it pay any undisclosed "redemption fees."  See Ex. E to the Sawicki Dec. at p. 18-21.  In addition, *the Plan* does not pay any advisory fees for use of the SAMMF, other than those paid by the SAMMF as set forth in the SAMMF's Advisory Agreement.  Id.  Furthermore, SunAmerica Money Market Funds, Inc., disclosed in public filings made with the Securities and Exchange Commission the fees, charges, expenses and related information required to be disclosed by the applicable federal securities laws and regulations, and the Indel Defendants are independent fiduciaries who approved the use of the SAMMF as the sweep account for the Plan.  Id.  Thus, the requirements of PTCE 77-4 are satisfied, and Plaintiffs submit no evidence to contradict these facts.

Though the undisputed facts demonstrate that the requirements of PTCE 77-4 were satisfied here, even if those conditions were not satisfied, all of the fees received as a result of the placement of Plan assets in the SAMMF satisfied the statutory exemption in ERISA §§ 408(b)(2) and (c), 29 U.S.C. §§ 1108(b)(2) and (c).  Id.  Sections 408(b)(2) and (c) of ERISA provide a statutory exemption for "reasonable compensation" paid to service providers and fiduciaries for services performed with respect to the Plan.  As a general rule "whether compensation is reasonable under sections 408(b)(2) and (c)(2) of [ERISA] *depends on the particular facts and circumstances of each case.*"  29 C.F.R. § 2550.408c-2 (emphasis added).

Here, under the Advisory Agreement, FSC/Wharton provided a range of services, including (i) investment advisory services, (ii) program account services, and (iii) execution, clearance, and administrative services. Id. As such, the FSC/SunAmerica Defendants maintain that all fees they received were "reasonable compensation" for services rendered in the performance of their duties with respect to the Plan or for reimbursement of expenses incurred in the performance of their duties with respect to the Plan, thereby satisfying ERISA §§ 408(b)(2) and (c). See Ex. E to the Sawicki Dec. at p. 18-21. Plaintiffs submit no evidence to the contrary.

3.    **_Plaintiffs Fail To Meet Their Burden To Prove_**
      **_That No Genuine Issues Of Material Fact Exist_**

Although the FSC/SunAmerica Defendants unequivocally asserted these defenses in their Answer and explained the applicability of both of these exemptions in their discovery responses, Plaintiffs' Motion does not even attempt to address the applicability of these exemptions to the transactions at issue or the evidence Defendants have proffered in support. Plaintiffs do not in any way address whether the four conditions of PTCE 77-4 were, or were not, met. Plaintiffs submit no evidence that the fees received by FSC were not "reasonable" compensation for services rendered in performance of their duties with respect to the Plan. On this basis alone, Plaintiffs have failed to satisfy their burden under Fed. R. Civ. P. 56. See Celotex, 477 U.S. at 325 (holding the moving party has the burden of showing that there is an absence of evidence to support the non-moving party's case.) Moreover, _even if_ Plaintiffs had submitted some evidence that the fees received by the FSC/SunAmerica Defendants were not "reasonable" within the meaning of 29 C.F.R. § 2550.408c-2, this fact-specific analysis of whether the fees received by FSC were or were not "reasonable" in light of the "particular facts and circumstances of [this] case" certainly precludes summary judgment at this time.

Instead, rather than dealing with the merits of these exemptions – as it is their burden to do – Plaintiffs proffer an extremely simplified analysis under the basic prongs of ERISA § 406 only, and then outrageously claim that Defendants "concealed," "fail[ed] to disclose" and/or "misrepresent[ed]" information regarding its compensation in their discovery responses. See Cross-Motion at pp. 7-10. This is absurd. Not only are the FSC/SunAmerica Defendants' discovery responses entirely accurate, but they also clearly identify the exact disputed issues discussed above that preclude the very relief Plaintiffs seek.

Interrogatory Number 18 of Plaintiffs' First Set of Interrogatories to FSC/Wharton queried:

> If you contend that the investment in the SAMMF was not a prohibited transaction, explain the basis of that contention, set forth all facts upon which you will rely to support that contention and attach all documents which support your contention.

Subject to certain objections, FSC/Wharton responded that they did not receive "any consideration for their own personal account from any party dealing with the Plan in connection with a transaction involving assets of the Plan." Ex. E to the Sawicki Dec., at p. 20. *This is true*. The FSC/SunAmerica Defendants did not receive any consideration resulting from any transaction involving "the assets of the Plan." Rather, the fees at issue are paid from the SAMMF's assets, as permitted by PTCE 77-4, *not the Plan's assets*. Therefore, none of the FSC/SunAmerica Defendants have received any consideration for their own personal account in connection with a transaction *involving assets of the Plan*.

Further, in this regard, Interrogatory Number 19 of Plaintiffs' First Set of Interrogatories to FSC/Wharton queried:

> If you contend that the investment into the SAMMF satisfied the criteria for a prohibited transaction exemption, explain the basis of that contention, set forth all

facts upon which you will rely to support that contention and attach all documents which support your contention.

As explained above, FSC/Wharton responded by stating that, in their view, PTCE 77-4 applied. See Ex. E to the Sawicki Dec. at p. 21. Further, FSC/Wharton explained that "the Plan does not pay a sales commission with respect to any purchase or sale of an investment in the SAMMF." See id. *This is also true*. There is no "sales commission" at issue here – only the 12b-1 and other fees paid by the SAMMF. FSC/Wharton also responded that "the Plan does not pay any advisory fees other than those set forth in the FSC Advisory Agreement." See id. Again, for the reasons set forth above, that is obviously true – the fees at issue here were paid by the SAMMF (as permitted by PTCE 77-4) and *not by the Plan*. In this regard, because FSC/Wharton's discovery responses were complete and accurate when made – and remain so – they have no obligation under Fed. R. Civ. P. 26(e) to amend those responses, despite Plaintiffs' erroneous suggestion to the contrary. See Cross-Motion at p. 12.

Furthermore, Plaintiffs' contention that the FSC/SunAmerica Defendants are concealing information because they have "refused to produce a corporate representative of SAAMCo for a deposition" is just plain wrong. See Cross-Motion at p. 10. The FSC/SunAmerica Defendants *agreed* to produce a FSC corporate representative to testify on some of the subjects indicated in Plaintiffs' 30(b)(6) Deposition Notice. However, in light of their remediation of the Counts, the FSC/SunAmerica Defendants took the position that Plaintiffs do not have the right to pursue discovery on mooted claims, including testimony on subjects related to the mooted claims. This discovery dispute was properly brought before Magistrate Judge Donio who heard oral argument on the issue, and decided not to make any decision on the scope of that deposition until *after* the

Court rules on Defendants' instant Motion.[19]  Indeed, at that hearing, Plaintiffs conceded that if the Counts are dismissed as moot, then they do not have a legitimate basis to pursue further discovery on those Counts.  For Plaintiffs to now suggest that the FSC/SunAmerica Defendants are "concealing" information by "refusing" to produce a witness is completely disingenuous.

It appears Plaintiffs simply do not understand the prohibited transaction exemptions the FSC/SunAmerica Defendants have identified.  As such, Plaintiffs have taken the approach of proffering an overly simplified argument, ignoring the applicable exemptions and instead launching baseless attacks on discovery responses.  For all of these reasons, Plaintiffs have not come close to meeting their burden here, and summary judgment should be denied.

**C.**   **Plaintiffs Could Not Recover Any Damages If Their Motion Was Granted**

Moreover, Plaintiffs devote an entire section of their Cross-Motion to the proposition that "Defendants Should Be Ordered to Disgorge Their Illicit Gains."  See Cross-Motion at p. 18.  Specifically, Plaintiffs contend that "[u]nder ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), a party that participates in a prohibited transaction is subject to disgorgement."  See id.  While the FSC/SunAmerica Defendants did not commit a prohibited transaction and while there is no reason for the Court to rule on the merits of that claim in order to determine that the Counts have been mooted, assuming, *arguendo*, that a prohibited transaction occurred, there is nothing left to disgorge.  Plaintiffs have expressly acknowledged that the FSC/SunAmerica Defendants have returned all fees received to the Plan, with interest.  See DSOF at ¶ 26.  Thus, even if the Court granted the Cross-Motion, there would be no damages because there would be nothing to disgorge.  Therefore, Plaintiffs' position that because ERISA § 502(a)(3) permits disgorgement,

---

[19]     See Ex. G, Discovery Letter from Tod Sawicki to Judge Donio, November 3, 2011.

"Plaintiffs are entitled to summary judgment with respect to these Defendants" (see Cross-Motion at p. 19) is utterly without merit.

## CONCLUSION

For the foregoing reasons and for the reasons set forth in Defendants' Motion, the FSC/SunAmerica Defendants respectfully request that the Court grant Defendants' Motion and deny Plaintiffs' Motion.

Respectfully submitted this 23rd day of December, 2011.

**ALSTON & BIRD LLP**

/s/ Craig Carpenito
Craig Carpenito (CC-1686)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Phone: (212) 210-9400
Fax: (212) 210-9444
Email: craig.carpenito@alston.com

Theodore J. Sawicki, Esq. (*pro hac vice*)
H. Douglas Hinson, Esq. (*pro hac vice*)
ALSTON & BIRD LLP
1201 West Peachtree St.
Atlanta, GA 30309
Phone: (404) 881-7000
Fax: (404) 881-7777
Email: tod.sawicki@alston.com
Email: doug.hinson@alston.com

***Counsel for the FSC/SunAmerica Defendants***