UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BORIS GOLDENBERG, REINALDO PACHECHO, ANDREW LEOW and GERALD COMEAU, as representative of a class of similarly situated persons and on behalf of THE INDUCTOTHERM COMPANIES MASTER PROFITS SHARING PLAN #001,<br><br>     Plaintiffs,<br><br>vs.<br><br>INDEL, INC., individually and a/k/a INDUCTOTHERM INDUSTRIES, INC. and INDUCTOTHERM CORPORATION, et al.,<br><br>     Defendants. | Civil No. 1:09-cv-5202-JBS-AMD |

### PLAINTIFFS' REPLY BRIEF

SZAFERMAN, LAKIND,
 BLUMSTEIN & BLADER, P.C.
By: Robert L. Lakind
  Arnold C. Lakind
101 Grovers Mill Rd., Suite 200
Lawrenceville, New Jersey 08648
Telephone: (609) 275-0400
Fax: (609) 275-4511
*Attorneys for Plaintiffs*

LEVY, PHILLIPS & KONIGSBERG, LLP
101 Grovers Mill Rd., Suite 200
By: Moshe Maimon
  Theresa Vitello
Lawrenceville, New Jersey 08648
Telephone: (609) 275-0400
Fax: (609) 275-4511
*Attorneys for Plaintiffs*

630754.1

# TABLE OF CONTENTS

**Page**

Procedural History and Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    Point I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        Defendants' Receipt of Payments From The SunAmerica
        Money Market Fund Is a Prohibited Transaction, And
        Defendants Have Failed to Satisfy Their Burden To Qualify
        For a Prohibited Transaction Exemption

    Point II . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        Plaintiffs' Claims Are Not Moot Because Plaintiffs Have
        an Interest in Shifting Attorneys Fees to the Defendants
        or to the Class And, in Addition, There is a Likelihood
        That Defendants' Misconduct Will Be Repeated

    Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

Braden v. Walmart Stores, Inc., 588 F.3d 585 (8th Cir. 2009) ................ 9

Chao v. Hall Holding Co., Inc., 285 F.3d 415 (6th Cir. 2002) ........... 8, 9

Charters v. John Hancock Life Ins. Co.,
    583 F. Supp. 2d 189 (D. Mass. 2008) ................................................. 7

Cutaiar v. Marshall, 590 F.2d 523 (3d Cir. 1979) ................................. 10

Daniels v. National Employee Benefit Securities, Inc.,
    858 F.Supp. 684 (N.D. Ohio 1994) .................................................... 5

DeJohn v Temple University, 537 F.3d 301 (3d Cir. 2008) .................. 13

Deposit Guaranty National Bank of Jackson, Miss. v. Roper,
    445 U.S. 326 (1980) .......................................................................... 11

Donovan v. Mercer, 747 F.2d 304 (5th Cir. 1984) ................................. 2

Gilliam v Edwards, 492 F.Supp. 1255 (D.N.J. 1980) ........................... 10

Goldenberg v. Indel, Inc., 741 F. Supp. 2d 618 (D.N.J. 2010) ....... 4, 5, 9

Haddock v. Nationwide Finance Svs. Inc.,
    419 F.Supp. 2d 156 (D. Conn. 2006) ................................................. 7

Haddock v. Nationwide Finance Svs. Inc.,
    262 F.R.D., 97 (D. Conn. 2009) ....................................................... 10

Hardt v Reliance Standard Life Insurance Co.,
    130 S.Ct. 2149 (2010) ...................................................................... 12

In re: Beacon Associates Litigation, ___ F. Supp. 2d ___ 2011,
    WL 4443957 (S.D.N.Y. 2011) ........................................................... 7

Kanawi v. Bechtel Corp., 590 F. Supp. 2d 1213 (N.D. Cal. 2008) .......... 7

Lockheed Corp. v. Spink, 517 U.S. 882 (1996) ....................................... 7

Lowen v. Tower Asset Mgmt., 829 F.2d 1209 (2d Cir. 1987) ........ 6, 8, 9

Meyer v. Berkshire Life Insurance Co., 250 F.Supp. 544 (D. Md. 2003)
    aff'd on other grnds, 372 F.3d 261 (4th Cir. 2004) ............................ 5

Nagy v. DeWese, 771 F.Supp. 2d 502 (E.D. Pa. 2011) .......................... 5

OSHA Data/CIH, Inc. v United States DOL,
    220 F.3d 153 (3d Cir. 2000) ............................................................ 13

Parents Involved in Community Schools v. Seattle School
    District No. 1, 551 U.S. 701 (2007) ........................................... 13, 15

Patelco Credit Union v. Sahni, 262 F.3d 897 (9th Cir. 2001) .......... 7, 10

Reich v. Compton, 57 F.3d 270 (3d Cir. 1995) .................................... 6, 8

Thomas Head & Grelsen Employees Trust v. Buster,
    24 F.3d 1114 (9th Cir.) cert. den. 513 U.S. 1127 (1994) ................... 5

Tibble v Edison Int'l., 639 F. Supp. 2d 1074 (C.D. 2009) ...................... 8

United States v. Virgin Islands, 363 F.3d 276 (3d Cir. 2004) ............... 14

## FEDERAL STATUTES

ERISA § 3(21)(A)(ii), 29 U.S.C. §1002(21)(A)(ii) ............................ 2, 5

ERISA § 406(b), 29 U.S.C. § 1106(b) ........................................... passim

ERISA § 408(b), 29 U.S.C. § 1108(b) ............................................ 10, 15

ERISA § 408(c), 29 U.S.C. § 1108(c) .................................................. 10

## FEDERAL REGULATIONS

29 C.F.R. § 2510-3.21(c) ................................................................ 2, 5

## FEDERAL RULES OF CIVIL PROCEDURE

Federal Rule of Civil Procedure 30(b)(6) ............................................. 3

## MISCELLANEOUS

Department of Labor Advisory Opinion 93-13A .................................. 7

Department of Labor Advisory Opinion 97-15 ..................................... 7

# PROCEDURAL HISTORY AND STATEMENT OF FACTS

Plaintiffs will rely upon the Procedural History and Statement of Facts included in their initial brief, as supplemented in the discussion of legal issues that follows.

# ARGUMENT

# POINT I

## DEFENDANTS' RECEIPT OF PAYMENTS FROM THE SUNAMERICA MONEY MARKET FUND IS A PROHIBITED TRANSACTION, AND DEFENDANTS HAVE FAILED TO SATISFY THEIR BURDEN TO QUALIFY FOR A PROHIBITED TRANSACTION EXEMPTION

### A.     Defendants Violated ERISA § 406(b)

ERISA § 406(b) provides in part as follows:

Transactions between plan and fiduciary

> A fiduciary with respect to a plan shall not--
>
> (1) deal with the assets of the plan in his own interest or . . . account, . . .
>
> \*           \*           \*
>
> (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

Plaintiffs' proofs satisfy all of the elements of ERISA § 406(b)(1) and (3) and, therefore, FSC Securities Corporation ("FSC"), B. J. Webster and Marc Hembrough have committed an ERISA Prohibited Transaction.

1.  **FSC Securities Corporation, B.J. Webster and Marc Hembrough are Fiduciaries**

Having conceded fiduciary status at depositions and characterized their role as that of an investment advisor in their Response to Plaintiffs' Statement of Material Facts ("Statement Response") and in discovery responses, Defendants argue, in their brief, that Plaintiffs have not demonstrated that Defendants are fiduciaries. (Db26 to Db27).

Under ERISA § 3(21)(A)(ii), a person is a fiduciary if

> he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so .

(Emphasis added). This provision, which is to be broadly construed, <u>Donovan v. Mercer</u>, 747 F.2d 304, 308 (5th Cir. 1984), is implemented by 29 CFR § 2510.3-21(c) which states:

> (c) Investment advice. (1) A person shall be deemed to be rendering "investment advice" to an employee benefit plan . . . if:
>
>> 1. (i) Such person **renders advice to the plan as to the value of securities** or other property, or **makes recommendation as to the advisability of investing in, purchasing, or selling securities or other property**; and
>>
>>> (ii) Such person either directly or indirectly (e.g., through or together with any affiliate)—
>>> \*       \*       \*
>>>
>>> (B) **Renders any advice** described in paragraph (c)(1)(i) of this section on a **regular basis** to the plan pursuant to a **mutual agreement, arrangement or understanding, written or otherwise,** between such person and the plan or a fiduciary

>	with respect to the plan, that such services will serve as **a primary basis for investment decisions with respect to plan assets**, and that such person will render individualized investment advice to the plan based on the **particular needs of the plan regarding such matters as, among other things, investment policies or strategy, overall portfolio composition, or diversification of plan investments.**

(Emphasis added).

In response to Plaintiffs' Statement of Material Fact No. 6, Defendants admitted that "FSC became a service provider and rendered investment advisory services to the Plan." In Statement Response No. 11, "FSC/Wharton" admitted that it "serves as an investment advisor to the Trustees . . .."

Defendants admit, as well, that Defendant, Marc Hembrough, at his deposition, stated that "I do view myself as a fiduciary in reference to the Plan." (Statement Response No. 7). Defendant, B.J. Webster, agreed that he "acted as if [he] were a fiduciary to the Plan," and that his colleague "Mr. Hembrough acted as if he was a fiduciary to the Plan." (Statement Response Nos. 8 and 9).

In the course of his deposition as a Fed. R. Civ. Pro. 30(b)(6) witness, Mr. Webster testified that he rendered advice with regard to, among other things, the allocation between equities and fixed income instruments, foreign and domestic investments, exchange traded funds and other investment vehicles, hedging strategies, cash versus investments, the selection of investment managers and funds, asset diversification, liquidity needs, use of managers to invest fund assets, ratings of alternative money market funds, institutional versus retail fund shares,

expenses, and investment performance. FSC monitored the performance of plan assets, monitored asset balances, evaluated investment managers and reported to the Plan on these issues. (Declaration of Arnold Lakind ("Lakind Decl."), Exhibit A, Deposition of B. J. Webster, pp. 83 to 103, 112 to 117, 155).

Defendants' status as an investment advisor is consistent with the FSC Investment Policy Statement (which articulates goals and proposes asset allocations), the FSC Vision 2020 Agreement (signed by Marc Hembrough as "Investment Advisor Representative") and the IRS annual report filings (which identify FSC as having investment management responsibilities). <u>Goldenberg v Indel, Inc.</u>, 741 F. Supp. 2d 618, 625 to 26 (D.N.J. 2010).

Defendants' status as an investment advisor is also consistent with their discovery responses. In an interrogatory response, FSC stated, "[d]uring the period from December 16, 2005 – the date Defendant FSC Securities Corporation ('FSC') became an investment adviser for the [Plan], through the present . . .." (Lakind Decl., Exhibit B). Over the course of that tenure, FSC attended monthly meetings and provided the Plan with over 5,000 documents. Additionally, in a document FSC provided to the Plan nearly every month, it stated its "approach" as: "Determine Investment Objectives . . .Set Asset Allocation Policy. . . Rebalance the Portfolio. . .." This document stated that the benefits of this approach were, among other things, to "access top mutual fund[s]" and

"[c]ontinuous active management and monitoring of portfolio." (an illustrative copy of this document is attached as Exhibit E to the Lakind Decl).

In addition, FSC performed the tasks described in 29 CFR § 2510-3.21(c) on a monthly basis for a fee. There was an agreement to perform these tasks (see p. 4 above), and these tasks fell within the duties that FSC was to perform under that agreement. Moreover, FSC considered the needs of the Plan, and its advice was generally followed. (Lakind Decl., Exhibit A, Deposition of B. J. Webster, pp. 47, 83 to 99, 102, 112 to 113).

Messrs. Webster and Hembrough, as well as their principal, FSC Securities Corp., Goldenberg, 741 F. Supp. 2d at 628 and Meyer v. Berkshire Life Ins. Co., 250 F.Supp. 544 (D. Md. 2003) aff'd on other grnds. 372 F3d 261 (4th Cir. 2004), were ERISA fiduciaries as that term is used in ERISA § 3(21)(A)(ii). See Thomas Head & Grelsen Emp. Trust v. Buster, 24 F.3d 1114 (9th cir.) cert. den. 513 U.S. 1127 (1994); Nagy v. DeWese, 771 F.Supp. 2d 502, 517 (E.D. Pa. 2011); Meyer, 250 F. Supp. at 561 (Berkshire made "countless recommendations regarding the advisability of various investments."); Daniels v. Nat'l Emp. Benefit Sec., Inc., 858 F. Supp. 684 (N.D. Ohio 1994). There is no question that FSC and Messrs. Webster and Hembrough were Plan Fiduciaries during the relevant time period

### 2. FSC Received Consideration For Its Own Account From a Party Dealing With the Indel Plan- ERISA § 406(b)(3)

In response to Plaintiffs' Statement of Material Fact No. 11, FSC admitted

that the "Plan used the [SunAmerica Money Market Fund (SAMMF)] as its sweep account between December 2005 and March 2011." During this period, SunAmerica Asset Management Company (SAAMCo) served as an investment advisor to the SAMMF and that SunAmerica Capital Services (SACS) served as a servicing agent to the SAMMF. (Statement Response No. 13). SAAMCo received a management fee from the SAMMF, and SACS received a distribution fee from the SAMMF. (Statement Response Nos. 14 and 15). FSC, SAMMF, SAMMCo and SAC are all wholly owned indirect subsidiaries of the American International Group and American International Group Retirement Services, Inc. (Statement Response No. 16). Between December 1, 2005 and March 31, 2011, SAMMCo paid fees to FSC, and between December 2005 and June 2009, SACS paid fees to FSC. (Statement Response Nos. 17 and 18).

Pursuant to ERISA § 406(b), which is to be broadly construed, liability may be imposed even when there is "no taint of scandal, hint of self dealing, no trace of bad faith." Reich v. Compton, 57 F.3d 270, 288 (3d Cir. 1995) (citation omitted). Thus, FSC's acceptance of payments from its affiliates constitutes dealing "with assets of the Plan in [FSC's] own interest," ERISA § 406(b)(1) and, in addition, represents receipt by a fiduciary of "consideration for his own personal account from any party dealing with [a] plan," ERISA § 406(b)(3). This conduct is per se a Prohibited Transaction. See Lowen v. Tower Asset Mgmt., 829 F.2d 1209, 1212

(2d Cir.1987) (investment in a company in which a fiduciary has an interest is a prohibited transaction under ERISA §§ 406(b)(1) and (3)); Haddock v. Nationwide Fin. Svs. Inc., 419 F. Supp. 2d. 156, 171 (D. Conn. 2006) (denying fiduciary's motion for summary judgment on ERISA § 406(b) prohibited transaction claim, where fiduciary was alleged to have received kickbacks from a mutual fund, but fiduciary claimed the kickbacks were used to offset other fees). See also Patelco Credit Union v. Sahni, 262 F.3d 897, 911 (9th Cir. 2001); Charters v. John Hancock Life Ins. Co., 583 F. Supp. 2d 189, 200 (D. Mass. 2008); Kanawi v. Bechtel Corp., 590 F. Supp. 2d 1213, 1228 (N.D. Cal. 2008); In re: Beacon Associates Litigation, ___ F. Supp. 2d ___ 2011, WL 4443957 (S.D.N.Y. 2011). See also Department of Labor Advisory Opinion "DOL Adv. Op." 93-13A (PTE 77-4 applies only if, among other things, the plan is given a credit for fees it would otherwise pay in an amount equal to the fund's investment management fee); DOL Adv. Op. 97-15 (fiduciary's receipt of kickbacks from mutual fund is only permissible if kickbacks are disclosed to trustee and receipts are used to offset expenses). FSC, it is clear, engaged in a Prohibited Transaction.

B. **Plaintiffs Need Not Prove Causation and Defendants Have Not Satisfied Their Burden of Proof on Their Affirmative Defenses**
    1. **The Causation Argument**

Relying on Lockheed Corp. v. Spink, 517 U.S. 882 (1996) (Db21), Defendants argue that Plaintiffs must prove causation. Defendants' reliance on

-7-

Spink is misplaced. That case involved ERISA § 406(a), which provides that "[a] fiduciary with respect to a plan shall not **cause** the plan . . ." (emphasis added). ERISA § 406(b), in contrast, does not contain any "causation" language. Rather, the receipt of improper consideration is per se unlawful. See Reich v. Compton, 57 F.3d at 288 (the per se prohibition of Section 406 is consistent with the remedial purpose of ERISA). Accordingly, courts have declined to read a causation requirement into ERISA § 406(b). Chao v. Hall Holding Co., Inc., 285 F.3d 415, 438 to 39 (6th Cir. 2002) ("the Court declines to read a 'causation' element into a violation of § 406 . . .").

In addition, Defendants misread Tibble v Edison Int'l., 639 F. Supp. 2d 1074 (C.D. 2009). There, the recipient of the revenue sharing payment was the passive plan sponsor, SCE, who was "not the party engaging in the transaction"; nor did SCE exercise any influence over the transaction:

> There is no evidence, for example, that SCE itself influenced whether to enter into the service contracts with the mutual funds or whether certain mutual funds would become investment options for the fund.

Id. at 1088. The Tibble Court distinguished SCE from those who would be liable were they to render investment advice :

> Martin and Stuart Park relied on an earlier Second Circuit opinion Lowen, 829 F.2d 1209. There, the court found that a group of related companies (Tower Asset, Tower Capital, and Tower Securities (collectively, the "Tower entities")), along with their principals, had engaged in numerous prohibited transactions in violation of § 1106(b)(3).Id. at 1213. **Tower**

> **Asset was a fiduciary to the plan and provided the plan with investment advice.**

(Emphasis added); id. at 1089. In the clearest of terms, the Court stated that SCE was not a fiduciary with regard to the challenged conduct because it had no role in the decision making.

Even were this Court to reject the 6th Circuit's holding in Chao and import ERISA § 406(a)'s causation requirement into ERISA § 406(b), Plaintiffs have nonetheless proved causation. As Mr. Webster testified, the SAMMF was the only alternative offered to Indel by FSC. (Lakind Decl., Exhibit A, Deposition of B. J. Webster, pp. 150-6). Similarly, Mr. Hembrough testified that FSC selected the SAMMF (Lakind Decl., Exhibit D, Deposition of Marc Hembrough, p. 64). Given FSC's selection of its affiliate, SAMMF, and its acceptance of kickbacks, FSC caused the Prohibited Transaction.

### 2. PTE 77-4 Is Unavailable to Defendants

Satisfaction of an exemption from an ERISA prohibited transaction is an affirmative defense, upon which a defendant bears the burden of proof. Goldenberg, 741 F. Supp. 2d at 632. See also Lowen, 829 F.2d at 1215; Braden v. Walmart Stores, Inc., 588 F.3d 585, 602 (8th Cir. 2009).

Defendants have not satisfied their burden of proof because they have failed to even assert compliance with all six conditions required to avail themselves of

PTE 77-4. Subsection (e) of PTE 77-4 requires prior written approval of a "second [independent] fiduciary" given in one of three specific ways. Other portions of PTE 77-4 describe the content of a required prior written notice to the second fiduciary, and the manner in which independence is to be determined, neither of which is addressed in FSC's brief. In addition, under PTE 77-4, Defendants must demonstrate that they made a "full disclosure regarding the fee structure." Id. This disclosure must include a written description of rate differentials and an explanation of why the fiduciary considers the challenged purchases appropriate. FSC does not assert that it provided (1) the required notice, (2) in an appropriate form to (3) an independent fiduciary.

> 3.  **ERISA §§ 408(b) and (c), Are Inapplicable to Immunize a Fiduciary from Liability for an ERISA § 406(b), Prohibited Transaction**

Lastly, Defendants argue that ERISA § 408(b) and (c) provide a statutory exemption for reasonable compensation which implicates an issue of fact.

It is well settled, in New Jersey, Gilliam v Edwards, 492 F. Supp. 1255 (D. N.J. 1980), and throughout the nation, that ERISA §§ 408(b) and (c) offer no defense to a self-dealing violation of ERISA § 406(b). See Patelco Credit Union v. Sahni, 262 F.3d 897, and cases collected at Haddock v. Nationwide Fin. Svs. Inc., 262 F.R.D., 97, 130 (D. Conn. 2009), (there is no safe harbor for self dealing fiduciaries). Cf. Cutaiar v. Marshall, 590 F.2d 523, 530 (3d Cir. 1979).

Finally, * * * (paragraph redacted) [1]

## POINT II

### PLAINTIFFS' CLAIMS ARE NOT MOOT BECAUSE PLAINTIFFS HAVE AN INTEREST IN SHIFTING ATTORNEYS FEES TO THE DEFENDANTS OR TO THE CLASS AND, IN ADDITION, THERE IS A LIKELIHOOD THAT DEFENDANTS' MISCONDUCT WILL BE REPEATED

**A.     Plaintiffs' Claims Are Not Moot**

One of three parties may be liable for attorneys fees in this matter: the individual Plaintiffs, the class if a class action is certified, or the Defendants. The individual Plaintiffs have a "continuing economic interest" in spreading attorneys fees among the entire class. That interest prevents a finding that the individual claims are moot. Deposit Guar. Nat'l Bank of Jackson v. Roper, 445 U.S. 326, 330 (1980).

Defendants attempt to distinguish Roper because, here, the injury to the class has been remedied while, in Roper, only the individual plaintiff received redress. (Db10 to Db11). Defendants' argument is inapposite. First, the goals which the Roper Court articulated - to encourage class actions and to permit the

---

[1] This statement is redacted due to the Defendants' confidential designations. An unredacted version of this brief and associated confidential exhibit (C) was provided to the Court.

spreading of attorneys fees - argue against a finding of mootness. Second, in Roper, there was a less compelling justification to spread attorneys fees because, there, only the individual plaintiff received a benefit. Here, all of the class members derived a benefit from Plaintiffs' actions and it would be inequitable for only the named Plaintiffs to bare the full cost of obtaining Plan-wide relief.

Moreover, it is in Plaintiffs' interest, as well as the interest of the class as a whole, to shift fees to the Defendants. Defendants argue that Plaintiffs reserve the right to seek attorneys fees, irrespective of whether they have prevailed on the Prohibited Transaction claim. This is so, they maintain, because the Supreme Court, in Hardt v Reliance Std. Life Ins. Co., 130 S. Ct. 2149 (2010), held that a party need not be the prevailing party to recover fees in an ERISA case. Rather, a plaintiff need only demonstrate some degree of success on the merits. Id. at 2158.

The Defendants maintain that they restored the improper fees to the Plan in order to avoid the cost of litigation. Plaintiffs believe that Defendants chose to do so in response to this litigation and to remove a readily certifiable class issue. Plaintiffs have an interest in obtaining a holding that Defendants committed a Prohibited Transaction in order to demonstrate that they achieved "some degree of success on the merits," id. and thereby shift attorneys fees to Defendants.

### B.   Alternatively, There is a Reasonable Likelihood That Defendants' Misconduct Will Be Repeated

Defendants maintain that Plaintiffs' Prohibited Transaction claims are moot because there is no reasonable expectation that the alleged violation will recur. However, unless subsequent events make it "absolutely clear" that the challenged conduct could not reasonably be expected to recur, a case is not moot. Parents Involved in Community Schools v. Seattle School Dist. No. 1, 551 U.S. 701, 719 (2007).

There appears to be two lines of cases addressed to exceptions to the mootness doctrine. In those circumstances in which a plaintiff has no continuing relationship with the defendant and has received all of the relief it could achieve, such as information under a disclosure statute, the burden to come within an exception to the mootness doctrine lies with the party contesting mootness. See OSHA Data/CIH, Inc. v United States DOL, 220 F3d 153, 168 (3d Cir. 2000).

However, where there is a continuing relationship and the challenged conduct is voluntarily ended, the burden lies with the party asserting mootness and is a heavy, "even formidable," burden. See DeJohn v Temple Univ., 537 F3d 301, 309 (3d Cir. 2008). The Court there noted that the Supreme Court has reasoned that, as a general rule, the "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear the case." Id. at 309 (citation omitted). The burden to demonstrate mootness is not satisfied, the Court found, when a

challenged policy had not been changed for more than a year after the commencement of the litigation, during which the defendant continued to defend the lawfulness of its policy. Id. The same can be said about FSC here.

In an earlier Third Circuit decision, U.S. v. Virgin Islands, 363 F3d 276, 279 (3d Cir. 2004), the Court declined to find the plaintiffs' claim moot because

> when a party does not change its 'substantive stance' as to the validity of the contract but merely terminates it for allegedly purely practical reasons (such as avoiding litigation), the termination of the contract does not render the case moot.

For four reasons, there is a reasonable likelihood that FSC's misconduct will recur. First, Defendants continue to defend the lawfulness of their conduct - the payment of kickbacks to FSC and its affiliates. There has been no change in FSC's "substantive stance." Id., 363 F.3d at 279. Second, Defendants maintain that their decision to terminate the challenged conduct was driven by "practical reasons." Id. For these two reasons alone, Plaintiffs' claims are not moot. Id.

Third, there is no indication that all of the challenged conduct has been terminated. All that Defendants have represented in their motion papers is that (1) the SAMMF would not be the "default sweep vehicle for the Plan's Account in the future"; (2) there are no kickbacks from money market funds; and (3) there are no kickbacks from Dreyfus funds (Second Declaration of Matthew Schlueter, ¶ 2 to 5). Id. Defendants say nothing about any prohibitions of advisory fee kickbacks from any non-Dreyfus mutual fund that is not a money market fund.

Fourth, FSC's current "Revenue Sharing Disclosure" (Lakind Decl., Exhibit F) reveals that FSC continues to receive revenue sharing payments:

> If you are an ERISA Plan please review the appropriate investments section(s) below to understand the compensation that FSC may be receiving as it relates to indirect compensation and Section 408(b)(2) fee disclosure.

Page 3 of this document then lists the mutual funds that pay kickbacks to FSC.

In sum, it is not "absolutely clear" that the payment of kickbacks could not reasonably be expected to recur. Parents Involved in Comty Sch., 551 U.S. at 719.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss on grounds of mootness should be denied and Plaintiffs' Motion for Summary Judgment should be granted.

Respectfully submitted,

| | |
|---|---|
| LEVY, PHILLIPS & KONIGSBERG, LLP | SZAFERMAN, LAKIND, |
|    Moshe Maimon |    BLUMSTEIN & BLADER, P.C. |
|    Theresa A. Vitello | |
|    101 Grovers Mill Rd., Suite 200 | By: /s/ Arnold C. Lakind |
|    Lawrenceville, New Jersey 08648 |    Arnold C. Lakind |
|    Telephone: (609) 275-0400 | SZAFERMAN, LAKIND, |
|    Fax: (609) 275-4511 |    BLUMSTEIN & BLADER, P.C. |
| | 101 Grovers Mill Rd., Suite 200 |
| | Lawrenceville, New Jersey 08648 |

Dated: January 10, 2012