[Doc. Nos. 104, 105]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

BORIS GOLDENBERG, et al.,

          Plaintiffs,

   v.

INDEL, INC., et al.,

          Defendants.

Civil No. 09-5202 (JBS/AMD)

## ORDER

This matter comes before the Court by way of motions [Doc. Nos. 104, 105] of Plaintiffs, Boris Goldenberg, Reinaldo Pachecho, Andrew Leow, and Gerald Comeau, (hereinafter, "Plaintiffs"), as representatives of a class of similarly situated persons and on behalf of the Inductotherm Companies Master Profit Sharing Plan #001, seeking leave to modify the scheduling order in this case and to file a third amended complaint pursuant to FED. R. CIV. P. 15(a). For the reasons that follow, Plaintiffs' motion for leave to modify the scheduling order is granted and Plaintiffs' motion to file a third amended complaint is granted in part and denied in part.

The background of this case is set forth in the District Court's Opinion dated September 17, 2010 and the Court's Order dated November 16, 2011 as follows:

> As noted by the District Court, this action is a putative class action in which Plaintiffs allege that Defendants mismanaged the Inductotherm Companies Master

Profit Sharing Plan (hereinafter, "the Plan") designed to provide retirement benefits to Inductotherm employees. Goldenberg at 623.  Plaintiffs and putative class members are past or present participants who contributed to the Plan whose contributions were ultimately deposited into an investment fund under the supervision of the Plan's Trustees.  Id.  As set forth by the District Court, the Plan "is sponsored by Inductotherm Industries, Inc., also known as Indel, Inc., 'a privately owned company that acts as the management service company for a group of engineering and technology-based companies.'"  Id. (citation omitted).  In this case, Plaintiffs have alleged claims against three sets of Defendants: (1) the "Inductotherm Defendants" which include the individual Trustees of the Plan and Indel, Inc.; (2) the "FSC Defendants" which include Financial Services Corporation, FSC Securities Corporation, and the Wharton Business Group, which allegedly provided advice to the Plan's Trustees concerning investment of the Plan's assets; and (3) the "SunAmerica Defendants" which include the American International Group, SunAmerica Asset Management Corporation, SunAmerica Capital Services, Inc., and SunAmerica Fund Services, Inc., entities related to the SunAmerica Money Market Fund, the fund in which the Plan's assets were invested.  Id. at 623-24.

Plaintiffs contend that in 2005, the Inductotherm Defendants retained the FSC Defendants to assist with investing the Plan's assets which led to the purchase of shares of the SunAmerica Money Market Fund.  Id. at 624.  Plaintiffs assert that the investments performed poorly partially because "the fiduciaries failed to perform their duties, misled Plaintiffs about various aspects of the investments, failed to act in the interest of the Plan, and violated various securities laws and regulations."  Id.

(Order [Doc. No. 122] 1-3, Nov. 16, 2011)(citing Goldenberg v. Indel, Inc., 741 F. Supp. 2d 618, 623-24 (D.N.J. 2010).)

In the present motions, Plaintiffs seek leave to modify the Court's previous scheduling order and to file a third amended complaint.  Specifically, Plaintiffs seek to include Count XXX which alleges that the Inductotherm Defendants breached their fiduciary duty to Plaintiffs under the Employee Retirement Income Security Act of 1974 (ERISA) § 404(a) by misrepresenting, in Plan

documents, that the Plan's assets were conservatively invested. (Mem. of Law in Supp. of Pls.' Mot. to Modify Scheduling Or. and Mot. for Leave to File their Third Am. Class Action Compl. [Doc. No. 104-1] (hereinafter, "Pls.' Mem."), 6-7.)  Proposed Count XXX seeks a surcharge under § 502(a)(3) for losses associated with the alleged misrepresentation.  (Id. at 26-27.)  Additionally, Plaintiffs seek to amend the Second Amended Complaint to "replace the John Doe Defendants with the names of the Plan Committee Members and the names of Members of the Board of Directors of Indel Inc. a/k/a Inductotherm Industries, Inc., and Inductotherm Corporation."  (Pls.' Mem. 7.)

By Scheduling Order dated April 6, 2011, Plaintiffs were permitted to file a motion to amend by April 9, 2011.  (Scheduling Order [Doc. No. 84] ¶ 1, Apr. 6, 2011.)  Accordingly, Plaintiffs filed a motion for leave to file a second amended complaint on April 8, 2011, which this Court granted on November 16, 2011 [Doc. No. 122].  However, Plaintiffs now seek to modify the scheduling order and file a third amended complaint to include proposed Count XXX and to replace the names of John Doe Defendants.[1]

When a motion to amend is filed after a court has issued

---

1.  By stipulation dated December 2, 2011 (the "Stipulation"), the parties agreed to the filing of a single amended complaint that include amendments authorized by the Court by this Order and the Court's Order addressing Plaintiffs' motion to file a second amended complaint and those amendments which Defendants did not oppose. (See Stipulation [Doc. No. 130].)  Consequently, the Court's Order permitting the filing of the proposed amendment herein, although referring to the third amended complaint, shall reflect that Plaintiffs shall file an amended complaint as set forth in the Stipulation.

its scheduling order, the movant first must demonstrate good cause to file the amendment beyond the time set forth in a scheduling order. <u>See</u>, <u>e.g.</u>, <u>Assadourian v. Harb</u>, 430 F.App'x. 79 (3d Cir. 2011)(affirming the district court's application of "good cause" under Rule 16(b) before the liberal standard in Rule 15(a) in denying plaintiff's motion to amend); <u>see also</u> <u>Dimensional Commc'ns, Inc. v. OZ Optics, Ltd.</u>, 148 F.App'x. 82 (3d Cir. 2005)(affirming district court's affirmance of magistrate judge's denial of a motion to amend the pleading after the deadline had lapsed under Rule 16(b)'s "good cause" requirement); <u>see also</u> <u>Trotman v. Monmouth Univ.</u>, No. 09-6163, 2011 WL 4387123, at *6 (D.N.J. Sept. 20, 2011)(holding that courts "must consider Rule 16(b)'s requirement that scheduling orders only be modified for 'good cause' in conjunction with Rule 15(a)'s directive that leave to amend a complaint be 'freely given'")(quoting <u>Reynolds v. Borough of Avalon</u>, 799 F. Supp. 442, 450 (D.N.J. 1992)). This Court has previously addressed this issue in <u>Williams v. Sullivan</u>.

> The Court has discretion to manage the schedule of litigation under Federal Rule of Civil Procedure 16. <u>See generally</u> Fed. R. Civ. P. 16; <u>see also</u> <u>Newton v. A.C. & S., Inc.</u>, 918 F.2d 1121, 1126 (3d Cir. 1990) ("The intent and spirit of Rule 16 is to allow courts to actively manage the timetable of case preparation[.]"); <u>see also</u> <u>U.S. Sec. & Exch. Comm'n v. Infinity Grp. Co.</u>, 212 F.3d 180, 197 (3d Cir. 2000) (stating that "[m]atters of docket control and scheduling are within the sound discretion of the district court."). Rule 16 provides that the Court may modify a scheduling order "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). To establish good cause in this context, the party seeking the extension must show that the deadlines set forth in the scheduling order "cannot reasonably be met despite the diligence of the party seeking the extension." Fed. R. Civ. P. 16(b) Advisory Committee Notes to 1983 Amendments; <u>see also</u> <u>Harrison Beverage Co.</u>

v. Dribeck Importers, Inc., 133 F.R.D. 463, 469 (D.N.J. 1990); McElyea v. Navistar Int'l Transp. Corp., 788 F. Supp. 1366, 1371 (E.D.Pa. 1991), aff'd without opinion, 950 F.2d 723 (3d Cir. 1991). Good cause may also be satisfied if the movant shows that the inability to comply with a scheduling order is "'due to any mistake, excusable neglect or any other factor which might understandably account for failure of counsel to undertake to comply with the Scheduling Order.'" Newton v. Dana Corp., Parish Div., Civ. No. 94-4958, 1995 U.S. Dist. LEXIS 8473, at *3 (E.D.Pa. 1995) (quoting Gestetner Corp. v. Case Equipment Co., 108 F.R.D. 138, 141 (D.Me. 1985)). "In the absence of proof of good cause, 'the scheduling order shall control.'" Id. at *2 (quoting 6A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1522.1 (2d ed. 1997)).

Williams v. Sullivan, No. 08-1210, 2011 WL 2119095, at *4 (D.N.J. May 20, 2011).

        With respect to replacing the names of the John Doe Defendants with the names of the Plan Committee Members and the names of the Members of the Board of Directors of Indel, Inc., Plaintiffs argue that good cause exists to permit this amendment because Plaintiffs, who had repeatedly requested the names of these individuals, only received the requested information after the Court, on June 13, 2011, ordered the Inductotherm Defendants to provide these names to Plaintiffs.  (Pls.' Mem. 7.)  The Court notes that the Inductotherm Defendants do not object to Plaintiffs' motion to the extent the motion seeks to substitute the actual names of the John Doe Defendants.  (Inductotherm Defs.' Memo. of Law in Opp'n to Pls.' Motion for Leave to Amend [Doc. No. 109] (hereinafter, "Inductotherm Defs.' Opp'n"), n.14.)  The Court therefore grants Plaintiffs' motion to the extent it seeks to replace the name of the John Doe Defendants.

        With respect to Plaintiffs' motion to add Count XXX,

Plaintiffs generally contend that good cause exists to modify the Court's scheduling order because the proposed pleading is based on the CIGNA Corp. v. Amara case decided by the Supreme Court on May 16, 2011.  131 S.Ct. 1866 (2011).  Plaintiffs assert that CIGNA rejected the need to show detrimental reliance for a surcharge under § 502(a)(3) and that this change in the law made it possible for Plaintiffs to bring Count XXX.  (Pls.' Mem. 6.)  As such, Plaintiffs assert that "Plaintiffs' counsel acted diligently and quickly to evaluate the viability of a new [claim under] ERISA § 502(a)(3)." (Id. at 10.)  Plaintiffs further contend "Plaintiffs have been both cognizant and respectful of this Court's prior deadlines throughout the course of this litigation" and "Plaintiffs' delay is not a result of inadvertence or ignorance of the Rules of Procedure." (Id.) Plaintiffs rely on Williams v. UMG Recordings, Inc., 281 F. Supp. 2d 1177, 1185 n.13 (C.D. Cal. 2003), in support of Plaintiffs' position that good cause exists to modify the Court's scheduling order. In Williams, the District Court for the Central District of California found good cause to modify the scheduling order where a recent Supreme Court decision rendered a claim set for trial invalid. 281 F. Supp. 2d at 1185 n.13.

Defendants oppose Plaintiffs' argument that there is good cause to permit the filing of the motion beyond the deadline set forth in the scheduling order.  Defendants contend that CIGNA does not support Plaintiffs' purported amendment.  (Inductotherm Defs.' Opp'n 5.)  Defendants further contend that in opposing Defendants' motion to dismiss Count X, Plaintiffs previously represented to the

Court that Plaintiffs alleged and would prove reliance.[2]
(Inductotherm Defs.' Opp'n 9.)

The Court notes that in CIGNA, the Supreme Court
"consider[ed] whether a showing of 'likely harm' is sufficient to
entitle plan participants to recover benefits based on faulty
disclosures." CIGNA, 131 S.Ct. at 1876.  In CIGNA, the faulty
disclosures at issue were alleged to have violated §§ 102(a) and
104(b).  Id. at 1881.  After addressing the availability of relief
for such violations under both §§ 502(a)(1)(B) and 502(a)(3), the
Supreme Court addressed whether a beneficiary need show detrimental
reliance for a surcharge under § 502(a)(3).  The Court notes
Defendants' argument that Plaintiffs' alleged reliance on CIGNA to
meet the good cause standard is inconsistent with Plaintiffs' prior
pleadings.  However, having reviewed the submissions, the Court
finds good cause to permit the filing of the motion to amend under
Rule 16(a), since the CIGNA decision was issued on May 16, 2011,
and Plaintiffs' motion was filed shortly thereafter, and relies on
CIGNA.  Therefore, the Court grants Plaintiffs' motion to modify
the Scheduling Order to permit the filing of the motion.

Having found good cause to modify the Scheduling Order in
order to permit the filing of Plaintiffs' motion for leave to file
a third amended complaint, the Court now addresses Plaintiffs'

_____

2.  Count X, dismissed on September 17, 2010, alleged a breach of
fiduciary duty and asserted that Defendants misrepresented to
Plaintiffs the "[c]onservativeness" of the Plan's investment
strategy and the Plan's true investment manager.  (Third Amended
Compl. [Doc. No. 104-2] (hereinafter, "Third Amended Compl."),
Count X; Pls.' Mem. 18.)

motion to amend.  The Inductotherm Defendants oppose Plaintiffs'
motion to amend as to proposed Count XXX on grounds of undue delay,
bad faith, and futility. (Inductotherm Defs.' Opp'n 1-2.)
Specifically, Defendants assert that Plaintiffs' application raises
a claim "which they could have brought long before now" and did
assert in the now dismissed Count X.  (Id. at 1.)  Defendants
further assert that the CIGNA decision does not support Plaintiffs'
purported amendment and is merely "a convenient excuse to explain
their inaction over many months."  (Id. at 2.)  Additionally,
Defendants assert that the proposed new claim "fails to state a
cause of action and is subject to dismissal." (Id.)  Defendants
American International Group, Inc., FSC Securities Corporation,
SunAmerica Asset Management Corporation, SunAmerica Capital
Services, Inc., SunAmerica Fund Services, Inc., and the Wharton
Business Group, (hereinafter, "the FSC/SunAmerica Defendants")
"are not affected by the proposed amendment." (Pls.' Mem. 5.)

     With respect to Defendants' futility arguments, the Court
notes that "[t]he standard for assessing futility is the 'same
standard of legal sufficiency as applies under [Federal] Rule [of
Civil Procedure] 12(b)(6).'"  Great W. Mining & Mineral Co. v. Fox
Rothschild LLP, 615 F.3d 159, 175 (3d Cir. 2010) (alteration in
original) (citing Shane v. Fauver, 213 F.3d 113, 115 (3d Cir.
2000)); see also Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000)
("An amendment is futile if the amended complaint would not survive
a motion to dismiss for failure to state a claim upon which relief
could be granted.").  In deciding a motion to dismiss, the Court

must deny the motion "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Fishbein Family P'ship v. PPG Indus., Inc., 871 F. Supp. 764, 769 (D.N.J. 1994) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). Rule 12(b)(6) requires the Court to construe all of the allegations in the complaint in the light most favorable to the plaintiff and to accept as true all of the facts in the complaint and all reasonable inferences derived therefrom. Fishbein, 871 F. Supp. at 769. Accordingly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). However, in analyzing the futility of Plaintiffs' proposed second amended complaint under the Rule 12(b)(6) standard, the Court "may not consider matters extraneous to the pleadings." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997); see also Carlson v. Twp. of Lower Alloways Creek, No. 06-3779, 2008 WL 2446804, at *2 (D.N.J. June 16, 2008) ("Since the Court must analyze the futility of Plaintiffs' claims using the same standard applicable to Rule 12(b)(6) motions, for present purposes the Court may only consider the allegations contained in the proposed amended complaint and its exhibits and not matters outside the pleadings.").

        The Inductotherm Defendants argue that proposed Count XXX "fails as a matter of law" because, regardless of the holding in

CIGNA, Plaintiffs "cannot show that claimed misrepresentations caused [Plaintiffs] any harm." (Inductotherm Defs.' Opp'n 13; Defendants' Letter [Doc. No. 115] (hereinafter, "Defs.' Second Letter"), 1).) In addition to Defendants' argument that Plaintiffs have not alleged sufficient causation, Defendants contend that the Supreme Court did not reject the Third Circuit requirement to prove detrimental reliance, but instead "embraced the Second Circuit's limited exception to the requirement of detrimental reliance for violation of [the Summary Plan Description and Summary of Material Modification provisions] of ERISA §§ 102 and 104." (Inductotherm Defs.' Opp'n 7.) The Inductotherm Defendants allege that CIGNA "does not represent a change in the ERISA case law on the requirement to prove detrimental reliance other than for misrepresentations in [Summary Plan Descriptions] and [Summaries of Material Modifications]." (Inductotherm Defs.' Opp'n 8.) The Inductotherm Defendants thus argue that Plaintiffs' motion is futile. (Id. at 9.)

        Plaintiffs argue that "all misrepresentations are actionable, regardless of whether they are contained in a[] [Summary Plan Description] or a[] [Summary of Material Modification]." (Pls.' Mem. in Reply to Inductotherm Defs.' Opposition to Pls.' Mot. for Leave to File Third Amended Class Action Compl. [Doc. No. 111] (hereinafter, "Pls.' Reply"), 3.) Plaintiffs contend that the Supreme Court language in CIGNA supports a broad interpretation that no surcharge under § 502(a)(3) requires a showing of detrimental reliance, despite "Defendants'

effort to restrict the Supreme Court's decision." (Id. at 4.) Plaintiffs further argue that Count XXX satisfies the remaining elements for bringing a misrepresentation claim under ERISA § 502(a)(3). Plaintiffs contend there has been no undue delay or prejudice to Defendants because Plaintiffs allege that prior to CIGNA, Plaintiffs could not bring Count XXX. (Id. at 12-13.)

By letter dated September 20, 2011 [Doc. No. 113], Defendants submitted Kenney v. State St. Corp., No. 09-10750, 2011 WL 4344452 (D. Mass. Sept. 15, 2011) to further support their argument for a narrow reading of CIGNA. (Defendants' Letter [Doc. No. 113] (hereinafter, "Defs.' Letter") 1.) Defendants generally assert that Kenney stands for the proposition that CIGNA did not diminish Plaintiffs' burden with respect to the need to show detrimental reliance for claims for negligent misrepresentation. (Id.) Plaintiffs attempt to factually distinguish Kenney and clarify that the remedy sought by Plaintiffs under ERISA § 502(a)(3) is to surcharge the Inductotherm Defendants while the remedy at issue in Kenney was restitution. (Plaintiffs' Letter [Doc. No. 114] (hereinafter, "Pls.' Letter"), 1.) Plaintiffs further contend that insomuch as "Kenney can be read to require a showing of detrimental reliance where the remedy sought is a surcharge, such a reading contradicts CIGNA." Id. Plaintiffs reiterate their contention that the holding of CIGNA indicates that "the remedy sought dictates whether a showing of detrimental reliance is required." (Id. at 2.) Plaintiffs thus argue "[w]here the remedy sought is a surcharge, a showing of detrimental reliance

is not required." (Id.) Defendants dispute Plaintiffs'
characterization of Kenney and contend Plaintiffs' response
"concedes that [Plaintiffs] cannot show that the claimed
misrepresentations caused them any harm." (Defs.' Second Letter 1.)

In Shook v. Avaya, 625 F.3d 69, 73 (3d Cir. 2010), the
Third Circuit set forth the elements for a claim of breach of
fiduciary duty premised on a misrepresentation, and seeking to
surcharge a defendant, pursuant to 502(a)(3) to include "(1) the
defendant was acting in a fiduciary capacity; (2) the defendant
made affirmative misrepresentations or failed to adequately inform
plan participants and beneficiaries; (3) the misrepresentation or
inadequate disclosure was material; and (4) the plaintiff
detrimentally relied on the misrepresentation or inadequate
disclosure." Shook v. Avaya Inc., 625 F.3d 69, 73 (3d Cir.
2010)(presenting requirements for a claim under 502(a)(3))(quoting
In re Unisys, 579 F.3d 220, 228 (3d Cir. 2009)). However,
Plaintiffs assert that the holding in CIGNA "rejected the notion
that detrimental reliance is a mandatory element of proof on a
misrepresentation claim brought under ERISA §502(a)(3)[.]" (Pls.'
Mem. 20.) Thus, Plaintiffs contend that CIGNA modified the fourth
requirement from a need to show detrimental reliance, as stated in
Shook, to a need to show only actual harm. (Pls.' Mem. 25.)
Accordingly, Plaintiffs contend that Plaintiffs "satisf[y]" all of
the remaining elements for bringing a misrepresentation claim under
ERISA § 502(a)(3). (Id.)

In the proposed new count, Plaintiffs contend "the

12

Inductotherm Defendants acted as fiduciaries to the Plan pursuant to ERISA §§ 3(21) and 402(a)(1)." (Third Amended Compl. Count XXX, ¶ 2.) Plaintiffs further contend "the Inductotherm Defendants misrepresented to the Plaintiffs, through the 2008 Quarterly Report, on April 16, 2008, July 16, 2008[,] October 9, 2008[,] and January 21, 2009 that the Plan's assets were conservatively invested." (Id. at ¶ 4.) Plaintiffs further allege "repeated statements that the Plan's assets were conservatively invested were misrepresentations[,]" and material "given that Plaintiffs' retirement benefits are entirely dependent upon how the Inductotherm Defendants[] caused the Plan's assets to be invested." (Id. at ¶ 8.) Plaintiffs further allege "[a]s a direct and proximate result of these breaches of fiduciary duty, the Plan and the Plaintiffs suffered damages and losses." (Id. at ¶ 10.) Thus, Plaintiffs seek to "surcharg[e] [Defendants] for all losses sustained by Plaintiffs." (Id. at ¶ 11.) Plaintiffs finally contend that Plaintiffs suffered actual harm due to Defendants' alleged misrepresentations because Plaintiffs argue that if "the Plan's assets [had] been conservatively invested in 2008, the Plan would not have suffered a significant loss, but instead profited." (Pls.' Mem. 25.)

       Defendants contend that, "it does not matter whether it is called detrimental reliance under an estoppel theory, or actual harm under a surcharge theory" and that "[i]n either case, the alleged breach (here, the misrepresentations) must cause actual harm." (Defs.' Second Letter 1.) Defendants assert that "Plaintiffs

have not alleged any facts to demonstrate that they suffered any losses as participants that were different from the alleged losses to the Plan" because "plaintiffs did not have the ability to cause the Plan to purchase other investments, meaning that there is no causal connection between any misrepresentation to plaintiffs and the Plan's investments." (Defs.' Memo. 19, 21.) Defendants further assert that, even in the absence of the alleged misrepresentations, "the assets would still be invested as they were, and the value of the trust assets would still be what it is." (Defs.' Second Letter 1.) Defendants thus argue that "[a]bsent any causation, the new proposed cause of action in Count XXX fails as a matter of law." (Id.)

In CIGNA, the Supreme Court indicated that because § 502(a)(3) authorizes "appropriate equitable relief" from violations of ERISA, the relevant standard of harm depends upon the equitable theory by which the District Court provides relief. CIGNA, 131 S.Ct. at 1881. The Supreme Court in CIGNA held that, "a fiduciary can be surcharged under § 502(a)(3) only upon a showing of actual harm." Id. The Supreme Court also indicated "that actual harm may sometimes consist of detrimental reliance, but it might also come from the loss of right protected by ERISA or its trust-law antecedents." Id. Thus, in the context of violations of §§ 102(a) and 104(b), the Supreme Court concluded that "a plan participant or beneficiary must show that the violation injured him or her. But to do so, he or she need only show harm and causation." Id. The Supreme Court finally emphasized that "although it is not always

14

necessary to meet the more rigorous standard implicit in the words 'detrimental reliance,' actual harm must be shown." <u>Id.</u>

The Court agrees with Defendants that Plaintiffs have not alleged a sufficient causal connection between the alleged misrepresentations and the Plaintiffs' alleged harm. While Plaintiffs allege a fiduciary relationship and assert that Inductotherm Defendants made affirmative, material misrepresentations, Plaintiffs do not sufficiently allege how these misrepresentations caused actual harm, in light of Plaintiffs' inability to control the Plan. Plaintiffs allege that "[h]ad the Inductotherm Defendants, prior to their March 2008 representation, adjusted/re-balanced the Plan's portfolio so that it was actually a conservative portfolio, the Plan would have converted its unrealized appreciation on its investments, into actual gains, thereby avoiding the subsequent significant losses." (Third Amended Compl. at ¶ 7.) Taking this allegation as true, the Court finds that with Plaintiffs' admitted inability to control the Plan, (Pls.' Mem. 24,) Plaintiffs' allegation attributes the alleged harm to plan decisions made by Inductotherm Defendants and not to the alleged misrepresentations. As such, Count XXX lacks an essential allegation connecting Plaintiffs' alleged harm derived from Plan losses to the alleged misrepresentations. Plaintiffs contend that in the absence of the alleged misrepresentations the Plan would have "profited" and that Defendants would have "adjusted/re-balanced the Plan's portfolio so that it was actually a conservative portfolio." (Pls.' Mem. 25-26.) Plaintiffs, however,

fail to allege why that conclusion necessarily follows.  The Court notes that Plaintiffs represent the Plan suffered losses and that Defendants allegedly misrepresented to Plaintiffs that "the Plan's assets were conservatively invested."  (Id.)  However, Plaintiffs must allege more than losses and alleged misrepresentations. Plaintiffs must plead a causal connection between the alleged misrepresentation and the Plan's investments and investment performance, especially considering Plaintiffs' inability to affect Plan investments.  The Court thus concludes that due to Plaintiffs' failure to allege that the harm derived from Plan losses was caused by the alleged misrepresentations, Plaintiffs have not stated a plausible entitlement to relief.  Therefore, the motion to amend to add Count XXX is denied because the claim as pled is futile.

Having found Plaintiffs' proposed Count XXX to be futile, the Court need not address Defendants' arguments of undue delay or bad faith.

CONSEQUENTLY, for the reasons set forth above and for good cause shown:

IT IS on this 28th day of February 2012,

**ORDERED** that Plaintiffs' motion [Doc. No. 104] to amend the Scheduling Order to permit filing of a motion to amend is **GRANTED**; and it is further

**ORDERED** that Plaintiffs' motion [Doc. No. 105] for leave to file a third amended complaint is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that Plaintiffs' motion to file a third amended

complaint to assert Count XXX shall be, and hereby is **<u>DENIED</u>**; and it is further

ORDERED that Plaintiffs' motion to file an amended complaint to replace the names of the John Doe Defendants with the names of the Plan Committee Members and the names of the Members of the Board of Directors of Indel, Inc. is **<u>GRANTED</u>**; and it is further

ORDERED that Plaintiffs shall file an amended complaint consistent with this Order **within twenty (20) days** from the date of entry of this Order, and shall serve the amended complaint in accordance with the Federal Rules of Civil Procedure.

<u>s/ Ann Marie Donio</u>
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

cc: Hon. Jerome B. Simandle

17