IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BORIS GOLDENBERG, et al., | : | HON. JEROME B. SIMANDLE |
| Plaintiffs, | : | Civil No. 09-5202 (JBS/AMD) |
| v. | : | |
| INDEL, INC., et al., | : | **OPINION** |
| Defendants. | : | |

APPEARANCES:

Arnold Carl Lakind, Esq.
Robert Lawrence Lakind, Esq.
SZAFERMAN, LAKIND, BLUMSTEIN, BLADER & LEHMANN, PC
Quakerbridge Executive Center
101 Grovers Mill Road, Suite 200
Lawrenceville, NJ 08648
     -and-
Moshe Maimon, Esq.
Theresa Vitello, Esq.
LEVY, PHILIPS & KONIGSBERG, LLP
101 Grovers Mill Road, Suite 200
Lawrenceville, NJ 08648
     Attorneys for Plaintiffs

Craig Carpenito, Esq.
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
     -and-
Theodore J. Sawicki, Esq.
H. Douglas Hinson, Esq.
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, GA 30309
     Attorneys for FSC Defendants and SunAmerica Defendants

**SIMANDLE**, Chief Judge:

# I.   INTRODUCTION

This putative class action is before the Court on cross

motions for partial summary judgment.  [Docket Items 119 & 133.]
Plaintiffs in this action seek to represent a class of
individuals who are or were participants in a pension plan known
as the Inductotherm Companies Master Profit Sharing Plan
("Plan"), seeking relief under the Employee Retirement Income
Security Act (ERISA), 29 U.S.C. § 1001 - § 1461.  Plaintiffs have
sued, among others, the administrators and trustees of the Plan
(the "Inductotherm Defendants"), the financial advisers of the
Plan, (the "FSC Defendants"), and the "SunAmerica Defendants" who
are related to the SunAmerica Money Market Fund ("SAMMF") in
which Plan assets were invested.  At issue in the instant cross
motions are Plaintiffs' claims to recover fees paid to the
FSC/SunAmerica Defendants when the Plan assets were invested in
the SAMMF.

     The Defendants' motion for summary judgment [Docket Item
119] is brought by both the FSC Defendants and the SunAmerica
Defendants (hereafter, the "FSC/SunAmerica Defendants" or
"Defendants"); Defendants seek summary judgment as to those
claims for recovery or disgorgement of all management or
investment fees in Counts III and XI (and those portions of
Counts V and VI that seek disgorgement of fees) of the First
Amended Complaint.[1]  Defendants claim that these counts have been

---

     [1] Since the filing of the motions, Plaintiffs have filed a
Second Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2)
[Docket Item 165].  The Second Amended Complaint does not appear

rendered moot by the fact that Defendants have returned to the Plan all fees, and interest on such fees, that are sought by Plaintiffs in the identified Counts.

Plaintiffs, in addition to filing opposition to Defendants' motion, filed a cross motion for summary judgment as to the same counts.  [Docket Item 133.]  Plaintiffs contend that no material dispute of fact exists as to Defendants' liability on these counts.

The principal issues raised by these cross motions are (1) whether Plaintiffs have requested any further relief under the identified Counts beyond what they have already recovered after Defendants returned all identified fees and interest to the Plan, and (2) if not, whether Plaintiffs' pursuit of attorneys fees saves such counts from mootness.  As explained below, because the Court concludes that Defendants have already provided Plaintiffs with all the relief they have requested under the identified Counts, the Counts must be dismissed as moot, notwithstanding their pursuit of attorneys fees which they may still pursue for these Counts pursuant to 29 U.S.C. § 1132(g).  Consequently, the Court will grant Defendants' motion for partial summary judgment and deny Plaintiffs' cross motion as moot.

---

to materially alter the Counts or Claims for Relief at issue in the motions; consequently, the Court refers to the paragraphs contained in the First Amended Complaint, as the parties have in the briefing.

## II.   BACKGROUND

The Court has previously discussed the factual and procedural background of this action in great detail in its prior September 17, 2010, Opinion and Order granting in part and denying in part three motions to dismiss.  Goldenberg v. Indel, Inc., 741 F. Supp. 2d 618 (D.N.J. 2010) [Docket Items 55 & 56]. In brief, Plaintiffs' First Amended Complaint alleged a complicated scheme of mismanagement and self-dealing by all Defendants; it pursued relief through 22 Counts, most raising claims under ERISA.  In its September 17, 2010, Order, the Court dismissed all but seven Counts, all of which alleged claims under ERISA.[2]  Specifically at issue in the instant cross motions are Counts III, V, VI, and XI.

Plaintiffs allege in Count III that the FSC Defendants engaged in a prohibited transaction pursuant to ERISA § 406(b), 29 U.S.C. § 1106(b), by investing approximately $8 million of Plan assets, previously invested in a Vanguard Money Market Fund, in the SAMMF which resulted in higher management fees being charged to the Plan and in various fees being paid from some SunAmerica Defendants to the FSC Defendants.  First Amended

---

[2] The Counts that survived are Counts I, III, V, VI, VII, IX, and XI.  The Second Amended Complaint adds an additional five Counts, not implicated in the instant cross motions (Counts XXIII, XXIV, XXV, XXVI, and XXVII).  Additionally, the Second Amended Complaint does not change the numbering of the original Counts.

Complaint ("FAC") Count III ¶ 7-14.  Plaintiffs allege that, as a result, the Plan has paid fees prohibited by ERISA as the investment of the Plan assets in the SAMMF is a prohibited transaction under § 1106(b).  Id. ¶ 15.  Plaintiffs seek the return of all such fees.  FAC Prayer for Relief ¶ C.

In Count XI, Plaintiffs seek disgorgement of the profits of the SunAmerica Defendants that they made from the Plan's investment in the SAMMF.  FAC Count XI ¶¶ 4-6; Prayer for Relief ¶¶ D-E.

In Counts V and VI, Plaintiffs allege that the FSC Defendants breached their fiduciary duties of prudence and loyalty by deciding to invest the Plan's assets in the SAMMF.  FAC Counts V & VI.  Plaintiffs seek damages in the form of losses the Plan suffered as a result of the payment of fees and inferior performance.  Count V ¶¶ 13-14; Count VI ¶¶ 4-5.

In March of 2011, the FSC/SunAmerica Defendants reimbursed the Plan in an amount calculated to equal the total amount of fees paid by the Plan to any FSC/SunAmerica Defendant as a result of investing Plan assets in the SAMMF.  Defs.' Statement of Uncontested Facts ¶¶ 18, 23-24.  The amount credited to the Plan amounted to approximately $47,000 in fees and approximately $10,000 in interest, totaling approximately $57,000 credited to the plan in March of 2011.  Id. at ¶¶ 22-24.  Additionally, at the end of March, 2011, the FSC/SunAmerica Defendants transferred

all Plan assets out of the SAMMF and into a money market fund
that is not affiliated with the FSC/SunAmerica Defendants, the
Dreyfus Cash Management Fund.  Schlueter Second Decl. ¶ 2,
attached at Ex. B. to Sawicki Decl, Docket Item 144.  The
FSC/SunAmerica Defendants receive no fees, revenue sharing
payments, or kickbacks, from Dreyfus for investing the Plan
Assets in the Dreyfus Cash Management Fund.  Id. ¶¶ 3-5.  The
FSC/SunAmerica Defendants have further taken steps to ensure that
no Plan assets will, in the future, be invested in the SAMMF or
other account that may result in fees being paid to any
FSC/SunAmerica Defendant.  Schlueter Decl. ¶ 8, attached at Ex. 5
to Defendants' Statement of Undisputed Facts.  These steps
included reprogramming FSC's account management system to ensure
that the funds would not be reinvested in the SAMMF by mistake.
Id.


III. DISCUSSION

   A.  Standard

   Summary judgment is appropriate "if the movant shows that
there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ.
P. 56(a).  A dispute is "genuine" if "the evidence is such that a
reasonable jury could return a verdict for the non-moving party."
See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A

6

fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.

The summary judgment standard does not change when the parties have filed cross-motions for summary judgment.  See Appelmans v. City of Phila., 826 F.2d 214, 216 (3d Cir. 1987).  Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

Transportes Ferreos de Venezuela II CA v. NKK Corp., 239 F.3d 555, 560 (3d Cir. 2001) (citing Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).  If review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts.  See Iberia Foods Corp. v. Romeo Jr., 150 F.3d 298, 302 (3d Cir. 1998) (citing Ciarlante v. Brown & Williamson Tobacco Corp., 143 F.3d 139, 145-46 (3d Cir. 1988)).

### B.  Analysis

#### 1)  Mootness of Claims for Retroactive Forms of Relief

Defendants argue that specific claims of the Plaintiffs are

7

moot.  In particular, Defendants seek to have dismissed only
Plaintiffs' claims seeking the retroactive relief of recovering
or disgorging management fees paid to the FSC/SunAmerica
Defendants as a result of the Plan's assets being invested in the
SAMMF.  This implicates Counts III and XI in their entirety and
Counts V and VI to the extent that they seek disgorgement of
fees.  Thus, Defendants are seeking to dismiss only Counts, or
portions of Counts, that pursue retroactive relief.  Plaintiffs
do not seek the entry of any prospective relief through these
Counts.  Plaintiffs do, of course, seek the entry of several
injunctions with regard to the management of the Plan,[3] but those
claims for prospective, injunctive relief are not implicated in
the Counts at issue in Defendants' motion, which seeks to dismiss
as moot only those Counts seeking to compel the FSC/SunAmerica
Defendants to return or disgorge fees.

     Federal Courts are not empowered to decide moot issues.  See
U.S. Const. art. III, § 2, cl. 1.  Article III limits the Court's
jurisdiction to live cases or controversies.  Specifically, a
Court lacks the power to adjudicate a claim

          when the issues presented are no longer live
          or the parties lack a legally cognizable
          interest in the outcome.  To establish the
          existence of such a "live" issue, there must

-----

     [3] See, e.g., FAC Prayer for Relief ¶ F, seeking injunction
barring the Inductotherm Defendants from contracting or investing
on behalf of the Plan with AIG or any of its wholly owned
subsidiaries.

> be a real and substantial controversy
> admitting of specific relief through a decree
> of a conclusive character, as distinguished
> from an opinion advising what the law would be
> upon a hypothetical state of facts.

International Brotherood of Boilermakers, etc. v. Kelly, 815 F.2d
912, 915 (3d Cir. 1987) (citations and quotation marks omitted).
"The central question of all mootness problems is whether changes
in circumstances that prevailed at the beginning of the
litigation have forestalled any occasion for meaningful relief."
Id. (citing Jersey Central Power and Light Co. v. State of New
Jersey, 772 F.2d 35, 39 (3d Cir. 1985)).

The parties both cite to the rule for determining whether a
claim is moot after a voluntary cessation of challenged conduct
during the course of the adjudication as controlling the issue in
this case.  That rule, developed in County of Los Angeles v.
Davis, 440 U.S. 625 (1979), holds that when challenged conduct is
ended during the pendency of an action, the issue becomes moot if

> (1) it can be said with assurance that there
> is no reasonable expectation . . . that the
> alleged violation will recur, . . . and (2)
> interim relief or events have completely and
> irrevocably eradicated the effects of the
> alleged violation.

Phillips v. Pa. Higher Education Assistance Agency, 657 F.2d 554,
569 (3d Cir. 1981) (citing County of Los Angeles v. Davis, 440
U.S. 625, 631 (1979)).

However, the Court concludes that this rule for voluntary
cessation is not applicable on Defendants' motion because the

rule applies, indeed it only makes sense, in the context of a claim seeking some prospective relief.  See Phillips at 556 (explaining that plaintiffs seek to enjoin state agency from particular collection practices); Davis at 626 (explaining that challenged order permanently enjoined future acts of discrimination).  In the case of a claim for retroactive relief such as damages or disgorgement, Courts typically find a claim to be moot simply on the basis of the defendant agreeing to provide the maximum relief sought by the plaintiff.  See Weiss v. Regal Collections, 385 F.3d 337, 340 (3d Cir. 2004) (considering whether offer to settle damages, in action that provided no avenue for prospective relief, provided maximum possible recovery for putative class action plaintiff, but not considering whether defendant had ceased allegedly offending conduct).

    The Seventh Circuit case of Pakovich v. Verizon LTD Plan, 653 F.3d 488 (7th Cir. 2011) is instructive on this point as it demonstrates the appropriate standard for deciding whether a plaintiff's claim for purely retroactive relief in an ERISA action has been mooted.  In Pakovich, the Seventh Circuit found the plaintiff's claim for benefits in ERISA action moot when the defendant plan agreed, during pendency of the action, to pay plaintiff's claimed benefits in full.  Id. at 492.  The court, when making this determination, saw no need to consider whether the defendant plan had ceased its allegedly offending policy,

presumably because the plaintiff there was not seeking an injunction to stop the enforcement of any such policy.

In the instant motion, Defendants seek summary judgment only over Counts that seek retroactive forms of relief: disgorgement and repayment of fees.  The currently operative Second Amended Complaint seeks both retroactive and prospective forms of relief in several of its many Counts.  In Counts III and XI, however, Plaintiffs seek only to recover fees paid by the Plan to the moving Defendants.  In Counts V and VI, Plaintiffs seek both the recovery of fees as well as recovery of monetary losses caused by allegedly inferior returns.  Defendants seek summary judgment over Counts V and VI only to the extent that they seek to recover fees.

Defendants explicitly argue this point in their opposition/reply brief that Plaintiffs do not seek any prospective relief through the identified Counts.  See Defs.' Brief in Opposition and Reply, at 5 ("Plaintiffs do not request in their First Amended Complaint any injunctive relief that would preclude the Plan from using a sweep account that would pay fees to any of the FSC/SunAmerica Defendants.").  Plaintiffs do not contradict this argument in their reply brief.  Indeed, Plaintiffs have nowhere argued that they seek prospective relief in the form of an injunction through the identified Counts on this motion.  Accordingly, the Court will evaluate the motion on

the basis of whether the credit of past fees moots Plaintiffs' claims for the recovery of those fees.

    2.  <u>Mootness and Claim for Attorney's Fees</u>

Plaintiffs do not dispute the accuracy of the amount of fees credited by Defendants.  Instead, Plaintiffs argue that their claims for fees have not been mooted because the credit made no provision for the shifting of attorney's fees.  Plaintiffs argue that as a putative class action, Defendants should not be allowed to "pick off" the fees claims because such a result would unjustly prevent Plaintiffs from recovering attorney's fees on a class-wide basis.

In support of this argument, Plaintiffs cite <u>Deposit Guaranty National Bank v. Roper</u>, 445 U.S. 326 (1980) and <u>Weiss v. Regal Collections</u>, 385 F.3d 337 (3d Cir. 2004).  These cases held that, under certain circumstances, when a defendant in a putative class action pays the individual claims of the proposed class representative, the action does not become moot because the claims of the absent class members have not been mooted.

> [A]llowing the defendants here to "pick off" a representative plaintiff with an offer of judgment less than two months after the complaint is filed may undercut the viability of the class action procedure, and frustrate the objectives of this procedural mechanism for aggregating small claims, like those brought under the FDCPA. . . . "A significant benefit to claimants who choose to litigate their individual claims in a class-action context is the prospect of reducing their costs of litigation, particularly attorney's

> fees, by allocating such costs among all
> members of the class who benefit from the
> recovery."

Weiss, 385 at 344, 345 (quoting Roper, 445 U.S. at 338).

Plaintiffs apply this holding to their circumstance, arguing that because they seek to represent a class of all contributors to the Plan, they should be permitted to proceed to the class certification stage with the retroactive relief claims intact so that they can pursue fee shifting from the Defendants on these claims and so that they can spread the costs of attorney's fees among the whole class.  Plaintiffs' arguments are unpersuasive.

As to Plaintiff's analogy to Weiss and Roper, the Court finds the application invalid.  In both of those cases, the issue was whether the putative class action as a whole must be dismissed as moot because the individual plaintiff had recovered his individual claim for relief.  This is distinguishable from the present action for an obvious reason: here, the Defendants have already provided full class-wide relief by crediting the full amount of management fees that the Plan paid the FSC/SunAmerica Defendants.  Therefore, the concerns in Weiss and Roper that an individual's claims could be "picked off" are nonexistent here.

Plaintiffs' argument that the unlawful management fees claims must survive to class certification so that they can "spread" their attorney's fees among the entire class is likewise

13

unavailing.  The <u>Weiss</u> and <u>Roper</u> courts were concerned, in the context of attorney's fees, with permitting a plaintiff to pursue a larger class damages award out of which the attorney's fees (taken on contingency) could be shared equally by all class claimants.  Here, by contrast, the entire class relief has already been distributed as to these Counts.  There is no larger class award possible in which the representative Plaintiffs could share their award.  Therefore, the reasoning of <u>Weiss</u> and <u>Roper</u> and like cases discussing mootness of putative class action plaintiffs does not apply in this case.

Secondly, to the extent that Plaintiffs argue that full relief has not been credited because no award or agreement on attorney's fees has been reached, the Court likewise concludes that this argument does not save these Counts from mootness.  It is well established that a request for attorney's fees does not save a claim that otherwise has become moot.

> This interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.  Where on the face of the record it appears that the only concrete interest in the controversy has terminated, reasonable caution is needed to be sure that mooted litigation is not pressed forward, and unnecessary judicial pronouncements . . . obtained, solely in order to obtain reimbursement of sunk costs.

<u>Lewis v. Continental Bank Corp.</u>, 494 U.S. 472, 480 (1990) (internal citations omitted).

Further, as Defendants point out, entry of summary judgment as moot as to these Counts does not necessarily limit Plaintiffs' ability to seek recovery of fees from Defendants' under ERISA. See 29 U.S.C. § 1132(g)(1) (permitting that, in case brought by plan participants, "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."). The Supreme Court has recently interpreted this subsection to permit an award of attorney's fees to a plaintiff who achieves "some degree of success on the merits" of an ERISA suit. Hardt v. Reliance Standard Life Ins. Co., --- U.S. ---, 130 S. Ct. 2149, 2152 (2010).

Under Hardt, a plaintiff need not be the prevailing party in an ERISA action to recover such fees. Thus, Plaintiffs will not be barred from seeking by appropriate motion to recover fees for litigating these claims at the conclusion of this action. See Pakovich v. Verizon LTD Plan, 653 F.3d 488, 493-96 (7th Cir. 2011) (recognizing the possibility of awarding attorney's fees to ERISA plaintiff whose claim was mooted by payment of claim by defendant plan). Of course, in the event class counsel shows entitlement to fee shifting, such fees may not include services rendered after the claim became moot, such as Plaintiffs' fees and costs associated with the present cross-motions.[4]

_____

[4] The Court notes, for example, that the briefing on the present cross-motions stacks up to more than twelve inches high, and all appears to have been generated after April of 2011, when

15

Finally, Plaintiffs argue that they have a continuing interest in litigating the unlawful fees counts because it will be more difficult to obtain class certification without such claims.  This argument is likewise unpersuasive, as it proves too much: it would suggest that the Court should never dismiss claims in a putative class action prior to class certification because those claims may assist the plaintiffs in certifying a class.  Would class counsel have the Plan return the $57,000 payment to un-moot these claims and allow Plaintiff to "fight" for the return of the money to the Plan?  Consequently, Plaintiffs' interest in preserving the claims for the return of fees paid as a result of Plan assets being invested in the SAMMF as a live issue to improve their chances of certifying a class is not a sufficient controversy to save it from mootness.  As a result, the Court concludes that Plaintiffs' claims in Counts III and XI and those in Counts V and VI that seek retroactive relief must be dismissed as moot.

   3.   Mootness and Claim for Prospective Relief

Alternatively, were the Court to expansively read Plaintiffs' claims for relief under Counts III and XI to also

---

the claims for reimbursement of management fees became moot. Therefore, because these additional (and, no doubt, substantial) costs and fees were generated after it became clear that the Plaintiffs and the putative class they seek to represent have recovered all possible relief sought under the identified counts at issue, the Court cautions Plaintiffs' counsel against seeking fee shifting for such expenses.

seek an order enjoining the FSC Defendants from investing Plan
assets in the SAMMF in the future, the Court would still be
compelled to grant Defendants' motion for summary judgment
against the Counts as moot.  The Court finds, based on the record
on these cross motions, no dispute of fact that Plaintiffs have
any reasonable expectation that the alleged violation (engaging
in the allegedly prohibited transaction of investing Plan assets
in the SAMMF) will recur.

      To reiterate, the rule for determining mootness of a claim
seeking prospective relief to enjoin specific challenged conduct,
when that challenged conduct is voluntarily ended during the
pendency of an action, is that the issue becomes moot only if

> (1) it can be said with assurance that there
> is no reasonable expectation . . . that the
> alleged violation will recur, . . . and (2)
> interim relief or events have completely and
> irrevocably eradicated the effects of the
> alleged violation.

Phillips v. Pa. Higher Education Assistance Agency, 657 F.2d 554,
569 (3d Cir. 1981) (citing County of Los Angeles v. Davis, 440
U.S. at 631).

      The Court has already concluded that the credit to the Plan
for all fees and interest paid to the FSC/SunAmerica Defendants
in March of 2011 has mooted the retroactive claim for return or
disgorgement of such fees.  Therefore, the Court need not further
evaluate the second prong of the Davis factors because the credit
has completely and irrevocably eradicated the effects of the

alleged violation.  Plaintiffs' arguments to the contrary have already been addressed and rejected.  Therefore, the Court need only address whether the credit and subsequent transfer of Plan assets out of the SAMMF, along with the additional controls identified by Defendants, would suffice to satisfy their burden that no reasonable expectation exists that the alleged violation will recur.

It is undisputed that, on March 31, 2011, the FSC Defendants transferred all Plan assets out of the SAMMF, substituting the Dreyfus Cash Management Fund.  Defs.' Statement of Material Facts ¶ 14; Pltfs.' Responsive Statement of Material Facts ¶ 14.  It is further undisputed that, at that time, the FSC Defendants instituted additional controls to ensure that Plan assets would not inadvertently be invested in the SAMMF in the future.[5]  Id. Specifically, these steps included reprogramming FSC's account management system to ensure that the funds would not be reinvested in the SAMMF by mistake.  Schlueter Decl. ¶ 8.

Plaintiffs argue that these remedial steps are insufficient to meet Defendants' burden of showing that no reasonable expectation exists that the alleged violation will recur.  In particular, Plaintiffs' arguments fall into two categories: (1) Defendants' prior behavior in this action and with regard to Plan

---

[5] The Court acknowledges that Plaintiffs do dispute the adequacy of these additional controls, which will be addressed below.

assets indicates that Defendants' assurances are not to be trusted, and (2) Defendants' assurances that the Plan assets will not be invested in the SAMMF are insufficient to ensure that Plan assets will not be invested in some _other_ fund that would _also_ constitute a prohibited transaction.  In particular, as to this second claim, Plaintiffs point to statements on FSC's website that suggest that similar revenue sharing plans are in existence with other funds, potentially even the Dreyfus Fund, which Plaintiffs claim would similarly render the investment a prohibited transaction.

As to Plaintiffs' first argument -- that the timing and circumstances of Defendants' action in crediting the Plan and transferring funds out of the SAMMF provides little assurance that the violation will not resume in the future -- the Court finds that the circumstances of this case are distinguishable from cases where voluntary cessation has been found to be inadequate.

In _United States v. Government of Virgin Islands_, 363 F.3d 275 (3d Cir. 2004), for example, the Third Circuit found the defendant Government of Virgin Islands (GVI) to have not met its burden of demonstrating mootness after a voluntary cessation, based in part on the timing and circumstances of the cessation. There, the district court had ordered the defendant GVI to show cause why a particular contract did not violate an ongoing

consent decree, which the GVI had repeatedly been found to have violated.  Id. at 285.  The GVI terminated the contract only days before the show-cause hearing, vaguely declaring that it had concluded that the contract was "not in the best interests" of the territory.  Id.  The district court held, and the Third Circuit affirmed, that this voluntary cessation did not provide adequate assurance that the alleged violation would not recur. The court found that the suspicious timing and insufficient justification demonstrated that the GVI could potentially revert to reinstating the contract at a later date if it wished.  Id. at 285-86.

By contrast, the instant case is distinguishable on both of these points.  There was no suspiciously looming deadline regarding the investment of the Plan assets in the SAMMF, and rather than mere verbal assurances that the funds will not be returned to the SAMMF, Defendants have reprogramed their account management software to ensure that the funds are not returned. While the Court acknowledges that, like the Defendant in GVI, the FSC/SunAmerica Defendants have not changed their "substantive stance" with regard to the alleged illegality of the alleged practices, they have fully reimbursed the Plan of all claimed injury and taken steps to ensure that it is not repeated.  The Court concludes that, on balance, Defendants have satisfied their burden of providing reasonable assurance that the Plan assets

will not be reinvested in the SAMMF.

Plaintiffs second argument that the issue is not moot because Defendants have not provided adequate assurance that the alleged injury will not recur is that Defendants have not proven that the Plan's replacement fund, the Dreyfus Fund, will not similarly violate Plaintiffs' rights as a prohibited transaction. Plaintiffs argue that there is reason to suspect that the FSC Defendants may receive some form of "revenue sharing" or "kickback" from the Dreyfus Fund similar to the SAMMF.  This argument is unpersuasive.

Plaintiffs' argument is irrelevant to the current motion because the Counts at issue are not seeking a general injunction against the Defendants enjoining them from engaging in prohibited transactions.  The Court recognizes that <u>other</u> portions of Plaintiffs' Second Amended Complaint seek to enjoin these and other Defendants from several activities.  <u>See</u> SAC Prayer for Relief ¶ F.  However the instant motion is not seeking summary judgment as to these prospective claims for relief; it is only seeking summary judgment as to the Counts which seek the disgorgement and return of fees paid by the Plan for investing in the SAMMF.  Therefore, the question before the Court is only whether Defendants have provided a reasonable assurance that the Plan assets will not be later returned to the SAMMF.  Plaintiffs' arguments regarding the Dreyfus Fund are irrelevant to that

21

question.[6]

Finally, Plaintiffs argue that even if the corrective steps taken by Defendants regarding the SAMMF fund have mooted the Counts at issue, the Court should not dismiss these counts as moot because they fall into the "capable of repetition yet evading review" exception to mootness.

> The "capable of repetition yet evading review" exception is triggered where two elements are combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again.

New Jersey Turnpike Authority v. Jersey Cent. Power & Light, 772 F.2d 25, 31 (3d Cir. 1985).  Plaintiffs argue that both prongs are satisfied here; the Court disagrees.

As to the second prong - that there is a reasonable expectation that the injury will recur - the Court has just concluded that Defendants have adequately demonstrated the absence of such a likelihood.  Consequently, the Court on that basis alone finds that the "capable of repetition yet evading review" exception is not warranted here.

---

[6] The Court also notes that, even were the question of whether the Dreyfus Fund pays revenue sharing or "kickbacks" to the FSC Defendants relevant, there is uncontested evidence in the record admitting of no material dispute of the fact that no such payments are being made.  See Schlueter Second Decl. ¶ 3, attached at Ex. 6 to Defendants' responsive statement of material facts. [Docket Item 145.]

Additionally, as to the first prong, that the challenged action was too short to be fully litigated, the Court concludes that Plaintiffs have additionally not satisfied this prong. Plaintiffs first alleged that the prohibited transactions were occurring in October of 2009, involving conduct allegedly begun in December of 2005.  That Defendants chose to cease the allegedly violative conduct and pay Plaintiffs all demanded moneys in March of 2011, seventeen months after the Complaint was filed, does not restrict the dispute into too short of a time period to seek relief through the Court.

Unlike with a prisoner challenging his detention through a habeas petition or a pregnant woman challenging a restriction on her right to obtain an abortion, there was no inherent time limit on the challenged condition in this case.  It continued until the Defendants decided to voluntarily pay Plaintiff's claim for disgorgement.  The "capable of repetition yet evading review" doctrine usually only applies in contexts where such external conditions restrict the time period in which a party would be subject to an injury.  See Yeskey v. Commonwealth of PA Dept. of Corrections, 118 F.3d 168, 170 n.3 (3d Cir. 1997) (describing the plaintiff's claim for injunctive relief as falling within "a situation capable of repetition yet evading review").  Here, there was no such external limitation on the duration of the challenged action.  Consequently, the duration of the condition,

in excess of five years, was not too short to be litigated. Accordingly, for this additional reason, the Court concludes that the "capable of repetition yet evading review" exception to mootness does not apply in this case.

Therefore, the Court finds that Defendants' crediting the Plan with the full amount of fees and interest acquired as a result of the Plan assets being invested in the SAMMF, and subsequently transferring all Plan assets out of the SAMMF, has afforded the complete relief sought by Plaintiffs under Counts III and XI, as well as those portions of Counts V and VI that seek recovery of such fees. The Court will, accordingly, grant Defendants' motion for summary judgment as to these Counts and dismiss the Counts as moot. Because the Court will grant Defendants' motion for summary judgment against these Counts, the Court must, therefore, deny Plaintiffs' cross motion for summary judgment as to those claims as moot.

## IV.  CONCLUSION

The Court has concluded that Plaintiffs' claims under Counts III and XI, and those portions of Counts V and VI seeking return of fees paid to the FSC/SunAmerica Defendants, are moot. The identified Counts in this motion for partial summary judgment are seeking only retroactive relief in the form of return of fees paid through disgorgement or reimbursement. Therefore, the

24

Defendants' action of crediting the Plan with the full amount of fees paid completely satisfies all relief sought.  Plaintiffs' claims for attorney's fees on these Counts can be litigated at the conclusion of the action in a motion pursuant to 29 U.S.C. § 1132(g), but the fact that attorney's fees remain unresolved does not save the Counts from mootness.

Alternatively, if the Court were to liberally interpret Plaintiffs' Counts as also seeking an injunction barring the future investment of Plan assets in the SAMMF, the Court similarly concludes that the Counts are moot, as Defendants have demonstrated that the Plan assets will not be reinvested in the SAMMF in the future.  Finally, the Court finds that the injuries complained of in the Counts are not "capable of repetition yet evading review."

Because the Court has concluded that the Counts are moot, the Court must accordingly deny Plaintiffs' motion for summary judgment as to those same Counts as moot.

The accompanying Order will be entered.


**June 27, 2012**                          **s/ Jerome B. Simandle**
Date                                        JEROME B. SIMANDLE
                                            Chief U.S. District Judge